# Declaration of David Rosemberg
# Exhibit 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CASE NO.: 1:15-cv-01382-AT

LUXOTTICA   GROUP,   S.p.A.,   an   Italian
corporation,

       Plaintiffs,

v.

GREENBRIAR   MARKETPLACE   II,   LLC,   a
Georgia   limited   liability   company,   2925
PROPERTIES, LLC, a Georgia limited liability
company D/B/A GREENBRIAR DISCOUNT
MALL,   ALBERT   ASHKOUTI,   PATRICK
SWINDALL,   KIMBERLY   SWINDALL,
LAWRENCE STERLING, LISA STERLING,
individually,

       Defendants.

_____/

## DECLARATION OF DAVID B. ROSEMBERG PURSUANT TO 28 U.S.C. § 1746

    1.    My name is David B. Rosemberg.  I am licensed to practice law in the State of Florida, I am over the age of 21 years, and I am fully competent to make this Declaration.  The facts stated in this Declaration are within my personal knowledge and are true and correct.

    1.    I am an attorney of record for Plaintiff Luxottica Group, S.p.A. in the above-styled action.

    2.    The following documents identified below 2(a) – 2(q), and attached to this Declaration are true and correct copies of documents that were produced to Plaintiff Luxottica by Defendants 2925 Properties, Kimberly Swindall and Patrick Swindall pursuant to Federal Rule of Civil Procedure 26 in the above-styled action:

a. Lease Agreement (Para. 1,5-000905 – 000908);

b. Operating Agreement of 2925 Properties, LLC (Para. 1,5-000008 - 000036);

c. March 4, 2014 letter from Kimberly Swindall (Para. 9-000019 – 000021);

d. January 8, 2014 e-mail from Kimberly Swindall to Tamara Taylor (Corr-000174);

e. Transaction Detail Ledger (Para. 3-000050 – 000052);

f. April 11, 2014 e-mail from Albert Ashkouti (Corr-000185, Corr-000193);

g. January 3, 2011 letter from Coach (Corr-000087 – 000088);

h. February 22, 2011 letter response from Patrick Swindall (Corr-000005 - 000006);

i. Southeastern Investigations Report (Para. 16-000005 – 000008);

j. December 17, 2012 Report (Para. 16-000009);

k. March 2013 Warning (Para. 1,5-000705);

l. November 11, 2013 letter from Louis Vuitton (Corr-000014 – 000017);

m. December 2, 2013 letter from Kimberly Swindall (Corr-000018 – 000019);

n. December 5, 2015 e-mail from Patrick Swindall (Corr-0000157);

o. December 19, 2013 e-mail from Kimberly Swindall (Para. 9-000017 – 000018);

p. March 31, 2014 – April 2, 2014 e-mails (Corr-000181 – 0000182; Corr-000197); and

q. April 2014 – May 2014 e-mails (Para. 9-000006 – 000007; Para. 9-000009 – 000010).

3.      The following documents identified as 3(a) – 3(e) below, and attached to this Declaration are true and correct copies of documents that were produced to Plaintiff Luxottica by Defendant Greenbriar Marketplace II, LLC pursuant to Federal Rule of Civil Procedure 26 in the above styled action:

      a.   Tenant Ledger (GB_PROD_52 – 74);

      b.   Selected pages from tax returns for the years 2010-2014 (GB_PROD_77 – 84, 89 – 90, 100 – 104, 107, 112 – 117, 119 , 123 – 130, 133 – 135, 137 – 142, 147 – 152, 154, 160, 162, 164 – 167, 175 – 183, and 199);

      c.   March 4, 2014 Letter from Kimberly Swindall (GB_PROD_44 – 46);

      d.   March 4, 2014 e-mail from Kimberly Swindall (GB_PROD_43); and

      e.   April 3, 2014 letter from Albert Ashkouti (GB_PROD_39 – 41).

I declare pursuant 28 U.S.C. § 1746 and under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 8th, 2015.

_____
David B. Rosemberg

2(a)

Greenbriar Discount Mall
LEASE AGREEMENT

This Lease is made between 2925 Properties, LLC dba Greenbriar Discount Mall (hereinafter "Lessor") and _Oumar Thiam_ __. (hereinafter "Lessee" or "Tenant"). Lessee hereby offers to lease Space _D-17_ ___. located in Greenbriar Discount Mall. (hereinafter "The Mall"), at 2975 Headland Drive, Fulton County, Georgia, (hereinafter "Leased Space") from Lessor upon the following TERMS and CONDITIONS:

1. **Initial Term and Rent.** Lessee's Initial Lease Term shall be from _February 2013_ (hereinafter "Commencement Date") until the last day of the Calendar Month in which Commencement Date is contained plus the entirety of the Calendar Month immediately following Commencement Date. Lessee's Initial Rent for the Leased Space shall be _550_. In the event this Lease Agreement shall be renewed and the Initial Lease Term shall be extended, Lessee's Monthly Rent for each subsequent Lease Term (Calendar Month), unless subsequently modified as allowed later herein. shall be _550_. Any subsequent reference to "Lessee's Monthly Rent" in this Lease Agreement shall mean Lessee's Monthly Rent as set forth in this Paragraph, or any amount that may result from a subsequent modification of Lessee's Monthly Rent as provided in Paragraph 3 of this Lease Agreement. At the time Lessee executes this Lease Agreement, Lessee agrees to pay Lessee's Initial Rent in advance and further agrees:

(a) to execute, simultaneous with the execution of this Lease Agreement , an **ACH Agreement** authorizing Lessor to automatically debit Lessee's checking account at the Financial Institution designated by Lessee in said ACH Agreement under the terms and conditions set forth in said ACH Agreement; or. in the alternative.

(b) to deliver Lessee's Monthly Rent in **Certified Funds or Money Orders**, only from Financial Institutions approved by Lessor in advance. by placing same into the slot located in the door of The Mall Manager's Office located in The Mall on the first day of each month following the Commencement Date or, if the first day of any month shall fall on a day The Mall is closed to the Public for any reason. on the first business day thereafter that The Mall is open to the Public. All Certified Funds and or Money Orders delivered pursuant to this Paragraph shall be made Payable to "Greenbriar Discount Mall."

2. **Late Fee or Penalty.** In the event Lessee fails to pay Lessee's Initial Rent or Lessee's Monthly Rent as provided in Paragraph 1 hereof. for any reason. including a denial by any Financial Institution used Lessee. to pay all or any part of Lessee's Initial Rent or Lessee's Monthly Rent. Lessor shall be entitled an amount equal to $50.00 or 5% of Lessee's Initial Rent or Lessee's Monthly Rent, whichever is greater. as a Late Fee or Penalty, whichever is applicable under the circumstances. All rental payments shall be made to Lessor at its office located in Greenbriar Discount Mall. (b) Provided Lessee has complied with all of its obligations under this lease and provided further that Lessee has complied with al rules and regulations which Lessor may from time to time promulgate, Lessee may extend its lease for an additional calendar month paying an additional month's rent NO LATER THAN FIVE DAYS AFTER THE EXPIRATION OF ITS PREVIOUS MONTHLY TERM. Lessor may. at its sole discretion. raise Lessee's monthly rent by giving Lessee thirty days advance written notice of its intention to do so. IF LESSEE'S RENT HAS NOT BEEN PAID WITHIN FIVE DAYS AFTER THE EXPIRATION OF THE INITIAL LEASE TERM OR ANY EXTENSION THEREOF. THIS LEASE WILL AUTOMATICALLY TERMINATE AND LESSOR MAY, AT ITS OPTION. PAD-LOCK LESSEE'S SPACE OR ENTER IT AND REMOVE ALL ITEMS AND DISPOSE OF THEM AS LESSOR DEEMS APPROPRIATE. BY EXECUTING THIS AGREEMENT. OR REMAINING IN THE SPACE AFTER THE INITIAL TERM OR ANY EXTENSION THEREOF. LESSEE EXPRESSLY WAIVES ANY RIGHTS LESSEE MAY HAVE UNDER THE LAWS OF THE STATE OF GEORGIA, THE CITY OF ATLANTA, FULTON COUNTY OR THE UNITED STATES OF AMERICA TO ANY OTHER NOTICE OR TO PROTEST OR RESIST THIS EVICTION UNDER THE LAWS OF THE CITY OF ATLANTA, STATE OF GEORGIA OR THE UNITED STATES OF AMERICA. By occupying the above described leased space after the expiration of the initial lease term. or any extension thereof. Lessee automatically agrees to pay an additional month's rent. Lessee also agrees to an extension of all of the terms and conditions set forth herein INCLUDING, BUT OT LIMITED TO. ITS WAIVER OF ANY NOTICE OF EVICTION UNDER THE LAWS OF THE CITY OF ATLANTA, STATE OF GEORGIA. COUNTY OF FULTON OR THE UNITED STATES OF AMERICA. Lessor may. at its sole discretion. chose not to evict Lessee, or seize Lessee's property. and allow Lessee to pay any rent due, together with a penalty equal to $ _10 %_ percent of _the total R(_ the monthly rent. whichever is greater, and this lease will automatically renew for an additional one month term as

otherwise provided herein. By accepting the late payment and late fees on one occasion or numerous occasions, Lessor is not waiving its right to evict Lessee as provided herein at any time in the future.

3. **Renewal Terms.** Provided Lessee has complied with all of Lessee's obligations under this Lease Agreement, and, provided further that Lessee has complied with all Rules and Regulations that Lessor may from time to time promulgate, Lessee may renew this Lease Agreement and extend the Lease Term for an Additional Term (Calendar Month) by paying an amount equal to or greater than Lessee's Monthly Rent.

4. **Lessor's Right to Modify Lessee's Monthly Rent.** Lessor may, at its sole discretion, modify Lessee's Monthly Rent by giving Lessee at least thirty days advanced written notice of its intention to do so. This notice may be given by Lessor by hand delivering said notice to Lessee, or, in Lessee's absence, to anyone operating Lessee's Space, at any time during Mall Operating Hours, as later defined herein. In the event the Leased Space is not open at the time Lessor attempts to hand deliver said notice. Lessor may place a copy of the required notice inside the Leased Space in as conspicuous a place as Lessor, in its sole discretion, shall deem appropriate.

5. **Automatic Renewal.** By occupying the Leased Space after the expiration of the Initial Lease Term, or any extension thereof, Lessee automatically renews this Lease Agreement and automatically agrees to pay to Lessor Lessee's Monthly Rent. Lessee also agrees to an extension of all of the terms and conditions set forth herein.

6. **Use of Leased Space.** Lessee shall use and occupy the Leased Space for the retail sale of _Retail Clothesing Shop_ The premises shall be used for no other purpose. Lessor represents that the Leased Space may lawfully be used for such purpose.
*NO Wholesaleing*

7. **Care and Maintenance of Premises.** Lessee acknowledges that the Leased Space is in good order and repair, unless otherwise indicated herein. Lessee shall, at Lessee's own expense and at all times, maintain the Leased Space in good and safe condition, including plate glass, electrical wiring, plumbing installations, if any, and any other system or equipment located in or upon the Leased Space, and shall surrender the same at termination hereof, in as good condition as received, normal wear and tear excepted. Lessee shall be responsible for all repairs required, excepting the roof, exterior walls, and structural foundations. Lessee shall not, without first obtaining the written consent of Lessor, make any alterations, additions, or improvements, in, to or about the Leased Space.

8. **Ordinances and Statutes.** Lessee shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force, or which may hereafter be in force, pertaining to the Leased Space, occasioned by or affecting the use thereof by Lessee. Lessee shall obtain, and prominently display at all times, a business license for the City of Atlanta and, where applicable, shall obtain any professional or occupational licenses required for the operation of Lessee's business. Lessee shall also provide Lessor with the names, home addresses, phone numbers and social security numbers of all employees or associates that may from time to time occupy or operate said Leased Space on behalf of Lessee. Should Lessee or any of its employees be cited for a violation of any Statutes or Ordinances of the City of Atlanta, Fulton County, State of Georgia or the United States of America, Lessor may, without prior notice or consent of Lesssee, immediately terminate this Lease Agreement and require Lessee to vacate the leased space immediately thereafter.

9. **Assignment and Subletting.** Lessee shall not assign this lease or sublet any portion of the premises without prior written consent of the lessor, which shall not be unreasonably withheld. Any such assignment or subletting without consent shall be void and, at the option of the Lessor, may terminate this lease.

10. **Utilities.** Lessor agrees to provide appropriate heat, air conditioning and electricity to Leased Space. Lessee may not operate any appliances, heaters or stoves in Leased Space without the prior written approval of Lessor.

11. **Entry and Inspection.** Lessee shall permit Lessor or Lessor's agents to enter into Leased Space at reasonable times without notice, for the purpose of inspecting the same or making necessary repairs.

12. **Possession.** If Lessor is unable to deliver possession of the Leased Space at the commencement hereof, Lessor shall not be liable for any damages cause thereby, nor shall this lease be void or voidable, but Lessee shall not be liable for any rent until possession is delivered. Lessee may terminate this Lease Agreement if possession is not delivered within ten days of the commencement of the term hereof.

13. **Indemnification of Lessor/Insurance.** Lessor shall not be liable for property damage or personal injuries occurring in the Leased Space, or any part thereof, and Lessee agrees to hold Lessor harmless from any claim or claims for damages arising out of Lessee's occupation or use of Leased Space, no matter how caused. Lessee, at Lessee's own expense, shall maintain public liability insurance, including coverage for bodily injury and property damage, insuring Lessee and Lessor with minimum coverage of $1,000,000.00. Lessee shall, upon request, provide Lessor with a Certificate of Insurance showing Lessor as additional insured under said policy. The Certificate shall provide for a ten-day written notice to Lessor in the event of cancellation or material change of coverage. To the maximum extent permitted by insurance policies which may be owned by Lessor or Lessee, Lessee and Lessor, for the benefit of each other, waive any and all rights of subrogation which might otherwise exist.

14. **Eminent Domain/Destruction of Leased Space.** If the Leased Space or any part thereof or any estate therein, or any other part of the building materially affecting Lessee's use of the premise, shall be taken by eminent domain, this Lease Agreement shall terminate on the date when the title vests pursuant to such taking. Lessee's Initial Rent or Lessee's Monthly Rent. and any additional rent, shall be appointed as of the termination date, and any rent paid for any term, or portion thereof, beyond that date shall be repaid to Lessee. Lessee shall not be entitled to any part of the award for such taking or any payment in lieu thereof, but Lessee may file a claim for any taking of fixtures and improvements owned by Lessee, and for moving expenses. A total destruction of the building in which the Leased Space may be situated shall terminate this Lease Agreement.

15. **Signage.** Lessee shall not hang, erect or otherwise display any type of signage, posters, photographs, or lettering, etc. without the prior written approval of Lessor. No failure by Lessor to enforce this provision shall be deemed a waiver.

16. **Security Deposit.** Lessee shall deposit with Lessor, on the signing of this lease, the sum of _____ as a security deposit for the performance of Lessee's obligations under this Lease Agreement, including, without limitation, the surrender of possession of the premises to Lessor as herein provided. If Lessor applies any part of the deposit to cure any default of Lessee, Lessee shall, on demand, deposit with Lessor the amount so applied so that Lessor shall have the full deposit on hand at all times during the term of this lease. PROVIDED LESSE HAS GIVEN LESSOR AT LEAST THIRTY DAYS WRITTEN NOTICE OF LEASEE'S INTENT TO TERMINATE THIS LEASE AND VACATE THE LEASED SPACE, Lessee shall be entitled to a refund of Lessee's Security Deposit after the Leased Space has been vacated by Lessee and Lessor has had an opportunity to perform an inspection of the condition of the Leased Space.

17. **Attorney's Fees.** In case suit should be brought for recovery of the premises, or for any sum due hereunder, or because of any fact which may arise out of the possession of the premises, by either party, the prevailing party shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee.

18. **Notices.** Unless otherwise provided herein, any notice which either party may, or is required to give, shall be given by mailing the same, postage prepaid, to Lessee at the premises, or Lessor at the address first written, or at such other places as may be designated by the parties from time to time.

19. **Heirs, Assigns, Successors.** This Lease Agreement is binding upon and inures to the benefit of the heirs, assigns and successors in interest to the parties.

20. **Additional Liability.** Lessor is not responsible for fire, theft, and damage to Lessee's merchandise or trade fixtures, etc. nor is Lessor responsible for providing fire, theft, damage or liability insurance for Lessee or Lessee's property. All merchandise and property left in the Leased Space or anywhere in The Mall by Lessee or others is placed there at Lessee's own risk. Lessor is not responsible in any way for damage or loss to Lessee's person or property, or Lessee's customer's person's or property for any reason whatsoever including, but not limited to fire, theft or water loss or damage (including water damage caused by sprinkler systems located in The Mall).

21. **Conduct of Lease.** Lessee agrees to keep Lessee's space fully and tastefully displayed and stocked. Lessee agrees not to smoke or allow its employees, patrons, customers or agents to smoke, or burn incense in the Leased Space or adjacent common areas of The Mall. Lessee agrees not to play music so loudly as to disturb others in The Mall or adjoining spaces nor to allow its patrons, customers, employees or agents to do so.

Mall or adjoining spaces .......... customers, employees or agents to do so.

22. **Hours of Operation.** Except in Sundays, New Year's Day, Martin Luther King, Jr. Holiday, Memorial Day, July 4th, Labor Day, Thanksgiving Day and Christmas Day, and during inclimate weather or extraordinary circumstances that prevent normal operation of The Mall, such as interruption of utilities, or damages from storms or Acts of Nature. The Mall shall be open to the Public from 10:00 a.m. until 7:00 p.m. Monday through Saturdays 10:00 a.m. until 7 p.m. Determination of conditions that prevent normal operation of The Mall shall be in the sole discretion of Lessor, its employees and Agents. Lessee and Lessee's employees shall have access to The Mall at least thirty minutes prior to and after the Hour's that The Mall is open to the Public. Failure of Lessee to open Lessee's business when The Mall is open to the Public for any reason that Lessor, in its sole discretion finds to be unreasonable, shall constitute reasonable grounds for Lessor to terminate this Lease Agreement without notice.

23. **No Waiver.** Neither parties failure to abide by the strict terms and conditions of this Lease Agreement, including Lessor's acceptance of late or partial payments of rent or waiver of late fees and penalties shall not constitute a waiver of either party's right to insist upon strict compliance of any term or condition contained in this Lease.

24. **Subordination.** This Lease Agreement is and shall be subordinated to all existing and future liens and encumbrances against the Building in which the Leased Space is situated.

25. **No Representations.** Upon executing this Agreement, Lessee will be deemed to have accepted Leased Premises "As Is." In entering this Agreement, Lessee is relying only on the express agreements of Lessor set forth herein and not on any representation or warranties by Lessor, its officers, directors, agents, employees or representatives not expressly set forth herein.

26 **Entire Agreement.** The foregoing constitutes the entire agreement between the parties and supersedes all prior agreements and understandings between the parties hereto. This agreement may not be modified, altered or amended except in writing executed by both parties hereto.

Signed this __25__ day of __February__ 2013

LESSEE

LESSOR:
2925 Properties, LLC dba Greenbriar
Discount Mall

2(b)

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE GEORGIA SECURITIES ACT OF 1973, AS AMENDED, IN RELIANCE UPON THE EXEMPTION FROM REGISTRATION SET FORTH IN SECTION 10-5-9(13) OF SUCH ACT. IN ADDITION, THESE SECURITIES HAVE NOT BEEN REGISTERED WITH THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION IN RELIANCE UPON AN EXEMPTION FROM SUCH REGISTRATION SET FORTH IN THE SECURITIES ACT OF 1933 PROVIDED BY SECTION 4(2) THEREOF, NOR HAVE THEY BEEN REGISTERED WITH THE SECURITIES COMMISSION OF CERTAIN STATES IN RELIANCE UPON CERTAIN EXEMPTIONS FROM REGISTRATION. THESE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT PURPOSES ONLY AND MAY NOT BE OFFERED FOR SALE, PLEDGED, HYPOTHECATED, SOLD OR TRANSFERRED EXCEPT IN COMPLIANCE WITH THE TERMS AND CONDITIONS OF THIS AGREEMENT AND IN A TRANSACTION WHICH IS EITHER EXEMPT FROM REGISTRATION UNDER SUCH ACTS OR PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACTS.

**OPERATING AGREEMENT**
**OF**
**2925 PROPERTIES, LLC**
**A Georgia Limited Liability Company**

WITNESSETH:

**WHEREAS,** on December 31, 1998, the Company was formed as a limited liability company under the laws of the State of Georgia; and

**WHEREAS,** the initial member adopted an Operating Agreement for the Company as of December 31, 1998 (the "Initial Operating Agreement"); and

**WHEREAS,** the initial member of the Company transferred 100% of the Units to Kimberly S. Swindall on December 31, 2008; and

**WHEREAS,** the parties hereby fully amend and restate the Initial Operating Agreement of the Company as follows:

**ARTICLE I**

**DEFINITIONS**

The following terms used in this Operating Agreement shall have the following meanings (unless otherwise expressly provided herein):

"Adjusted Capital Account Deficit" means, with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the relevant fiscal year, after giving effect to the following adjustments:

Para.1,5-060908

(a)     Credit to such Capital Account any amounts which such Member is obligated to restore pursuant to any provision of this Agreement or is deemed to be obligated to restore pursuant to the penultimate sentences of Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5); and

(b)     Debit to such Capital Account the items described in Sections 1.704-1(b)(2)(ii)(d)(4)-(6) of the Regulations.

The foregoing definition of Adjusted Capital Account Deficit is intended to comply with the provisions of Section 1.704-1(b)(2)(ii)(d) of the Regulations and shall be interpreted consistently therewith.

"Affiliate" means (a) in the case of an individual, any relative of such Person, (b) any officer, director, trustee, partner, manager, employee or holder of ten percent (10%) or more of any class of the voting securities of or equity interest in such Person; (c) any corporation, partnership, limited liability company, trust or other entity controlling, controlled by or under common control with such Person; or (d) any officer, director, trustee, partner, manager, employee or holder of ten percent (10%) or more of the outstanding voting securities of any corporation, partnership, limited liability company, trust or other entity controlling, controlled by or under common control with such Person.

"Allocation Year" means (i) the period commencing on the date hereof and ending on December 31 of the year in which this Agreement was executed, (ii) any subsequent twelve (12) month period commencing on January 1 and ending on December 31, or (iii) any portion of the period described in clauses (i) or (ii) for which the Company is required to allocate Profits, Losses, and other items of Company income, gain, loss, or deduction pursuant to Article IX hereof.

"Articles of Organization" means the Articles of Organization of 2925 PROPERTIES, LLC, as filed with the Secretary of State of Georgia as the same may be amended from time to time.

"Capital Account" means, with respect to any Member, the Capital Account maintained for such Member in accordance with the following provisions:

(a)     To each Member's Capital Account there shall be credited such Member's Capital Contributions, such Member's distributive shares of Profits and any items in the nature of income or gain which are specially allocated pursuant to Section 9.04 hereof, and the amount of any Company liabilities assumed by such Member or which are secured by any property distributed to such Member.

(b)     To each Member's Capital Account there shall be debited the amount of cash and the Gross Asset Value of any property distributed to such Member pursuant to any provision of this Agreement, such Member's distributive share of Losses and any items in the nature of expenses or losses which are specially allocated pursuant to Section 9.04 hereof, and the amount of any liabilities of such Member assumed by the Company or which are secured by any property contributed by such Member to the Company.

Para.1-30000009

(c)     In the event all or any portion of an interest in the Company is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred interest.

(d)     In determining the amount of any liability for purposes of this Agreement, there shall be taken into account Code Section 752(c) and any other applicable provisions of the Code and Regulations.

The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Regulations Section 1.704-1(b), and shall be interpreted and applied in a manner consistent with such Regulations. In the event the Manager shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto (including, without limitation, debits or credits relating to liabilities which are secured by contributed or distributed property or which are assumed by the Company or Members), are computed in order to comply with such Regulations, the Manager may make such modification, provided that it is not likely to have a material effect on the amounts distributable to any Member pursuant to Article XIII hereof upon the dissolution of the Company. The Manager also shall (i) make any adjustments that are necessary or appropriate to maintain equality between the Capital Accounts of the Members and the amount of Company capital reflected on the Company's balance sheet, as computed for book purposes, in accordance with Regulations Section 1.704-1(b)(2)(iv)(q), and (ii) make any appropriate modifications in the event unanticipated events might otherwise cause this Agreement not to comply with Regulations Section 1.704-1(b).

"Capital Contribution" means any contribution, as defined in O.C.G.A. §14-11-101(4), to the capital of the Company in cash or property by a Member whenever made, and shall include the amount of money and the initial Gross Asset Value of any property (other than money) contributed to the Company with respect to the interest in the Company held by such Member. The principal amount of a promissory note which is not readily traded on an established securities market and which is contributed to the Company by the maker of the note (or a member related to the maker of the note within the meaning of Regulation Section 1.704-1(b)(2)(ii)(c)) shall not be included in the Capital Account of any Person until the Company makes a taxable disposition of the note or until (and to the extent) principal payments are made on the note, all in accordance with Regulations Section 1.704-1(b)(2)(iv)(d)(2).

"Code" means the Internal Revenue Code of 1986, as amended from time to time.

"Company" means 2925 PROPERTIES, LLC.

"Company Minimum Gain" has the meaning given the term "partnership minimum gain" set forth in Regulations Sections 1.704-2(b)(2) and 1.704-2(d).

"Depreciation" means, for each Allocation Year or other period, an amount equal to the depreciation, amortization or other cost recovery deduction allowable with respect to an asset for such Allocation Year or other period, except that if the Gross Asset Value of an asset differs from its adjusted basis for federal income tax purposes at the beginning of such Allocation Year or other

Para.1,5-000605

- 3 -

period, Depreciation shall be an amount which bears the same ratio to such beginning Gross Asset Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such Allocation Year or other period bears to such beginning adjusted tax basis; provided, however, that if the adjusted tax basis for federal income tax purposes of an asset at the beginning of such Allocation Year or period is zero, Depreciation shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by the Members.

"Distributable Cash" means all cash, revenues and funds received by the Company from Company operations (including security deposits collected by the Company and Settlement Payments), less the sum of the following to the extent paid out or set aside by the Company: (a) Reserves; (b) Settlement Payments; (c) all principal and interest payments on indebtedness of the Company and all other sums paid to lenders (including Members who make loans to the Company); (d) security deposits collected by the Company; (e) all other cash expenditures incurred incident to the normal operation of the Company's business

"Economic Interest." A Member's share of the Company's Profits, Losses and distributions of the Company's property pursuant to the Agreement and the Georgia Act. A Member's Economic Interest shall not include any right to participate in the management of the business and affairs of the Company, including any rights to vote on, consent to or otherwise participate in any decision or action of the Members granted pursuant to this Agreement or the Georgia Act. A Member's Economic Interest percentage shall be the same as his Ownership Interest percentages.

"Entity." Any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative or association or any foreign trust or foreign business organization.

"Fiscal Year." The Company's fiscal year, which shall be the calendar year.

"Georgia Act." The Georgia Limited Liability Company Act at O.C.G.A. §14-11-100, et seq.

"Gross Asset Value" means, with respect to any asset, the asset's adjusted basis for federal income tax purposes, except as follows:

(a)   The initial Gross Asset Value of any asset contributed by a Member to the Company shall be the gross fair market value of such asset, as determined by the contributing Member and the Company;

(b)   The Gross Asset Value of all Company assets shall be adjusted to equal their respective gross fair market values (taking Code Section 7701(g) into account), as determined by the Manager, as of the following times: (i) the acquisition of an additional interest in the Company by any new or existing Member in exchange for more than a de minimis Capital Contribution; (ii) the distribution by the Company to a Member of more than a de minimis amount of Company property as consideration for an interest in the Company; (iii) the liquidation of the Company within the meaning of Regulations Section 1.704-1(b)(2)(ii)(g); and (iv) in connection with the grant of an interest in the Company (other than a de minimis interest) as consideration for the

- 4 -


Para.1

provision of services to or for the benefit of the Company by an existing Member acting in a member capacity, or by a new Member acting in a partner capacity in anticipation of being a Member; provided that an adjustment described in clauses (i), (ii), and (iv) of this paragraph shall be made only if the Managers reasonably determines that such adjustment is necessary to reflect the relative economic interests of the Members in the Company.

(c)     The Gross Asset Value of any Company asset distributed to any Member shall be adjusted to equal the gross fair market value (taking Code Section 7701(g) into account) of such asset on the date of distribution; and

(d)     The Gross Asset Values of the Company assets shall be increased (or decreased) to reflect any adjustments to the adjusted basis of such assets pursuant to Code Section 734(b) or Section 743(b), but only to the extent that such adjustments are taken into account in determining Capital Accounts pursuant to (A) Regulations Section 1.704-1(b)(2)(iv)(m) and (B) subparagraph (vi) of the definition of "Profits" and "Losses" or Section 9.04(f) hereof, provided, however, that Gross Asset Values shall not be adjusted pursuant to this subparagraph (d) to the extent that an adjustment pursuant to subparagraph (b) is required in connection with a transaction that would otherwise result in an adjustment pursuant to this subparagraph (d).

If the Gross Asset Value of an asset has been determined or adjusted pursuant to subparagraph (a), subparagraph (b) or subparagraph (d) hereof, such Gross Asset Value shall thereafter be adjusted by the depreciation taken into account with respect to such asset for purposes of computing Profits and Losses.

"Initial Capital Contribution." The initial contributions to the capital of the Company made by a Member pursuant to Section 7.01 of this Operating Agreement.

"Lender" shall refer to EASTSIDE COMMERCIAL BANK or its successors or assigns, which shall be the lender and secured party under the Loan.

"Loan" shall mean the loan or loans provided by Lender to the Company for an original principal amount of approximately $1,600,000.00, secured by first-in-priority deed to secure debt on the Property.

"Loan Documents" means any and all contracts, agreements, notes, guarantees, and other documents evidencing, securing, modifying, extending, or otherwise relating to the Loan.

"Manager(s)." One manager is designated pursuant to this Agreement. Specifically, Manager shall initially mean Patrick L. Swindall, Sr., a resident of the State of Georgia, or any other person that succeeds such person in its capacity as Manager. At any time there is only one Manager of the Company, all references to the Managers in the plural shall be deemed to refer to such Manager. Manager is authorized any and all documents necessary for the operation of the Company including, but not limited to, the powers set forth in Article V of this Agreement.

Para.1,5-000012

"Member." Each of the parties who executes a counterpart of this Operating Agreement as a Member and each of the parties who may hereafter become Members. The current Sole Member is Kimberly S Swindall, a resident of the State of Georgia.

"Member Minimum Gain" means an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if such Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Section 1.704-2(i)(3) of the Regulations.

"Member Nonrecourse Debt" has the same meaning as the term "partner nonrecourse debt" set forth in Section 1.704-2(b)(4) of the Regulations.

"Member Nonrecourse Debt Minimum Gain" means an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if such Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Section 1.704-2(i)(3) of the Regulations.

"Member Nonrecourse Deductions" has the meaning given the term "partner nonrecourse deductions" as set forth in Regulation Sections 1.704-2(i)(1) and 1.704-2(i)(2).

"Membership Interest." A Member's entire interest in the Company including such Member's Economic Interest and the right to participate in the management of the business and affairs of the Company, including the right to vote on, consent to, or otherwise participate in any decision or action of or by the Members granted pursuant to this Operating Agreement or the Georgia Act.

"Nonrecourse Deductions" has the meaning set forth in Sections 1.704-2(b)(1) and 1.704-2(c) of the Regulations.

"Nonrecourse Liability" has the meaning set forth in Section 1.704-2(b)(3) of the Regulations.

"Operating Agreement." This Operating Agreement as originally executed and as amended from time to time.

"Ownership Interest" means (subject to adjustment in Section 7.02), with respect to each Member, the quotient of (A) Total Capital Contributions of such Member under Section 7.01 or Section 7.02 *divided by* (B) the Total Capital Contributions of all Members under Section 7.01 or 7.02. The initial Ownership Interests of the Members are as set forth on Exhibit "A" attached hereto. The Ownership Interests of the Members shall be adjusted from time to time in the manner set forth in this Agreement.

"Person." Any individual or Entity, and the heirs, executors, administrators, legal representatives, successors, and assigns of such "Person" where the context so permits.



Para.1/5.000013

- 6 -

"Profits" and "Losses" shall mean, for each Allocation Year, an amount equal to the Company's taxable income or loss for such Allocation Year, determined in accordance with Code Section 703(a) (for the purpose, all items of income, gain, loss, or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or loss), with the following adjustments (without duplication):

(i)     Any income of the Company that is exempt from federal income tax and not otherwise taken into account in computing Profits or Losses pursuant to this definition of "Profits" and "Losses" shall be added to such taxable income or loss;

(ii)    Any expenditures of the Company described in Code Section 705(a)(2)(B) or treated as Code Section 705(a)(2)(B) expenditures pursuant to Regulations Section 1.704-1(b)(2)(iv)(i), and not otherwise taken into account in computing Profits or Losses pursuant to this definition of "Profits" and "Losses" shall be subtracted from such taxable income or loss;

(iii)   In the event the Gross Asset Value of any Company asset is adjusted pursuant to subparagraphs (b) or (c) of the definition of Gross Asset Value, the amount of such adjustment shall be treated as an item of gain (if the adjustment increases the Gross Asset Value of the asset) or an item of loss (if the adjustment decreases the Gross Asset Value of the asset) from the disposition of such asset and shall be taken into account for purposes of computing Profits or Losses;

(iv)    Gain or loss resulting from any disposition of Property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Gross Asset Value of the Property disposed of, notwithstanding that the adjusted tax basis of such Property differs from its Gross Asset Value;

(v)     In lieu of the depreciation, amortization, and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account Depreciation for such Allocation Year, computed in accordance with the definition of Depreciation;

(vi)    To the extent an adjustment to the adjusted tax basis of any Company asset pursuant to Code Section 734(b) is required, pursuant to Regulations Section 1.704-(b)(2)(iv)(m)(4), to be taken into account in determining Capital Accounts as a result of a distribution other than in liquidation of a Member's interest in the Company, the amount of such adjustment shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) from the disposition of such asset and shall be taken into account for purposes of computing Profits or Losses; and

(vii)   Notwithstanding any other provision of this definition, any items which are specially allocated pursuant to Section 9.04 hereof shall not be taken into account in computing Profits or Losses.

Para.1,5X000014

The amounts of the items of Company income, gain, loss or deduction available to be specially allocated pursuant to Section 9.04 hereof shall be determined by applying rules analogous to those set forth in subparagraphs (i) and (vi) above.

"Project" means the property located at 2925 through 2975 Headland Dr, in Atlanta, Georgia, 30344.

"Property" shall mean all that real and personal property acquired by the Company and any improvements thereto and shall include both tangible and intangible property.

"Reserves." Funds set aside or amounts allocated to reserves which shall be maintained in amounts deemed sufficient by the Manager for working capital and to pay taxes, insurance, debt service or other costs or expenses incident of the ownership or operation of the Company's business. Unless consented to by all of the Members in writing, Reserves shall not exceed the greater of (i) $100,000.00; plus (ii) such amounts as Lender or any other lender of third party indebtedness owed by the Company shall require.

"Swindall" means Kimberly S. Swindall

"Transferring Member." A Member who sells, assigns, pledges, hypothecates or otherwise transfers for consideration or gratuitously all or any portion of his Membership Interest or Economic Interest.

"Treasury Regulations" or "Regulations". The Federal Income Tax Regulations promulgated under the Code, as such regulations may be amended from time to time (including corresponding provisions of succeeding regulations).

"Units". A denomination representing the Membership Interest of the Members in the Company.

"Unreturned Additional Capital Contributions" means at any time with respect to each Member, an amount equal to the sum of the Additional Capital Contributions made by such Member pursuant to Section 7.02 of this Agreement, reduced (but not below zero) by the sum of distributions made to such Member pursuant to Section 8.01(b)(i) of this Agreement.

"Unreturned Capital Contributions" means (subject to adjustment in Section 7.02) at any time with respect to each Member, an amount equal to the sum of the Capital Contributions made by such Member pursuant to Section 7.01 or Section 7.02 of this Agreement, reduced (but not below zero) by the sum of distributions made to such Member pursuant to Section 8.01(b)(i) or (ii) of this Agreement after the date of this Agreement.

## ARTICLE II

## FORMATION OF COMPANY

2.01.   Formation.   The Company was formed by its organizer as a Georgia Limited

- 8 -

Para.1,5000015

Liability Company by executing and delivering articles of organization to the Secretary of State of Georgia in accordance with the provisions of the Georgia Act.

2.02.   Name.  The name of the Company is 2925 PROPERTIES, LLC.

2.03.   Principal Place of Business.  The principal place of business of the Company within the State of Georgia is 3137 St. Ives C. C. Pkwy, Duluth, GA 30097.  The Company may locate its places of business and registered office at any other place or places as the Members may from time to time deem advisable.

2.04.   Registered Office and Registered Agent.  The Company's initial registered office shall be at the office of its registered agent at 3137 St. Ives C. C. Pkwy, Duluth, GA 30097, and the name of its registered agent at such address is Patrick L. Swindall, Sr.  The registered office and registered agent may be changed from time to time by filing the address of the new registered office and/or the name of the new registered agent with the Secretary of State of Georgia pursuant to the Georgia Act and the applicable rules promulgated thereunder.

2.05.   Term.  The term of the Company shall commence on the date the Articles of Organization were filed with the Secretary of State of Georgia and shall continue thereafter until dissolved in accordance with the provisions of this Operating Agreement or the Georgia Act.

## ARTICLE III

### BUSINESS OF COMPANY

3.01.   Permitted Businesses.  The business of the Company shall be:

(a)   To accomplish any lawful business whatsoever, or which shall at any time appear conducive to or expedient for the protection or benefit of the Company and its assets, including but not limited to asset management.

(b)   To exercise all other powers necessary to or reasonably connected with the Company's business which may be legally exercised by limited liability companies under the Georgia Act.

(c)   To engage in all activities necessary, customary, convenient, or incident to any of the foregoing.

3.02.   Tax Characterization.  The Members acknowledge that it is the intention of the Company to be treated as a "partnership" for federal and all relevant state tax purposes and the Company shall make all available elections to be so treated.

- 9 -

Para.1,5-000016

## ARTICLE IV

## NAMES AND ADDRESSES OF MEMBERS

The names and addresses of the Member is as follows:

| Name | Address |
|------|---------|
| Kimberly S Swindall | 3137 St. Ives Country Club Pkwy, Duluth, GA 30097 |

## ARTICLE V

## MANAGEMENT

5.01.   Management. The business and affairs of the Company shall be managed by its Manager. Except for situations where the approval of the Member is expressly required by this Agreement or by nonwaivable provisions of applicable law, the Manager shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business. Notwithstanding O.C.G.A. §14-11-308(a)(2), at any time when there is more than one Manager, any one Manager may take any action permitted to be taken by the Managers.

5.02.   Certain Powers of Managers. Without limiting the generality of Section 5.01, the Manager shall have the absolute power and authority on behalf of the Company:

(a)   To acquire any property within or outside of the ordinary course of business from any Person as the Manager may determine. The fact that a Manager is directly or indirectly affiliated or connected with any such Person shall not prohibit the Manager from dealing with that Person.

(b)   To borrow money for the Company from banks, other lending institutions, the Members, or affiliates of the Members on such terms as the Managers deem appropriate. No debt shall be contracted or liability incurred by or on behalf of the Company except by the Manager, or to the extent permitted under the Georgia Act, by agents or employees of the Company expressly authorized to contract such debt or incur such liability by the Manager.

(c)   To purchase liability and other insurance to protect the Company's property and business.

(d)   To hold and own any Company real and/or personal properties in the name of the Company and sell or dispose of the Company's assets.

- 10 -

Para 1.3.000017

(e)     To invest any Company funds temporarily (by way of example but not limitation) in time deposits, short-term governmental obligations, commercial paper or other investments.

(f)     To execute on behalf of the Company all instruments and documents, including, without limitation, checks; drafts; notes and other negotiable instruments; mortgages, security deeds or deeds of trust; security agreements; financing statements; documents providing for the acquisition, mortgage or disposition of the Company's property; deeds; assignments; bills of sale; leases; partnership agreements, operating agreements of other limited liability companies; and any other instruments or documents necessary, in the opinion of the Managers, to the business of the Company.

(g)     To employ accountants, legal counsel, managing agents or other experts to perform services for the Company and to compensate them from Company funds.

(h)     To enter into any and all other agreements on behalf of the Company, with any other Person for any purpose, in such forms as the Managers may approve.

(i)     To do and perform all other acts as may be necessary or appropriate of the conduct of the Company's business.

(j)     Enter into any contracts or agreements with affiliated or related parties or pay monies to same or otherwise engage in self dealing;

(k)     Enter into contracts which would commit or obligate the Company to expend Company funds;

(l)     File bankruptcy for the Company, settle or compromise any claim of the Company, or confess a judgment against the Company;

(m)     Make any loans of Company funds;

(n)     Cause the Company to be a party to a merger, or an exchange or acquisition of the type described in section § 14-11-901 of the Georgia Act;

(p)     Obtain any loan for the Company or secure any loan by Company assets.

Unless authorized to do so by this Operating Agreement or by the Managers, no attorney-in-fact, employee or other agent of the Company shall have any power or authority to bind the Company in any way, to pledge its credit or to render it liable pecuniary for any purpose.

5.03.   Liability for Certain Acts.  A Manager is not liable to the Company, or any Member for any action taken in managing the business or affairs of the Company except for loss or damage resulting from willful misconduct.  No Manager has guaranteed nor shall have any obligation with respect to the return of a Member's Capital Contribution or profits from the operation of the Company.  No Manager shall be liable to the Company or to any Member for any loss or damage

Para.1.8-000918

sustained by the Company or any Member. Each Manager shall be entitled to rely on information, opinions, reports or statements, including, but not limited to, financial statements or other financial data prepared or presented in accordance with the provisions of O.C.G.A. §14-11-305.

5.04.   Managers Have No Exclusive Duty to Company.   The Manager shall not be required to manage the Company as its sole and exclusive function and it may have other business interests and may engage in other activities in addition to those relating to the Company. The Manager shall incur no liability to the Company or to any of the Members as a result of engaging in any other business or venture.

5.05.   Bank Accounts.   The Manager may from time to time open bank accounts in the name of the Company, and the Manager shall be the sole signatory thereon, unless the Manager determines otherwise. All funds of the Company shall be deposited in its name in an account or accounts as shall be designated from time to time by the Manager. All funds of the Company shall be used solely for the business of the Company. All withdrawals from the Company bank accounts shall be made only upon checks signed by a Manager or by such other persons as the Manager may designate from time to time.

5.06.   Indemnity of the Manager, Employees and Other Agents.   To the fullest extent permitted under O.C.G.A. §14-11-306, the Company shall indemnify the Manager and make advances for expenses to it with respect to its duties (including fiduciary duties) and liabilities arising out of or connected with its capacity as Manager. Notwithstanding the foregoing, no Manager shall be entitled to indemnification for willful misconduct. The Company may indemnify its employees and other agents who are not Managers (if any) to the fullest extent permitted by law with respect to their duties and liabilities arising out of or connected with their capacities as employees of the Company.

5.07.   Term.   Each Manager shall serve at the discretion of the Members. Unless otherwise provided by a vote or written consent of a Controlling Interest, such Manager's term shall be for the remaining term of the Company.

5.08.   Resignation.   Any Manager of the Company may resign at any time by giving written notice to the Members of the Company. The resignation of any Manager shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective. The resignation of a Manager who also is a Member shall not affect the Manager's rights as a Member and shall not constitute a withdrawal of a Member.

5.09.   Removal.   All or any lesser number of Managers may be removed at any time, with or without cause, by a vote or written consent of a Controlling Interest. The removal of a Manager who also is a Member shall not affect the Manager's rights as a Member and shall not constitute a withdrawal of a Member.

5.10.   Vacancies.   Any vacancy occurring for any reason in the number of Managers of the Company may be filled by the vote or written consent of a Controlling Interest of the Members. A Manager elected to fill a vacancy shall hold office until the expiration of his term and until his

- 12 -



Para.1,5-000019

successor shall be elected and shall qualify or until his earlier death, resignation or removal.  If for any reason at any time there is not at least one Manager, then each of the Members shall automatically become a Manager until such time as the Members, by the vote or written consent of a Controlling Interest, have designated one or more Managers.

    5.11.    [Intentionally Deleted]

    5.12.    Single Purpose Entity.  So long as any portion of the Loan remains unpaid, Member has not and shall not permit the Company to:  (a) engage in any business or activity other than the ownership, operation and maintenance of the Property, and activities incidental thereto; (b) acquire or own any material assets other than (i) the Property, and (ii) such incidental personal property as may be necessary for the operation of the Property; (c) merge into or consolidate with any person or entity or dissolve, terminate or liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure, without in each case Lender's consent; (d) fail to preserve its existence as an entity duly organized, validly existing and in good standing (if applicable) under the laws of the jurisdiction of its organization or formation, or without the prior written consent of Lender, amend, modify, terminate or fail to comply with the provisions of Company's articles of organization, operating agreement, or similar organizational documents, as the case may be, as same may be further amended or supplemented, if such amendment, modification, termination or failure to comply would adversely affect the ability of Company to perform its obligations hereunder, under the Loan Documents; (e) own any subsidiary or make any investment in, any person or entity without the consent of Lender; (f) commingle its assets with the assets of any of its Members, Springing Member, managing members, affiliates, principals or of any other person or entity; (g) incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than the Loan, except with respect to trade payables in the ordinary course of its business of owning and operating the Property, provided that such debt is paid when due; (h) fail to maintain its records, books of account and bank accounts separate and apart from those of the Members, Springing Member, managing members, principals and affiliates of Company, the affiliates of a general partner or managing member of Company, and any other person or entity; (i) enter into any contract or agreement with any Member, Springing Member, managing member, principal or affiliate of Company, Guarantor or Indemnitor (as defined in the Loan Documents), or any Member, Springing Member, managing member, principal or affiliate thereof, except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any Member, Springing Member, managing member, principal or affiliate of Company, Guarantor or Indemnitor, or any Member, Springing Member, managing member, principal or affiliate thereof; (j) seek the dissolution of winding up in whole, or in part, of Company; (k) maintain its assets in such a manner that it will be costly or difficult to segregate, ascertain or identify its individual assets from those of any Member, Springing Member, managing member, principal or affiliate of Company, or any Member, Springing Member, managing member, principal or affiliate thereof or any other person; (l) hold itself out to be responsible for the debts of another person; (m) make any loans to any third party; (n) fail either to hold itself out to the public as a legal entity separate and distinct from any other entity or person or to conduct its business solely in its own name in order not (i) to mislead others as to the identity with which such other party is transacting business, or (ii) to suggest that Company is responsible for the debts of any third party (including any Member, Springing

Para.1,5-000020

- 13 -

Member, managing member, principal or affiliate of Company, or any Member, Springing Member, managing member, shareholder, principal or affiliate thereof); (o) fail to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations; or (p) file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any applicable insolvency, bankruptcy, liquidation or reorganization statute, or make an assignment for the benefit of creditors. Without limitation to the foregoing provisions of this Section 5.12, Company and the Member will not amend and will not permit any other person or entity to amend the provisions of Article V of Company's Operating Agreement.

## ARTICLE VI

### RIGHTS AND OBLIGATIONS OF MEMBERS; MEETINGS

6.01.  No Liability to Third Parties.  Each Member's liability to third parties shall be limited as set forth in the Georgia Act.

6.02.  Liability for Certain Acts.  No Member has guaranteed nor shall any Member have any obligation with respect to the return of a Member's Capital Contributions or profits from the operation of the Company.  Notwithstanding O.C.G.A. §14-11-305(1) or any contrary rule of law or equity, no Member shall be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member except loss or damage resulting from intentional misconduct or knowing violation of law or a transaction for which such Member received a personal benefit in violation or breach of the provisions of this Agreement.  Each Member shall be entitled to rely on information, opinions, reports or statements, including but not limited to financial statements or other financial data prepared or presented in accordance with the provisions of O.C.G.A. §14-11-305.

6.03.  Indemnity of Members.  To the fullest extent permitted under O.C.G.A. §14-11-306, the Company shall indemnify the Members and make advances for expenses to them with respect to their duties (including fiduciary duties) and liabilities arising out of or connected with their respective capacities as Members.  Notwithstanding the foregoing, no Member shall be entitled to indemnification for willful misconduct.

6.04.  List of Members.  Upon written request of any Member, the Managers shall provide a list showing the names, addresses and Membership Interest of all Members and Managers and the other information required by O.C.G.A. §14-11-313 and maintained pursuant to Section 10.02.

6.05.  Priority and Return of Capital.  Except as may be expressly provided in Sections 8.01 and 13.04, no Member shall have priority over any other Member, either as to the return of Capital Contributions or as to Net Profits, Net Losses or distributions.  This Section shall not apply to loans (as distinguished from Capital Contributions) which a Member has made to the Company.



Para.1,5-000021

- 14 -

6.06.   Members Have No Exclusive Duty to Company.  The Members may have other business interests and may engage in other activities in addition to those relating to the Company.  Neither the Company nor any Member shall have any right, by virtue of this Agreement, to share or participate in such other investments or activities of the Member or to the income or proceeds derived therefrom.  No Member shall incur any liability to the Company or to any or the Members as a result of engaging in any other business or venture.

6.07.   Loans to Company.  No Member shall be required to make any loans to the Company.  To the extent approved by Members holding a Controlling Interest, the Members may be permitted to make loans to the Company if and to the extent they so desire and the Company requires such funds.  In such event, the Members shall have the opportunity (but not the obligation) to participate in such Member loans on a pro rata basis in accordance with their Ownership Interests, and the security (if any) for such Member loans shall be as nearly equal as possible among the lending Members based upon the respective amounts lent by each Member.  The making of any loan by a Member shall not create any additional fiduciary duty as between the Member and the Company and shall not otherwise restrict the right to foreclose, or restrict any other legal remedies which may be exercised by the Member as may be provided to a third party creditor under law.

6.08.   No Annual or Other Meetings Required.  The provisions of O.C.G.A. §14-11-310 shall not apply to the Company.  No annual or other meetings of the Members shall be required, but the Members may meet from time to time as they desire in accordance with such procedures (if any) as the Managers may from time to time prescribe.

6.09.   No Requirements of Minutes.  Although the Company may maintain books of minutes or other records of proceedings of the Company, neither the Managers, the Members nor the Company shall be required to maintain minutes of the Company or other records of its proceedings.

## ARTICLE VII

## CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS

7.01   Member's Capital Contributions.   Swindall has contributed approximately $1,600,000.00 as her Initial Capital Contribution by assuming an existing first mortgage of the LLC now owed by the LLC.

7.02   Additional Contributions of Necessary Funds.

(a)   If, at any time and from time to time, the Manager shall determine that the Company requires Necessary Funds, then each Member shall make an additional Capital Contribution in the amount of such Member's pro rata share of the Necessary Funds, based on such Member's Ownership Interest in the Company at such time.  The Manager shall give written notice to the members of the need for Necessary Funds.  Each Member shall contribute its pro rata share



Para 1 5000022

of Necessary Funds within fifteen (15) days after having received written notice thereof from the Manager.

(b)     As used in this Section 7.02, the term "Necessary Funds" means any and all funds needed by the Company as determined in accordance with Section 7.02(a) which are in excess of the Company's net operating revenues and reserves for one or more of the following purposes: (i) to pay the costs and expenses of the development, maintenance, repair, management, holding and/or leasing the Project; (ii) to pay the costs of performing the Company's agreements under any leases, contracts, agreements, commitments or other instruments to which the Company is or shall become a party or whereby it or its assets are or shall become bound (other than mortgage loans); (iii) to pay, when due, real estate and other taxes and any and all governmental assessments affecting the Project and insurance premiums for the Project; (iv) to comply with all legal requirements and insurance requirements now or hereafter applicable to the Project and the operation and management thereof; (v) to restore the Project in the event of a fire or other casualty, if a determination is made by the Members to perform such restoration or if the Company is contractually obligated to restore such damage; (vi) to pay, when due, amounts owed by the Company to the Company's respective trade and other creditors; (vii) to fund any item set forth on the Company's then applicable budgets, including reserves; and (viii) to pay any and all other Company liabilities, including, without limit thereto, debt service on third party indebtedness owed by the Company and secured by Company assets, or the Project. Necessary Funds shall not include any amounts that would increase Reserves over $100,000.00 after such capital contribution.

## ARTICLE VIII

### DISTRIBUTIONS TO MEMBERS

8.01   Distributions.

(a)     All distributions of Distributable Cash shall be made upon the prior approval of the Manager (and in any event shall be made not less frequently than quarterly (commencing on July 31, 2010) to the extent of Distributable Cash) but only to the extent allowed under the Loan and any other third party indebtedness owed by the Company, in the following order of priority:

(i)     First, to the Members, pro rata, in proportion to and to the extent of their Unreturned Additional Capital Contributions of the Members.

(ii)     Second, to the Members, pro rata, in proportion to and to the extent of their Unreturned Capital Contributions.

(iii)     Finally, to the Members, pro rata, based upon their respective Ownership Interests at the time of such distribution.

8.02   Amounts Withheld. The Company is authorized to withhold from payments and distributions, with respect to allocations to the Members, and to pay over to any federal, state and


Para.1,5-000023

local government or any foreign government, any amounts required to be so withheld pursuant to the Code or any provisions of any other federal, state or local law or any foreign law, and shall allocate such amounts to the Members with respect to which such amount was withheld.

8.03    Limitation Upon Distributions.    No distribution shall be made to Members if prohibited by O.C.G.A. §14-11-407.

## ARTICLE IX

## ALLOCATIONS

9.01.    Allocation of Net Profits and Net Losses.    The Profits and Losses of the Company attributable to each Allocation Year shall be determined as though the books of the Company were closed as of the end of such Allocation Year. The rules of this Section 9.01 shall apply except as provided in Section 9.04 and 9.05 and subject to the intention set forth in Section 9.03.

(a)    For each Allocation Year, Profits or Losses (other than items allocated pursuant to Section 9.04) shall be allocated, insofar as possible, so that, following all allocations pursuant to Section 9.04 for such Allocation Year and the allocation pursuant to this Section 9.01 which is here being described, each Member's Capital Account balance shall be equal to the result (be it positive, negative or zero) of subtracting (i) the sum of (x) such Member's share of Company Minimum Gain and (y) such Member's share of Member Minimum Gain, from (ii) such Member's Target Amount (as defined below) at the end of such Allocation Year.

(b)    Except to the extent otherwise required by applicable law:    (i) in applying subsection (a), to the extent possible each item of income, gain, loss and deduction shall be allocated among the Members in the same proportions as each other such item, and, to the extent permitted by law, each item of credit shall be allocated in such proportions; and (ii) to the extent necessary to produce the result prescribed by subsection (a), items of income and gain shall be allocated separately from items of loss and deduction, in which event the proportions applicable to items of income and gain shall (to the extent permitted by law) be applicable to items of credit.

(c)    If, for any Allocation Year, (i) clause (b)(ii) does not apply and (ii) the aggregate of all items of income, gain, loss and deduction (other than those to be allocated pursuant to Section 9.04) is zero, then, except to the extent otherwise required by applicable law, all such items, and (to the extent permitted by law) all items of credit, shall be allocated among all Members in proportion to their respective Economic Interests as in effect throughout such Allocation Year.

(d)    For these purposes, the "Target Amount" of a Member at the end of any Allocation Year means the amount which such Member would then be entitled to receive if, immediately following such Allocation Year: (i) all of the assets of the Company were sold for cash equal to their respective book values (or, in the case of assets subject to liabilities for which the creditor's right is limited to assets of the Company, the amounts of such liabilities, if greater than the aggregate book values of such assets); and (ii) the proceeds of such sale were applied to pay all debts of the Company with the balance distributed as provided in Section 8.01, provided, however,

- 17 -

Para.1.5-000024

that if the sale described in clause (i) would not generate proceeds sufficient to pay all debts of the Company, the Members shall be considered entitled in the aggregate (and as among them in proportion to their respective Ownership Percentages as in effect throughout such Allocation Year) to receive, pursuant to Section 8.01, a negative amount equal to the excess of such debts over such proceeds.

9.02.    Limitation on Loss Allocations.    Notwithstanding anything in this Operating Agreement to the contrary, no loss or item of deduction shall be allocated to a Member if such allocation would cause such Member to have an Adjusted Capital Account Deficit as of the last day of the Allocation Year or other period to which such allocation relates. Any amounts not allocated to a Member pursuant to the limitations set forth in this paragraph shall be allocated to the other Members to the extent possible without violating the limitations set forth in this paragraph, and any amounts remaining to be allocated shall be allocated among such other Members in proportion to their Economic Interests.

9.03.    Intention and Construction of Allocations.    It is the intention of the Members to allocate Profits and Losses in such a manner as to cause each Member's Capital Account (as adjusted by the adjustments noted in clauses (a) and (b) of the definition of "Adjusted Capital Account Deficit") to always equal the amount of cash such Member would be entitled to receive if the Company sold its assets for their respective book values and, after satisfying all Company liabilities, the proceeds from such sale, as well as all other funds of the Company, were then distributed to the Members pursuant to Section 8.01. These provisions shall be so interpreted as necessary to accomplish such result.

9.04.    Special Allocations.    The following special allocations shall be made in the following order:

(a)    Minimum Gain Chargeback. Except as otherwise provided in Regulations Section 1.704-2(f), and notwithstanding any other provision of this Article IX, if there is a net decrease in Company Minimum Gain during any Company Allocation Year, each Member shall be specially allocated items of Company income and gain for that Allocation Year (and, if necessary subsequent Allocation Years) in an amount equal to such Member's share of the net decrease in Company Minimum Gain, determined in accordance with Regulations Section 1.704-2(g). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto. The items to be so allocated shall be determined in accordance with Regulations Sections 1.704-2(f)(6) and 1.704-2(j)(2). This Section 9.04(a) is intended to comply with the Minimum Gain Chargeback requirement in Regulations Section 1.704-2(f) and shall be interpreted consistently therewith.

(b)    Member Minimum Gain Chargeback. Except as otherwise provided in Section 1.704-2(i)(4) of the Regulations, and notwithstanding any other provisions of this Article IX, if there is a net decrease in Member Nonrecourse Debt Minimum Gain during a Allocation Year, each Member who has a share of the Member Nonrecourse Debt Minimum Gain attributable to such Member Nonrecourse Debt, determined in accordance with Section 1.704-2(i)(5) of the Regulations, shall be specially allocated items of Company income and gain for such Allocation Year (and, if necessary, subsequent Allocation Years) in an amount equal to such Member's share



Para.1,5 000025

of the net decrease in Company Nonrecourse Debt Minimum Gain attributable to such Member Nonrecourse Debt, determined in accordance with Regulations Sections 1.704-2(i)(4). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto. The items to be so allocated shall be determined in accordance with Regulations Sections 1.704-2(i)(4) and 1.704-2(j)(2). This Section 9.04(b) is intended to comply with the Minimum Gain Chargeback requirement of Regulations Section 1.704-2(i)(4), and shall be interpreted consistently therewith.

(c) Qualified Income Offset. In the event any Member unexpectedly receives any adjustments, allocations, or distributions described in Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), or 1.704-1(b)(2)(ii)(d)(6) of the Regulations, items of Company income and gain shall be specially allocated to each such Member in an amount and manner sufficient to eliminate, to the extent required by the Regulations, the Adjusted Capital Account Deficit of such Member as quickly as possible, provided that an allocation pursuant to this Section 9.04(c) shall be made only if and to the extent that such Member would have an Adjusted Capital Account Deficit after all other allocations provided for in this Article IX have been tentatively made as if this Section 9.04(c) were not in the Agreement.

(d) Gross Income Allocation. In the event any Member has an Adjusted Capital Account Deficit at the end of any Allocation Year, each such Member shall be specially allocated items of Company income and gain in the amount of such excess as quickly as possible, provided that an allocation pursuant to this Section 9.04(d) shall be made only if and to the extent that such Member would have a deficit Capital Account in excess of such sum after all other allocations provided for in this Article IX have been made as if Section 9.04(c) and this Section 9.04(d) were not in the Agreement.

(e) Member Nonrecourse Deductions. Any Member Nonrecourse Deductions for any Allocation Year or other period shall be specially allocated to the Member who bears the economic risk of loss with respect to the Member Nonrecourse Debt to which such Member Nonrecourse Deductions are attributable in accordance with Regulations Sections 1.704-2(i)(1).

(f) Section 754 Adjustments. To the extent an adjustment to the adjusted tax basis of any Company asset pursuant to Code Section 734(b) or Code Section 743(b) is required, pursuant to Regulations Sections 1.704-1(b)(2)(iv)(m)(2) or (4), to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to the Members in accordance with their interest in the Company in the event that Regulations Section 1.704-1(b)(2)(iv)(m)(2) applies, or to the Member to whom such distribution was made in the event that Regulations Section 1.704-1(b)(2)(iv)(m)(4) applies.

(g) Nonrecourse Deductions. Nonrecourse Deductions for any year or other period shall be allocated to the Members, pro rata, based upon their respective Ownership Interests as set forth herein.

(h) Allocations Relating to Taxable Issuance of Membership Interest. Any income, gain, loss or deduction realized as a direct or indirect result of the issuance of an interest by

Para.1,5-000026

the Company to a Member (the "Issuance Items") shall be allocated among the Members so that, to the extent possible, the net amount of such Issuance Items, together will all other allocations under this Agreement to each Member, shall be equal to the net amount that would have been allocated to each such Member if the Issuance Items had not been realized.

9.05.   Other Allocation Rules.

(a)   For purposes of determining the Profits, Losses, or any other items allocable to any period, Profits, Losses, and any such other items shall be determined on a daily, monthly, or other basis, as determined by the Manager using any permissible method under Code Section 706 and the Regulations thereunder.

(b)   All allocations to the Members pursuant to this Article IX shall, except as otherwise provided, be divided among them in proportion to the Ownership Interests held by each.

(c)   Except as otherwise provided in this Agreement, all items of Company income, gain, loss, deduction, credit and any other allocations not otherwise provided for shall be divided among the Members in the same proportions as they share Profits or Losses, as the case may be, for the year.

(d)   The Members are aware of the income tax consequences of the allocations made by this Article IX and hereby agree to be bound by the provisions of this Article IX in reporting their shares of Company income and loss for income tax purposes.

(e)   To the extent permitted by Sections 1.704-2(h)(3) of the Regulations, the Manager shall endeavor to treat distributions of Distributable Cash as having been made from the proceeds of a Nonrecourse Liability or a Member Nonrecourse Debt only to the extent that such distributions would cause or increase an Adjusted Capital Account Deficit for any Member.

9.06.   Tax Allocations; Code Section 704(c).

(a)   Except as otherwise provided in this Section 9.06, each item of income, gain, loss and deduction of the Company for federal income tax purposes shall be allocated among the Members in the same manner as such items are allocated for book purposes under this Article IX. In accordance with Code Section 704(c) and the Regulations thereunder, income, gain, loss, and deduction with respect to any Property contributed to the capital of the Company shall, solely for tax purposes, be allocated among the Members so as to take account of any variation between the adjusted basis of such Property to the Company for federal income tax purposes and its initial Gross Asset Value (computed in accordance with the definition of Gross Asset Value) using the allocation method determined by the Manager.

(b)   In the event the Gross Asset Value of any Company asset is adjusted pursuant to subparagraph (b) of the definition of Gross Asset Value, subsequent allocations of income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Gross Asset Value in the same manner as under Code Section 704(c) and the Regulations thereunder.

- 20 -

Para.1.5-000027

(c)     Any elections or other decisions relating to such allocations shall be made by the Manager in any manner that reasonably reflects the purpose and intention of this Agreement, provided that any items of loss or deduction attributable to property contributed by a Member shall, to the extent of an amount equal to the excess of (A) the federal income tax basis of such property at the time of its contribution over (B) the Gross Asset Value of such property at such time, be allocated in its entirety to such contributing Member and the tax basis of such property for purposes of computing the amounts of all items allocated to any other Member (including a transferee of the contributing Member) shall be equal to its Gross Asset Value upon its contribution to the Company. Allocations pursuant to this Section 9.06 are solely for purposes of federal, state, and local taxes and shall not affect, or in any way be taken into account in computing, any Member's Capital Account or share of Profits, Losses, other items, or distributions pursuant to any provision of this Agreement.

## ARTICLE X

## BOOKS AND RECORDS

10.01. Accounting Period. The Company's accounting period shall be the calendar year.

10.02. Records, Audits and Reports. At the expense of the Company, the Manager shall maintain records and accounts of all operations and expenditures of the Company. The Company shall keep at its principal place of business the following records:

(a)     A current list of the full name and last known address of each Member;

(b)     Copies of records to enable a Member to determine the relative voting rights, if any;

(c)     A copy of the Articles of Organization of the Company and all amendments thereto;

(d)     Copies of the Company's federal, state, and local income tax returns and reports, if any, for the three most recent years;

(e)     Copies of the Company's written Operating Agreement, together with any amendments thereto;

(f)     Copies of any financial statements of the Company for the three most recent years.

10.03. Tax Returns. At the expense of the Company, the Manager shall cause the preparation and timely filing of all tax returns required to be filed by the Company pursuant to the Code and all other tax returns deemed necessary and required in each jurisdiction in which the Company does business. Copies of such returns, or pertinent information therefrom, shall be furnished to the Members within a reasonable time after the end of the Company's fiscal year.

Para.1,5-000028

## ARTICLE XI

## TRANSFERABILITY

11.01.  General.  Without the prior written approval of all Members, no Member shall have the right to:

(a)   sell, assign, pledge, hypothecate, transfer, exchange or otherwise transfer for consideration (collectively, "sell"), or

(b)   gift, bequeath or otherwise transfer for no consideration (whether or not by operation of law), all or part of his or her Membership Interest, Economic Interest or Ownership Interest.

11.02.  Transferee Not Member in Absence of Consent.

(a)   Notwithstanding anything contained herein to the contrary, if all Members do not approve the proposed sale or gift of the Transferring Member's Membership Interest or Ownership Interest to a transferee or donee which is not a Member immediately prior to the sale or gift, then the proposed transferee or donee shall have no right to participate in the management of the business and affairs of the Company or to become a Member. Notwithstanding Section 11.01 (b) hereinabove, the transferee or donee shall merely be the owner of an Economic Interest. No transfer of a Member's interest in the Company (including any transfer of the Economic Interest or any other transfer which has not been approved by a Controlling Interest of the Members) shall be effective unless and until written notice (including the name and address of the proposed, transferee or donee and the date of such transfer) has been provided to the Company and the non-transferring Member(s).

(b)   Upon and contemporaneously with any sale or gift of a Transferring Member's Economic Interest in the Company which does not at the same time transfer the balance of the rights associated with the Economic Interest transferred by the Transferring Member (including, without limitation, the rights of the Transferring Member to participate in the management of the business and affairs of the Company), the Company shall purchase from the Transferring Member, and the Transferring Member shall sell to the Company for a purchase price of $100.00, all remaining rights and Membership Interest retained by the Transferring Member which immediately prior to such sale or gift were associated with the transferred Economic Interest.

11.03.  Successors as to Economic Rights.  References in this Operating Agreement to Members shall also be deemed to constitute a reference to Economic Interest owners where the provision relates to economic rights and obligations. By way of illustration and not limitation, such provisions would include those regarding Capital Accounts, distributions, allocations and contributions. A transferee shall succeed to the transferor's Capital Contributions and Capital Account to the extent related to the Economic Interest transferred, regardless of whether such transferee becomes a Member.

Para.1,5-000020

11.04  Springing Member.  No Springing Member shall be entitled or authorized, and no Springing Member shall receive any economic interest or Membership Interest in the Company. Upon the occurrence of any event that causes the last remaining or sole Member to cease to be a Member of the Company (other than (i) upon an assignment by the Member of all of its Membership Interest in the Company and the admission of the transferee as a Member, or (ii) the resignation of the Member and the admission of an additional Member of the Company), the Springing Member shall, without any action of any Person and simultaneously with the last remaining or sole Member ceasing to be a Member of the Company, automatically be admitted to the Company as a Member and shall continue the Company without dissolution; *provided, however,* the Springing Member shall automatically cease to be a Member of the Company upon the admission to the Company of a substitute Member. No Member or Springing Member may resign from the Company or transfer its rights as a Member or a Springing Member except as provided in Article XI hereof.

11.05  Springing Member Rights.  The Springing Member shall have no interest in the profits, losses and capital of the Company and have no right to receive any distributions of Company assets in its capacity as a Springing Member. A Springing Member, in its capacity as a Springing Member, may not bind the Company except as herein expressly authorized. Except as required by any mandatory provisions of the Georgia Act, the Springing Member, in its capacity as a Springing Member, shall have no right to vote on, approve or otherwise consent to any action by, or matter relating to, the Company, including, without limitation, the merger, consolidation or conversion of the Company.

## ARTICLE XII

## ADDITIONAL MEMBERS

From the date of the formation of the Company, any Person or Entity acceptable to the a Controlling Interest of the Members may become a Member of this Company either by the issuance by the Company of Membership Interests for such consideration as the Members by a Controlling Interest of the Members shall determine, or as a transferee of a Member's Membership Interest or any portion thereof, subject to the terms and conditions of this Operating Agreement. No new Members shall be entitled to any retroactive allocation of losses, income or expense deductions incurred by the Company. The Manager may, at its option, at the time a Member is admitted, close the Company books (as though the Company's tax year had ended) or make pro rata allocations of loss, income and expense deductions to a new Member for that portion of the Company's tax year in which a Member was admitted in accordance with the provisions of 706(d) of the Code and the Treasury Regulations promulgated thereunder.

Para.1,5-000090

## ARTICLE XIII

## DISSOCIATION, DISSOLUTION AND TERMINATION

13.01. Dissociation.

(a)    Notwithstanding anything to the contrary contained in O.C.G.A. §14-11-601, a Member shall cease to be a member of the Company only upon the occurrence of one of the following events:

(i)    the Member assigns all of his Membership Interest or Economic Interest in accordance with Article 11 herein;

(ii)    the Member's entire Membership Interest in the Company is purchased or redeemed by the Company; or

(iii)    the Member dies (in such case the estate or the heirs shall become own an Economic Interest).

(b)    Notwithstanding O.C.G.A. §14-11-601(c), except as otherwise expressly permitted in this Agreement, a Member shall not withdraw from the Company or take any other action which causes such Member to withdraw from the Company. A Member who withdraws (a "Withdrawing Member") shall not be entitled to receive any distributions to which such Member would not have been entitled had such Member remained a Member, and such distributions shall be distributable to such Member only at the time (if any) such distributions would have been made had the Withdrawing Member remained a Member.

13.02. Dissolution. Notwithstanding anything to the contrary contained in O.C.G.A. §14-11-602, the Company shall be dissolved only upon the occurrence of one or more of the following events:

(a)    a Controlling Interest of the Members' written agreement to dissolve the Company;

(b)    there is an administrative or judicial decree of dissolution; or

(c)    the sale of all of the assets of the Company.

13.03. Effect of Dissolution. Upon dissolution, the Company shall cease to carry on its business, except as permitted by O.C.G.A. §14-11-605. Upon dissolution, the Manager shall file a statement of commencement of winding up pursuant of O.C.G.A. §14-11-606 and publish the notice permitted by O.C.G.A. §14-11-608.

13.04. Winding Up, Liquidation and Distribution of Assets.

Para.1,5-0000

(a)    Upon dissolution, an accounting shall be made by the Company's independent accountants of the accounts of the Company and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution. The Manager shall immediately proceed to wind up the affairs of the Company.

(b)    If the Company is dissolved and its affairs are to be wound up, the Manager shall:

(i)    Sell or otherwise liquidate all of the Company's assets as promptly as practicable (except to the extent the Manager may determine to distribute any assets to the Members in kind),

(ii)    Allocate any profit or loss resulting from such sales to the Members in accordance with Article IX hereof,

(iii)    Discharge all liabilities of the Company, including liabilities to Members who are creditors, to the extent otherwise permitted by law, other than liabilities to Members for distributions, and establish such Reserves as may be reasonably necessary to provide for contingent or other liabilities of the Company,

(iv)    Distribute the remaining assets in the following order:

(1)    If any assets of the Company are to be distributed in kind, the net fair market value of such assets as of the date of dissolution shall be determined by independent appraisal or by agreement of the Members. Such assets shall be deemed to have been sold as of the date of dissolution for their fair market value, and the Capital Accounts of the Members shall be adjusted pursuant to the provisions of this Operating Agreement to reflect such deemed sale.

(2)    Distribute the remaining assets to the Members, either in cash or in kind, in accordance with Section 8.01 of this Operating Agreement.

(c)    Notwithstanding anything to the contrary in this Operating Agreement, upon a liquidation within the meaning of Section 1.704-1(b)(2)(ii)(g) of the Treasury Regulations, if any Member has a deficit Capital Account (after giving effect to all contributions, distributions, allocations and other Capital Account adjustments for all taxable years, including the year during which such liquidation occurs), such Member shall have no obligation to make any Capital Contribution, and the negative balance of such Member's Capital Account shall not be considered a debt owed by such Member to the Company or to any other Person for any purpose whatsoever.

(d)    Upon completion of the winding up, liquidation and distribution of the assets, the Company shall be deemed terminated.

(e)    The Members shall comply with any applicable requirements of applicable law pertaining to the winding up of the affairs of the Company and the final distribution of its assets.

Para.1,5-000082

13.05. Certificate of Termination. When all debts, liabilities and obligations have been paid and discharged or adequate provisions have been made therefor and all of the remaining property and assets have been distributed to the Members, a Certificate of Termination may be executed and filed with the Secretary of State of Georgia in accordance with O.C.G.A. §14-11-610.

13.06. Return of Contribution Nonrecourse to Other Members. Except as provided by law or as expressly provided in this Operating Agreement, upon dissolution, each Member shall look solely to the assets of the Company for the return of his or her Capital Contribution. If the Company property remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the cash contribution of one or more Members, such Member or Members shall have no recourse against any other Member.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

14.01. Application of Georgia Law. This Operating Agreement and the application of interpretation hereof, shall be governed exclusively by its terms and by the laws of the State of Georgia, and specifically the Georgia Act.

14.02. No Action for Partition. No Member has any right to maintain any action for partition with respect to the property of the Company.

14.03. Execution of Additional Instruments. Each Member hereby agrees to execute such other and further statements of interest and holdings, designations, powers of attorney and other instruments necessary to comply with any laws, rules or regulations.

14.04. Construction. Whenever the singular number is used in this Operating Agreement and when required by the context, the same shall include the plural and vice versa, and the masculine gender shall include the feminine and neuter genders and vice versa.

14.05. Headings. The headings in this Operating Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Operating Agreement or any provision hereof.

14.06. Waivers. The failure of any party to seek redress for violation of or to insist upon the strict performance of any covenant or condition of this Operating Agreement shall not prevent a subsequent act, which would have originally constituted a violation, from having the effect of an original violation.

14.07. Rights and Remedies Cumulative. The rights and remedies provided by this Operating Agreement are cumulative and use of any one right or remedy by any party shall not preclude or waive the right not to use any or all other remedies. Such rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance or otherwise.



Para.1,5-000033

14.08. <u>Severability</u>. If any provision of this Operating Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Operating Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

14.09. <u>Heirs, Successors and Assigns</u>. Each and all of the covenants, terms, provisions and agreements herein contained shall be binding upon and inure to the benefit of the parties hereto and, to the extent permitted by this Operating Agreement, their respective heirs, legal representatives, successors and assigns.

14.10. <u>Creditors</u>. None of the provisions of this Operating Agreement shall be for the benefit of or enforceable by any creditors of the Company.

14.11. <u>Counterparts</u>. This Operating Agreement may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

14.12. <u>Federal Income Tax Elections</u>. All elections required or permitted to be made by the Company under the Code shall be made by the Managers as determined in its sole discretion.

14.13. <u>Notices</u>. Any and all notices, offers, demands or elections required or permitted to be made under this Agreement ("Notices") shall be in writing, signed by the party giving such Notice, and shall be deemed given and effective (a) when hand-delivered (either in person by the party giving such notice, or by his or her designated agent, or by commercial courier) or (b) on the third (3rd) business day (which term means a day when the United States Postal Service, or its legal successor ("Postal Service") is making regular deliveries of mail on all of its regularly appointed week-day rounds in Atlanta, Georgia) following the day (as evidenced by proof of mailing) upon which such Notice is deposited, postage pre-paid, certified mail, return receipt requested, with the Postal Service, and addressed to the other party at such party's respective address as set forth below, or at such other address as the other party may hereafter designate by Notice.

14.14. <u>Amendments</u>. Any amendment to this Operating Agreement shall be made in writing and signed by all Members.

14.15. <u>Invalidity</u>. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and the Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted. If any particular provision herein is construed to be in conflict with the provisions of the Georgia Act, the Georgia Act shall control and such invalid or unenforceable provisions shall not affect or invalidate the other provisions hereof, and this Agreement shall be construed in all respects as if such conflicting provision were omitted.

14.16. <u>Certification of Non-Foreign Status</u>. In order to comply with §1445 of the Code and the applicable Treasury Regulations thereunder, in the event of the disposition by the Company of a United States real property interest as defined in the Code and Treasury Regulations, each Member shall provide to the Company, an affidavit stating, under penalties of perjury, (a) the Member's address, (b) United States taxpayer identification number, and (c) that the Member is not a foreign



Para.1,5-000034

made on a pro rata basis based upon the amount due each Member.  All Member loans shall be in pari passu with each other.

IN WITNESS WHEREOF, this Agreement has been signed, sealed and delivered as of this 31st day of December, 2008.

MEMBER:

KIMBERLY S SWINDALL

Para.1,5-000035

EXHIBIT "A"

| Member | Units | Ownership Interests |
|---|---|---|
| Kimberly S Swindall | 100 | 100% |

Para.1,5-000036

2(c)

**Greenbriar Discount Mall**
**2975 Headland Drive**
**Atlanta, Georgia 30344**

March 4, 2014

Melissa Roth
Director of Brand Protection - America
Burberry Limited
444 Madison Avenue
New York, New York 10022

### RE: Counterfeit Burberry Merchandise

Dear Ms. Roth:

On behalf of 2925 Properties, LLC d/b/a Greenbriar Discount Mall (GDM), I acknowledge receipt of your letter of February 12, 2014 notifying me that on October 4, 2013, law enforcement agencies executed a search warrant at GDM located at 2975 Headland Drive, Atlanta, Georgia 30311 and found 15 booths offering for sale counterfeit Burberry merchandise and, at that time, 490 counterfeit Burberry items were seized. I further acknowledge that on December 19, 2013, law enforcement agencies returned to GDM and found 3 booths offering for sale counterfeit Burberry merchandise and that two vendors, Azina Zakia Amar and Cheikh Mouhamadou Amar, were arrested for the sale of counterfeit merchandise and 112 counterfeit Burberry items were seized.

Prior to receipt of your letter of February 12, 2014, GDM had already evicted each and every tenant found in either raid to be in possession of any type of counterfeit merchandise, including Burberry items. These tenants were all immediately evicted on the basis of a provision contained in each Lease Agreement between GDM, as Landlord, and each of GDM's tenants. It is important to note that for the two year period immediately prior to the October 4, 2013 event, GBD had contracted with Southeastern Investigations (SI), a private investigation company doing business in the greater Atlanta area, to conduct a minimum of one monthly, on site, unannounced inspection of all GDM tenants to assure that no counterfeit merchandise of any entity with valid United States trademark registrations were possessed, stored, displayed or sold within GDM. As a result of SI's inspections, dozens of tenants have been evicted and counterfeit merchandise seized by GDM at the direction of SI.

The circumstances surrounding GDM's decision to contract with Southeastern Investigations for the aforesaid services are relevant to the issues raised in your letter of February 12, 2014. Specifically, GDM made the decision to hire Southeastern Investigations after receiving a letter similar to the one you sent to GDM, from Coach in January, 2011. After discussing the content of Coach's letter with Tiffany Walden, Coach's counsel, GDM learned from Ms. Walden that Coach had hired Southeastern Investigations to monitor various retail establishments in the greater Atlanta area suspected by Coach to be, either knowingly or unknowingly, allowing the sale of counterfeit merchandise bearing Coach's trademarks. GDM, with Coach's express permission and approval, retained SI to monitor GDM's tenants at 2975 Headland Drive, Atlanta, Georgia 30044 to assure that no counterfeit merchandise of any trademark holders was being displayed, sold and/or stored in GDM.

To reiterate, since GDM retained SI, SI has continuously, without interruption, monitored GDM's tenants from January, 2011 through October, 2013 to assure that all tenants comply with the provision in each GDM Lease Agreement prohibiting the display, sell or storage of any type of counterfeit merchandise displaying any manufacturer's trademarks. During this twenty-two month period, SI has, on several occasions, notified GDM's management that counterfeit merchandise was being displayed, sold and/or stored by a tenant or tenants of GDM and recommended that the tenant's or tenants' Lease Agreement(s) be terminated and the tenant or tenants be forced to immediately vacate the leased space or spaces in question. On each such occasion, GDM has immediately terminated each such tenant's Lease Agreement and forced the tenant to immediately vacate the leased space in particular and GDM's premises in general.

Consequently, until the events of October 4, 2013, GDM reasonably believed that any problems relating to the display, sell or storage of any counterfeit merchandise displaying any manufacturer's trademarks was being proactively and aggressively addressed. That said, given the information set forth in your February 12, 2014 letter, GDM concluded that SI's prophylactic actions were deficient and GDM has independently inspected its tenants' leased premises (booths) and has posted large signs throughout its premises notifying customers and tenants alike of GDM's zero tolerance policy regarding the possession, display or sale of any counterfeit merchandise of any kind. Further, on January 17, 2014, I personally met with Tamara Taylor, a paralegal in the employ of Louis Vuitton, at GDM. During that meeting, I, my husband, and Lawrence Sterling, principal of Sterling Management, the entity that manages GDM at 2975 Headland Drive, Atlanta, Georgia received extensive training relating to identifying counterfeit Louis Vuitton merchandise and establishing more stringent inspection and enforcement procedures.

Additionally, since October 4, 2013, GDM has provided J.D. Cannon, a Homeland Security agent and one of the law enforcement agents present during the events of October 4, 2014 and December 19, 2013, with any and all information requested by him, including, but not limited to, copies of Lease Agreements of tenants evicted during and after the actions of October 4th and December 19th and information pertinent to the tenants set forth in said leases. Most importantly, GDM has notified Agent Cannon that he and his agency has 24/7/365 access to any leased space or any other areas within the premises of GDM to assist GDM in its ongoing efforts to identify and prosecute any GDM tenant or any other persons or entities involved in counterfeiting within the borders of the City of Atlanta or any other geographic areas within the jurisdiction of Homeland Security. In this regard, GDM has repeatedly urged Agent Cannon to expand his agency's investigative efforts to include tracing the shipments of counterfeit merchandise into GDM and other similar entities. In particular, GDM has repeatedly informed Agent Cannon that an undercover sting operation, known only by myself and my husband, within GDM's premises might well achieve results much more far reaching than the counterfeit violations previously described herein.

GDM has also notified Agent Cannon that its efforts to shut down any and all counterfeit activities within its premises now and in the future have been thwarted by his agency's failure to enforce the counterfeiting laws enumerated in your February 12, 2014 letter to GDM. For reasons that I can not fathom, Agent Cannon has refused GDM's offers of cooperation and request to enforce the laws at Old National Discount Mall located at 2660 Godby Road, College Park, Fulton County, Georgia. GDM has repeatedly pointed out to Agent Cannon orally and in writing that GDM's tenants routinely complain about the fact that while GDM has established a zero tolerance policy regarding counterfeit merchandise being stored, displayed or sold within its premises, Old National Discount Mall's tenants, many of whom were previously evicted from

GDM, continue to flagrantly display and sell counterfeit merchandise during the hours Old National Discount Mall is open to the public. These same tenants have also reported that much of that counterfeit merchandise has been smuggled into GDM, despite GDM's zero tolerance policy, by individuals operating out of Old National Discount Mall and surreptitiously delivering and smuggling counterfeit items into GDM's premises during the hours that GDM is open to the public.

In closing, I want to thank you for allowing GDM this opportunity to address the problems set forth in your February 12, 2014 letter and to assure that GDM will continue its efforts to assure that no similar problems arise in the future. Please know that I fully recognize the gravity of the matters set forth in your letter and that I will do whatever I can to address your concerns. My email is kimswin@juno.com and my cell is 404-401-4138, if you would like to contact me directly.

Very truly yours,


Kimberly S. Swindall
Sole Member
2925 Properties, LLC

2(d)

5/15/2014

**✉JUNO** Message Center

Printable Version

**From:** Kim Swindall <kimswing@juno.com>

**To:** T.TAYLOR@ss.xullten.com

**Sent:** Wed, Jan 08, 2014 10:30 PM

**Subject:** Re: Employee Training

---

Dear Tamara,

There will be four people attending the presentation. My husband and I will be in attendance, as will Borne and Lisa Sterling. The Sterlings are the owners of Sterling management and the manage the market. My husband Paul is the overall manager of my properties, and I own the building with another partner as well as own the market.

We will not have a large screen, so it would be perfect if you can bring the power point on paper, that would be perfect.

The actual meeting will take place inside Greenbrier Discount Mall which is located at 2975 Headland Dr, Atlanta, Ga. 30344

My cell is 404-401-4138 if you would like to contact me directly. Thank you for taking the time to educate us. I look forward to meeting you on the 17th.

Best,

Kim Swindall

http://webmail.a.juno.com/webmail/new/PrintsalerSetScreen=printlang=artf=r1000GDC601u0X00000/udnsqhumn0000GDC601hjxXV000000u&rum=F
1/1

2(e)

10:08 AM

10/28/14

Cash Basis

# 2925 Properties, LLC
## Transaction Detail By Account
### December 1, 2010 through September 1, 2014

| Date | Num | Name | Paid Amount |
|------|-----|------|-------------|
| **Rent-CAM** | | | |
| 12/06/2010 | 1201... | First Guaranty Man... | 35,242.01 |
| 01/13/2011 | 1928 | First Guaranty Man... | 35,290.01 |
| 02/07/2011 | 1583 | First Guaranty Man... | 19,933.79 |
| 02/07/2011 | 1925.... | First Guaranty Man... | 10,000.00 |
| 03/07/2011 | 1632 | First Guaranty Man... | 29,933.79 |
| 04/06/2011 | 1665 | First Guaranty Man... | 29,933.79 |
| 05/09/2011 | 1681 | First Guaranty Man. | 29,933.10 |
| 06/05/2011 | 1687 | First Guaranty Man... | 34,687.92 |
| 07/07/2011 | 1733 | First Guaranty Man... | 34,687.92 |
| 07/12/2011 | 1746 | Creighton Plaza LLC | 16,041.00 |
| 08/03/2011 | 1765 | GREENBRIAR MA... | 34,687.92 |
| 09/06/2011 | 1773 | First Guaranty Man... | 31,758.59 |
| 10/05/2011 | 1819 | GREENBRIAR MA... | 34,814.59 |
| 11/07/2011 | 1887 | GREENBRIAR MA... | 34,814.59 |
| 12/05/2011 | 1821 | First Guaranty Man... | 34,814.59 |
| 01/05/2012 | 1923 | Greenbirar Marketpl... | 34,814.59 |
| 02/06/2012 | | Greenbirar Marketpl... | 34,814.59 |
| 03/05/2012 | Count... | Greenbirar Marketpl... | 34,814.59 |
| 04/09/2012 | 2407 | Greenbirar Marketpl... | 34,814.59 |
| 05/07/2012 | 2023 | Greenbirar Marketpl... | 28,458.85 |
| 06/05/2012 | 2048 | Greenbirar Marketpl... | 36,624.88 |
| 07/05/2012 | 2074 | GREENBRIAR MA... | 36,624.88 |
| 08/06/2012 | 2101 | Greenbirar Marketpl... | 32,624.86 |
| 09/05/2012 | 2131 | Greenbirar Marketpl... | 32,624.86 |
| 10/05/2012 | 2153 | Greenbirar Marketpl... | 36,664.98 |
| 11/05/2012 | 2174 | GREENBRIAR MA... | 34,584.77 |
| 12/05/2012 | 2207 | Greenbirar Marketpl . | 34,624.87 |
| 01/05/2013 | 2238 | Greenbirar Marketpl... | 34,624.87 |
| 02/05/2013 | 2224 | GREENBRIAR MA... | 34,624.87 |
| 03/05/2013 | 2274 | Greenbirar Marketpl... | 34,624.87 |
| 04/05/2013 | 2299 | Greenbirar Marketpl... | 34,624.87 |
| 05/07/2013 | 2313 | Greenbirar Marketpl.. | 26,347.75 |
| 06/05/2013 | 2336 | Greenbirar Marketpl.. | 28,811.46 |
| 07/05/2013 | 1005 | Greenbirar Marketpl.. | 33,451.07 |
| 08/05/2013 | 1021 | Greenbirar Marketpl.. | 33,451.07 |
| 09/05/2013 | 1024 | GREENBRIAR MA... | 33,451.07 |
| 10/11/2013 | 1067 | Greenbirar Marketpl.. | 33,451.07 |
| 11/05/2013 | 1001 | GREENBRIAR MA... | 33,451.07 |
| 12/05/2013 | 1102 | Greenbirar Marketpl... | 36,005.57 |
| 12/26/2013 | 1114 | Peachtree RE Partn... | 5,700.00 |
| 01/06/2014 | 1120 | Greenbirar Marketpl... | 36,005.57 |
| 02/05/2014 | 1136 | GREENBRIAR MA... | 36,005.57 |
| 02/14/2014 | 1143 | Peachtree RE Partn... | 5,700.00 |
| 03/05/2014 | 1156 | GREENBRIAR MA.. | 36,005.57 |
| 03/15/2014 | 1161 | Peachtree RE Partn... | 5,700.00 |
| 04/07/2014 | 1169 | GREENBRIAR MA... | 36,005.57 |
| 04/23/2014 | 1177 | Peachtree RE Partn... | 5,700.00 |
| 05/05/2014 | 1185 | Greenbirar Marketpl... | 33,792.30 |
| 05/19/2014 | 1188 | Peachtree RE Partn... | 5,700.00 |
| 06/06/2014 | 1189 | Greenbirar Marketpl... | 35,919.96 |
| 06/18/2014 | 1198 | Peachtree RE Partn... | 5,700.00 |
| 07/07/2014 | 1206 | Greenbirar Marketpl... | 35,919.98 |
| 08/05/2014 | 1213 | Peachtree RE Partn... | 5,700.00 |
| 08/11/2014 | 1217 | Greenbirar Marketpl... | 36,005.57 |
| 08/20/2014 | 1052 | Peachtree RE Partn... | 5,700.00 |
| **Total Rent-CAM** | | | **1,586,844.62** |
| **TOTAL** | | | **1,586,844.62** |

Para.3-000050

10:10 AM

10/28/14

Cash Basis

# 2925 Properties, LLC
## Transaction Detail By Account
### December 1, 2010 through September 1, 2014

| Date | Num | Name | Paid Amount |
|------|-----|------|-------------|
| **Rent-CAM** | | | |
| 12/06/2010 | 1201... | First Guaranty Man... | 35,242.01 |
| 01/13/2011 | 1928 | First Guaranty Man... | 35,290.01 |
| 02/07/2011 | 1583 | First Guaranty Man... | 19,933.79 |
| 02/07/2011 | 1925... | First Guaranty Man... | 10,000.00 |
| 03/07/2011 | 1632 | First Guaranty Man... | 29,933.79 |
| 04/06/2011 | 1665 | First Guaranty Man,.. | 29,933.79 |
| 05/09/2011 | 1681 | First Guaranty Man... | 29,933.10 |
| 06/05/2011 | 1687 | First Guaranty Man... | 34,687.92 |
| 07/07/2011 | 1733 | First Guaranty Man... | 34,687.92 |
| 08/03/2011 | 1765 | GREENBRIAR MA... | 34,687.92 |
| 09/06/2011 | 1773 | First Guaranty Man... | 31,758.59 |
| 10/05/2011 | 1819 | GREENBRIAR MA... | 34,814.59 |
| 11/07/2011 | 1887 | GREENBRIAR MA... | 34,814.59 |
| 12/05/2011 | 1821 | First Guaranty Man... | 34,814.59 |
| 01/05/2012 | 1923 | Greenbirar Marketpl... | 34,814.59 |
| 02/06/2012 | | Greenbirar Marketpl... | 34,814.59 |
| 03/05/2012 | Count... | Greenbirar Marketpl... | 34,814.59 |
| 04/09/2012 | 2407 | Greenbirar Marketpl... | 34,814.59 |
| 05/07/2012 | 2023 | Greenbirar Marketpl... | 28,458.85 |
| 06/05/2012 | 2048 | Greenbirar Marketpl... | 36,624.88 |
| 07/05/2012 | 2074 | GREENBRIAR MA... | 36,624.88 |
| 08/06/2012 | 2101 | Greenbirar Marketpl... | 32,624.86 |
| 09/05/2012 | 2131 | Greenbirar Marketpl... | 32,624.86 |
| 10/05/2012 | 2153 | Greenbirar Marketpl... | 36,664.98 |
| 11/05/2012 | 2174 | GREENBRIAR MA... | 34,584.77 |
| 12/05/2012 | 2207 | Greenbirar Marketpl... | 34,624.87 |
| 01/05/2013 | 2238 | Greenbirar Marketpl... | 34,624.87 |
| 02/05/2013 | 2224 | GREENBRIAR MA... | 34,624.87 |
| 03/05/2013 | 2274 | Greenbirar Marketpl... | 34,624.87 |
| 04/05/2013 | 2299 | Greenbirar Marketpl... | 34,624.87 |
| 05/07/2013 | 2313 | Greenbirar Marketpl... | 26,347.75 |
| 06/05/2013 | 2336 | Greenbirar Marketpl... | 28,811.46 |
| 07/05/2013 | 1005 | Greenbirar Marketpl... | 33,451.07 |
| 08/05/2013 | 1021 | Greenbirar Marketpl... | 33,451.07 |
| 09/05/2013 | 1024 | GREENBRIAR MA... | 33,451.07 |
| 10/11/2013 | 1067 | Greenbirar Marketpl... | 33,451.07 |
| 11/05/2013 | 1001 | GREENBRIAR MA... | 33,451.07 |
| 12/05/2013 | 1102 | Greenbirar Marketpl... | 36,005.57 |
| 01/06/2014 | 1120 | Greenbirar Marketpl... | 36,005.57 |
| 02/05/2014 | 1136 | GREENBRIAR MA... | 36,005.57 |
| 03/05/2014 | 1156 | GREENBRIAR MA... | 36,005.57 |
| 04/07/2014 | 1169 | GREENBRIAR MA... | 36,005.57 |
| 05/05/2014 | 1185 | Greenbirar Marketpl... | 33,792.30 |
| 06/06/2014 | 1189 | Greenbirar Marketpl... | 35,919.96 |
| 07/07/2014 | 1206 | Greenbirar Marketpl... | 35,919.98 |
| 08/11/2014 | 1217 | Greenbirar Marketpl... | 36,005.57 |
| **Total Rent-CAM** | | | 1,525,203.62 |
| | | | |
| **TOTAL** | | | 1,525,203.62 |

*Payments to Partner - Tabus Two, LLC or First Guaranto on behalf of Tabus Tu*

## 2925 Properties, LLC
### Transaction Detail By Account
December 1, 2010 through September 1, 2014

| Date | Num | Name | Paid Amount |
|------|-----|------|-------------|
| **Rent-CAM** | | | |
| **Payment to Partner** | | | |
| 12/06/2010 | 1201... | First Guaranty Man.. | 4,812.40 |
| 01/13/2011 | 9999 | First Guaranty Man... | 4,862.40 |
| 02/07/2011 | 1584 | First Guaranty Man... | 4,812.40 |
| 03/07/2011 | 1630 | First Guaranty Man... | 4,812.40 |
| 04/05/2011 | 1664 | First Guaranty Man... | 4,812.40 |
| 05/05/2011 | 1680 | First Guaranty Man... | 4,812.40 |
| 06/05/2011 | 1688 | First Guaranty Man... | 4,812.40 |
| 07/05/2011 | 1734 | First Guaranty Man... | 4,812.40 |
| 08/05/2011 | 1766 | Tabus Two, LLC | 4,812.40 |
| 09/06/2011 | 1772 | First Guaranty Man... | 4,812.40 |
| 10/05/2011 | 1818 | Tabus Two, LLC | 4,812.40 |
| 11/07/2011 | 1886 | Tabus Two, LLC | 4,812.40 |
| 12/05/2011 | 1875 | First Guaranty Man... | 4,812.40 |
| 01/05/2012 | 1922 | Tabus Two, LLC | 4,812.40 |
| 02/06/2012 | | Tabus Two, LLC | 4,812.40 |
| 04/09/2012 | 2406 | Tabus Two, LLC | 4,812.40 |
| 05/07/2012 | 2022 | Tabus Two, LLC | 4,812.40 |
| 06/05/2012 | 2047 | Tabus Two, LLC | 4,812.40 |
| 07/05/2012 | 2067 | Tabus Two, LLC | 4,812.40 |
| 08/06/2012 | 2104 | Tabus Two, LLC | 4,812.40 |
| 09/05/2012 | 2130 | Tabus Two, LLC | 4,812.40 |
| 10/05/2012 | 2154 | Tabus Two, LLC | 4,812.40 |
| 11/05/2012 | 2175 | Tabus Two, LLC | 4,812.40 |
| 12/05/2012 | 2208 | Tabus Two, LLC | 4,812.40 |
| 01/05/2013 | 2239 | Tabus Two, LLC | 4,812.40 |
| 02/05/2013 | 2223 | Tabus Two, LLC | 4,812.40 |
| 03/05/2013 | 2275 | Tabus Two, LLC | 4,812.40 |
| 04/05/2013 | 2298 | Tabus Two, LLC | 4,812.40 |
| 05/07/2013 | 2314 | Tabus Two, LLC | 4,812.40 |
| 06/05/2013 | 2335 | Tabus Two, LLC | 4,812.40 |
| 07/05/2013 | 1006 | Tabus Two, LLC | 4,812.40 |
| 08/05/2013 | 1022 | Tabus Two, LLC | 4,812.40 |
| 09/05/2013 | 1044 | Tabus Two, LLC | 4,812.40 |
| 10/08/2013 | 1068 | Tabus Two, LLC | 4,812.40 |
| 11/05/2013 | 1002 | Tabus Two, LLC | 4,812.40 |
| 12/05/2013 | 1103 | Tabus Two, LLC | 3,615.78 |
| **Total Payment to Partner** | | | 172,099.78 |
| **Total Rent-CAM** | | | 172,099.78 |
| **TOTAL** | | | 172,099.78 |

2(f)

Corr-000193

9/15/2014

**JUNO Message Center**    Printable Version

From: Albert Ashkouti <albert@gmc.cnet>

To: Pat Swindall <patswindall@juno.com>

Sent: Wed, May 07, 2014 03:25 PM

Subject: FW: Homeland Security

---

Albert M. Ashkouti
Century Springs West
6000 Lake Forrest Dr.
Suite 400
Atlanta, Georgia 30328
(678) 553-4501 (Off)
albert@gmc.net
http://www.heritagecapitalpartners.com/

**From:** Diane Ashkouti [mailto:dashkouti@gmail.com]
**Sent:** Wednesday, May 07, 2014 2:20 PM
**To:** Albert Ashkouti
**Subject:** Fwd: Homeland Security

Sent from my iPhone

Begin forwarded message:

**From:** Dale Russell <Dale.Russell@FOXTV.COM>
**Date:** May 7, 2014 at 2:05:59 PM EDT
**To:** Diane Ashkouti <dashkouti@gmail.com>
**Subject: RE: Homeland Security**

Albert,

Who are the vendors? Where can we find them?  Do you have police records of their raid?

Thanks,

Dale Russell

-----Original Message-----
**From:** Diane Ashkouti [mailto:dashkouti@gmail.com]

http://webmail.juno.com/webmail/new/5?folder=Inbox&command=print&msgListn=000_%2001iJ0cY000003zCXC&msgNum=000_%2001iJ0cY000003zCXc&...   1/2

Corr-000185

5/18/2014

Printable Version

Sent: Friday, April 11, 2014 7:43 AM
To: dale.russell@myfoxatlanta.com
Subject: Homeland Security

We own a shopping center across the street from Greenbriar Mall. My partner operates a discount mall, flea market as part of the shopping center.
Homeland has raided the facility, discount mall, at least twice because of counterfeit merchandise. The owner of the flea market has cooperated with homeland to remove the counterfeit merchandise. By doing so there are several vacancies in the mall.

The tenants in the mall who we're selling counterfeit merchandise have moved out and relocated across the street from the discount mall and are selling their counterfeit merchandise with no repercussions from homeland or any other law enforcement agency

We can not get homeland to stop the other mall from selling counterfeit materials. Homeland is putting my Tennant out of business while letting other flea market in the area sell counterfeit goods without any repercussions.

Is homeland concentrating on putting conservatives out of business while not enforcing the law equally?

Albert M. Ashkouti
Albert@bjmc.net

2(g)



# COACH

January 3, 2011

**Via FedEx and Regular Mail**

Attn: Owner/Manager
Greenbrier Discount Mall
2975 Headland Drive
Atlanta, GA 30331

Re:    **Counterfeiting at Greenbrier Discount Mall**

Dear Sir/Madam:

It has come to our attention that tenants at a mall you operate and/or own are trafficking in counterfeit merchandise by using, storing, and warehousing counterfeit merchandise bearing the federally registered trademarks of Coach, Inc. Specifically, counterfeit merchandise bearing one or more of Coach's trademarks is being sold at Greenbrier Discount Mall, located at 2975 Headland Drive, Atlanta, GA 30331. The Atlanta Police Department, in conjunction with Coach, conducted a criminal enforcement action, seizing counterfeit goods on December 2, 2010 from vendors located within your premises.

The Trademark Counterfeiting Act of 1984 (the "Lanham Act") specifically prohibits the distribution, offering for sale and sale of counterfeit merchandise and makes such activity punishable by a fine of up to $250,000. In addition, Coach can institute a civil action for trademark counterfeiting, trademark infringement and unfair competition seeking permanent injunctive relief and an award of treble damages for willful infringement, counsel fees and costs (15 U.S.C. § 1051 et seq.).

This letter gives you formal notice that the illegal trafficking of counterfeit merchandise bearing one or more of the federally registered trademarks of Coach has been taking place at, 2975 Headland Drive, Atlanta, GA, a mall which you own, by tenants who presently lease and use the premises. If you facilitate the continuation of this conduct by failing to prevent the ongoing criminal enterprise on your property, Coach intends to hold you responsible for all damages and fees incurred as a result.

Under the Lanham Act, Courts have held that landlords may be liable for trademark violations of their tenants if they knew or had reason to know that the trafficking of counterfeit goods was taking place. Furthermore, Courts have held that willful blindness by the landlord would support a finding of liability. See Hard Rock Licensing Corp. v. Concession Services, Inc., 955 F.2d 1143 (7th Cir. 1992), Fonovisa v. Cherry Auction, Inc., No.94-15717 (9th Cir., Jan. 25, 1996), Polo Ralph Lauren Corporation, et al. v. Wen Hao Tang, et al., 855 F. Supp. 648 (S.D.N.Y., 1994).

While Coach is taking direct action against your tenant, including serving them as defendants in a civil law suit and seizing their counterfeit items on December 2, 2010, you, as the owner of the premises are responsible for the illegal use of your premises if you know that such activities are taking place. As you now have knowledge, Coach intends to hold you responsible for damages if you fail to take appropriate action at this location.

We are also asking for your assistance in further identifying your tenant. Please send us a copy of the lease with the tenant at issue, together with any other information you have in this tenant's file that will help us identify and pursue this individual or entity. Such information would include a copy of any applications, photo identification, background check details, corporate documents or anything you may have that will be of assistance.

If you have any questions regarding this matter, please contact me at (212)-946-3220.

Sincerely,

Tiffany Walden
Counsel

2(h)

Greenbriar Discount Mall
2975 Headland Drive
Atlanta, Georgia 30344
(404)346-9498

February 22, 2011

Via Certified & Regular Mail

Tiffany Walden, Counsel
Coach
516 West 34th Street
New York, New York 10001

**Re: Counterfeiting at Greenbriar Discount Mall**

Dear Ms. Walden:

Responding to your letter dated January 3, 2011, I'd like you to know the precise
circumstances that resulted in the December 2010 enforcement action that occurred in
The Mall on December 2, 2010 and referenced in your letter. Specifically, the law
enforcement action referenced in your letter was the result of Mall Management having
proactively alerted the Atlanta Police Department of concerns it had about possible drug
related activity in certain leased spaces contained in The Mall.

More specifically, after several meetings between Mall Management and APD prior to
the December 2, 2010 enforcement action, APD entered The Mall and targeted the
specific leased spaces we had told them were of concern prior to the enforcement action.
While no drugs were found during the December 2 enforcement action, items that are
alleged to be counterfeit were found and confiscated by APD. Pursuant to the terms of
the Lease Agreement between The Mall and the tenants involved in the alleged
contraband sales, all six leases were immediately terminated by The Mall and the spaces
were padlocked on December 2, 2010.

Having learned for the first time with certainty of the counterfeiting problem in The Mall,
Mall Management provided APD with the leases of the tenants arrested on December 2,
2010 and, on December 18, 2010, a Memorandum (See Attached) was distributed to
every tenant leasing space in The Mall and to local APD personnel. A copy of the
December 18, 2010 Memorandum was also hand delivered to APD Chief George N.
Turner personally. In addition to distributing the December 18, 2010 Memorandum, as
described below, Mall Management has already taken other steps to remedy the problem
and intends to take additional more dramatic and innovative steps, as also described
below.

Immediately after receiving Coach's letter dated January 3, 2011, Mall Management required all Coach merchandise to be removed from every leased space in The Mall. Since that time, Mall Management regularly patrols The Mall specifically to look for any violations of the "Coach Ban." To Mall Management's knowledge, there is no Coach merchandise now being marketed or sold in The Mall.

Shortly after the December 2 enforcement action, Mall Management contacted Homeland Security and has been working with the Special Agent assigned to the Atlanta Area. Mall Management has also met with several APD officers specifically assigned to a Task Force that include Homeland Security. The Task Force is designed to address the counterfeiting problem in the Atlanta area. Since December 2, 2010, Mall Management has meet with Homeland Security and APD officicials on numerous occasions and has complied with every request it has made of us. In fact, a second memorandum addressing this issue will be distributed to all tenants this weekend. The purpose of the memorandum will be to inform all tenants marketing any "name brand" merchandise that copies of the tenant/merchant's invoices proving that any name brand merchandise being marketed in The Mall was purchased from a source authorized to sale the name brand(s) in question. In order to allow tenants affected by this new policy a reasonable time to assemble pertinent records, this new policy will not become effective until March 15, 2011.

I hope this letter satisfies Coach that Mall Management is committed to resolving this problem and will gladly follow any additional achievable suggestions you or your company may propose.

Sincerely,


Patrick L. Swindall
Mall Executive Manager

2(i)



**Southeastern Investigations, Inc.**
*3760 Sixes Road, Suite 126, PMB 230*
*Canton, Georgia 30114*
*Telephone 770-314-7127 * Fax: 678-880-3202*

This report is being prepared in anticipation of litigation. The information contained in this report is a confidential communication between Southeastern Investigations and its clients to whom this report was prepared for. Any dissemination or distribution of information or materials contained within this report without the permission of Southeastern Investigations and the client is strictly prohibited.

CASE NAME:     GREENBRIAR DISCOUNT MALL

CASE DATE:     July 16, 2012 through June 29, 2012

Southeastern Investigations Agent conducted two sweeps on the Greenbriar Discount Mall per Mr. Pat Swindall. Mr. Swindall's objective for Southeastern Investigations Agent is to identify booths/vendors in Greenbriar Discount mall offering for sale counterfeit merchandise.

On **July 16, 2012**, Southeastern Investigations Agent met with mall management, Mr. Born Sterling. Mr. Sterling requested their Security Officer escorted our Agent during the sweep in order to give assistance to our Agent if needed. During our sweep, Southeastern Investigations had determined the following booths/vendors were offering for sale counterfeit merchandise.

**Booth:** B-15, Sylla Fashions
Business license #: 148525LGB
**Chanel:** *Sunglasses*
**Christian Dior:** *Sunglasses*
**Coach:** *Hats, sunglasses*
**Gucci:** *Sunglasses*
**Louis Vuitton:** *Hats, wallets, scarves & sunglasses*

Para.16-000005

**Booth:** C-19, Telex Sports
Business License#: 123789LGB
**Christian Dior:** *Belts & Wallets*
**Coach:** *Belts & Wallets*
**Gucci:** *Belts & Wallets*
**Louis Vuitton:** *Belts & Handbags*

**Booth:** C-20
Business License: NOT POSTED
**Louis Vuitton:** *Belts*

**Booth:** A-14, NIB Fashions
Business License: 145795LGB
**Chanel:** *Wallets*
**Coach:** *Wallets & Scarves*
**Gucci:** *Wallets*
**Louis Vuitton:** *Wallets & Scarves*

**Booth:** A-13, Hassoumi Moumouni
Business License #: 154623LGB
**Chanel:** *Handbags*
**Christian Dior:** *Sunglasses*
**Gucci:** *Sunglasses*
**Juicy Couture:** *Jewelry*
**Louis Vuitton:** *Belts, Sunglasses, Wallets & Handbags*
**Tiffany:** *Jewelry*

**Booth:** A-25, AD Mouna Fashions
Business License: 123788LGB
**Chanel:** *Wallets*
**Louis Vuitton:** *Belts, Wallets & Handbags*

On **July 29, 2012**, Southeastern Investigations Agent met with mall management, Mr. Born Sterling. Mr. Sterling requested their Security Officer escorted our Agent during the sweep in order to give assistance to our Agent if needed. During our sweep, Southeastern Investigations had determined the following booths/vendors were offering for sale counterfeit merchandise.

Para.16-000006

**Booth:** D-18, Amadou Aly Kane
Business License: 11362LGB
**Coach:** *Handbags & Wallets*
**Gucci:** *Handbags*
**Louis Vuitton:** *Handbags & wallets*

**Booth:** D-23, Big Mike
Business License: Not Posted
**Chanel:** *Handbags*
**Gucci:** *Handbags*
**Louis Vuitton:** *Handbags*

**Booth:** A-24, MB Fashions
Business License: 147753LGB
**Burberry:** *Handbags*
**Chanel:** *Handbags*
**Coach:** *Handbags & Wallets*
**Gucci:** *Handbags*
**Louis Vuitton:** *Handbags & Wallets*

**Booth:** D-21, Kouraba Fashions
Business License: 153424LGB
**Chanel:** *Handbags*
**Gucci:** *Handbags*
**Louis Vuitton:** *Handbags, wallets & tablet/iPADS*

**Booth:** B-6, Heine Fashions
Business License: Not Posted
**Coach:** *Shoes & wallets*
**Gucci:** *Scarves*
**Louis Vuitton:** *Belts & wallets*

**Booth:** B-17
Business License: Not Posted
**Burberry:** *Scarves*
**Coach:** *Scarves & Shoes*
**Gucci:** *Hats & Shoes*
**Louis Vuitton:** *Shoes*
**Prada:** *Shoes*

3

**Booth:** C-19
Business License: Not Posted
**Coach:** *Wallets*
**Gucci:** *Wallets*
**Louis Vuitton:** *Sunglass cases & Wallets*

**Booth:** D-2
Business License: Not Posted
**Louis Vuitton:** *Handbags*


END OF REPORT

2(j)

Dec. 17, 2012

A-20
CELL PHONE COVERS - LV, CHANEL +
BURBERRY

WATCHES - LV + Rolex
HATS - COACH.
WALLETS - COACH + LV
HANDBAGS - CHANEL, GUCCI + LV
BOOT - COACH + GUCCI

A-24
HANDBAGS - LV
WALLETS - LV
HATS - GUCCI

C-9
BELTS - GUCCI + LV
SHOES - COACH + LV

A-1   BELTS - BURBERRY, LV + GUCCI
KEY CHAIN - LV

A-16 - HANDBAGS - CHANEL
WALLET - LV

A-17   HANDBAGS - LV

Para.16-000009

2(k)

GREENBRIAR MARKETPLACE
P.O. BOX 1930
ATLANTA, GA 30301
Phone: (404)346-9498
Date: 3/20/2013

**FINAL NOTICE**

Dear **Ms. Aliya Dena Thompson,**

On January 28, 2013, 2925 Properties, LLC retained an Expert in Intellectual Properties to
determine if counterfeit merchandise is being offered for sale in the Greenbriar Marketplace.
Your booth, **Booth #** B-3 was determined to be offering for sale counterfeit merchandise. As a
result of your failure to comply with the terms and conditions set forth in your Lease Rental
Agreement including the laws of the state of Georgia, code section 10-1-454, I am hereby
informing you that if your booth is observed selling any counterfeit merchandise hereafter from
the date set above, your lease agreement with the Greenbriar Marketplace will be terminated
immediately.

We hereby give you this final notice for **booth space # B-3**.

If you have any questions please contact the manager listed below.

Thank you,

Manager
Born Sterling
(678) 650-2972

_____          __3/20/2013__

**Signature of Booth owner/representative**          **Date**


_____          _____

**Witness**          **Date**

2(l)



MAISON FONDÉE EN 1854

**WITHOUT PREJUDICE**

November 11, 2013

**BY FEDERAL EXPRESS**

Born Sterling
Sterling Management
Greenbriar Marketplace
2975 Headland Drive
Atlanta, GA 30311

Patrick Swindall
2975 Properties LLC

### Re: COUNTERFEIT LOUIS VUITTON MALLETIER MERCHANDISE

Gentlemen:

I am a Manager of Criminal Enforcement for the Intellectual Property Department at Louis Vuitton North America, Inc. ("Louis Vuitton"). Louis Vuitton is the owner of many federally registered trademarks, including the **"LV"**, **"LOUIS VUITTON"**, **Toile Monogram,"**, **Damier, Epi Leather, S-Lock, Flowers, "LOUIS VUITTON PARIS"** and **LOUIS VUITTON MALLETIER A PARIS"** trademarks as shown below (hereinafter the "Louis Vuitton Trademarks).



LOUIS VUITTON NORTH AMERICA, INC.  1 EAST 57TH STREET  NEW YORK, NEW YORK 10022

This letter will serve as formal notice to you that this illegal counterfeiting activity is taking place at your property. Because of this illegal activity, we suspect these vendors as occupiers, renters, lessees or sub-lessees are also in breach of their agreements with you.

We demand that you immediately take all steps necessary to cause such illegal activities to cease. Absent your immediate cooperation, Louis Vuitton is prepared to commence appropriate legal proceedings to protect the valuable Louis Vuitton Trademarks.

We call upon the "Greenbriar Marketplace" to affect the following steps:

o  The immediate commencement and conclusion of eviction proceedings which results in the removal of those tenants/vendors, along with their businesses from the Greenbriar Marketplace, who have previously offered for sale, or are currently offering for sale, items bearing counterfeit Louis Vuitton Trademarks. Louis Vuitton will support all eviction proceedings by making our investigators available to testify and produce reports on behalf of the Greenbriar Marketplace in furtherance of those proceedings.

o  The prominent posting of signs in public areas throughout the Greenbriar Marketplace and entryways, notifying tenants and potential patrons that the sale of merchandise bearing counterfeit Louis Vuitton Trademarks is prohibited and punishable by state and federal law, and that anyone engaging in the sale of such items will be prosecuted to the full extent of the law.

o  The annotating of promotional and informational literature provided to your current and potential customers, occupiers, renters, lessees, or sub-lessees through your normal course of business that indicate that that the sale of merchandise bearing counterfeit Louis Vuitton Trademarks is prohibited and punishable by state and federal law, and that anyone engaging in the sale of such items will be prosecuted to the full extent of the law.

o  Having the terms and conditions or any lease for any vendor expressly prohibit counterfeiting activities and require the tenant and all vendors operating in the tenant's space to immediately vacate the premises upon presentment of proof of any transaction involving goods bearing counterfeit trademarks or copyrights at that location;

o  Continuous monitoring of the tenants' and vendors' spaces by the Star Lite Swap Meet personnel, to include random unannounced inspections and visits of the tenants' and vendors' spaces by the Greenbriar Marketplace. Louis Vuitton will supply training at no cost to the Greenbriar Marketplace, Sterling Management and employees regarding the identification of counterfeit product upon request.

Should you and your company require evidence from Louis Vuitton to assist in eviction proceedings or removing those occupiers, renters, lessees, or sub-lessees from your property who are selling counterfeit Louis Vuitton merchandise, please notify us and we will oblige by making our evidence available.

$\mathcal{V}$

Louis Vuitton has obtained irrefutable evidence that your property is being used for the offer for sale, sale and distribution of counterfeit merchandise bearing Louis Vuitton trademarks. Specifically, occupiers, renters, lessees, or sub-lessees of the Greenbriar Marketplace at 2975 Headland Drive, Atlanta, GA are using your premises to carry on their _illegal_ enterprises selling counterfeit Louis Vuitton merchandise.

On October 4, 2013, the Atlanta Police Department conducted a raid of the Greenbriar Market and found the following individuals/booths to be selling counterfeit goods.

| | | | |
|---|---|---|---|
| Unknown | Booth #: A1 | 44 | items seized |
| Nene Snow | Booth #: A2 | 69 | items seized |
| Unknown | Booth #: A13 | 346 | items seized |
| Unknown | Booth #: A14 | 101 | items seized |
| Bushra Ayub Worku | Booth #: A18 | 186 | items seized |
| Unknown | Booth #: A19 | 224 | items seized |
| Fonday Jabbie | Booth #: A20 | 253 | items seized |
| Mamadou S. Diallo | Booth #: A24 | 7 | items seized |
| Moses H. Bahs | Booth #: A25 | 117 | items seized |
| Unknown | Booth #: 36 | 16 | items seized |
| Mohamad Jalloh | Booth #: B1 | 8 | items seized |
| Aliya Dena Thompson | Booth #: B3 | 75 | items seized |
| Massoudou Barry | Booth #: B4 | 9 | items seized |
| Moses H. Bahs | Booth #: B5 | 1 | items seized |
| Degnachew Berhanu | Booth #: B6 | 73 | items seized |
| Mamadou Ly | Booth #: B7 | 1 | items seized |
| Alpha Osman Bah | Booth #: B13 | 2 | items seized |
| Hodiye A. Tirera | Booth #: B14 | 2 | items seized |
| Unknown | Booth #: B16 | 2 | items seized |
| Alhagi Baba Sumbundu | Booth #: C2 | 10 | items seized |
| Unknown | Booth #: C4 | 31 | items seized |
| Unknown | Booth #: C5 | 66 | items seized |
| Nene Snow | Booth #: C6 | 48 | items seized |
| Mamadou Diallo | Booth #: C20 | 57 | items seized |
| Tunkara Kunda | Booth #: C22 | 10 | items seized |
| Unknown | Booth #: D12 | 178 | items seized |
| Sumareh Mahamadou | Booth #: D16 | 50 | items seized |
| Oumar Thiam | Booth #: D17 | 282 | items seized |
| Unknown | Booth #: D19 | 15 | items seized |
| Tija Susa | Booth #: E6 | 1 | items seized |

It is our understanding that of the thirty (30) booths identified above; ten (10) of those booths the occupiers, renters, lessees, or sub-lessees were not identified because they fled the premises when the Atlanta Police Department conducted the raid. In total there were approximately 2,284 counterfeit Louis Vuitton items seized.

Trademark counterfeiting is a federal and state crime punishable by substantial fines and imprisonment. Federal law provides that a trademark counterfeiter can be fined up to $2,000,000 and imprisoned for up to 10 years; corporations face criminal fines of as much as $5,000,000. _See_ 18 U.S.C. Section 2320.

Corr-000016

*V*

We thank you for your anticipated cooperation and await a reply from you or your counsel.

Very truly yours,

Eric P. Lacoma
Manager of Criminal Enforcement
North America

Corr-000017

2(m)

**Greenbriar Discount Mall**
**2975 Headland Drive**
**Atlanta, Georgia 30344**

December 2, 2013

Eric P. Lacoma
Manager of Criminal Enforcement
North America
1 East 57th Street
New York, New York 10022

**RE: Counterfeit Louis Vuitton Malletier Merchandise**

Dear Mr. Lacoma:

On behalf of 2925 Properties, LLC d/b/a Greenbriar Discount Mall (GDM), Patrick Swindall and Born Sterling, Sterling Management, I acknowledge receipt of your letter of November 11, 2013 notifying said parties that on October 4, 2013, Atlanta Police Department (APD) conducted a raid of GDM that resulted in seizures of a total of 2,284 counterfeit goods from a total of thirty (30) booths, each of which were listed in your letter along with additional information relating to specific tenants and numbers of items seized. I further acknowledge that in your letter you call upon GDM to affect five (5) steps that include: (1) evicting the tenants listed in your letter; (2) posting signage in public areas and entryways notifying tenants and potential patrons that the sale of merchandise bearing counterfeit Louis Vuitton Trademarks is prohibited and punishable by state and federal law...; (3) annotating of promotional and informational literature provided to current and potential customers...; (4) having the terms and conditions of any lease for any vendor expressly prohibit counterfeiting activities and require the tenant and vendors operating in the tenant's space to immediately vacate the premises...; (5) continuous monitoring of the tenants' and vendors' spaces by the Star Lite Swap Meet personnel...

I am aware of the raid conducted by APD at GDM on October 4, 2013. Unfortunately, however, the APD personnel that conducted the raids did so pursuant to an undated and, therefore, defective search warrant. Additionally, the APD personnel that conducted the raid failed to provide either GDM's management or tenants any type of document itemizing any items seized in the raid. Nonetheless, during and after APD's October 4, 2013 raid, GDM's management summarily terminated its Lease Agreements with each and every tenant accused by the APD personnel of having counterfeit merchandise at the time of the October 4, 2013 raid and, simultaneously, forced each and every one of these tenants to immediately vacate its leased space and GDM's premises. GDM has also already affected each of the five (5) steps you called upon GDM to affect as a result of your November 11, 2013 letter.

Additionally, I want you to know that at the time of the APD raid on October 4, 2013, Southeastern Investigations, Inc. (SI) had been continuously monitoring all GDM's tenants for the past two years to assure that counterfeit merchandise bearing Louis Vuitton's or any other manufacturer's trademarks was not being displayed, sold or stored at GDM's premises. In fact, GDM retained SI in January, 2011 after receiving a letter from Tiffany Walden, Counsel for Coach, dated January 3, 2011, notifying GDM that counterfeit merchandise bearing trademarks of Coach had been sold in GDM in December, 2010.

Corr-000018

After discussing the matter with Ms. Walden in January, 2011 and learning that Coach had hired SI, a security firm located in the metropolitan Atlanta area, to monitor various retail establishments in the greater Atlanta area suspected by Coach to be, either knowingly or unknowingly, allowing the sale of counterfeit merchandise bearing Coach's trademarks, GDM, with Coach's express permission and approval, retained SI to monitor GDM's tenants at 2975 Headland Drive, Atlanta, Georgia 30044 to assure that no counterfeit merchandise of any trademark holders was being displayed, sold and/or stored in GDM. Since GDM retained SI, SI has continuously, without interruption, monitored GDM's tenants to assure that all tenants comply with the provision in each GDM Lease Agreement prohibiting the display, sell or storage of any type of counterfeit merchandise displaying any manufacturer's trademarks. Since then, SI has, on several occasions, notified GDM's management that counterfeit merchandise was being displayed, sold and/or stored by a tenant or tenants of GDM and recommended that the tenant's or tenants' Lease Agreement(s) be terminated and the tenant or tenants be forced to immediately vacate the leased space or spaces in question. On each such occasion, GDM has immediately terminated each such tenant's Lease Agreement and forced the tenant to immediately vacate the leased space in particular and GDM's premises in general.

Consequently, until the events of October 4, 2013, GDM reasonably believed that any problems relating to the display, sell or storage of any counterfeit merchandise displaying any manufacturer's trademarks was being proactively and aggressively addressed. That said, assuming the information set forth in your November 11, 2013 letter is accurate, I can only conclude that SI's prophylactic actions have been deficient and GDM appreciatively accepts your offer to have Star Lite Swap Meet's personnel monitor its tenants as set forth in your letter. Accordingly, I'd appreciate it if you would advise me as to the most expeditious manner to accomplish this. In this regard, GDM's management and personnel are available to you or your associates any time to be trained or otherwise assist you and others associated with Louis Vuitton to assure that its trademarks are protected.

In closing, I want to thank you for allowing GDM this opportunity to address the problems set forth in your November 11, 2013 letter and to assure that no such problems arise in the future. I also want you to know that I was out of the country when your letter was delivered to GDM's management and was, therefore, unable to respond to you until now. Please know that I fully recognize the gravity of the matters set forth in your letter and that I will do whatever I can to address your concerns.

Very truly yours,


Kimberly S. Swindall
Sole Member
2925 Properties, LLC

2(n)

9/15/2014

**JUNO** Message Center

Printable Version

From: Pat <patswindall@juno.com>

To: albert@gmc.net

Sent: Thu, Dec 05, 2013 01:11 PM

Subject: Louis Vuitton Notice

Louis Vuitton Noti... (2.7MB),   Counterfeit NOTICE... (27KB)

Albert:

FYI, I'm attaching copy of letter from Louis Vuitton and Kim's response to it. I'm also attaching a copy of Notices posted on all entrances and throughout the Mall.

I'll be by your office later today with checks.

Pat Swindall
(404) 863-7485 Cell

Corr-000157

2(o)

**Albert Ashkouti**

| | |
|---|---|
| **From:** | kimswin@juno.com |
| **Sent:** | Thursday, December 19, 2013 4:45 PM |
| **To:** | jdcannon@dhs.gov |
| **Subject:** | Today's Raid |

J.D.

I've been informed by Born Sterling that you and other federal and local law enforcement conducted several searches and seizures at Greenbriar Discount Mall located at 2975 Headland Drive, Atlanta, Georgia 30344 and at Shops of Greenbriar, located at 2925 Headland Drive, East Point, Georgia 30344, located adjacent to Greenbriar Discount Mall. In the course of these searches and seizures, several roll up doors were damaged by law enforcement personnel. Given the fact that my husband has, on numerous previous occasions, told you in various telephone conversations with you and via email that 2925 Properties, LLC will provide you and any other appropriate law enforcement personnel 24/7/365 access to either of these properties, I simply can't understand why you and the law enforcement personnel that accompanied you today in affecting the above mentioned searches and seizures, with the exception of a handful of requests that you have made for information relating to former tenants of Greenbriar Discount Mall, have not accepted our numerous offers of cooperation. As the sole member of 2925 Properties, LLC, I not only want to cooperate with you and other law enforcement personnel but I also want to completely eliminate the sale, storage or display of any and all contraband any tenant of any leased space in Greenbriar Discount Mall, Shops of Greenbriar or Greenbriar Storage and U-Haul.

As you are well aware, this offer was extended to your predecessor at Department of Homeland Security more four years ago and, when you became known to us, the same offer of unlimited cooperation was made to you as well. To my knowledge, 2925 Properties, LLC has complied, in a timely manner, with each and every request you have made for information regarding tenants that have been evicted from properties owned by 2925 Properties, LLC and, yet, you and other law enforcement personnel with which you coordinate, continue to approach enforcement as though my company has been less than cooperative with you. If I have been misinformed in any way regarding requests that you have made, please let me know, as soon as practicable, any and all information you require and I will personally see to it that it is provided to you as expeditiously as possible.

In closing, 2925 Properties, LLC's management and agents, including my husband, informed you on October 5, 2013 that, despite our best efforts, including hiring an independent security firm that has in the past, and continues to do extensive work on behalf of Coach and other well known manufacturers, our efforts to curtail the display, sale and/or storage of contraband at 2975 and 2925 Headland Drive are presently, and have been in the past, hindered by tenants of Greenbriar Discount Mall continuously covertly transporting contraband from spaces rented by these tenants, or their associates, at Old National Discount Mall at 2660 Godby Road, College Park, Georgia. Since first speaking with you in early Ocober, 2013, my husband and management for Greenbriar Discount Mall have made numerous oral and written communications to you regarding contraband being stored at Old National Discount Mall and covertly delivered to Greenbriar Discount Mall. This problem is exacerbated by the fact that Old National Discount Mall is located approximately 3 miles from Greenbriar Discount Mall. Despite these repeated requests for you and local law enforcement personnel to assist our efforts by enforcing the laws regarding the blatant storage, sell and transportation of contraband from Old National Discount Mall to Greenbriar Discount Mall, according to tenants recently evicted by 2925 Properties, LLC from Greenbriar Discount Mall for displaying, selling or storing contraband at 2975 Headland Drive, there has been no evidence that you or any other federal or local law enforcement personnel have taken any overt enforcement actions relating to Old National Discount Mall. This is especially disheartening and egregious in light of the fact that many of the tenants evicted from Greenbriar Discount Mall moved their illegal operations to Old National Discount Mall in College Park and continuously tell Greenbriar Discount Mall's remaining tenants that Old National Discount Mall has some type of special protection that prevents federal, state or local law enforcement agencies from enforcing the same laws that 2925 Properties, LLC d/b/a Greenbriar Discount Mall is vigorously and consistently enforcing at 2975 Headland Drive.

Para.9-000017

In closing, despite our persistent pleas for cooperation and help from you in eliminating the sale, storage and/or display of contraband at any property owned or leased by 2925 Properties, LLC, to date, you have virtually ignored all of our pleas and efforts for help.  In fact, it to date, the only requests that you have made of 2925 Properties, LLC is that it provide you all documentation in its possession relating to tenants evicted by it from Greenbriar Discount Mall on, or after, October 4, 2013.  Without exception, 2925 Properties,LLC has responded completely and expeditiously to each and every requests that you've made of it.

I look forward to your response.

Kimberly S. Swindall
Sole Member, 2925 Properties, LLC


**How to Sleep Like a Rock**
Obey this one natural trick to fall asleep and stay asleep all night.
peaklife.com

Para.9-000018

2(p)

4842-2911-6459.1
49820/0003 TANZALONE la

9/15/2014

Printable Version

📧 **JUNO** Message Center

From: Albert Ashkouti <albert@lgmc.net>

To: Pat Swindall <patswindall@juno.com>.

Sent: Mon, Mar 31, 2014 02:05 PM

Subject: FW: Ralph Lauren letter (revised draft)

Brooks ltr 3-19-14... (43KB), Brooks ltr 3-19-14... (43KB)

For your review

—Original Message—
From: Tyler Dixon [mailto:tdixon@rallordixon.com]
Sent: Monday, March 31, 2014 1:29 PM
To: Albert Ashkouti
Subject: Ralph Lauren letter (revised draft)

Albert,

Attached is a revised version of the proposed letter to Ralph Lauren.
Review and let me know if it's ok. If it's ok, sign and put it on your company
letterhead (First Guaranty Realty). Send me a copy showing the signature — and staple
copies of the enclosures to my copy of the letter, so I will get an exact copy of
whatever was sent. Be sure to include the enclosures with the copy you send to Homeland.

Tyler

Albert M. Ashkouti
Century-Springs West
6000 Lake Forrest Dr.
Suite 400
Atlanta, Georgia 30328
(678) 553-4501 (Off)
albert@lgmc.net
http://www.heritagecapitolpartners.com/

Corr-00181

9/15/2014

## JUNO Message Center

Printable Version

From: Pat <paslawski@juno.com>

To: slam@juno.net

Sent: Wed, Apr 02, 2014 12:23 PM

Subject: Re: FW: Ralph Lauren letter (revised draft)

@lam.ashimuk.r... (30KB)

I'm attaching your letter to Ralph Lauren with various insignificant typos and clarifications that Don made a Ia in a Word format.

Pat Swindell
(404) 892-2484 Cell

-----Original Message-----
Return-Path: <slamar@frunv.net>
Received from mx06.dca.untd.com (mx06.dca.untd.com [10.171.44.38])
by mailstore7.dca.untd.com with SMTP id ABKIIAAMGUX2A0J42
for <paslawski@juno.com> (sender <slamar@frunv.net>)
Wed, 31 Mar 2014 11:05:23 -0700 (PDT)
Authentication-Results: mx06.dca.untd.com; DKIM=NONE
Received: from call i-mN278s.jumpynotes.com (call i-mN278s.jumpynotes.com [206.18.54.145])
by mx06.dca.untd.com with SMTP id MGVVAMQU2QP2A4
for <paslawski@juno.com> (sender <slamar@frunv.net>)
Wed, 31 Mar 2014 11:05:28 -0700 (PDT)
X-MsgCtl: 13892831791 69557 call i-mN278
Return-Path: <slamar@frunv.net>
Received: from FSMCSRV/genericlocal ([BGLTS 134.194]) by
call i-mN278 transvision.com ([134.194.126] with ESMTP via TCP
(TLSv1/TLS_RSA_WITH_AES_128_CBC_SHA); 31 Mar 2014 18:05:10 -0000
Received: from FSMCSRV/genericlocal (Not local) by 33:517:78x44 Pby by
FSMCSRV/genericlocal (NMD id 511177xx44175x11) with e-mail id
14.01.0218.07; Mon, 31 Mar 2014 14:06:10 -0400
From: Albert Asthauk <galue@fsma>
To: Pat Swindell <paslawski@juno.com>
Subject: FW: Ralph Lauren letter (revised draft)
Thread-Topic: Ralph Lauren letter (revised draft)
Thread-Index: AQHFTQA2nNcFFxNdGEqtVHMffQwr7f0Q
Date: Mon, 31 Mar 2014 18:06:05 +0000
Message-Id: <CP33ED8CDC40CAD8320E7EC7M71xNTB841PZ3@FSMCSRV/genericlocal>
References: <CD314E7 3250259@fsndev.com>
In-Reply-To: <CD314E7 3250259@fsndev.com>
Accept-Language: en-US
Content-Language: en-US
X-MS-Has-Attach: yes
X-MS-TNEF-Correlator:
x-originating-ip: [162.168.2.34]
Content-Type: multipart/mixed;
boundary="_006_CP33ED8CDC40CAD832E2EC7M71xNTB841PZ3FSMCSRVgeneric_"
MIME-Version: 1.0
X-UNTD-Body-Filter: 34664
X-UNTD-OPT1: None
X-UNTD-DKIM: NONE
X-DomainKeys: 6312444665362
X-AVAS:
X9FG6x8a6a77TaFnx4bnB4m189x7HL4z30P2EDE66F8x4f4x4a5a44430x6x9GvdTF1bwd172F7591.x077e54a8d078b56c1e0f7F2ebmax07145853925r585a
X-WTD-Prepared2:05.2.85.146a41-mN278x-wnjpmelos.complex1-mN678a.wnjpmelos.compljdmotd@gmx.net
X-UNTD-UBE-1:

For your review.

Albert M. Asthauk
Century Springs Way
5000 Lake Forrest Dr.
Suite 400
Atlanta, Georgia 30328
(678) 553-4001 (Off)
altert@frunv.net
http://www.horilegalconsultaspartners.com/

-----Original Message-----
From: Tyler Olson [mailto:toscong@enformatservers.net]
Sent: Monday, March 31, 2014 1:28 PM
To: Albert Asthauk
Subject: Ralph Lauren letter (revised draft)

albert.

http://webmail.juno.com/webmail/inbox?Router=SendCommon?printmsg/List=00094V0101LF3_0000204zifmsg/kwmr000YkW01LF3 500020yAkfta...   1/3

**Albert Ashkouti**

| | |
|---|---|
| **From:** | Albert Ashkouti |
| **Sent:** | Wednesday, April 02, 2014 3:42 PM |
| **To:** | Arlene Reausie |
| **Subject:** | FW: Ralph Lauren letter (revised draft) |
| **Attachments:** | Brooks br 3-19-14.doc |

Please type this letter on FGMC stsationary.

Albert M. Ashkouti
Century Springs West
6000 Lake Forrest Dr.
Suite 400
Atlanta, Georgia 30328
(678) 553-4501 (Off)
albert@fgmc.net
http://www.heritagecapitolpartners.com/

-----Original Message-----
From: Tyler Dixon [mailto:tdixon@raifordixon.com]
Sent: Monday, March 31, 2014 1:29 PM
To: Albert Ashkouti
Subject: Ralph Lauren letter (revised draft)

Albert,

Attached is a revised version of the proposed letter to Ralph Lauren.
Review and let me know if it's ok. If it's ok, sign and put it on your company letterhead (First
Guaranty Realty). Send me a copy showing the signature - - and staple copies of the enclosures
to my copy of the letter, so I will get an exact copy of whatever was sent. Be sure to include the
enclosures with the copy you send to Homeland.

Tyler

2(q)

## Albert Ashkouti

| | |
|---|---|
| **From:** | Albert Ashkouti |
| **Sent:** | Monday, April 14, 2014 3:36 PM |
| **To:** | 'hmcdonald@bakerlaw.com' |
| **Subject:** | Greenbriar Discount Mall |
| **Attachments:** | Greenbriar Marketplace Homeland Security.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dear Mr. McDonald, as per your letter of April 11, 2014, there is no such entity as Tabas Two LLC and we do not control Greenbriar Discount Mall.

My response to you is the same as in the attached letters to Ralph Lauren Corporation.

If you have any further questions you can contact me.

Sincerely

Albert M. Ashkouti
Century Springs West
6000 Lake Forrest Dr.
Suite 400
Atlanta, Georgia 30328
(678) 553-4501 (Off)
albert@fgmc.net
http://www.heritagecapitolpartners.com/

1

Para.9-000006

**Albert Ashkouti**

| | |
|---|---|
| From: | Albert Ashkouti |
| Sent: | Friday, May 02, 2014 12:36 PM |
| To: | 'jessica.haugen@us.gucci.com' |
| Subject: | FW: Greenbriar Discount Mall |
| Attachments: | Greenbriar Marketplace Homeland Security.pdf |

Dear Ms. Haugen, as per your letter of April 23, 2014, there is no such entity as Tabas Two LLC and we do not control Greenbriar Discount Mall.

My response to you is the same as in the attached letters to the Ralph Lauren Corporation.

If you have any further questions please contact me.
Thanks,

Albert M. Ashkouti
Century Springs West
6000 Lake Forrest Dr.
Suite 400
Atlanta, Georgia 30328
(678) 553-4501 (Off)
albert@fgmc.net
http://www.heritagecapitolpartners.com/

Para.9-000007

## Albert Ashkouti

| | |
|---|---|
| **From:** | Albert Ashkouti |
| **Sent:** | Friday, May 02, 2014 12:41 PM |
| **To:** | 'hailey.blevins@holihanlaw.com' |
| **Subject:** | FW: Greenbriar Discount Mall |
| **Attachments:** | Greenbriar Marketplace Homeland Security.pdf |

Ms. Blevins, as per your letter of May 1, 2014, there is no such entity as Tabas Two LLC and we do not control Greenbriar Discount Mall.
My response to your letter is the same as in the attached letters to the Ralph Lauren Corporation.

If I can be of any further assistance please contact me at your convenience.

Thanks,


Albert M. Ashkouti
Century Springs West
6000 Lake Forrest Dr.
Suite 400
Atlanta, Georgia 30328
(678) 553-4501 (Off)
albert@fgmc.net
http://www.heritagecapitolpartners.com/

Para.9-000009

**Albert Ashkouti**

| | |
|---|---|
| **From:** | Albert Ashkouti |
| **Sent:** | Friday, June 20, 2014 9:12 AM |
| **To:** | 'Amy LoCascio' |
| **Cc:** | Hailey Blevins; Kim Swindall |
| **Subject:** | RE: Nike, Inc. / Greenbriar Marketplace |

Without the tenants approval I cannot forward you any tennants lease with Greenbriar Marketplace LLC.  I am sure the tenant would be agreeable to answer any and all of your questions and concerns.

Albert M. Ashkouti
Century Springs West
6000 Lake Forrest Dr.
Suite 400
Atlanta, Georgia 30328
(678) 553-4501 (Off)
albert@fgmc.net
http://www.heritagecapitolpartners.com/

**From:** Amy LoCascio [mailto:amy.locascio@holihanlaw.com]
**Sent:** Thursday, June 19, 2014 2:54 PM
**To:** Albert Ashkouti
**Cc:** Hailey Blevins
**Subject:** Nike, Inc. / Greenbriar Marketplace

Mr. Ashkouti,
        Please find the attached letter.

Para.9-000010

3(a)

# Tenant Ledger

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 483,482.22 |
| 01/01/10 | Rent (01/2010) | 26,347.75 | | 509,829.97 |
| 01/01/10 | Hauling (01/2010) | 170.82 | | 510,000.79 |
| 01/01/10 | Insurance (01/2010) | 1,070.47 | | 511,071.26 |
| 01/01/10 | Landscaping (01/2010) | 341.64 | | 511,412.90 |
| 01/01/10 | Management (01/2010) | 1,423.50 | | 512,836.40 |
| 01/01/10 | Management (01/2010) | -740.00 | | 512,096.40 |
| 01/01/10 | Repairs & Maint. (01/2010) | 284.70 | | 512,381.10 |
| 01/01/10 | Security Services (01/2010) | 1,366.56 | | 513,747.66 |
| 01/01/10 | Security Services (01/2010) | -2,000.00 | | 511,747.66 |
| 01/01/10 | Sweeping (01/2010) | 614.95 | | 512,362.61 |
| 01/01/10 | Tax Appeal Fee (01/2010) | 113.88 | | 512,476.49 |
| 01/01/10 | Taxes (01/2010) | 6,247.74 | | 518,724.23 |
| 01/01/10 | Water/Sewer (01/2010) | 939.52 | | 519,663.75 |
| 01/19/10 | chk# 1020 | | 32,846.76 | 486,816.99 |
| 02/01/10 | Rent (02/2010) | 26,347.75 | | 513,164.74 |
| 02/01/10 | Hauling (02/2010) | 170.82 | | 513,335.56 |
| 02/01/10 | Insurance (02/2010) | 1,070.47 | | 514,406.03 |
| 02/01/10 | Landscaping (02/2010) | 341.64 | | 514,747.67 |
| 02/01/10 | Management (02/2010) | 1,423.50 | | 516,171.17 |
| 02/01/10 | Management (02/2010) | -740.00 | | 515,431.17 |
| 02/01/10 | Repairs & Maint. (02/2010) | 284.70 | | 515,715.87 |
| 02/01/10 | Security Services (02/2010) | 1,366.56 | | 517,082.43 |
| 02/01/10 | Security Services (02/2010) | -2,000.00 | | 515,082.43 |
| 02/01/10 | Sweeping (02/2010) | 614.95 | | 515,697.38 |
| 02/01/10 | Tax Appeal Fee (02/2010) | 113.88 | | 515,811.26 |
| 02/01/10 | Taxes (02/2010) | 6,247.74 | | 522,059.00 |
| 02/01/10 | Water/Sewer (02/2010) | 939.52 | | 522,998.52 |
| 02/03/10 | chk# 1026 | | 32,846.76 | 490,151.76 |
| 03/01/10 | Rent (03/2010) | 26,347.75 | | 516,499.51 |
| 03/01/10 | Hauling (03/2010) | 170.82 | | 516,670.33 |
| 03/01/10 | Insurance (03/2010) | 1,070.47 | | 517,740.80 |
| 03/01/10 | Landscaping (03/2010) | 341.64 | | 518,082.44 |
| 03/01/10 | Management (03/2010) | 1,423.50 | | 519,505.94 |
| 03/01/10 | Management (03/2010) | -740.00 | | 518,765.94 |
| 03/01/10 | Repairs & Maint. (03/2010) | 284.70 | | 519,050.64 |
| | | | | CONTINUED |

## Tenant Ledger

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 519,050.64 |
| 03/01/10 | Security Services (03/2010) | 1,366.56 | | 520,417.20 |
| 03/01/10 | Security Services (03/2010) | -2,000.00 | | 518,417.20 |
| 03/01/10 | Sweeping (03/2010) | 614.95 | | 519,032.15 |
| 03/01/10 | Tax Appeal Fee (03/2010) | 113.88 | | 519,146.03 |
| 03/01/10 | Taxes (03/2010) | 6,247.74 | | 525,393.77 |
| 03/01/10 | Water/Sewer (03/2010) | 939.52 | | 526,333.29 |
| 03/10/10 | chk# 1036  Rectify Deposit Entry | | 32,846.76 | 493,486.53 |
| 04/01/10 | Rent (04/2010) | 26,347.75 | | 519,834.28 |
| 04/01/10 | Hauling (04/2010) | 170.82 | | 520,005.10 |
| 04/01/10 | Insurance (04/2010) | 1,070.47 | | 521,075.57 |
| 04/01/10 | Landscaping (04/2010) | 341.64 | | 521,417.21 |
| 04/01/10 | Management (04/2010) | 1,423.50 | | 522,840.71 |
| 04/01/10 | Management (04/2010) | -740.00 | | 522,100.71 |
| 04/01/10 | Repairs & Maint. (04/2010) | 284.70 | | 522,385.41 |
| 04/01/10 | Security Services (04/2010) | 1,366.56 | | 523,751.97 |
| 04/01/10 | Security Services (04/2010) | -2,000.00 | | 521,751.97 |
| 04/01/10 | Sweeping (04/2010) | 614.95 | | 522,366.92 |
| 04/01/10 | Tax Appeal Fee (04/2010) | 113.88 | | 522,480.80 |
| 04/01/10 | Taxes (04/2010) | 6,247.74 | | 528,728.54 |
| 04/01/10 | Water/Sewer (04/2010) | 939.52 | | 529,668.06 |
| 04/14/10 | chk# 1045 | | 32,846.76 | 496,821.30 |
| 05/01/10 | Rent (05/2010) | 26,347.75 | | 523,169.05 |
| 05/01/10 | Hauling (05/2010) | 170.82 | | 523,339.87 |
| 05/01/10 | Insurance (05/2010) | 1,070.47 | | 524,410.34 |
| 05/01/10 | Landscaping (05/2010) | 341.64 | | 524,751.98 |
| 05/01/10 | Management (05/2010) | 1,423.50 | | 526,175.48 |
| 05/01/10 | Management (05/2010) | -740.00 | | 525,435.48 |
| 05/01/10 | Repairs & Maint. (05/2010) | 284.70 | | 525,720.18 |
| 05/01/10 | Security Services (05/2010) | 1,366.56 | | 527,086.74 |
| 05/01/10 | Security Services (05/2010) | -2,000.00 | | 525,086.74 |
| 05/01/10 | Sweeping (05/2010) | 614.95 | | 525,701.69 |
| 05/01/10 | Tax Appeal Fee (05/2010) | 113.88 | | 525,815.57 |
| 05/01/10 | Taxes (05/2010) | 6,247.74 | | 532,063.31 |
| 05/01/10 | Water/Sewer (05/2010) | 939.52 | | 533,002.83 |
| 05/10/10 | chk# 1054 | | 32,846.76 | 500,156.07 |
| | | | | CONTINUED |

GB_PROD_53

# Tenant Ledger

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 500,156.07 |
| 06/01/10 | Rent (06/2010) | 26,347.75 | | 526,503.82 |
| 06/01/10 | Hauling (06/2010) | 170.82 | | 526,674.64 |
| 06/01/10 | Insurance (06/2010) | 1,070.47 | | 527,745.11 |
| 06/01/10 | Landscaping (06/2010) | 341.64 | | 528,086.75 |
| 06/01/10 | Management (06/2010) | 1,423.50 | | 529,510.25 |
| 06/01/10 | Management (06/2010) | -740.00 | | 528,770.25 |
| 06/01/10 | Repairs & Maint. (06/2010) | 284.70 | | 529,054.95 |
| 06/01/10 | Security Services (06/2010) | 1,366.56 | | 530,421.51 |
| 06/01/10 | Security Services (06/2010) | -2,000.00 | | 528,421.51 |
| 06/01/10 | Sweeping (06/2010) | 614.95 | | 529,036.46 |
| 06/01/10 | Tax Appeal Fee (06/2010) | 113.88 | | 529,150.34 |
| 06/01/10 | Taxes (06/2010) | 6,247.74 | | 535,398.08 |
| 06/01/10 | Water/Sewer (06/2010) | 939.52 | | 536,337.60 |
| 06/01/10 | final settelment on court case PS owes $ | -501,095.59 | | 35,242.01 |
| 06/07/10 | chk# 1064 | | 32,846.76 | 2,395.25 |
| 07/01/10 | Rent (07/2010) | 26,347.75 | | 28,743.00 |
| 07/01/10 | Hauling (07/2010) | 170.82 | | 28,913.82 |
| 07/01/10 | Insurance (07/2010) | 1,070.47 | | 29,984.29 |
| 07/01/10 | Landscaping (07/2010) | 341.64 | | 30,325.93 |
| 07/01/10 | Management (07/2010) | 1,423.50 | | 31,749.43 |
| 07/01/10 | Management (07/2010) | -740.00 | | 31,009.43 |
| 07/01/10 | Repairs & Maint. (07/2010) | 284.70 | | 31,294.13 |
| 07/01/10 | Security Services (07/2010) | 1,366.56 | | 32,660.69 |
| 07/01/10 | Security Services (07/2010) | -2,000.00 | | 30,660.69 |
| 07/01/10 | Sweeping (07/2010) | 614.95 | | 31,275.64 |
| 07/01/10 | Tax Appeal Fee (07/2010) | 113.88 | | 31,389.52 |
| 07/01/10 | Taxes (07/2010) | 5,308.22 | | 36,697.74 |
| 07/01/10 | Water/Sewer (07/2010) | 939.52 | | 37,637.26 |
| 07/01/10 | settelment for past due rent cam | 4,812.40 | | 42,449.66 |
| 07/02/10 | chk# 1066  Balance of June Rent CAM | | 2,395.25 | 40,054.41 |
| 07/07/10 | chk# 1201 | | 4,812.40 | 35,242.01 |
| 07/07/10 | chk# 1200 | | 35,242.01 | 0.00 |
| 08/01/10 | Rent (08/2010) | 26,347.75 | | 26,347.75 |
| 08/01/10 | Hauling (08/2010) | 170.82 | | 26,518.57 |
| 08/01/10 | Insurance (08/2010) | 1,070.47 | | 27,589.04 |
| | | | | CONTINUED |

GB_PROD_54

# Tenant Ledger

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 27,589.04 |
| 08/01/10 | Landscaping (08/2010) | 341.64 | | 27,930.68 |
| 08/01/10 | Management (08/2010) | 1,423.50 | | 29,354.18 |
| 08/01/10 | Management (08/2010) | -740.00 | | 28,614.18 |
| 08/01/10 | Repairs & Maint. (08/2010) | 284.70 | | 28,898.88 |
| 08/01/10 | Security Services (08/2010) | 1,366.56 | | 30,265.44 |
| 08/01/10 | Security Services (08/2010) | -2,000.00 | | 28,265.44 |
| 08/01/10 | Sweeping (08/2010) | 614.95 | | 28,880.39 |
| 08/01/10 | Tax Appeal Fee (08/2010) | 113.88 | | 28,994.27 |
| 08/01/10 | Taxes (08/2010) | 5,308.22 | | 34,302.49 |
| 08/01/10 | Water/Sewer (08/2010) | 939.52 | | 35,242.01 |
| 08/01/10 | settelment for past due rent cam | 4,812.40 | | 40,054.41 |
| 08/06/10 | chk# 1269 | | 4,812.40 | 35,242.01 |
| 08/06/10 | chk# 1266 | | 35,242.01 | 0.00 |
| 09/01/10 | Rent (09/2010) | 26,347.75 | | 26,347.75 |
| 09/01/10 | Hauling (09/2010) | 170.82 | | 26,518.57 |
| 09/01/10 | Insurance (09/2010) | 1,070.47 | | 27,589.04 |
| 09/01/10 | Landscaping (09/2010) | 341.64 | | 27,930.68 |
| 09/01/10 | Repairs & Maint. (09/2010) | 284.70 | | 28,215.38 |
| 09/01/10 | Security Services (09/2010) | 1,366.56 | | 29,581.94 |
| 09/01/10 | Security Services (09/2010) | -2,000.00 | | 27,581.94 |
| 09/01/10 | Sweeping (09/2010) | 614.95 | | 28,196.89 |
| 09/01/10 | Tax Appeal Fee (09/2010) | 113.88 | | 28,310.77 |
| 09/01/10 | Taxes (09/2010) | 5,308.22 | | 33,618.99 |
| 09/01/10 | Water/Sewer (09/2010) | 939.52 | | 34,558.51 |
| 09/01/10 | settelment for past due rent cam | 4,812.40 | | 39,370.91 |
| 09/01/10 | Management | -740.00 | | 38,630.91 |
| 09/01/10 | Management | 1,423.50 | | 40,054.41 |
| 09/08/10 | chk# 1345 | | 4,812.40 | 35,242.01 |
| 09/08/10 | chk# 1344 | | 35,252.01 | -10.00 |
| 09/09/10 | Check# 1344 posting correction | 10.00 | | 0.00 |
| 10/01/10 | Rent (10/2010) | 26,347.75 | | 26,347.75 |
| 10/01/10 | Hauling (10/2010) | 170.82 | | 26,518.57 |
| 10/01/10 | Insurance (10/2010) | 1,070.47 | | 27,589.04 |
| 10/01/10 | Landscaping (10/2010) | 341.64 | | 27,930.68 |
| 10/01/10 | Repairs & Maint. (10/2010) | 284.70 | | 28,215.38 |
| | | | | CONTINUED |

# Tenant Ledger

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 28,215.38 |
| 10/01/10 | Security Services (10/2010) | 1,366.56 | | 29,581.94 |
| 10/01/10 | Security Services (10/2010) | -2,000.00 | | 27,581.94 |
| 10/01/10 | Sweeping (10/2010) | 614.95 | | 28,196.89 |
| 10/01/10 | Tax Appeal Fee (10/2010) | 113.88 | | 28,310.77 |
| 10/01/10 | Taxes (10/2010) | 5,308.22 | | 33,618.99 |
| 10/01/10 | Water/Sewer (10/2010) | 939.52 | | 34,558.51 |
| 10/01/10 | settlement for past due rent cam | 4,812.40 | | 39,370.91 |
| 10/01/10 | Management | -740.00 | | 38,630.91 |
| 10/01/10 | Management | 1,423.50 | | 40,054.41 |
| 10/06/10 | chk# 1404 | | 35,242.01 | 4,812.40 |
| 10/06/10 | chk# 1405 | | 4,812.40 | 0.00 |
| 11/01/10 | Rent (11/2010) | 26,347.75 | | 26,347.75 |
| 11/01/10 | Hauling (11/2010) | 170.82 | | 26,518.57 |
| 11/01/10 | Insurance (11/2010) | 1,070.47 | | 27,589.04 |
| 11/01/10 | Landscaping (11/2010) | 341.64 | | 27,930.68 |
| 11/01/10 | Repairs & Maint. (11/2010) | 284.70 | | 28,215.38 |
| 11/01/10 | Security Services (11/2010) | 1,366.56 | | 29,581.94 |
| 11/01/10 | Sweeping (11/2010) | 614.95 | | 30,196.89 |
| 11/01/10 | Tax Appeal Fee (11/2010) | 113.88 | | 30,310.77 |
| 11/01/10 | Taxes (11/2010) | 5,308.22 | | 35,618.99 |
| 11/01/10 | Water/Sewer (11/2010) | 939.52 | | 36,558.51 |
| 11/01/10 | Security Services | -2,000.00 | | 34,558.51 |
| 11/01/10 | Management | -740.00 | | 33,818.51 |
| 11/01/10 | Management | 1,423.50 | | 35,242.01 |
| 11/08/10 | chk# 1480 | | 35,242.01 | 0.00 |
| 12/01/10 | Rent (12/2010) | 26,347.75 | | 26,347.75 |
| 12/01/10 | Hauling (12/2010) | 170.82 | | 26,518.57 |
| 12/01/10 | Insurance (12/2010) | 1,070.47 | | 27,589.04 |
| 12/01/10 | Landscaping (12/2010) | 341.64 | | 27,930.68 |
| 12/01/10 | Repairs & Maint. (12/2010) | 284.70 | | 28,215.38 |
| 12/01/10 | Security Services (12/2010) | -2,000.00 | | 26,215.38 |
| 12/01/10 | Sweeping (12/2010) | 614.95 | | 26,830.33 |
| 12/01/10 | Tax Appeal Fee (12/2010) | 113.88 | | 26,944.21 |
| 12/01/10 | Taxes (12/2010) | 5,308.22 | | 32,252.43 |
| 12/01/10 | Water/Sewer (12/2010) | 939.52 | | 33,191.95 |
| | | | | CONTINUED |

# Tenant Ledger

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA 30311

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 33,191.95 |
| 12/01/10 | Management | 1,423.50 | | 34,615.45 |
| 12/01/10 | Management | -740.00 | | 33,875.45 |
| 12/01/10 | Security Services | 1,366.56 | | 35,242.01 |
| 12/07/10 | chk# 1514 | | 35,242.01 | 0.00 |
| 01/01/11 | Rent (01/2011) | 26,347.75 | | 26,347.75 |
| 01/01/11 | Hauling (01/2011) | 170.82 | | 26,518.57 |
| 01/01/11 | Insurance (01/2011) | 1,070.47 | | 27,589.04 |
| 01/01/11 | Landscaping (01/2011) | 341.64 | | 27,930.68 |
| 01/01/11 | Management (01/2011) | 1,423.50 | | 29,354.18 |
| 01/01/11 | Management (01/2011) | -740.00 | | 28,614.18 |
| 01/01/11 | Repairs & Maint. (01/2011) | 284.70 | | 28,898.88 |
| 01/01/11 | Security Services (01/2011) | 1,366.56 | | 30,265.44 |
| 01/01/11 | Security Services (01/2011) | -2,000.00 | | 28,265.44 |
| 01/01/11 | Sweeping (01/2011) | 614.95 | | 28,880.39 |
| 01/01/11 | Tax Appeal Fee (01/2011) | 113.88 | | 28,994.27 |
| 01/01/11 | Taxes (01/2011) | 5,308.22 | | 34,302.49 |
| 01/01/11 | Water/Sewer (01/2011) | 939.52 | | 35,242.01 |
| 01/05/11 | chk# 1562 | | 35,242.01 | 0.00 |
| 01/14/11 | NSF Fee | 48.00 | | 48.00 |
| 01/14/11 | chk# 1480 Cashier Check Replacement | | 48.00 | 0.00 |
| 02/01/11 | Rent (02/2011) | 26,347.75 | | 26,347.75 |
| 02/01/11 | Hauling (02/2011) | 170.82 | | 26,518.57 |
| 02/01/11 | Insurance (02/2011) | 1,070.47 | | 27,589.04 |
| 02/01/11 | Landscaping (02/2011) | 341.64 | | 27,930.68 |
| 02/01/11 | Management (02/2011) | 1,423.50 | | 29,354.18 |
| 02/01/11 | Management (02/2011) | -740.00 | | 28,614.18 |
| 02/01/11 | Repairs & Maint. (02/2011) | 284.70 | | 28,898.88 |
| 02/01/11 | Security Services (02/2011) | 1,366.56 | | 30,265.44 |
| 02/01/11 | Security Services (02/2011) | -2,000.00 | | 28,265.44 |
| 02/01/11 | Sweeping (02/2011) | 614.95 | | 28,880.39 |
| 02/01/11 | Tax Appeal Fee (02/2011) | 113.88 | | 28,994.27 |
| 02/01/11 | Taxes (02/2011) | 5,308.22 | | 34,302.49 |
| 02/01/11 | Water/Sewer (02/2011) | 939.52 | | 35,242.01 |
| 02/02/11 | escorw fully funded no payment needed fo | -5,803.22 | | 29,438.79 |
| 02/02/11 | correct tax credit given 2/2/11 | 495.00 | | 29,933.79 |
| | | | | CONTINUED |

## Tenant Ledger

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 29,933.79 |
| 02/08/11 | chk# 2179  feb distribution check signed over for r | | 10,000.00 | 19,933.79 |
| 02/08/11 | chk# 1583 | | 19,933.79 | 0.00 |
| 02/25/11 | Electric due for Jan  & Feb after 2010 C | 20.17 | | 20.17 |
| 02/25/11 | Cam due for Jan  & Feb after 2010 CAM RE | 137.23 | | 157.40 |
| 02/25/11 | Insurance due for Jan  & Feb after 2010 | 592.18 | | 749.58 |
| 02/25/11 | Management due for Jan  & Feb after 2010 | 92.24 | | 841.82 |
| 02/25/11 | Tax Appeal Fee due for Jan  & Feb after | 1,457.66 | | 2,299.48 |
| 02/25/11 | Water/Sewer due for Jan  & Feb after 201 | 1,349.46 | | 3,648.94 |
| 02/25/11 | CAM Reimb for 2010 Recon JUL- DEC | 4,345.74 | | 7,994.68 |
| 02/25/11 | Taxes credit forJan ( 2010 Recon.) | -5,308.22 | | 2,686.46 |
| 03/01/11 | Rent (03/2011) | 26,347.75 | | 29,034.21 |
| 03/01/11 | Cam (03/2011) | 2,847.28 | | 31,881.49 |
| 03/01/11 | Electric (03/2011) | 10.08 | | 31,891.57 |
| 03/01/11 | Insurance (03/2011) | 1,366.56 | | 33,258.13 |
| 03/01/11 | Management (03/2011) | 1,469.62 | | 34,727.75 |
| 03/01/11 | Management (03/2011) | -740.00 | | 33,987.75 |
| 03/01/11 | Security Services (03/2011) | -2,000.00 | | 31,987.75 |
| 03/01/11 | Tax Appeal Fee (03/2011) | 842.71 | | 32,830.46 |
| 03/01/11 | Water/Sewer (03/2011) | 1,614.25 | | 34,444.71 |
| 03/08/11 | chk# 1632 | | 29,933.79 | 4,510.92 |
| 04/01/11 | Rent (04/2011) | 26,347.75 | | 30,858.67 |
| 04/01/11 | Cam (04/2011) | 2,847.28 | | 33,705.95 |
| 04/01/11 | Electric (04/2011) | 10.42 | | 33,716.37 |
| 04/01/11 | Insurance (04/2011) | 1,366.56 | | 35,082.93 |
| 04/01/11 | Management (04/2011) | 1,469.62 | | 36,552.55 |
| 04/01/11 | Management (04/2011) | -740.00 | | 35,812.55 |
| 04/01/11 | Security Services (04/2011) | -2,000.00 | | 33,812.55 |
| 04/01/11 | Tax Appeal Fee (04/2011) | 842.71 | | 34,655.26 |
| 04/01/11 | Water/Sewer (04/2011) | 1,614.25 | | 36,269.51 |
| 04/05/11 | chk# 1665 | | 29,933.79 | 6,335.72 |
| 04/15/11 | removal of trash in Garden area | 626.78 | | 6,962.50 |
| 05/01/11 | Rent (05/2011) | 26,347.75 | | 33,310.25 |
| 05/01/11 | Cam (05/2011) | 2,847.28 | | 36,157.53 |
| 05/01/11 | Electric (05/2011) | 10.42 | | 36,167.95 |
| 05/01/11 | Insurance (05/2011) | 1,366.56 | | 37,534.51 |
| | | | | CONTINUED |

# Tenant Ledger

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 37,534.51 |
| 05/01/11 | Management (05/2011) | 1,469.62 | | 39,004.13 |
| 05/01/11 | Management (05/2011) | -740.00 | | 38,264.13 |
| 05/01/11 | Security Services (05/2011) | -2,000.00 | | 36,264.13 |
| 05/01/11 | Tax Appeal Fee (05/2011) | 842.71 | | 37,106.84 |
| 05/01/11 | Water/Sewer (05/2011) | 1,614.25 | | 38,721.09 |
| 05/10/11 | chk# 1681 | | 29,933.10 | 8,787.99 |
| 06/01/11 | Rent (06/2011) | 26,347.75 | | 35,135.74 |
| 06/01/11 | Cam (06/2011) | 2,847.28 | | 37,983.02 |
| 06/01/11 | Electric (06/2011) | 10.42 | | 37,993.44 |
| 06/01/11 | Insurance (06/2011) | 1,366.56 | | 39,360.00 |
| 06/01/11 | Management (06/2011) | 1,469.62 | | 40,829.62 |
| 06/01/11 | Management (06/2011) | -740.00 | | 40,089.62 |
| 06/01/11 | Security Services (06/2011) | -2,000.00 | | 38,089.62 |
| 06/01/11 | Tax Appeal Fee (06/2011) | 842.71 | | 38,932.33 |
| 06/01/11 | Water/Sewer (06/2011) | 1,614.25 | | 40,546.58 |
| 06/08/11 | chk# 1687 | | 34,687.92 | 5,858.66 |
| 07/01/11 | Rent (07/2011) | 26,347.75 | | 32,206.41 |
| 07/01/11 | Cam (07/2011) | 2,847.28 | | 35,053.69 |
| 07/01/11 | Electric (07/2011) | 10.42 | | 35,064.11 |
| 07/01/11 | Insurance (07/2011) | 1,366.56 | | 36,430.67 |
| 07/01/11 | Management (07/2011) | 1,469.62 | | 37,900.29 |
| 07/01/11 | Management (07/2011) | -740.00 | | 37,160.29 |
| 07/01/11 | Security Services (07/2011) | -2,000.00 | | 35,160.29 |
| 07/01/11 | Tax Appeal Fee (07/2011) | 842.71 | | 36,003.00 |
| 07/01/11 | Water/Sewer (07/2011) | 1,614.25 | | 37,617.25 |
| 07/06/11 | chk# 1733 | | 34,687.92 | 2,929.33 |
| 08/01/11 | Rent (08/2011) | 26,347.75 | | 29,277.08 |
| 08/01/11 | Cam (08/2011) | 2,847.28 | | 32,124.36 |
| 08/01/11 | Electric (08/2011) | 10.42 | | 32,134.78 |
| 08/01/11 | Insurance (08/2011) | 1,366.56 | | 33,501.34 |
| 08/01/11 | Management (08/2011) | 1,469.62 | | 34,970.96 |
| 08/01/11 | Management (08/2011) | -740.00 | | 34,230.96 |
| 08/01/11 | Security Services (08/2011) | -2,000.00 | | 32,230.96 |
| 08/01/11 | Tax Appeal Fee (08/2011) | 842.71 | | 33,073.67 |
| 08/01/11 | Water/Sewer (08/2011) | 1,614.25 | | 34,687.92 |
| | | | | CONTINUED |

GB_PROD_59

## Tenant Ledger

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 34,687.92 |
| 08/05/11 | chk# 1765 | | 34,687.92 | 0.00 |
| 09/01/11 | Rent (09/2011) | 26,347.75 | | 26,347.75 |
| 09/01/11 | Cam (09/2011) | 2,847.28 | | 29,195.03 |
| 09/01/11 | Electric (09/2011) | 10.42 | | 29,205.45 |
| 09/01/11 | Insurance (09/2011) | 1,366.56 | | 30,572.01 |
| 09/01/11 | Management (09/2011) | 1,469.62 | | 32,041.63 |
| 09/01/11 | Management (09/2011) | -740.00 | | 31,301.63 |
| 09/01/11 | Security Services (09/2011) | -2,000.00 | | 29,301.63 |
| 09/01/11 | Tax Appeal Fee (09/2011) | 842.71 | | 30,144.34 |
| 09/01/11 | Water/Sewer (09/2011) | 1,614.25 | | 31,758.59 |
| 09/07/11 | | | 31,758.59 | 0.00 |
| 10/01/11 | Rent (10/2011) | 26,347.75 | | 26,347.75 |
| 10/01/11 | Cam (10/2011) | 2,847.28 | | 29,195.03 |
| 10/01/11 | Electric (10/2011) | 10.42 | | 29,205.45 |
| 10/01/11 | Insurance (10/2011) | 1,366.56 | | 30,572.01 |
| 10/01/11 | Management (10/2011) | 1,469.62 | | 32,041.63 |
| 10/01/11 | Management (10/2011) | -740.00 | | 31,301.63 |
| 10/01/11 | Security Services (10/2011) | -2,000.00 | | 29,301.63 |
| 10/01/11 | Tax Appeal Fee (10/2011) | 842.71 | | 30,144.34 |
| 10/01/11 | Water/Sewer (10/2011) | 1,614.25 | | 31,758.59 |
| 10/01/11 | Taxes - new tax escrow amount for 2012 t | 3,056.00 | | 34,814.59 |
| 10/06/11 | chk# 1819 | | 34,814.59 | 0.00 |
| 11/01/11 | Rent (11/2011) | 26,347.75 | | 26,347.75 |
| 11/01/11 | Cam (11/2011) | 2,847.28 | | 29,195.03 |
| 11/01/11 | Electric (11/2011) | 10.42 | | 29,205.45 |
| 11/01/11 | Insurance (11/2011) | 1,366.56 | | 30,572.01 |
| 11/01/11 | Management (11/2011) | 1,469.62 | | 32,041.63 |
| 11/01/11 | Management (11/2011) | -740.00 | | 31,301.63 |
| 11/01/11 | Security Services (11/2011) | -2,000.00 | | 29,301.63 |
| 11/01/11 | Tax Appeal Fee (11/2011) | 842.71 | | 30,144.34 |
| 11/01/11 | New escrow amount per letter dated 9/29/ | 3,056.00 | | 33,200.34 |
| 11/01/11 | Water/Sewer (11/2011) | 1,614.25 | | 34,814.59 |
| 11/08/11 | chk# 1887 | | 34,814.59 | 0.00 |
| 12/01/11 | Rent (12/2011) | 26,347.75 | | 26,347.75 |
| 12/01/11 | Cam (12/2011) | 2,847.28 | | 29,195.03 |
| | | | | CONTINUED |

GB_PROD_60

**Tenant Ledger**

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 29,195.03 |
| 12/01/11 | Electric (12/2011) | 10.42 | | 29,205.45 |
| 12/01/11 | Insurance (12/2011) | 1,366.56 | | 30,572.01 |
| 12/01/11 | Management (12/2011) | 1,469.62 | | 32,041.63 |
| 12/01/11 | Management (12/2011) | -740.00 | | 31,301.63 |
| 12/01/11 | Security Services (12/2011) | -2,000.00 | | 29,301.63 |
| 12/01/11 | Tax Appeal Fee (12/2011) | 842.71 | | 30,144.34 |
| 12/01/11 | New escrow amount per letter dated 9/29/ | 3,056.00 | | 33,200.34 |
| 12/01/11 | Water/Sewer (12/2011) | 1,614.25 | | 34,814.59 |
| 12/07/11 | chk# 1821 | | 34,814.59 | 0.00 |
| 01/01/12 | Rent (01/2012) | 26,347.75 | | 26,347.75 |
| 01/01/12 | Cam (01/2012) | 2,847.28 | | 29,195.03 |
| 01/01/12 | Electric (01/2012) | 10.42 | | 29,205.45 |
| 01/01/12 | Insurance (01/2012) | 1,366.56 | | 30,572.01 |
| 01/01/12 | Management (01/2012) | 1,469.62 | | 32,041.63 |
| 01/01/12 | Management (01/2012) | -740.00 | | 31,301.63 |
| 01/01/12 | Security Services (01/2012) | -2,000.00 | | 29,301.63 |
| 01/01/12 | Tax Appeal Fee (01/2012) | 842.71 | | 30,144.34 |
| 01/01/12 | New escrow amount per letter dated 9/29/ | 3,056.00 | | 33,200.34 |
| 01/01/12 | Water/Sewer (01/2012) | 1,614.25 | | 34,814.59 |
| 01/12/12 | chk# 1923 | | 34,814.59 | 0.00 |
| 02/01/12 | Rent (02/2012) | 26,347.75 | | 26,347.75 |
| 02/01/12 | Cam (02/2012) | 2,847.28 | | 29,195.03 |
| 02/01/12 | Electric (02/2012) | 10.42 | | 29,205.45 |
| 02/01/12 | Insurance (02/2012) | 1,366.56 | | 30,572.01 |
| 02/01/12 | Management (02/2012) | 1,469.62 | | 32,041.63 |
| 02/01/12 | Management (02/2012) | -740.00 | | 31,301.63 |
| 02/01/12 | Security Services (02/2012) | -2,000.00 | | 29,301.63 |
| 02/01/12 | Tax Appeal Fee (02/2012) | 842.71 | | 30,144.34 |
| 02/01/12 | New escrow amount per letter dated 9/29/ | 3,056.00 | | 33,200.34 |
| 02/01/12 | Water/Sewer (02/2012) | 1,614.25 | | 34,814.59 |
| 02/09/12 | chk# counter | | 34,814.59 | 0.00 |
| 03/01/12 | Rent (03/2012) | 26,347.75 | | 26,347.75 |
| 03/01/12 | Cam (03/2012) | 2,847.28 | | 29,195.03 |
| 03/01/12 | Electric (03/2012) | 10.42 | | 29,205.45 |
| 03/01/12 | Insurance (03/2012) | 1,366.56 | | 30,572.01 |
| | | | | CONTINUED |

# Tenant Ledger

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 30,572.01 |
| 03/01/12 | Management (03/2012) | 1,469.62 | | 32,041.63 |
| 03/01/12 | Management (03/2012) | -740.00 | | 31,301.63 |
| 03/01/12 | Security Services (03/2012) | -2,000.00 | | 29,301.63 |
| 03/01/12 | Tax Appeal Fee (03/2012) | 842.71 | | 30,144.34 |
| 03/01/12 | New escrow amount per letter dated 9/29/ | 3,056.00 | | 33,200.34 |
| 03/01/12 | Water/Sewer (03/2012) | 1,614.25 | | 34,814.59 |
| 03/06/12 | chk# 99 | | 34,814.59 | 0.00 |
| 04/01/12 | Rent (04/2012) | 26,347.75 | | 26,347.75 |
| 04/01/12 | Cam (04/2012) | 2,847.28 | | 29,195.03 |
| 04/01/12 | Electric (04/2012) | 10.42 | | 29,205.45 |
| 04/01/12 | Insurance (04/2012) | 1,366.56 | | 30,572.01 |
| 04/01/12 | Management (04/2012) | 1,469.62 | | 32,041.63 |
| 04/01/12 | Management (04/2012) | -740.00 | | 31,301.63 |
| 04/01/12 | Security Services (04/2012) | -2,000.00 | | 29,301.63 |
| 04/01/12 | Tax Appeal Fee (04/2012) | 842.71 | | 30,144.34 |
| 04/01/12 | New tax escrow amount per letter dated 9 | 3,056.00 | | 33,200.34 |
| 04/01/12 | Water/Sewer (04/2012) | 1,614.25 | | 34,814.59 |
| 04/10/12 | chk# 2407 | | 34,814.59 | 0.00 |
| 04/25/12 | 2011 CAMTI Recon. | -3,407.10 | | -3,407.10 |
| 04/25/12 | 2011 CAMTI Recon. Jan - Apr 2012 | -758.91 | | -4,166.01 |
| 05/01/12 | Rent (05/2012) | 26,347.75 | | 22,181.74 |
| 05/01/12 | Cam (05/2012) | 4,341.39 | | 26,523.13 |
| 05/01/12 | Electric (05/2012) | 14.46 | | 26,537.59 |
| 05/01/12 | Insurance (05/2012) | 1,247.95 | | 27,785.54 |
| 05/01/12 | Management (05/2012) | -740.00 | | 27,045.54 |
| 05/01/12 | Security Services (05/2012) | -2,000.00 | | 25,045.54 |
| 05/01/12 | Tax Appeal Fee (05/2012) | 386.34 | | 25,431.88 |
| 05/01/12 | Taxes (05/2012) | 3,776.98 | | 29,208.86 |
| 05/01/12 | Water/Sewer (05/2012) | 1,250.00 | | 30,458.86 |
| 05/08/12 | chk# 2023 | | 28,458.85 | 2,000.01 |
| 06/01/12 | Rent (06/2012) | 26,347.75 | | 28,347.76 |
| 06/01/12 | Cam (06/2012) | 4,341.39 | | 32,689.15 |
| 06/01/12 | Electric (06/2012) | 14.46 | | 32,703.61 |
| 06/01/12 | Insurance (06/2012) | 1,247.95 | | 33,951.56 |
| 06/01/12 | Management (06/2012) | -740.00 | | 33,211.56 |
| | | | | CONTINUED |

GB_PROD_62

# Tenant Ledger

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 33,211.56 |
| 06/01/12 | Security Services (06/2012) | -2,000.00 | | 31,211.56 |
| 06/01/12 | Tax Appeal Fee (06/2012) | 386.34 | | 31,597.90 |
| 06/01/12 | Taxes (06/2012) | 3,776.98 | | 35,374.88 |
| 06/01/12 | Water/Sewer (05/2012) | 1,250.00 | | 36,624.88 |
| 06/08/12 | chk# 2048 | | 36,624.88 | 0.00 |
| 07/01/12 | Rent (07/2012) | 26,347.75 | | 26,347.75 |
| 07/01/12 | Cam (07/2012) | 4,341.39 | | 30,689.14 |
| 07/01/12 | Electric (07/2012) | 14.46 | | 30,703.60 |
| 07/01/12 | Insurance (07/2012) | 1,247.95 | | 31,951.55 |
| 07/01/12 | Management (07/2012) | -740.00 | | 31,211.55 |
| 07/01/12 | Security Services (07/2012) | -2,000.00 | | 29,211.55 |
| 07/01/12 | Tax Appeal Fee (07/2012) | 386.34 | | 29,597.89 |
| 07/01/12 | Taxes (07/2012) | 3,776.98 | | 33,374.87 |
| 07/01/12 | Water/Sewer (07/2012) | 1,250.00 | | 34,624.87 |
| 07/09/12 | chk# 2074 | | 36,624.88 | -2,000.01 |
| 08/01/12 | Rent (08/2012) | 26,347.75 | | 24,347.74 |
| 08/01/12 | Cam (08/2012) | 4,341.39 | | 28,689.13 |
| 08/01/12 | Electric (08/2012) | 14.46 | | 28,703.59 |
| 08/01/12 | Insurance (08/2012) | 1,247.95 | | 29,951.54 |
| 08/01/12 | Management (08/2012) | -740.00 | | 29,211.54 |
| 08/01/12 | Security Services (08/2012) | -2,000.00 | | 27,211.54 |
| 08/01/12 | Tax Appeal Fee (08/2012) | 386.34 | | 27,597.88 |
| 08/01/12 | Taxes (08/2012) | 3,776.98 | | 31,374.86 |
| 08/01/12 | Water/Sewer (08/2012) | 1,250.00 | | 32,624.86 |
| 08/07/12 | chk# 2101 | | 32,624.86 | 0.00 |
| 09/01/12 | Rent (09/2012) | 26,347.75 | | 26,347.75 |
| 09/01/12 | Cam (09/2012) | 4,341.39 | | 30,689.14 |
| 09/01/12 | Electric (09/2012) | 14.46 | | 30,703.60 |
| 09/01/12 | Insurance (09/2012) | 1,247.95 | | 31,951.55 |
| 09/01/12 | Management (09/2012) | -740.00 | | 31,211.55 |
| 09/01/12 | Security Services (09/2012) | -2,000.00 | | 29,211.55 |
| 09/01/12 | Tax Appeal Fee (09/2012) | 386.34 | | 29,597.89 |
| 09/01/12 | Taxes (09/2012) | 3,776.98 | | 33,374.87 |
| 09/01/12 | Water/Sewer (09/2012) | 1,250.00 | | 34,624.87 |
| 09/06/12 | chk# 2131 | | 32,624.86 | 2,000.01 |
| | | | | CONTINUED |

# Tenant Ledger

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 2,000.01 |
| 10/01/12 | Rent (10/2012) | 26,347.75 | | 28,347.76 |
| 10/01/12 | Cam (10/2012) | 4,341.39 | | 32,689.15 |
| 10/01/12 | Electric (10/2012) | 14.46 | | 32,703.61 |
| 10/01/12 | Insurance (10/2012) | 1,247.95 | | 33,951.56 |
| 10/01/12 | Management (10/2012) | -740.00 | | 33,211.56 |
| 10/01/12 | Security Services (10/2012) | -2,000.00 | | 31,211.56 |
| 10/01/12 | Tax Appeal Fee (10/2012) | 386.34 | | 31,597.90 |
| 10/01/12 | Taxes (10/2012) | 3,776.98 | | 35,374.88 |
| 10/01/12 | Water/Sewer (10/2012) | 1,250.00 | | 36,624.88 |
| 10/08/12 | chk# 2153 | | 36,624.88 | 0.00 |
| 10/08/12 | chk# 2153  check written incorrectly $.10 more wher | | 0.10 | -0.10 |
| 10/08/12 | chk# 2153  check written incorrectly amt written di | | 40.00 | -40.10 |
| 11/01/12 | Rent (11/2012) | 26,347.75 | | 26,307.65 |
| 11/01/12 | Cam (11/2012) | 4,341.39 | | 30,649.04 |
| 11/01/12 | Electric (11/2012) | 14.46 | | 30,663.50 |
| 11/01/12 | Insurance (11/2012) | 1,247.95 | | 31,911.45 |
| 11/01/12 | Management (11/2012) | -740.00 | | 31,171.45 |
| 11/01/12 | Security Services (11/2012) | -2,000.00 | | 29,171.45 |
| 11/01/12 | Tax Appeal Fee (11/2012) | 386.34 | | 29,557.79 |
| 11/01/12 | Taxes (11/2012) | 3,776.98 | | 33,334.77 |
| 11/01/12 | Water/Sewer (11/2012) | 1,250.00 | | 34,584.77 |
| 11/07/12 | chk# 2174 | | 34,584.77 | 0.00 |
| 12/01/12 | Rent (12/2012) | 26,347.75 | | 26,347.75 |
| 12/01/12 | Cam (12/2012) | 4,341.39 | | 30,689.14 |
| 12/01/12 | Electric (12/2012) | 14.46 | | 30,703.60 |
| 12/01/12 | Insurance (12/2012) | 1,247.95 | | 31,951.55 |
| 12/01/12 | Management (12/2012) | -740.00 | | 31,211.55 |
| 12/01/12 | Security Services (12/2012) | -2,000.00 | | 29,211.55 |
| 12/01/12 | Tax Appeal Fee (12/2012) | 386.34 | | 29,597.89 |
| 12/01/12 | Taxes (12/2012) | 3,776.98 | | 33,374.87 |
| 12/01/12 | Water/Sewer (12/2012) | 1,250.00 | | 34,624.87 |
| 12/06/12 | chk# 2207 | | 34,624.87 | 0.00 |
| 01/01/13 | Rent (01/2013) | 26,347.75 | | 26,347.75 |
| 01/01/13 | Cam (01/2013) | 4,341.39 | | 30,689.14 |
| 01/01/13 | Electric (01/2013) | 14.46 | | 30,703.60 |
| | | | | CONTINUED |

# Tenant Ledger

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 30,703.60 |
| 01/01/13 | Insurance (01/2013) | 1,247.95 | | 31,951.55 |
| 01/01/13 | Management (01/2013) | -740.00 | | 31,211.55 |
| 01/01/13 | Security Services (01/2013) | -2,000.00 | | 29,211.55 |
| 01/01/13 | Tax Appeal Fee (01/2013) | 386.34 | | 29,597.89 |
| 01/01/13 | Taxes (01/2013) | 3,776.98 | | 33,374.87 |
| 01/01/13 | Water/Sewer (01/2013) | 1,250.00 | | 34,624.87 |
| 01/08/13 | chk# 2238 | | 34,624.87 | 0.00 |
| 02/01/13 | Rent (02/2013) | 26,347.75 | | 26,347.75 |
| 02/01/13 | Cam (02/2013) | 4,341.39 | | 30,689.14 |
| 02/01/13 | Electric (02/2013) | 14.46 | | 30,703.60 |
| 02/01/13 | Insurance (02/2013) | 1,247.95 | | 31,951.55 |
| 02/01/13 | Management (02/2013) | -740.00 | | 31,211.55 |
| 02/01/13 | Security Services (02/2013) | -2,000.00 | | 29,211.55 |
| 02/01/13 | Tax Appeal Fee (02/2013) | 386.34 | | 29,597.89 |
| 02/01/13 | Taxes (02/2013) | 3,776.98 | | 33,374.87 |
| 02/01/13 | Water/Sewer (02/2013) | 1,250.00 | | 34,624.87 |
| 02/06/13 | chk# 2224 | | 34,624.87 | 0.00 |
| 03/01/13 | Rent (03/2013) | 26,347.75 | | 26,347.75 |
| 03/01/13 | Cam (03/2013) | 4,341.39 | | 30,689.14 |
| 03/01/13 | Electric (03/2013) | 14.46 | | 30,703.60 |
| 03/01/13 | Insurance (03/2013) | 1,247.95 | | 31,951.55 |
| 03/01/13 | Management (03/2013) | -740.00 | | 31,211.55 |
| 03/01/13 | Security Services (03/2013) | -2,000.00 | | 29,211.55 |
| 03/01/13 | Tax Appeal Fee (03/2013) | 386.34 | | 29,597.89 |
| 03/01/13 | Taxes (03/2013) | 3,776.98 | | 33,374.87 |
| 03/01/13 | Water/Sewer (03/2013) | 1,250.00 | | 34,624.87 |
| 03/05/13 | chk# 2274 | | 34,624.87 | 0.00 |
| 04/01/13 | Rent (04/2013) | 26,347.75 | | 26,347.75 |
| 04/01/13 | Cam (04/2013) | 4,341.39 | | 30,689.14 |
| 04/01/13 | Electric (04/2013) | 14.46 | | 30,703.60 |
| 04/01/13 | Insurance (04/2013) | 1,247.95 | | 31,951.55 |
| 04/01/13 | Management (04/2013) | -740.00 | | 31,211.55 |
| 04/01/13 | Security Services (04/2013) | -2,000.00 | | 29,211.55 |
| 04/01/13 | Tax Appeal Fee (04/2013) | 386.34 | | 29,597.89 |
| 04/01/13 | Taxes (04/2013) | 3,776.98 | | 33,374.87 |
| | | | | CONTINUED |

# Tenant Ledger

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 33,374.87 |
| 04/01/13 | Water/Sewer (04/2013) | 1,250.00 | | 34,624.87 |
| 04/08/13 | chk# 2299 | | 34,624.87 | 0.00 |
| 05/01/13 | Rent (05/2013) | 26,347.75 | | 26,347.75 |
| 05/01/13 | Cam (05/2013) | 4,423.38 | | 30,771.13 |
| 05/01/13 | Electric (05/2013) | 15.55 | | 30,786.68 |
| 05/01/13 | Insurance (05/2013) | 1,471.11 | | 32,257.79 |
| 05/01/13 | Management (05/2013) | -740.00 | | 31,517.79 |
| 05/01/13 | Security Services (05/2013) | -2,000.00 | | 29,517.79 |
| 05/01/13 | Security Services (05/2013) | -2,000.00 | | 27,517.79 |
| 05/01/13 | Tax Appeal Fee (05/2013) | 99.37 | | 27,617.16 |
| 05/01/13 | Taxes (05/2013) | 3,776.64 | | 31,393.80 |
| 05/01/13 | Sec Ser credit posted twice May13 | 2,000.00 | | 33,393.80 |
| 05/02/13 | Cam RECON for 2012 | 10,094.58 | | 43,488.38 |
| 05/02/13 | Electric RECON for 2012 | 20.30 | | 43,508.68 |
| 05/02/13 | Insurance RECON for 2012 | 1,164.80 | | 44,673.48 |
| 05/02/13 | Tax Appeal RECON for 2012 | -5,269.10 | | 39,404.38 |
| 05/02/13 | Taxes RECON for 2012 | 2,879.78 | | 42,284.16 |
| 05/02/13 | Water/Sewer RECON for 2012 | -15,938.08 | | 26,346.08 |
| 05/03/13 | Cam RECON for Jan -Apr 2013 | 327.98 | | 26,674.06 |
| 05/03/13 | Electric RECON for Jan -Apr 2013 | 4.34 | | 26,678.40 |
| 05/03/13 | Insurance RECON for Jan -Apr 2013 | 893.97 | | 27,572.37 |
| 05/03/13 | Tax Appeal RECON for Jan -Apr 2013 | -1,147.87 | | 26,424.50 |
| 05/03/13 | Taxes RECON for Jan -Apr 2013 | -1.38 | | 26,423.12 |
| 05/03/13 | Water/Sewer RECON for Jan -Apr 2013 | -4,772.24 | | 21,650.88 |
| 05/07/13 | chk# 2313 | | 26,347.75 | -4,696.87 |
| 06/01/13 | Rent (06/2013) | 26,347.75 | | 21,650.88 |
| 06/01/13 | Cam (06/2013) | 4,423.38 | | 26,074.26 |
| 06/01/13 | Electric (06/2013) | 15.55 | | 26,089.81 |
| 06/01/13 | Insurance (06/2013) | 1,471.11 | | 27,560.92 |
| 06/01/13 | Management (06/2013) | -740.00 | | 26,820.92 |
| 06/01/13 | Security Services (06/2013) | -2,000.00 | | 24,820.92 |
| 06/01/13 | Security Services (06/2013) | -2,000.00 | | 22,820.92 |
| 06/01/13 | Tax Appeal Fee (06/2013) | 99.37 | | 22,920.29 |
| 06/01/13 | Taxes (06/2013) | 3,776.64 | | 26,696.93 |
| 06/05/13 | Sec Ser credit posted twice Jun13 | 2,000.00 | | 28,696.93 |
| | | | | CONTINUED |

# Tenant Ledger

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 28,696.93 |
| 06/05/13 | chk# 2336 | | 28,811.46 | -114.53 |
| 07/01/13 | Rent (07/2013) | 26,347.75 | | 26,233.22 |
| 07/01/13 | Cam (07/2013) | 4,423.38 | | 30,656.60 |
| 07/01/13 | Electric (07/2013) | 15.55 | | 30,672.15 |
| 07/01/13 | Insurance (07/2013) | 1,471.11 | | 32,143.26 |
| 07/01/13 | Management (07/2013) | -740.00 | | 31,403.26 |
| 07/01/13 | Security Services (07/2013) | -2,000.00 | | 29,403.26 |
| 07/01/13 | Tax Appeal Fee (07/2013) | 99.37 | | 29,502.63 |
| 07/01/13 | Taxes (07/2013) | 3,776.64 | | 33,279.27 |
| 07/08/13 | chk# 1005 | | 33,451.07 | -171.80 |
| 08/01/13 | Rent (08/2013) | 26,347.75 | | 26,175.95 |
| 08/01/13 | Cam (08/2013) | 4,423.38 | | 30,599.33 |
| 08/01/13 | Electric (08/2013) | 15.55 | | 30,614.88 |
| 08/01/13 | Insurance (08/2013) | 1,471.11 | | 32,085.99 |
| 08/01/13 | Management (08/2013) | -740.00 | | 31,345.99 |
| 08/01/13 | Security Services (08/2013) | -2,000.00 | | 29,345.99 |
| 08/01/13 | Tax Appeal Fee (08/2013) | 99.37 | | 29,445.36 |
| 08/01/13 | Taxes (08/2013) | 3,776.64 | | 33,222.00 |
| 08/07/13 | chk# 1021 | | 33,451.07 | -229.07 |
| 09/01/13 | Rent (09/2013) | 26,347.75 | | 26,118.68 |
| 09/01/13 | Cam (09/2013) | 4,423.38 | | 30,542.06 |
| 09/01/13 | Electric (09/2013) | 15.55 | | 30,557.61 |
| 09/01/13 | Insurance (09/2013) | 1,471.11 | | 32,028.72 |
| 09/01/13 | Management (09/2013) | -740.00 | | 31,288.72 |
| 09/01/13 | Security Services (09/2013) | -2,000.00 | | 29,288.72 |
| 09/01/13 | Tax Appeal Fee (09/2013) | 99.37 | | 29,388.09 |
| 09/01/13 | Taxes (09/2013) | 3,776.64 | | 33,164.73 |
| 09/03/13 | Clean up after car show | 350.00 | | 33,514.73 |
| 09/10/13 | chk# 1024 | | 33,451.07 | 63.66 |
| 10/01/13 | Rent (10/2013) | 26,347.75 | | 26,411.41 |
| 10/01/13 | Cam (10/2013) | 4,423.38 | | 30,834.79 |
| 10/01/13 | Electric (10/2013) | 15.55 | | 30,850.34 |
| 10/01/13 | Insurance (10/2013) | 1,471.11 | | 32,321.45 |
| 10/01/13 | Management (10/2013) | -740.00 | | 31,581.45 |
| 10/01/13 | Security Services (10/2013) | -2,000.00 | | 29,581.45 |

CONTINUED

# Tenant Ledger

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 29,581.45 |
| 10/01/13 | Tax Appeal Fee (10/2013) | 99.37 | | 29,680.82 |
| 10/01/13 | Taxes (10/2013) | 3,776.64 | | 33,457.46 |
| 10/14/13 | chk# 1067 | | 33,451.07 | 6.39 |
| 11/01/13 | Rent (11/2013) | 26,347.75 | | 26,354.14 |
| 11/01/13 | Cam (11/2013) | 4,423.38 | | 30,777.52 |
| 11/01/13 | Electric (11/2013) | 15.55 | | 30,793.07 |
| 11/01/13 | Insurance (11/2013) | 1,471.11 | | 32,264.18 |
| 11/01/13 | Management (11/2013) | -740.00 | | 31,524.18 |
| 11/01/13 | Security Services (11/2013) | -2,000.00 | | 29,524.18 |
| 11/01/13 | Tax Appeal Fee (11/2013) | 99.37 | | 29,623.55 |
| 11/01/13 | Taxes (11/2013) | 3,776.64 | | 33,400.19 |
| 11/01/13 | chk# 1001 | | 33,451.07 | -50.88 |
| 12/01/13 | 1st yr of a 2/5yr option exercised 10/1/ | 28,902.25 | | 28,851.37 |
| 12/01/13 | Cam (12/2013) | 4,423.38 | | 33,274.75 |
| 12/01/13 | Electric (12/2013) | 15.55 | | 33,290.30 |
| 12/01/13 | Insurance (12/2013) | 1,471.11 | | 34,761.41 |
| 12/01/13 | Management (12/2013) | -740.00 | | 34,021.41 |
| 12/01/13 | Security Services (12/2013) | -2,000.00 | | 32,021.41 |
| 12/01/13 | Tax Appeal Fee (12/2013) | 99.37 | | 32,120.78 |
| 12/01/13 | Taxes (12/2013) | 3,776.64 | | 35,897.42 |
| 12/09/13 | chk# 1102 | | 36,005.57 | -108.15 |
| 01/01/14 | 1st yr of a 2/5yr option exercised 10/1/ | 28,902.25 | | 28,794.10 |
| 01/01/14 | Cam (01/2014) | 4,423.38 | | 33,217.48 |
| 01/01/14 | Electric (01/2014) | 15.55 | | 33,233.03 |
| 01/01/14 | Insurance (01/2014) | 1,471.11 | | 34,704.14 |
| 01/01/14 | Management (01/2014) | -740.00 | | 33,964.14 |
| 01/01/14 | Security Services (01/2014) | -2,000.00 | | 31,964.14 |
| 01/01/14 | Tax Appeal Fee (01/2014) | 99.37 | | 32,063.51 |
| 01/01/14 | Taxes (01/2014) | 3,776.64 | | 35,840.15 |
| 01/09/14 | chk# 1120 | | 36,005.57 | -165.42 |
| 02/01/14 | 1st yr of a 2/5yr option exercised 10/1/ | 28,902.25 | | 28,736.83 |
| 02/01/14 | Cam (02/2014) | 4,423.38 | | 33,160.21 |
| 02/01/14 | Electric (02/2014) | 15.55 | | 33,175.76 |
| 02/01/14 | Insurance (02/2014) | 1,471.11 | | 34,646.87 |
| 02/01/14 | Management (02/2014) | -740.00 | | 33,906.87 |
| | | | | CONTINUED |

## Tenant Ledger

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 33,906.87 |
| 02/01/14 | Security Services (02/2014) | -2,000.00 | | 31,906.87 |
| 02/01/14 | Tax Appeal Fee (02/2014) | 99.37 | | 32,006.24 |
| 02/01/14 | Taxes (02/2014) | 3,776.64 | | 35,782.88 |
| 02/06/14 | chk# 1136 | | 36,005.57 | -222.69 |
| 03/01/14 | 1st yr of a 2/5yr option exercised 10/1/ | 28,902.25 | | 28,679.56 |
| 03/01/14 | Cam (03/2014) | 4,423.38 | | 33,102.94 |
| 03/01/14 | Electric (03/2014) | 15.55 | | 33,118.49 |
| 03/01/14 | Insurance (03/2014) | 1,471.11 | | 34,589.60 |
| 03/01/14 | Management (03/2014) | -740.00 | | 33,849.60 |
| 03/01/14 | Security Services (03/2014) | -2,000.00 | | 31,849.60 |
| 03/01/14 | Tax Appeal Fee (03/2014) | 99.37 | | 31,948.97 |
| 03/01/14 | Taxes (03/2014) | 3,776.64 | | 35,725.61 |
| 03/06/14 | chk# 1156 | | 36,005.57 | -279.96 |
| 04/01/14 | Rent (04/2014) | 28,902.25 | | 28,622.29 |
| 04/01/14 | Cam (04/2014) | 4,423.38 | | 33,045.67 |
| 04/01/14 | Electric (04/2014) | 15.55 | | 33,061.22 |
| 04/01/14 | Insurance (04/2014) | 1,471.11 | | 34,532.33 |
| 04/01/14 | Management (04/2014) | -740.00 | | 33,792.33 |
| 04/01/14 | Security Services (04/2014) | -2,000.00 | | 31,792.33 |
| 04/01/14 | Tax Appeal Fee (04/2014) | 99.37 | | 31,891.70 |
| 04/01/14 | Taxes (04/2014) | 3,776.64 | | 35,668.34 |
| 04/14/14 | chk# 1169 | | 36,005.57 | -337.23 |
| 05/01/14 | Rent (05/2014) | 28,902.25 | | 28,565.02 |
| 05/01/14 | Cam (05/2014) | 4,359.61 | | 32,924.63 |
| 05/01/14 | Electric (05/2014) | 14.81 | | 32,939.44 |
| 05/01/14 | Insurance (05/2014) | 1,544.37 | | 34,483.81 |
| 05/01/14 | Management (05/2014) | -740.00 | | 33,743.81 |
| 05/01/14 | Security Services (05/2014) | -2,000.00 | | 31,743.81 |
| 05/01/14 | Tax Appeal Fee (05/2014) | 35.42 | | 31,779.23 |
| 05/01/14 | Taxes (05/2014) | 3,759.64 | | 35,538.87 |
| 05/01/14 | Water/Sewer (05/2014) | 43.87 | | 35,582.74 |
| 05/02/14 | CAM Reimb 2014 | -1,677.07 | | 33,905.67 |
| 05/02/14 | Previous Year Cam Recon Previous Year Ca | -113.37 | | 33,792.30 |
| 05/06/14 | chk# 1185 | | 33,792.30 | 0.00 |
| 06/01/14 | Rent (06/2014) | 28,902.25 | | 28,902.25 |
| | | | | CONTINUED |

# Tenant Ledger

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 28,902.25 |
| 06/01/14 | Cam (06/2014) | 4,359.61 | | 33,261.86 |
| 06/01/14 | Electric (06/2014) | 14.81 | | 33,276.67 |
| 06/01/14 | Insurance (06/2014) | 1,544.37 | | 34,821.04 |
| 06/01/14 | Management (06/2014) | -740.00 | | 34,081.04 |
| 06/01/14 | Security Services (06/2014) | -2,000.00 | | 32,081.04 |
| 06/01/14 | Tax Appeal Fee (06/2014) | 35.42 | | 32,116.46 |
| 06/01/14 | Taxes (06/2014) | 3,759.64 | | 35,876.10 |
| 06/01/14 | Water/Sewer (06/2014) | 43.87 | | 35,919.97 |
| 06/09/14 | chk# 1189 | | 35,919.96 | 0.01 |
| 07/01/14 | Rent (07/2014) | 28,902.25 | | 28,902.26 |
| 07/01/14 | Cam (07/2014) | 4,359.61 | | 33,261.87 |
| 07/01/14 | Electric (07/2014) | 14.81 | | 33,276.68 |
| 07/01/14 | Insurance (07/2014) | 1,544.37 | | 34,821.05 |
| 07/01/14 | Management (07/2014) | -740.00 | | 34,081.05 |
| 07/01/14 | Security Services (07/2014) | -2,000.00 | | 32,081.05 |
| 07/01/14 | Tax Appeal Fee (07/2014) | 35.42 | | 32,116.47 |
| 07/01/14 | Taxes (07/2014) | 3,759.64 | | 35,876.11 |
| 07/01/14 | Water/Sewer (07/2014) | 43.87 | | 35,919.98 |
| 07/09/14 | chk# 1206 | | 35,919.98 | 0.00 |
| 08/01/14 | Rent (08/2014) | 28,902.25 | | 28,902.25 |
| 08/01/14 | Cam (08/2014) | 4,359.61 | | 33,261.86 |
| 08/01/14 | Electric (08/2014) | 14.81 | | 33,276.67 |
| 08/01/14 | Insurance (08/2014) | 1,544.37 | | 34,821.04 |
| 08/01/14 | Management (08/2014) | -740.00 | | 34,081.04 |
| 08/01/14 | Security Services (08/2014) | -2,000.00 | | 32,081.04 |
| 08/01/14 | Tax Appeal Fee (08/2014) | 35.42 | | 32,116.46 |
| 08/01/14 | Taxes (08/2014) | 3,759.64 | | 35,876.10 |
| 08/01/14 | Water/Sewer (08/2014) | 43.87 | | 35,919.97 |
| 08/11/14 | chk# 1217 | | 36,005.57 | -85.60 |
| 09/01/14 | Rent (09/2014) | 28,902.25 | | 28,816.65 |
| 09/01/14 | Cam (09/2014) | 4,359.61 | | 33,176.26 |
| 09/01/14 | Electric (09/2014) | 14.81 | | 33,191.07 |
| 09/01/14 | Insurance (09/2014) | 1,544.37 | | 34,735.44 |
| 09/01/14 | Management (09/2014) | -740.00 | | 33,995.44 |
| 09/01/14 | Security Services (09/2014) | -2,000.00 | | 31,995.44 |
| | | | | CONTINUED |

# Tenant Ledger

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 31,995.44 |
| 09/01/14 | Tax Appeal Fee (09/2014) | 35.42 | | 32,030.86 |
| 09/01/14 | Taxes (09/2014) | 3,759.64 | | 35,790.50 |
| 09/01/14 | Water/Sewer (09/2014) | 43.87 | | 35,834.37 |
| 09/03/14 | Sweeping Car Show Sep14 | 400.00 | | 36,234.37 |
| 09/15/14 | chk# 1227 | | 36,005.57 | 228.80 |
| 10/01/14 | Rent (10/2014) | 28,902.25 | | 29,131.05 |
| 10/01/14 | Cam (10/2014) | 4,359.61 | | 33,490.66 |
| 10/01/14 | Electric (10/2014) | 14.81 | | 33,505.47 |
| 10/01/14 | Insurance (10/2014) | 1,544.37 | | 35,049.84 |
| 10/01/14 | Management (10/2014) | -740.00 | | 34,309.84 |
| 10/01/14 | Security Services (10/2014) | -2,000.00 | | 32,309.84 |
| 10/01/14 | Tax Appeal Fee (10/2014) | 35.42 | | 32,345.26 |
| 10/01/14 | Taxes (10/2014) | 3,759.64 | | 36,104.90 |
| 10/01/14 | Water/Sewer (10/2014) | 43.87 | | 36,148.77 |
| 10/09/14 | chk# 1210  check plus $400 cash | | 36,148.77 | 0.00 |
| 10/09/14 | chk# casg | | 15.00 | -15.00 |
| 11/01/14 | Rent (11/2014) | 28,902.25 | | 28,887.25 |
| 11/01/14 | Cam (11/2014) | 4,359.61 | | 33,246.86 |
| 11/01/14 | Electric (11/2014) | 14.81 | | 33,261.67 |
| 11/01/14 | Insurance (11/2014) | 1,544.37 | | 34,806.04 |
| 11/01/14 | Management (11/2014) | -740.00 | | 34,066.04 |
| 11/01/14 | Security Services (11/2014) | -2,000.00 | | 32,066.04 |
| 11/01/14 | Tax Appeal Fee (11/2014) | 35.42 | | 32,101.46 |
| 11/01/14 | Taxes (11/2014) | 3,759.64 | | 35,861.10 |
| 11/01/14 | Water/Sewer (11/2014) | 43.87 | | 35,904.97 |
| 11/10/14 | chk# 1250 | | 35,748.77 | 156.20 |
| 12/01/14 | Rent (12/2014) | 28,902.25 | | 29,058.45 |
| 12/01/14 | Cam (12/2014) | 4,359.61 | | 33,418.06 |
| 12/01/14 | Electric (12/2014) | 14.81 | | 33,432.87 |
| 12/01/14 | Insurance (12/2014) | 1,544.37 | | 34,977.24 |
| 12/01/14 | Management (12/2014) | -740.00 | | 34,237.24 |
| 12/01/14 | Security Services (12/2014) | -2,000.00 | | 32,237.24 |
| 12/01/14 | Tax Appeal Fee (12/2014) | 35.42 | | 32,272.66 |
| 12/01/14 | Taxes (12/2014) | 3,759.64 | | 36,032.30 |
| 12/01/14 | Water/Sewer (12/2014) | 43.87 | | 36,076.17 |
| | | | | CONTINUED |

# Tenant Ledger

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 36,076.17 |
| 12/09/14 | chk# 1258 | | 36,076.17 | 0.00 |
| 01/01/15 | Rent (01/2015) | 28,902.25 | | 28,902.25 |
| 01/01/15 | Cam (01/2015) | 4,359.61 | | 33,261.86 |
| 01/01/15 | Electric (01/2015) | 14.81 | | 33,276.67 |
| 01/01/15 | Insurance (01/2015) | 1,544.37 | | 34,821.04 |
| 01/01/15 | Management (01/2015) | -740.00 | | 34,081.04 |
| 01/01/15 | Security Services (01/2015) | -2,000.00 | | 32,081.04 |
| 01/01/15 | Tax Appeal Fee (01/2015) | 35.42 | | 32,116.46 |
| 01/01/15 | Taxes (01/2015) | 3,759.64 | | 35,876.10 |
| 01/01/15 | Water/Sewer (01/2015) | 43.87 | | 35,919.97 |
| 01/12/15 | chk# 1264 | | 35,919.97 | 0.00 |
| 02/01/15 | Rent (02/2015) | 28,902.25 | | 28,902.25 |
| 02/01/15 | Cam (02/2015) | 4,359.61 | | 33,261.86 |
| 02/01/15 | Electric (02/2015) | 14.81 | | 33,276.67 |
| 02/01/15 | Insurance (02/2015) | 1,544.37 | | 34,821.04 |
| 02/01/15 | Management (02/2015) | -740.00 | | 34,081.04 |
| 02/01/15 | Security Services (02/2015) | -2,000.00 | | 32,081.04 |
| 02/01/15 | Tax Appeal Fee (02/2015) | 35.42 | | 32,116.46 |
| 02/01/15 | Taxes (02/2015) | 3,759.64 | | 35,876.10 |
| 02/01/15 | Water/Sewer (02/2015) | 43.87 | | 35,919.97 |
| 02/11/15 | chk# 1283 | | 35,919.97 | 0.00 |
| 03/01/15 | Rent (03/2015) | 28,902.25 | | 28,902.25 |
| 03/01/15 | Cam (03/2015) | 4,359.61 | | 33,261.86 |
| 03/01/15 | Electric (03/2015) | 14.81 | | 33,276.67 |
| 03/01/15 | Insurance (03/2015) | 1,544.37 | | 34,821.04 |
| 03/01/15 | Management (03/2015) | -740.00 | | 34,081.04 |
| 03/01/15 | Security Services (03/2015) | -2,000.00 | | 32,081.04 |
| 03/01/15 | Tax Appeal Fee (03/2015) | 35.42 | | 32,116.46 |
| 03/01/15 | Taxes (03/2015) | 3,759.64 | | 35,876.10 |
| 03/01/15 | Water/Sewer (03/2015) | 43.87 | | 35,919.97 |
| 03/09/15 | Repairs Parking Lights Mar15 | 5,028.00 | | 40,947.97 |
| 03/09/15 | chk# 1292 | | 35,919.97 | 5,028.00 |
| 04/01/15 | Rent (04/2015) | 28,902.25 | | 33,930.25 |
| 04/01/15 | Cam (04/2015) | 4,359.61 | | 38,289.86 |
| 04/01/15 | Electric (04/2015) | 14.81 | | 38,304.67 |
| | | | | CONTINUED |

# Tenant Ledger

2925 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 38,304.67 |
| 04/01/15 | Insurance (04/2015) | 1,544.37 | | 39,849.04 |
| 04/01/15 | Management (04/2015) | -740.00 | | 39,109.04 |
| 04/01/15 | Security Services (04/2015) | -2,000.00 | | 37,109.04 |
| 04/01/15 | Tax Appeal Fee (04/2015) | 35.42 | | 37,144.46 |
| 04/01/15 | Taxes (04/2015) | 3,759.64 | | 40,904.10 |
| 04/01/15 | Water/Sewer (04/2015) | 43.87 | | 40,947.97 |
| 04/13/15 | chk# 1303 | | 36,507.27 | 4,440.70 |
| 05/01/15 | Rent (05/2015) | 28,902.25 | | 33,342.95 |
| 05/01/15 | Cam (05/2015) | 4,553.47 | | 37,896.42 |
| 05/01/15 | CAM Rec Current Year (05/2015) | -724.86 | | 37,171.56 |
| 05/01/15 | Electric (05/2015) | 18.72 | | 37,190.28 |
| 05/01/15 | Insurance (05/2015) | 1,611.83 | | 38,802.11 |
| 05/01/15 | Management (05/2015) | -740.00 | | 38,062.11 |
| 05/01/15 | Previous Year Cam Recon (05/2015) | -2,458.84 | | 35,603.27 |
| 05/01/15 | Security Services (05/2015) | -2,000.00 | | 33,603.27 |
| 05/01/15 | Tax Appeal Fee (05/2015) | 66.67 | | 33,669.94 |
| 05/01/15 | Taxes (05/2015) | 3,278.00 | | 36,947.94 |
| 05/01/15 | Water/Sewer (05/2015) | 47.83 | | 36,995.77 |
| 05/11/15 | chk# 1320 | | 36,848.93 | 146.84 |
| 06/01/15 | Rent (06/2015) | 28,902.25 | | 29,049.09 |
| 06/01/15 | Cam (06/2015) | 4,553.47 | | 33,602.56 |
| 06/01/15 | Electric (06/2015) | 18.72 | | 33,621.28 |
| 06/01/15 | Insurance (06/2015) | 1,611.83 | | 35,233.11 |
| 06/01/15 | Management (06/2015) | -740.00 | | 34,493.11 |
| 06/01/15 | Security Services (06/2015) | -2,000.00 | | 32,493.11 |
| 06/01/15 | Tax Appeal Fee (06/2015) | 66.67 | | 32,559.78 |
| 06/01/15 | Taxes (06/2015) | 3,278.00 | | 35,837.78 |
| 06/01/15 | Water/Sewer (06/2015) | 47.83 | | 35,885.61 |
| 06/10/15 | chk# 1332 | | 36,885.61 | -1,000.00 |
| 07/01/15 | Rent (07/2015) | 28,902.25 | | 27,902.25 |
| 07/01/15 | Cam (07/2015) | 4,553.47 | | 32,455.72 |
| 07/01/15 | Electric (07/2015) | 18.72 | | 32,474.44 |
| 07/01/15 | Insurance (07/2015) | 1,611.83 | | 34,086.27 |
| 07/01/15 | Management (07/2015) | -740.00 | | 33,346.27 |
| 07/01/15 | Security Services (07/2015) | -2,000.00 | | 31,346.27 |
| | | | | CONTINUED |

# Tenant Ledger

2926 Properties, LLC
2975 Headland Dr., SW
Atlanta, GA  30311

| | |
|---|---|
| Date: | 09/21/15 |
| Tenant Code: | ps |
| Property: | gb |
| Unit: | 2975 |
| Status: | Current |
| Rent: | 28,902.25 |
| Deposit: | 0.00 |
| Move In Date: | 12/01/03 |
| Move Out Date: | |
| Due Day: | 1 |
| Tel# (O) | |
| Tel# (H) | |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| | Balance Forward | | | 31,346.27 |
| 07/01/15 | Tax Appeal Fee (07/2015) | 66.67 | | 31,412.94 |
| 07/01/15 | Taxes (07/2015) | 3,278.00 | | 34,690.94 |
| 07/01/15 | Water/Sewer (07/2015) | 47.83 | | 34,738.77 |
| 07/07/15 | chk# 1343 | | 36,848.93 | -2,110.16 |
| 08/01/15 | Rent (08/2015) | 28,902.25 | | 26,792.09 |
| 08/01/15 | Cam (08/2015) | 4,553.47 | | 31,345.56 |
| 08/01/15 | Electric (08/2015) | 18.72 | | 31,364.28 |
| 08/01/15 | Insurance (08/2015) | 1,611.83 | | 32,976.11 |
| 08/01/15 | Management (08/2015) | -740.00 | | 32,236.11 |
| 08/01/15 | Security Services (08/2015) | -2,000.00 | | 30,236.11 |
| 08/01/15 | Tax Appeal Fee (08/2015) | 66.67 | | 30,302.78 |
| 08/01/15 | Taxes (08/2015) | 3,278.00 | | 33,580.78 |
| 08/01/15 | Water/Sewer (08/2015) | 47.83 | | 33,628.61 |
| 08/10/15 | chk# 1353 | | 35,919.97 | -2,291.36 |
| 09/01/15 | Rent (09/2015) | 28,902.25 | | 26,610.89 |
| 09/01/15 | Cam (09/2015) | 4,553.47 | | 31,164.36 |
| 09/01/15 | Electric (09/2015) | 18.72 | | 31,183.08 |
| 09/01/15 | Insurance (09/2015) | 1,611.83 | | 32,794.91 |
| 09/01/15 | Management (09/2015) | -740.00 | | 32,054.91 |
| 09/01/15 | Security Services (09/2015) | -2,000.00 | | 30,054.91 |
| 09/01/15 | Tax Appeal Fee (09/2015) | 66.67 | | 30,121.58 |
| 09/01/15 | Taxes (09/2015) | 3,278.00 | | 33,399.58 |
| 09/01/15 | Water/Sewer (09/2015) | 47.83 | | 33,447.41 |
| 09/10/15 | chk# 1365 | | 35,885.61 | -2,438.20 |

| Current | 30 Days | | 60 Days | 90 Days | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 0.00 | | 0.00 | 0.00 | -2,438.20 |

GB_PROD_74

3(b)

4842-2911-6459.1
49820/0003 TANZALONE t6

**Form 1065**

Department of the Treasury
Internal Revenue Service

**U Return of Partnership Inco**

For calendar year 2010, or tax year beginning _____ , ending _____

EXTENSION GRANTED TO 09/15/11

OMB No. 1545-0099

**2010**

| | |
|---|---|
| **A** Principal business activity | **Name of partnership** GREENBRIAR MARKETPLACE II, LLC C/O FGMC |
| INVESTMENTS | Print or type. |
| **B** Principal product or service | **Number, street, and room or suite no. If a P.O. box, see the Instructions.** 6085 BARFIELD ROAD, SUITE 200 |
| REAL ESTATE | |
| **C** Business code number | **City or town, state, and ZIP code** ATLANTA   GA 30328 |

**D** Employer identification number

**E** Date business started 01/01/2006

**F** Total assets $ 4,274,293.

**G** Check applicable boxes: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☐ Address change (5) ☐ Amended return (6) ☐ Technical termination - also check (1) or (2)

**H** Check accounting method: (1) ☐ Cash (2) ☒ Accrual (3) ☐ Other (specify) ▶

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ 2

**J** Check if Schedules C and M-3 are attached ☐

**Caution.** Include only *trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.*

| | | | | | |
|---|---|---|---|---|---|
| **Income** | 1 a Gross receipts or sales | | 1a | | |
| | b Less returns and allowances | | 1b | 1c | |
| | 2 Cost of goods sold (Schedule A, line 8) | | | 2 | |
| | 3 Gross profit. Subtract line 2 from line 1c | | | 3 | |
| | 4 Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) | | | 4 | |
| | 5 Net farm profit (loss) (attach Schedule F (Form 1040)) | | | 5 | |
| | 6 Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | | 6 | |
| | 7 Other income (loss) (attach statement) | | | 7 | |
| | 8 Total income (loss). Combine lines 3 through 7 | | | 8 | |
| **Deductions (see the instructions for limitations)** | 9 Salaries and wages (other than to partners) (less employment credits) | | | 9 | |
| | 10 Guaranteed payments to partners | | | 10 | |
| | 11 Repairs and maintenance | | | 11 | |
| | 12 Bad debts | | | 12 | |
| | 13 Rent | | | 13 | |
| | 14 Taxes and licenses | | | 14 | |
| | 15 Interest | | | 15 | |
| | 16 a Depreciation (if required, attach Form 4562) | | 16a | | |
| | b Less depreciation reported on Schedule A and elsewhere on return | | 16b | 16c | |
| | 17 Depletion (Do not deduct oil and gas depletion.) | | | 17 | |
| | 18 Retirement plans, etc. | | | 18 | |
| | 19 Employee benefit programs | | | 19 | |
| | 20 Other deductions (attach statement) | | | 20 | |
| | 21 Total deductions. Add the amounts shown in the far right column for lines 9 through 20 | | | 21 | |
| | 22 Ordinary business income (loss). Subtract line 21 from line 8 | | | 22 | 0. |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

▶ Signature of general partner or limited liability company member manager

Date

May the IRS discuss this return with the preparer shown below (see instr.)? ☒ Yes ☐ No

| | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| **Paid Preparer Use Only** | M.J. PORTER | | | | |
| | Firm's name ▶ M. J. PORTER & ASSOCIATES LLP | | | Firm's EIN ▶ | |
| | Firm's address ▶ 5500 INTERSTATE N. PKWY, SUITE 507 ATLANTA, GA 30328 | | | Phone no. 770-956-1977 | |

011001 02-07-11   LHA   For Paperwork Reduction Act Notice, see separate instructions.

Form **1065** (2010)

GB_PROD_77

Form 1065 (2010)   GREENBRIAR MARKETPLACE II, LLC C/O FGMC   ▮▮▮▮   Page **2**

| Schedule A | Cost of Goods Sold (see the Instructions) | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases less cost of items withdrawn for personal use | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs *(attach statement)* | 4 | |
| 5 | Other costs *(attach statement)* | 5 | |
| 6 | Total. Add lines 1 through 5 | 6 | |
| 7 | Inventory at end of year | 7 | |
| 8 | Cost of goods sold. Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | |

9 a  Check all methods used for valuing closing inventory:
    (i) ☐ Cost as described in Regulations section 1.471-3
    (ii) ☐ Lower of cost or market as described in Regulations section 1.471-4
    (iii) ☐ Other (specify method used and attach explanation) ▶ _____

  b  Check this box if there was a writedown of "subnormal" goods as described in Regulations section 1.471-2(c) ............ ▶ ☐
  c  Check this box if the LIFO inventory method was adopted this tax year for any goods *(if checked, attach Form 970)* ...... ▶ ☐
  d  Do the rules of section 263A (for property produced or acquired for resale) apply to the partnership? .......... ☐ Yes  ☐ No
  e  Was there any change in determining quantities, cost, or valuations between opening and closing inventory? ...... ☐ Yes  ☐ No
    If "Yes," attach explanation.

| Schedule B | Other Information | | Yes | No |
|---|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box: | | | |
| | a ☐ Domestic general partnership    b ☐ Domestic limited partnership | | | |
| | c ☒ Domestic limited liability company   d ☐ Domestic limited liability partnership | | | |
| | e ☐ Foreign partnership    f ☐ Other ▶ | | | |
| 2 | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? | | | X |
| 3 | At the end of the tax year: | | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | | X |
| b | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | | X |
| 4 | At the end of the tax year, did the partnership: | | | |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below | | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

b  Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below ................................................   X

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Form **1065** (2010)

011011
01-17-11

2

GB_PROD_78

Form 1065 (2010)   GREENBRIAR MA  ETPLACE II, LLC C/O FGMC     Page 3

|  |  | Yes | No |
|---|---|---|---|
| 5 | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details | | X |
| 6 | Does the partnership satisfy all four of the following conditions? | | |
| a | The partnership's total receipts for the tax year were less than $250,000. | | |
| b | The partnership's total assets at the end of the tax year were less than $ 1 million. | | |
| c | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| d | The partnership is not filing and is not required to file Schedule M-3 | | X |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? | | X |
| 8 | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | X |
| 9 | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | X |
| 10 | At any time during calendar year 2010, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts. If "Yes," enter the name of the foreign country. ▶ | | X |
| 11 | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions | | X |
| 12a | Is the partnership making, or had it previously made (and not revoked), a section 754 election? | | X |
| | See instructions for details regarding a section 754 election. | | |
| b | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |
| 13 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than entities wholly-owned by the partnership throughout the tax year) ▶ ☐ | | |
| 14 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? | | X |
| 15 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions ▶ | | |
| 16 | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ▶ | | X |
| 17 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return. ▶ | | |

**Designation of Tax Matters Partner (see instructions)**

Enter below the general partner designated as the tax matters partner (TMP) for the tax year of this return:

| Name of designated TMP ▶ | ▇▇▇▇▇▇▇▇ | Identifying number of TMP ▶ | ▇▇▇▇▇ |
|---|---|---|---|
| If the TMP is an entity, name of TMP representative ▶ | ALBERT ASHKOUTI | Phone number of TMP ▶ | ▇▇▇▇▇ |
| Address of designated TMP ▶ | 6085 BARFIELD ROAD, SUITE 200 ATLANTA, GA 30328 | | |

Form **1065** (2010)

011021
01-17-11

3

Form 1065 (2010)   GREENBRIAR MARKETPLACE II, LLC C/O FGMC                              Page 4

| Schedule K | Partners' Distributive Share Items | | Total amount |
|---|---|---|---|
| **Income (Loss)** | 1 Ordinary business income (loss) (page 1, line 22) | 1 | 0. |
| | 2 Net rental real estate income (loss) (attach Form 8825) ...... SEE STATEMENT 1 | 2 | 226,692. |
| | 3 a Other gross rental income (loss) | 3a | |
| | b Expenses from other rental activities (attach statement) | 3b | |
| | c Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 Guaranteed payments | 4 | |
| | 5 Interest income .................. SEE STATEMENT 2 | 5 | 445. |
| | 6 Dividends: a Ordinary dividends | 6a | |
| | b Qualified dividends | 6b | |
| | 7 Royalties | 7 | |
| | 8 Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | 8 | |
| | 9 a Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | 9a | |
| | b Collectibles (28%) gain (loss) | 9b | |
| | c Unrecaptured section 1250 gain (attach statement) | 9c | |
| | 10 Net section 1231 gain (loss) (attach Form 4797) | 10 | |
| | 11 Other income (loss) (see instructions) Type ▶ | 11 | |
| **Deductions** | 12 Section 179 deduction (attach Form 4562) | 12 | |
| | 13 a Contributions | 13a | |
| | b Investment interest expense | 13b | |
| | c Section 59(e)(2) expenditures: (1) Type ▶_____ (2) Amount ▶ | 13c(2) | |
| | d Other deductions (see instructions) Type ▶ | 13d | |
| **Self-Employ-ment** | 14 a Net earnings (loss) from self-employment | 14a | 0. |
| | b Gross farming or fishing income | 14b | |
| | c Gross nonfarm income | 14c | |
| **Credits** | 15 a Low-income housing credit (section 42(j)(5)) | 15a | |
| | b Low-income housing credit (other) | 15b | |
| | c Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | 15c | |
| | d Other rental real estate credits (see instructions) Type ▶ | 15d | |
| | e Other rental credits (see instructions) Type ▶ | 15e | |
| | f Other credits (see instructions) Type ▶ | 15f | |
| **Foreign Transactions** | 16 a Name of country or U.S. possession ▶ | | |
| | b Gross income from all sources | 16b | |
| | c Gross income sourced at partner level | 16c | |
| | Foreign gross income sourced at partnership level | | |
| | d Passive category ▶_____ e General category ▶_____ f Other ▶ | 16f | |
| | Deductions allocated and apportioned at partner level | | |
| | g Interest expense ▶_____ h Other | 16h | |
| | Deductions allocated and apportioned at partnership level to foreign source income | | |
| | i Passive category ▶_____ j General category ▶_____ k Other ▶ | 16k | |
| | l Total foreign taxes (check one): ▶ Paid ☐ Accrued ☐ | 16l | |
| | m Reduction in taxes available for credit (attach statement) | 16m | |
| | n Other foreign tax information (attach statement) | | |
| **Alternative Minimum Tax (AMT) Items** | 17 a Post-1986 depreciation adjustment | 17a | |
| | b Adjusted gain or loss | 17b | |
| | c Depletion (other than oil and gas) | 17c | |
| | d Oil, gas, and geothermal properties - gross income | 17d | |
| | e Oil, gas, and geothermal properties - deductions | 17e | |
| | f Other AMT items (attach statement) | 17f | |
| **Other Information** | 18 a Tax-exempt interest income | 18a | |
| | b Other tax-exempt income | 18b | |
| | c Nondeductible expenses | 18c | |
| | 19 a Distributions of cash and marketable securities | 19a | 158,874. |
| | b Distributions of other property | 19b | |
| | 20 a Investment income | 20a | 445. |
| | b Investment expenses | 20b | |
| | c Other items and amounts (attach statement) | | |

011041
01-17-11

4

Form **1065** (2010)

GB_PROD_80

Form 1065 (2010)   GREENBRIAR MARKETPLACE II, LLC C/O FGMC   Page 5

## Analysis of Net Income (Loss)

1 Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l ...... **1** | **227,137.**

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | | | | | |
| b Limited partners | | | 61,631. | 165,506. | | |

## Schedule L   Balance Sheets per Books

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | 323,266. | | 402,247. |
| 2a Trade notes and accounts receivable | | | 5,268. | |
| b Less allowance for bad debts | | | | 5,268. |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (attach statement) | | | | |
| 7 Mortgage and real estate loans | | | | |
| 8 Other investments (attach statement) | | | | |
| 9a Buildings and other depreciable assets | 4,231,948. | | 4,231,948. | |
| b Less accumulated depreciation | 650,107. | 3,581,841. | 769,132. | 3,462,816. |
| 10a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | 403,962. | | 403,962. |
| 12a Intangible assets (amortizable only) | 4,450. | | 4,450. | |
| b Less accumulated amortization | 4,450. | | 4,450. | |
| 13 Other assets (attach statement) | | | | |
| 14 Total assets | | 4,309,069. | | 4,274,293. |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | | | |
| 16 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 Other current liabilities (attach statement) | STATEMENT 3 | 30,439. | | 11,679. |
| 18 All nonrecourse loans | | 3,108,951. | | 3,024,672. |
| 19 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 20 Other liabilities (attach statement) | | | | |
| 21 Partners' capital accounts | | 1,169,679. | | 1,237,942. |
| 22 Total liabilities and capital | | 4,309,069. | | 4,274,293. |

## Schedule M-1   Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note. Schedule M-3 may be required instead of Schedule M-1 (see instructions).

| | | | | |
|---|---|---|---|---|
| 1 Net income (loss) per books | 227,137. | 6 Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11 not recorded on books this year (itemize): | | a Tax-exempt interest $ | | |
| 3 Guaranteed payments (other than health insurance) | | 7 Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | | |
| 4 Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | | a Depreciation $ | | |
| a Depreciation $ | | | | |
| b Travel and entertainment $ | | 8 Add lines 6 and 7 | | |
| 5 Add lines 1 through 4 | 227,137. | 9 Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | | 227,137. |

## Schedule M-2   Analysis of Partners' Capital Accounts

| | | | | |
|---|---|---|---|---|
| 1 Balance at beginning of year | 1,169,679. | 6 Distributions: a Cash | | 158,874. |
| 2 Capital contributed: a Cash | | b Property | | |
| b Property | | 7 Other decreases (itemize): | | |
| 3 Net income (loss) per books | 227,137. | | | |
| 4 Other increases (itemize): | | 8 Add lines 6 and 7 | | 158,874. |
| 5 Add lines 1 through 4 | 1,396,816. | 9 Balance at end of year. Subtract line 8 from line 5 | | 1,237,942. |

011042
01-17-11

5

Form 1065 (2010)

GB_PROD_81

| Form **8825** | Rental real Estate Income and Expenses of a Partnership or an S Corporation | | OMB No. 1545-1186 |
|---|---|---|---|
| (Rev. December 2010) Department of the Treasury Internal Revenue Service | ► See instructions on page 2. ► Attach to Form 1065, Form 1065-B, or Form 1120S. | | |

| Name | Employer identification number |
|---|---|
| GREENBRIAR MARKETPLACE II, LLC C/O FGMC | ████████ |

**1** Show the type and address of each property. For each rental real estate property listed, report the number of days rented at fair rental value and days with personal use. See instructions. See page 2 to list additional properties.

| | Physical address of each property - street, city, state, ZIP code | Type - Enter code 1-8; see page 2 for list | Fair Rental Days | Personal Use Days |
|---|---|---|---|---|
| A | ATLANTA, GA | 4 | | |
| B | | | | |
| C | | | | |
| D | | | | |

| | | | Properties | | |
|---|---|---|---|---|---|
| Rental Real Estate Income | | A | B | C | D |
| 2 Gross rents | 2 | 819,515. | | | |
| Rental Real Estate Expenses | | | | | |
| 3 Advertising | 3 | | | | |
| 4 Auto and travel | 4 | 325. | | | |
| 5 Cleaning and maintenance | 5 | 21,793. | | | |
| 6 Commissions | 6 | | | | |
| 7 Insurance | 7 | 25,130. | | | |
| 8 Legal and other professional fees | 8 | 63,501. | | | |
| 9 Interest | 9 | 205,538. | | | |
| 10 Repairs | 10 | 23,017. | | | |
| 11 Taxes | 11 | 71,543. | | | |
| 12 Utilities | 12 | 31,915. | | | |
| 13 Wages and salaries | 13 | | | | |
| 14 Depreciation (see instructions) | 14 | 119,025. | | | |
| 15 Other (list) ► STMT 5 | | 31,036. | | | |
| | 15 | | | | |
| 16 Total expenses for each property. Add lines 3 through 15 | 16 | 592,823. | | | |
| 17 Income or (Loss) from each property. Subtract line 16 from line 2 | 17 | 226,692. | | | |

| 18a Total gross rents. Add gross rents from line 2, columns A through H | 18a | 819,515. |
|---|---|---|
| b Total expenses. Add total expenses from line 16, columns A through H | 18b | (592,823.) |
| 19 Net gain (loss) from Form 4797, Part II, line 17, from the disposition of property from rental real estate activities | 19 | |
| 20a Net income (loss) from rental real estate activities from partnerships, estates, and trusts in which this partnership or S corporation is a partner or beneficiary (from Schedule K-1) | 20a | |

b Identify below the partnerships, estates, or trusts from which net income (loss) is shown on line 20a. Attach a schedule if more space is needed:

| (1) Name | (2) Employer identification number |
|---|---|
| | |
| | |

| 21 Net rental real estate income (loss). Combine lines 18a through 20a. Enter the result here and on: | 21 | 226,692. |
|---|---|---|

* Form 1065 or 1120S: Schedule K, line 2, or
* Form 1065-B: Part I, line 4

020141 02-14-11   JWA   For Paperwork Reduction Act Notice, see page 2 of form.

6

Form 8825 (12-2010)

GB_PROD_82

GREENBRIAR MARKETPLACE **, LLC C/O FGMC

Form 8825 (12-2010)                                                                 Page 2

1 | Show the type and address of each property. For each rental real estate property listed, report the number of days rented at fair rental value and days with personal use. See Instructions.

| Physical address of each property - street, city, state, ZIP code | Type - Enter code 1-8; see below for list | Fair Rental Days | Personal Use Days |
|---|---|---|---|
| E | | | |
| F | | | |
| G | | | |
| H | | | |

| | | Properties | | | |
|---|---|---|---|---|---|
| | | E | F | G | H |
| Rental Real Estate Income | | | | | |
| 2 Gross rents | 2 | | | | |
| Rental Real Estate Expenses | | | | | |
| 3 Advertising | 3 | | | | |
| 4 Auto and travel | 4 | | | | |
| 5 Cleaning and maintenance | 5 | | | | |
| 6 Commissions | 6 | | | | |
| 7 Insurance | 7 | | | | |
| 8 Legal and other professional fees | 8 | | | | |
| 9 Interest | 9 | | | | |
| 10 Repairs | 10 | | | | |
| 11 Taxes | 11 | | | | |
| 12 Utilities | 12 | | | | |
| 13 Wages and salaries | 13 | | | | |
| 14 Depreciation (see instructions) | 14 | | | | |
| 15 Other (list) ▶ | 15 | | | | |
| 16 Total expenses for each property. Add lines 3 through 15 | 16 | | | | |
| 17 Income or (Loss) from each property. Subtract line 16 from line 2 | 17 | | | | |

Allowable Codes for Type of Property
1 - Single Family Residence
2 - Multi-Family Residence
3 - Vacation or Short-Term Rental
4 - Commercial
5 - Land
6 - Royalties
7 - Self-Rental
8 - Other (Include description with the code on Form 8825 or on a separate statement)

JWA                                                                 Form 8825 (12-2010)

020142
02-14-11

7

GB_PROD_83

**SCHEDULE B-1**
**(Form 1065)**
(December 2009)
Department of the Treasury
Internal Revenue Service

## Information on Partners Owning 50% or More of the Partnership

► Attach to Form 1065. See Instructions.

OMB No. 1545-0099

Name of partnership

GREENBRIAR MARKETPLACE II, LLC
C/O FGMC

Employer identification number

**Part I** Entities Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3a)

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see Instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | UNITED STATES | 51.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Part II** Individuals or Estates Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3b)

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see Instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see Instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| KIMBERLY S SWINDALL, DBA OLD NATIONAL | | UNITED STATES | 50.00 |
| | | | |
| | | | |
| | | | |
| | | | |

LHA   For Paperwork Reduction Act Notice, see the Instructions for Form 1065.

Schedule B-1 (Form 1065) (12-2009)

024551
05-01-10

8

GB_PROD_84

1

651110

| Schedule K-1 (Form 1065) | | | |
|---|---|---|---|

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**2010**
For calendar year 2010, or tax
year beginning _____
ending _____

**Partner's Share of Income, Deductions,
Credits, etc.** ► See separate instructions.

☐ Final K-1   ☐ Amended K-1   OMB No. 1545-0099

**Part III   Partner's Share of Current Year Income,
Deductions, Credits, and Other Items**

| | | | |
|---|---|---|---|
| 1 Ordinary business income (loss) | 0. | 15 Credits | |
| 2 Net rental real estate income (loss) | 165,283. | 16 Foreign transactions | |
| 3 Other net rental income (loss) | | | |
| 4 Guaranteed payments | | | |
| 5 Interest income | 223. | | |
| 6a Ordinary dividends | | 17 Alternative min tax (AMT) items | |
| 6b Qualified dividends | | | |
| 7 Royalties | | 18 Tax-exempt income and nondeductible expenses | |
| 8 Net short-term capital gain (loss) | | | |
| 9a Net long-term capital gain (loss) | | | |
| 9b Collectibles (28%) gain (loss) | | 19 Distributions   A | 131,374. |
| 9c Unrecaptured sec 1250 gain | | 20 Other Information   A | 223. |
| 10 Net section 1231 gain (loss) | | | |
| 11 Other income (loss) | | | |
| 12 Section 179 deduction | | | |
| 13 Other deductions | | | |
| 14 Self-employment earnings (loss)   A | 0. | | |

**Part I   Information About the Partnership**

**A** Partnership's employer identification number

▮▮▮▮▮▮▮

**B** Partnership's name, address, city, state, and ZIP code
GREENBRIAR MARKETPLACE II, LLC
C/O FGMC
6085 BARFIELD ROAD, SUITE 200
ATLANTA, GA 30328

**C** IRS Center where partnership filed return
CINCINNATI, OH

**D** ☐ Check if this is a publicly traded partnership (PTP).

**Part II   Information About the Partner**

**E** Partner's identifying number
▮▮▮▮▮▮▮

**F** Partner's name, address, city, state, and ZIP code

6085 BARFIELD ROAD, SUITE 200
ATLANTA, GA 30328

**G** ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I** What type of entity is this partner? ▮▮▮▮▮▮

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 50.0000000% | 50.0000000% |
| Loss | 50.0000000% | 50.0000000% |
| Capital | 51.0000000% | 51.0000000% |

**K** Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | |
| Qualified nonrecourse financing | $ | 1,512,336. |
| Recourse | $ | 0. |

**L** Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | 521,474. |
| Capital contributed during the year | $ | |
| Current year increase (decrease) | $ | 165,506. |
| Withdrawals & distributions | $( | 131,374.) |
| Ending capital account | $ | 555,606. |

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes", attach statement (see instructions)

*See attached statement for additional information.

For Paperwork Reduction Act Notice, see Instructions for Form 1065.

011261
01-24-11 LHA

Schedule K-1 (Form 1065) 2010

13

1

GB_PROD_89

2

651110

**Schedule K-1**
**(Form 1065)**

**2010**

For calendar year 2010, or tax
year beginning _____
ending _____

Department of the Treasury
Internal Revenue Service

**Partner's Share of Income, Deductions,**
**Credits, etc.** ▶ **See separate instructions.**

| ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0099 |
|---|---|---|

**Part III   Partner's Share of Current Year Income,**
**Deductions, Credits, and Other Items**

| | | |
|---|---|---|
| 1 Ordinary business income (loss) 0. | 15 Credits | |
| 2 Net rental real estate income (loss) 61,409. | 16 Foreign transactions | |
| 3 Other net rental income (loss) | | |

**Part I   Information About the Partnership**

A  Partnership's employer identification number

B  Partnership's name, address, city, state, and ZIP code
GREENBRIAR MARKETPLACE II, LLC
C/O FGMC
6085 BARFIELD ROAD, SUITE 200
ATLANTA, GA  30328

C  IRS Center where partnership filed return
CINCINNATI, OH

D  ☐ Check if this is a publicly traded partnership (PTP)

**Part II   Information About the Partner**

E  Partner's identifying number

F  Partner's name, address, city, state, and ZIP code
KIMBERLY S SWINDALL
DBA OLD NATIONAL PROPERTIES, LLC
3137 ST. IVES COUNTRY CLUB
DULUTH, GA 30097

| G | ☐ General partner or LLC member-manager | ☒ Limited partner or other LLC member |
|---|---|---|

H  ☒ Domestic partner      ☐ Foreign partner

I  What type of entity is this partner?  INDIVIDUAL

J  Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 50.0000000% | 50.0000000% |
| Loss | 50.0000000% | 50.0000000% |
| Capital | 49.0000000% | 49.0000000% |

K  Partner's share of liabilities at year end:

| Nonrecourse | $ | |
|---|---|---|
| Qualified nonrecourse financing | $ | 1,512,336. |
| Recourse | $ | 0. |

L  Partner's capital account analysis:

| Beginning capital account | $ | 648,205. |
|---|---|---|
| Capital contributed during the year | $ | |
| Current year increase (decrease) | $ | 61,631. |
| Withdrawals & distributions | $( | 27,500.) |
| Ending capital account | $ | 682,336. |

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

M  Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

| 4 Guaranteed payments | | |
|---|---|---|
| 5 Interest income 222. | | |
| 6a Ordinary dividends | | |
| 6b Qualified dividends | 17 Alternative min tax (AMT) items | |
| 7 Royalties | | |
| 8 Net short-term capital gain (loss) | 18 Tax-exempt income and nondeductible expenses | |
| 9a Net long-term capital gain (loss) | | |
| 9b Collectibles (28%) gain (loss) | 19 Distributions A 27,500. | |
| 9c Unrecaptured sec 1250 gain | 20 Other information A 222. | |
| 10 Net section 1231 gain (loss) | | |
| 11 Other income (loss) | | |
| 12 Section 179 deduction | | |
| 13 Other deductions | | |
| 14 Self-employment earnings (loss) A 0. | | |

*See attached statement for additional information.

For IRS Use Only

011261
01-24-11  LHA  For Paperwork Reduction Act Notice, see Instructions for Form 1065.

14

Schedule K-1 (Form 1065) 2010

2

| Form **1065** | | **U.S. Return of Partnership Income** | | OMB No. 1545-0099 |
|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | | For calendar year 2011, or tax year beginning _____ , _____ , ending _____ , _____ | | **2011** |

| A  Principal business activity | Name of partnership | D  Employer identification number |
|---|---|---|
| INVESTMENTS | GREENBRIAR MARKETPLACE II, LLC C/O FGMC | |
| B  Principal product or service | Print or type. Number, street, and room or suite no. If a P.O. box, see the instructions. | |
| | 6085 BARFIELD ROAD, SUITE 200 | 01/01/2006 |
| REAL ESTATE | City or town, state, and ZIP code | F  Total assets |
| C  Business code number | ATLANTA                                      GA 30328 | $ 4,152,633. |

G   Check applicable boxes:  (1) ☐ Initial return  (2) ☐ Final return  (3) ☐ Name change  (4) ☐ Address change (5) ☐ Amended return
(6) ☐ Technical termination - also check (1) or (2)

H   Check accounting method:  (1) ☐ Cash  (2) ☒ Accrual  (3) ☐ Other (specify) ▶

I   Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year  ▶  2

J   Check if Schedules C and M-3 are attached ........................................................................................................... ☐

Caution. Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.

**Income**

| | | | | |
|---|---|---|---|---|
| 1 a | Merchant card and third-party payments (including amounts reported on Form(s) 1099-K). For 2011, enter -0- | 1a | 0. | |
| b | Gross receipts or sales not reported on line 1a | 1b | | |
| c | Total. Add lines 1a and 1b | 1c | | |
| d | Returns and allowances plus any other adjustments to line 1a | 1d | | |
| e | Subtract line 1d from line 1c | 1e | | |
| 2 | Cost of goods sold (attach Form 1125-A) | 2 | | |
| 3 | Gross profit. Subtract line 2 from line 1e | | 3 | |
| 4 | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) | | 4 | |
| 5 | Net farm profit (loss) (attach Schedule F (Form 1040)) | | 5 | |
| 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | 6 | |
| 7 | Other income (loss) (attach statement) | | 7 | |
| 8 | Total income (loss). Combine lines 3 through 7 | | 8 | |

**Deductions (see the instructions for limitations)**

| | | | |
|---|---|---|---|
| 9 | Salaries and wages (other than to partners) (less employment credits) | 9 | |
| 10 | Guaranteed payments to partners | 10 | |
| 11 | Repairs and maintenance | 11 | |
| 12 | Bad debts | 12 | |
| 13 | Rent | 13 | |
| 14 | Taxes and licenses | 14 | |
| 15 | Interest | 15 | |
| 16 a | Depreciation (if required, attach Form 4562) | 16a | |
| b | Less depreciation reported on Form 1125-A and elsewhere on return | 16b | 16c |
| 17 | Depletion (Do not deduct oil and gas depletion.) | 17 | |
| 18 | Retirement plans, etc. | 18 | |
| 19 | Employee benefit programs | 19 | |
| 20 | Other deductions (attach statement) | 20 | |
| 21 | Total deductions. Add the amounts shown in the far right column for lines 9 through 20 | 21 | 0. |
| 22 | Ordinary business income (loss). Subtract line 21 from line 8 | 22 | 0. |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

▶ _____  ▶ _____
Signature of general partner or limited liability company member manager       Date

May the IRS discuss this return with the preparer shown below (see instr.)?  ☒ Yes  ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| JOY ROBERTS | | | | |
| Firm's name  ▶  M. J. PORTER & ASSOCIATES LLP | | | Firm's EIN ▶ | |
| Firm's address ▶ 5500 INTERSTATE N. PKWY, SUITE 507 ATLANTA, GA 30328 | | | Phone no.  770-956-1977 | |

111001 12-08-11   LHA   For Paperwork Reduction Act Notice, see separate instructions.

Form **1065** (2011)

GB_PROD_100

Form 1065 (2011)    GREENBRIAR MARKETPLACE II, LLC C/O FGMC                              Page 2

| Schedule B | Other Information |

| | | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box: | | |
| a | ☐ Domestic general partnership    b ☐ Domestic limited partnership | | |
| c | ☒ Domestic limited liability company  d ☐ Domestic limited liability partnership | | |
| e | ☐ Foreign partnership    f ☐ Other ▶ | | |
| 2 | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? .................. | X | |
| 3 | At the end of the tax year: | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership ............. | X | |
| b | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership ............. | X | |
| 4 | At the end of the tax year, did the partnership: | | |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see Instructions. If "Yes," complete (i) through (iv) below .................................... | | X |

| (I) Name of Corporation | (II) Employer Identification Number (if any) | (III) Country of Incorporation | (IV) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| | | Yes | No |
|---|---|---|---|
| b | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see Instructions. If "Yes," complete (i) through (v) below .................................... | | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Form **1065** (2011)

111011
12-06-11

09580305 350869 4310          2011.02061 GREENBRIAR MARKETPLACE II,   4310      1
                                                                        GB_PROD_101

Form 1065 (2011)   GREENBRIAR MARKETPLACE II, LLC C/O FGMC

Page 3

| | | Yes | No |
|---|---|---|---|
| 5 | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details | | X |
| 6 | Does the partnership satisfy all four of the following conditions? | | |
| a | The partnership's total receipts for the tax year were less than $250,000. | | |
| b | The partnership's total assets at the end of the tax year were less than $1 million. | | |
| c | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| d | The partnership is not filing and is not required to file Schedule M-3 | | X |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? | | X |
| 8 | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | X |
| 9 | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | X |
| 10 | At any time during calendar year 2011, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts. If "Yes," enter the name of the foreign country. ▶ | | X |
| 11 | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions | | X |
| 12a | Is the partnership making, or had it previously made (and not revoked), a section 754 election? | | X |
| | See instructions for details regarding a section 754 election. | | |
| b | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | X |
| 13 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly-owned by the partnership throughout the tax year) ▶ ☐ | | |
| 14 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? | | X |
| 15 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions ▶ | | |
| 16 | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ▶ | | X |
| 17 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return. ▶ | | |
| 18a | Did you make any payments in 2011 that would require you to file Form(s) 1099? See instructions | X | |
| b | If "Yes," did you or will you file all required Form(s) 1099? | X | |
| 19 | Enter the number of Form(s) 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, attached to this return. ▶ | | |

**Designation of Tax Matters Partner** (see instructions)

Enter below the general partner designated as the tax matters partner (TMP) for the tax year of this return:

| | | | |
|---|---|---|---|
| Name of designated TMP ▶ | ▬▬▬▬▬ | Identifying number of TMP ▶ | ▬▬▬▬▬ |
| If the TMP is an entity, name of TMP representative ▶ | ALBERT ASHKOUTI | Phone number of TMP ▶ | ▬▬▬▬▬ |
| Address of designated TMP ▶ | 6085 BARFIELD ROAD, SUITE 200 ATLANTA, GA 30328 | | |

Form **1065** (2011)

111021
12-06-11

Form 1065 (2011)   GREENBRIAR MARKETPLACE II, LLC C/O FGMC   Page **4**

## Schedule K | Partners' Distributive Share Items

| | | | Total amount |
|---|---|---|---|
| **Income (Loss)** | 1 Ordinary business income (loss) (page 1, line 22) | 1 | 0. |
| | 2 Net rental real estate income (loss) (attach Form 8825)  SEE STATEMENT 1 | 2 | 146,058. |
| | 3 a Other gross rental income (loss) | 3a | |
| | b Expenses from other rental activities (attach statement) | 3b | |
| | c Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 Guaranteed payments | 4 | |
| | 5 Interest income  SEE STATEMENT 2 | 5 | 200. |
| | 6 Dividends:  a Ordinary dividends | 6a | |
| | b Qualified dividends | 6b | |
| | 7 Royalties | 7 | |
| | 8 Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | 8 | |
| | 9 a Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | 9a | |
| | b Collectibles (28%) gain (loss) | 9b | |
| | c Unrecaptured section 1250 gain (attach statement) | 9c | |
| | 10 Net section 1231 gain (loss) (attach Form 4797) | 10 | |
| | 11 Other income (loss) (see instructions) Type ▶ | 11 | |
| **Deductions** | 12 Section 179 deduction (attach Form 4562) | 12 | |
| | 13 a Contributions | 13a | |
| | b Investment interest expense | 13b | |
| | c Section 59(e)(2) expenditures: (1) Type ▶   (2) Amount ▶ | 13c(2) | |
| | d Other deductions (see instructions) Type ▶ | 13d | |
| **Self-Employ-ment** | 14 a Net earnings (loss) from self-employment | 14a | 0. |
| | b Gross farming or fishing income | 14b | |
| | c Gross nonfarm income | 14c | |
| **Credits** | 15 a Low-income housing credit (section 42(j)(5)) | 15a | |
| | b Low-income housing credit (other) | 15b | |
| | c Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | 15c | |
| | d Other rental real estate credits (see instructions)  Type ▶ | 15d | |
| | e Other rental credits (see instructions)  Type ▶ | 15e | |
| | f Other credits (see instructions)  Type ▶ | 15f | |
| **Foreign Transactions** | 16 a Name of country or U.S. possession ▶ | | |
| | b Gross income from all sources | 16b | |
| | c Gross income sourced at partner level | 16c | |
| | Foreign gross income sourced at partnership level | | |
| | d Passive category ▶   e General category ▶   f Other ▶ | 16f | |
| | Deductions allocated and apportioned at partner level | | |
| | g Interest expense ▶   h Other ▶ | 16h | |
| | Deductions allocated and apportioned at partnership level to foreign source income | | |
| | i Passive category ▶   j General category ▶   k Other ▶ | 16k | |
| | l Total foreign taxes (check one): ▶ Paid ☐  Accrued ☐ | 16l | |
| | m Reduction in taxes available for credit (attach statement) | 16m | |
| | n Other foreign tax information (attach statement) | | |
| **Alternative Minimum Tax (AMT) Items** | 17 a Post-1986 depreciation adjustment | 17a | |
| | b Adjusted gain or loss | 17b | |
| | c Depletion (other than oil and gas) | 17c | |
| | d Oil, gas, and geothermal properties - gross income | 17d | |
| | e Oil, gas, and geothermal properties - deductions | 17e | |
| | f Other AMT items (attach statement) | 17f | |
| **Other Information** | 18 a Tax-exempt interest income | 18a | |
| | b Other tax-exempt income | 18b | |
| | c Nondeductible expenses | 18c | |
| | 19 a Distributions of cash and marketable securities | 19a | 188,151. |
| | b Distributions of other property | 19b | |
| | 20 a Investment income | 20a | 200. |
| | b Investment expenses | 20b | |
| | c Other items and amounts (attach statement) | | |

111041
12-06-11

Form **1065** (2011)

09580305 350869 4310          2011.02061 GREENBRIAR MARKETPLACE II,   4310___1

GB_PROD_103

Form 1065 (2011)   GREENBRIAR MARKETPLACE II, LLC C/O FGMC ( ▮▮▮▮▮   Page 5

## Analysis of Net Income (Loss)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16) ............. | | | | **1** | 146,258. |

| 2 | Analysis by partner type: | (I) Corporate | (II) Individual (active) | (III) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|---|
| a | General partners | | | | | | |
| b | Limited partners | | | 44,254. | 102,004. | | |

### Schedule L   Balance Sheets per Books

| | Assets | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | | (a) | (b) | (c) | (d) |
| 1 | Cash | | 402,247. | | 404,883. |
| 2a | Trade notes and accounts receivable | 5,268. | | | |
| b | Less allowance for bad debts | | 5,268. | | |
| 3 | Inventories | | | | |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities | | | | |
| 6 | Other current assets (attach statement) | | | | |
| 7a | Loans to partners (or persons related to partners) | | | | |
| b | Mortgage and real estate loans | | | | |
| 8 | Other investments (attach statement) | | | | |
| 9a | Buildings and other depreciable assets | 4,231,948. | | 4,231,948. | |
| b | Less accumulated depreciation | 769,132. | 3,462,816. | 888,160. | 3,343,788. |
| 10a | Depletable assets | | | | |
| b | Less accumulated depletion | | | | |
| 11 | Land (net of any amortization) | | 403,962. | | 403,962. |
| 12a | Intangible assets (amortizable only) | 4,450. | | 4,450. | |
| b | Less accumulated amortization | 4,450. | | 4,450. | |
| 13 | Other assets (attach statement) | | | | |
| 14 | Total assets | | 4,274,293. | | 4,152,633. |
| | **Liabilities and Capital** | | | | |
| 15 | Accounts payable | | | | |
| 16 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 | Other current liabilities (attach statement) | STATEMENT 3 | 11,679. | | 10,833. |
| 18 | All nonrecourse loans | | 3,024,672. | | 2,940,939. |
| 19a | Loans from partners (or persons related to partners) | | | | 4,812. |
| b | Mortgages, notes, bonds payable in 1 year or more | | | | |
| 20 | Other liabilities (attach statement) | | | | |
| 21 | Partners' capital accounts | | 1,237,942. | | 1,196,049. |
| 22 | Total liabilities and capital | | 4,274,293. | | 4,152,633. |

### Schedule M-1   Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note. Schedule M-3 may be required instead of Schedule M-1 (see instructions).

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | 146,258. | 6 | Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | a | Tax-exempt interest $ | |
| 3 | Guaranteed payments (other than health insurance) | | 7 | Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | |
| 4 | Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | | a | Depreciation $ | |
| a | Depreciation $ | | 8 | Add lines 6 and 7 | |
| b | Travel and entertainment $ | | 9 | Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | 146,258. |
| 5 | Add lines 1 through 4 | 146,258. | | | |

### Schedule M-2   Analysis of Partners' Capital Accounts

| | | | | | |
|---|---|---|---|---|---|
| 1 | Balance at beginning of year | 1,237,942. | 6 | Distributions:  a Cash | 188,151. |
| 2 | Capital contributed:  a Cash | | | b Property | |
| | b Property | | 7 | Other decreases (itemize): | |
| 3 | Net income (loss) per books | 146,258. | | | |
| 4 | Other increases (itemize): | | 8 | Add lines 6 and 7 | 188,151. |
| 5 | Add lines 1 through 4 | 1,384,200. | 9 | Balance at end of year. Subtract line 8 from line 5 | 1,196,049. |

111042
12-05-11

5

Form **1065** (2011)

GB_PROD_104

**SCHEDULE B-1
(Form 1065)**
(Rev. December 2011)
Department of the Treasury
Internal Revenue Service

## Information on Partners Owning 50% or More of the Partnership

▶ Attach to Form 1065. See instructions.

OMB No. 1545-0099

Name of partnership

GREENBRIAR MARKETPLACE II, LLC
C/O FGMC

Employer Identification number

**Part I  Entities Owning 50% or More of the Partnership** (Form 1065, Schedule B, Question 3a)

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, tax-exempt organization, or any foreign government that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | UNITED STATES | 51.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Part II  Individuals or Estates Owning 50% or More of the Partnership** (Form 1065, Schedule B, Question 3b)

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| KIMBERLY S SWINDALL, DBA OLD NATIONAL | | UNITED STATES | 50.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

LHA  For Paperwork Reduction Act Notice, see the Instructions for Form 1065.

Schedule B-1 (Form 1065) (Rev. 12-2011)

124851
12-10-11

09580305 350869 4310          2011.02061 GREENBRIAR MARKETPLACE II,  4310____1

GB_PROD_107

1

651111

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

**2011**

For calendar year 2011, or tax
year beginning _____
ending _____

**Partner's Share of Income, Deductions,**
**Credits, etc.** ▶ See separate Instructions.

| ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0099 |
|---|---|---|

**Part III** Partner's Share of Current Year Income,
Deductions, Credits, and Other Items

| | | |
|---|---|---|
| **1** Ordinary business income (loss) 0. | **16** Credits | |
| **2** Net rental real estate income (loss) 101,904. | **16** Foreign transactions | |
| **3** Other net rental income (loss) | | |
| **4** Guaranteed payments | | |
| **5** Interest income 100. | | |
| **6a** Ordinary dividends | | |
| **6b** Qualified dividends | **17** Alternative min tax (AMT) items | |
| **7** Royalties | | |
| **8** Net short-term capital gain (loss) | **18** Tax-exempt income and nondeductible expenses | |
| **9a** Net long-term capital gain (loss) | | |
| **9b** Collectibles (28%) gain (loss) | **19** Distributions A 122,975. | |
| **9c** Unrecaptured sec 1250 gain | | |
| **10** Net section 1231 gain (loss) | **20** Other Information A 100. | |
| **11** Other income (loss) | | |
| **12** Section 179 deduction | | |
| **13** Other deductions | | |
| **14** Self-employment earnings (loss) A 0. | | |

**Part I** Information About the Partnership

**A** Partnership's employer identification number

▉▉▉▉▉▉▉▉

**B** Partnership's name, address, city, state, and ZIP code
GREENBRIAR MARKETPLACE II, LLC
C/O FGMC
6085 BARFIELD ROAD, SUITE 200
ATLANTA, GA  30328

**C** IRS Center where partnership filed return
CINCINNATI, OH

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II** Information About the Partner

**E** Partner's Identifying number
▉▉▉▉▉▉

**F** Partner's name, address, city, state, and ZIP code

▉▉▉▉▉▉▉▉
6085 BARFIELD ROAD, SUITE 200
ATLANTA, GA 30328

**G** ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I** What type of entity is this partner? ▉▉▉▉▉

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 50.0000000% | 50.0000000% |
| Loss | 50.0000000% | 50.0000000% |
| Capital | 51.0000000% | 51.0000000% |

**K** Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ 1,470,470. |
| Recourse | $ 0. |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ 555,606. |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ 102,004. |
| Withdrawals & distributions | $( 122,975.) |
| Ending capital account | $ 534,635. |

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes", attach statement (see Instructions)

*See attached statement for additional Information.

For IRS Use Only

111261
11-04-11 LHA  For Paperwork Reduction Act Notice, see Instructions for Form 1065.

Schedule K-1 (Form 1065) 2011

13

1

09580305 350869 4310          2011.02061 GREENBRIAR MARKETPLACE II,  4310___1

2

651111

**Schedule K-1**
**(Form 1065)**

**2011**

For calendar year 2011, or tax
year beginning _____
ending _____

Department of the Treasury
Internal Revenue Service

**Partner's Share of Income, Deductions,**
**Credits, etc.** ▶ See separate Instructions.

| | Final K-1 | | Amended K-1 | OMB No. 1545-0099 |

**Part III  Partner's Share of Current Year Income,**
**Deductions, Credits, and Other Items**

| 1 Ordinary business income (loss) | 15 Credits |
| | 0. | |

**Part I  Information About the Partnership**

**A** Partnership's employer identification number

**B** Partnership's name, address, city, state, and ZIP code

GREENBRIAR MARKETPLACE II, LLC
C/O FGMC
6085 BARFIELD ROAD, SUITE 200
ATLANTA, GA  30328

**C** IRS Center where partnership filed return

CINCINNATI, OH

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II  Information About the Partner**

**E** Partner's Identifying number

**F** Partner's name, address, city, state, and ZIP code

KIMBERLY S SWINDALL
DBA OLD NATIONAL PROPERTIES, LLC
3137 ST. IVES COUNTRY CLUB
DULUTH, GA 30097

**G** ☐ General partner or LLC          ☒ Limited partner or other LLC
member-manager                           member

**H** ☒ Domestic partner          ☐ Foreign partner

**I** What type of entity is this partner?  INDIVIDUAL

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 50.0000000% | 50.0000000% |
| Loss | 50.0000000% | 50.0000000% |
| Capital | 49.0000000% | 49.0000000% |

**K** Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ 1,470,469. |
| Recourse | $ 0. |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ 682,336. |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ 44,254. |
| Withdrawals & distributions | $( 65,176.) |
| Ending capital account | $ 661,414. |

☒ Tax basis      ☐ GAAP      ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes      ☒ No
If "Yes", attach statement (see Instructions)

| 2 Net rental real estate income (loss) | |
| | 44,154. | |
| 3 Other net rental income (loss) | 16 Foreign transactions |
| 4 Guaranteed payments | |
| 5 Interest Income | |
| | 100. | |
| 6a Ordinary dividends | |
| 6b Qualified dividends | 17 Alternative min tax (AMT) items |
| 7 Royalties | |
| 8 Net short-term capital gain (loss) | 18 Tax-exempt income and nondeductible expenses |
| 9a Net long-term capital gain (loss) | |
| 9b Collectibles (28%) gain (loss) | 19 Distributions |
| | | A  65,176. |
| 9c Unrecaptured sec 1250 gain | 20 Other Information |
| 10 Net section 1231 gain (loss) | A  100. |
| 11 Other Income (loss) | |
| 12 Section 179 deduction | |
| 13 Other deductions | |
| 14 Self-employment earnings (loss) | |
| A  0. | |

*See attached statement for additional information.

For IRS Use Only

111261
11-04-11 LHA  For Paperwork Reduction Act Notice, see Instructions for Form 1065.

Schedule K-1 (Form 1065) 2011

14

2

09580305 350869 4310          2011.02061 GREENBRIAR MARKETPLACE II,  4310___1

GB_PROD_113

Page 1

Georgia Form **700** (Rev. 9/11)
Partnership Tax Return

1201705018

*CLIENT COPY*

**2011** or other taxable year
Beginning _____ , and Ending _____

[X] Original Return  [ ] Amended Return  [ ] Final Return  [ ] Name Change  [ ] Address Change  [ ] Composite Return Filed

| A. FEI Number | Name | Location of Books for Audit (city) & (state) |
|---|---|---|
| | GREENBRIAR MARKETPLACE II, LLC C/O FGMC | SAME |

| B. GA. Withholding Tax Numbers | | Number and Street | | Country | Telephone Number |
|---|---|---|---|---|---|
| Payroll WH Number | Nonresident WH Number | 6085 BARFIELD ROAD, SUITE | | | |

| C. GA. Sales Tax Reg. No. | City or Town | State | *County Code No. | ZIP Code |
|---|---|---|---|---|
| | ATLANTA | GA | | 30328 |

| D. Name (if different from last year's return) | Number and Street (if different from last year's return) |
|---|---|

| City | State | ZIP Code | If no return was filed last year, state the reason why |
|---|---|---|---|

| E. NAICS Code | F. Kind of Business | G. Basis of this return |
|---|---|---|
| | RE INVESTMENT | ( ) CASH  ( X ) ACCRUAL  ( ) OTHER |

| H. Indicate latest taxable year (within last 6 years) adjusted by the IRS | I. Number of Partners | J. Do you have Nonresident Partners? | K. Number of Nonresident Partners |
|---|---|---|---|
| | 2 | ( ) Yes  or ( X ) No | |

*See Page 5 of the instruction booklet for a list of Georgia county code numbers.

| COMPUTATION OF GEORGIA NET INCOME | (ROUND TO NEAREST DOLLAR) | SCHEDULE 1 |
|---|---|---|

1. Total Income for Georgia purposes (Line 12, Schedule 7) ......... ▶ 1. 146,258
2. Income allocated everywhere (Attach Schedule) ......... ▶ 2.
3. Business income subject to apportionment (Line 1 less Line 2) ......... ▶ 3. 146,258
4. Georgia ratio (Schedule 6, Column C) ......... ▶ 4. 1.000000
5. Net business income apportioned to Georgia (Line 3 x Line 4) ......... ▶ 5. 146,258
6. Net income allocated to Georgia (Attach Schedule) ......... ▶ 6.
7. Total Georgia net income (Add Line 5 and Line 6) ......... ▶ 7. 146,258

Copy of the Federal Return and supporting Schedules must be attached. Otherwise this return shall be deemed incomplete.

**DECLARATION**

I/We declare under the penalties of perjury that I/we have examined this return (including accompanying schedules and statements) and to the best of our knowledge and belief it is true, correct, and complete. If prepared by a person other than taxpayer, this declaration is based on all information of which the preparer has any knowledge.

MAIL TO: Georgia Department of Revenue, Processing Center, P.O. Box 740315, Atlanta, Georgia 30374-0315

*CLIENT COPY*

Signature of Partner (Must be signed by partner)
[ ] I authorize the Georgia Department of Revenue to electronically notify me at the below e-mail address regarding any updates to my account(s).

Signature of preparer other than partner or member

Email Address

Preparer's SSN or PTIN

Date

Date

145301
10-31-11

09580305 350869 4310          2011.02061 GREENBRIAR MARKETPLACE II,   4310___1

GB_PROD_114

 Georgia Form 700/2011    1201705028  **Page 2**

(Partnership) Name GREENBRIAR MARKETPLACE II, LLC C FEIN ███████

---

**GEORGIA TAX CREDITS** (ROUND TO NEAREST DOLLAR)  **SCHEDULE 2**

These are for information purposes only and do not affect Schedules 1 or 3-7. See Pages 7 through 9 of the instructions for a list of available credits and their applicable codes. You must list the appropriate credit type code in the area provided. If you claim more than ten credits, enclose a schedule. Enter the schedule total on Line 11. List the percentage of credit claimed in the percent (%) column.

| Credit Type Code | Company Name | FEIN | % | | Amount of Credit |
|---|---|---|---|---|---|
| 1. | | | | 1. | |
| 2. | | | | 2. | |
| 3. | | | | 3. | |
| 4. | | | | 4. | |
| 5. | | | | 5. | |
| 6. | | | | 6. | |
| 7. | | | | 7. | |
| 8. | | | | 8. | |
| 9. | | | | 9. | |
| 10. | | | | 10. | |
| 11. Enter the total from attached schedule(s) | | | | 11. | |
| 12. TOTAL ALLOWABLE GEORGIA TAX CREDITS FOR THE YEAR | | | | 12. | |

Attach the appropriate form or a detailed schedule for each credit claimed (See pages 7-9 of the instructions for additional information)

**INCOME TO PARTNERS** (ROUND TO NEAREST DOLLAR)  **SCHEDULE 3**

| | | (1.) Name (2.) Street and Number / (3.) City, State and ZIP (4.) I.D. Number | Profit Sharing % | Georgia Source Income |
|---|---|---|---|---|
| A | 1. | SEE STATEMENT 1 | 5. | 6. |
| | 2. | | | |
| | 3. | | | |
| | 4. | | | |
| B | 1. | | 5. | 6. |
| | 2. | | | |
| | 3. | | | |
| | 4. | | | |
| C | 1. | | 5. | 6. |
| | 2. | | | |
| | 3. | | | |
| | 4. | | | |
| D | 1. | | 5. | 6. |
| | 2. | | | |
| | 3. | | | |
| | 4. | | | |
| E | 1. | | 5. | 6. |
| | 2. | | | |
| | 3. | | | |
| | 4. | | | |
| TOTAL | | | | |

**ADDITIONS TO FEDERAL TAXABLE INCOME** (ROUND TO NEAREST DOLLAR)  **SCHEDULE 4**

| | | |
|---|---|---|
| 1. State and municipal bond interest other than Georgia or political subdivision thereof | 1. | |
| 2. Net income or net profits taxes imposed by taxing jurisdictions other than Georgia | 2. | |
| 3. Expenses attributable to tax exempt income | 3. | |

Schedule 4 continued on Page 3

145302
10-31-11

09580305 350869 4310      2011.02061 GREENBRIAR MARKETPLACE II,   4310___1

 GB_PROD_115

Georgia Form 700/2011  Page 3 

1201705038

(Partnership) Name GREENBRIAR MARKETPLACE II, LLC C/O FG FEIN ▓▓▓▓▓▓▓

| ADDITIONS TO FEDERAL TAXABLE INCOME | (ROUND TO NEAREST DOLLAR) | | SCHEDULE 4 (continued) |
|---|---|---|---|
| 4. Federal deduction for income attributable to domestic production activities (IRC section 199) | | 4. | |
| 5. Intangible expenses and related interest costs | | 5. | |
| 6. Captive REIT expenses and costs | | 6. | |
| 7. Other additions (Attach schedule) | | 7. | |
| 8. | | 8. | |
| 9. Total (Add Lines 1 through 8) Enter here and on Line 9, Schedule 7 | | 9. | |

| SUBTRACTIONS FROM FEDERAL TAXABLE INCOME | (ROUND TO NEAREST DOLLAR) | | SCHEDULE 5 |
|---|---|---|---|
| 1. Interest on obligations of United States (must be reduced by direct and indirect interest expense) | ► | 1. | |
| 2. Exception to intangible expenses and related interest cost (Attach IT-Addback) | ► | 2. | |
| 3. Exception to captive REIT expenses and costs (Attach IT-REIT) | ► | 3. | |
| 4. Other subtractions (Attach Schedule) | ► | 4. | |
| 5. | ► | 5. | |
| 6. | ► | 6. | |
| 7. Total (Add Lines 1 through 6) enter here and on Line 11, Schedule 7 | ► | 7. | |

| APPORTIONMENT OF INCOME | (ROUND TO NEAREST DOLLAR) | | | SCHEDULE 8 |
|---|---|---|---|---|
| | | A. WITHIN GEORGIA | B. EVERYWHERE | C. DO NOT ROUND COL (A)/ COL (B) COMPUTE TO SIX DECIMALS |
| 1. Gross receipts from business | 1. | | | |
| 2. Georgia Ratio (Divide Column A by Column B) | 2. | ▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓ |

| COMPUTATION OF TOTAL INCOME FOR GEORGIA PURPOSES | (ROUND TO NEAREST DOLLAR) | | SCHEDULE 7 | |
|---|---|---|---|---|
| 1. Ordinary income (loss) | | ► | 1. | |
| 2. Net income (loss) from rental real estate activities | | ► | 2. | 146,058 |
| 3. a. Gross income from other rental activities | 3a. ► | | | |
| b. Less expenses (attach schedule) | 3b. ► | | | |
| c. Net income (loss) from other rental activities (Line 3a less Line 3b) | | ► | 3c. | |
| 4. Portfolio income (loss): a. Interest income | | ► | 4a. | 200 |
| b. Dividend income | | ► | 4b. | |
| c. Royalty income | | ► | 4c. | |
| d. Net short-term capital gain (loss) | | ► | 4d. | |
| e. Net long-term capital gain (loss) | | ► | 4e. | |
| f. Other portfolio income (loss) | | ► | 4f. | |
| 5. Guaranteed payments to partners | | ► | 5. | |
| 6. Net gain (loss) under Section 1231 | | ► | 6. | |
| 7. Other income (loss) | | ► | 7. | |
| 8. Total Federal income (add Lines 1 through 7) | | ► | 8. | 146,258 |
| 9. Additions to Federal income (Schedule 4, Line 9) | | ► | 9. | |
| 10. Total (add Lines 8 and 9) | | ► | 10. | 146,258 |
| 11. Subtractions from Federal income (Schedule 5, Line 7) | | ► | 11. | |
| 12. Total income for Georgia purposes (Line 10 less Line 11) | | ► | 12. | 146,258 |

| Other Required Federal Information | | | | |
|---|---|---|---|---|
| 1. Salaries and wages (Form 1065) | | ► | 1. | |
| 2. Taxes and licenses (Form 1065) | | ► | 2. | |
| 3. Section 179 deduction (Form 1065) | | ► | 3. | |
| 4. Contributions (Form 1065) | | ► | 4. | |
| 5. Investment interest expense (Form 1065) | | ► | 5. | |
| 6. Section 59(e)(2) expenditures (Form 1065) | | ► | 6. | |

145903  10-31-11

3

GB_PROD_116

GREENBRIAR MARKETPLACE(   , LLC C/O FGMC

| GA 700 | SCHEDULE 3 - INCOME TO PARTNERS | | STATEMENT 1 |
|---|---|---|---|

| PTR NUM | NAME, ADDRESS AND FEDERAL ID NUMBER | PROFIT SHARING | GEORGIA SOURCE INCOME |
|---|---|---|---|
| 1 | 6085 BARFIELD ROAD, SUITE 200 ATLANTA, GA 30328 | 50.0000000 | 102,004. |
| 2 | KIMBERLY S SWINDALL DBA OLD NATIONAL PROPERTIES, LLC 3137 ST. IVES COUNTRY CLUB DULUTH, GA 30097 | 50.0000000 | 44,254. |
| TOTAL | | | 146,258. |

| GEORGIA FORM 700 SCHEDULE K-1 EQUIVALENT | Partner's Georgia Information For Calendar Year 2011 or Fiscal Year Beginning ___ , 2011; and Ending ___ . | 2011 |
|---|---|---|

| Partner's Name, Address and ZIP Code | Partner Number | 2 |
|---|---|---|
| KIMBERLY S SWINDALL DBA OLD NATIONAL PROPERTIES, LLC 3137 ST. IVES COUNTRY CLUB DULUTH, GA 30097 | Partner's Social Security Number | |

| | Resident [X] | Nonresident [ ] |
|---|---|---|
| | Amended Schedule K-1 [ ] | Final Schedule K-1 [ ] |

| Partnership's Name, Address and ZIP Code | Partnership's Identifying Number | |
|---|---|---|
| GREENBRIAR MARKETPLACE II, LLC C/O FGMC 6085 BARFIELD ROAD, SUITE 200 ATLANTA, GA 30328 | Partner's Percentage | 50.0000000 |
| | Georgia Ratio | 1.000000 |

Total Federal Income ............................................................. 44,254.

ADDITIONS TO FEDERAL INCOME

State and municipal bond interest other than Georgia or political subdivision thereof .............. ___
Net income or net profits taxes imposed by taxing jurisdictions other than Georgia ............... ___
Expenses attributable to tax exempt income ........................................... ___
Intangible expenses and related interest costs ......................................... ___
Captive REIT expenses and costs ................................................... ___
Other additions

___
___
___
___
___

SUBTRACTIONS FROM FEDERAL INCOME

Interest on U.S. Obligations ....................................................... ___
Exception to intangible expenses and related interest cost ................................ ___
Exception to captive REIT expenses and costs ......................................... ___
Other subtractions

___
___
___
___

Total Income For Georgia Purposes .................................................. 44,254.

Nonresident Partners:
 Income Allocated Everywhere .................................................... ___
 Business income subject to apportionment ......................................... ___
 Net business income apportioned to Georgia ....................................... ___
 Net income allocated to Georgia ................................................. ___
Total Georgia Income ............................................................ 44,254.
Georgia tax withheld ............................................................. ___
Georgia business credits .......................................................... ___

145391
05-01-11

6

GB_PROD_119

**Form 1065**

Department of the Treasury
Internal Revenue Service

# U.S. Return of Partnership Income

For calendar year 2012, or tax year beginning _____ , _____ , ending _____ , _____

OMB No. 1545-0099

**2012**

| | | |
|---|---|---|
| A Principal business activity | Name of partnership GREENBRIAR MARKETPLACE II, LLC | D Employer identification number |
| INVESTMENTS | Number, street, and room or suite no. If a P.O. box, see the instructions. C/O FGMC | |
| B Principal product or service | Print or type. 6085 BARFIELD ROAD, STE 200 | E Date business started 01/01/2006 |
| REAL ESTATE | City or town, state, and ZIP code | F Total assets |
| C Business code number | ATLANTA                                      GA 30328 | $ 4,037,490. |

G  Check applicable boxes: (1) ☐ Initial return  (2) ☐ Final return  (3) ☐ Name change  (4) ☐ Address change  (5) ☐ Amended return
(6) ☐ Technical termination - also check (1) or (2)

H  Check accounting method: (1) ☐ Cash  (2) ☒ Accrual  (3) ☐ Other (specify) ▶

I  Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶  2

J  Check if Schedules C and M-3 are attached ☐

**Caution.** Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.

**Income**

| | | | |
|---|---|---|---|
| 1 a | Gross receipts or sales | 1a | |
| b | Returns and allowances | 1b | |
| c | Balance. Subtract line 1b from line 1a | | 1c |
| 2 | Cost of goods sold (attach Form 1125-A) | | 2 |
| 3 | Gross profit. Subtract line 2 from line 1c | | 3 |
| 4 | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) | | 4 |
| 5 | Net farm profit (loss) (attach Schedule F (Form 1040)) | | 5 |
| 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | 6 |
| 7 | Other income (loss) (attach statement) | | 7 |
| 8 | Total income (loss). Combine lines 3 through 7 | | 8 |

**Deductions (see the instructions for limitations)**

| | | | |
|---|---|---|---|
| 9 | Salaries and wages (other than to partners) (less employment credits) | | 9 |
| 10 | Guaranteed payments to partners | | 10 |
| 11 | Repairs and maintenance | | 11 |
| 12 | Bad debts | | 12 |
| 13 | Rent | | 13 |
| 14 | Taxes and licenses | | 14 |
| 15 | Interest | | 15 |
| 16 a | Depreciation (if required, attach Form 4562) | 16a | |
| b | Less depreciation reported on Form 1125-A and elsewhere on return | 16b | 16c |
| 17 | Depletion (Do not deduct oil and gas depletion.) | | 17 |
| 18 | Retirement plans, etc. | | 18 |
| 19 | Employee benefit programs | | 19 |
| 20 | Other deductions (attach statement) | | 20 |
| 21 | Total deductions. Add the amounts shown in the far right column for lines 9 through 20 | | 21 |
| 22 | Ordinary business income (loss). Subtract line 21 from line 8 | | 22    0. |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

May the IRS discuss this return with the preparer shown below (see instr.)?  ☒ Yes  ☐ No

▶ _____
Signature of general partner or limited liability company member manager

▶ _____  Date

CLIENT COPY

**Paid Preparer Use Only**

| Print/Type preparer's name JOY ROBERTS | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| Firm's name ▶ M. J. PORTER & ASSOCIATES LLP | | | Firm's EIN ▶ | |
| Firm's address ▶ 5500 INTERSTATE N. PKWY, SUITE 507 ATLANTA, GA 30328 | | | Phone no. 770-956-1977 | |

LHA  For Paperwork Reduction Act Notice, see separate instructions.

Form **1065** (2012)

211001
12-31-12

Form 1065 (2012)   GREENBRIAR MARKETPLACE II, LLC C/O FGMC                          Page **2**

**Schedule B**  Other Information

|  |  | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box: | | |
| a | Domestic general partnership  b  Domestic limited partnership | | |
| c | [X] Domestic limited liability company  d  Domestic limited liability partnership | | |
| e | Foreign partnership  f  Other ▶ | | |
| 2 | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? | X | |
| 3 | At the end of the tax year: | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | X | |
| b | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | X | |
| 4 | At the end of the tax year, did the partnership: | | |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| b | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

|  |  | Yes | No |
|---|---|---|---|
| 5 | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details | | X |
| 6 | Does the partnership satisfy all four of the following conditions? | | |
| a | The partnership's total receipts for the tax year were less than $250,000. | | |
| b | The partnership's total assets at the end of the tax year were less than $1 million. | | |
| c | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| d | The partnership is not filing and is not required to file Schedule M-3 | | X |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? | | X |
| 8 | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | X |
| 9 | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | X |
| 10 | At any time during calendar year 2012, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts. If "Yes," enter the name of the foreign country. ▶ | | X |

Form **1065** (2012)

Form 1065 (2012)   GREENBRIAR MARKETPLACE II, LLC C/O FGMC    Page **3**

| Schedule B | Other Information *(continued)* | | Yes | No |
|---|---|---|---|---|
| 11 | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions | | | X |
| 12a | Is the partnership making, or had it previously made (and not revoked), a section 754 election? See instructions for details regarding a section 754 election. | | | X |
| b | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | | X |
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | | X |
| 13 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly-owned by the partnership throughout the tax year) ▶ ☐ | | | |
| 14 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? | | | X |
| 15 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions ▶ | | | |
| 16 | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ▶ | | | X |
| 17 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return. ▶ | | | |
| 18a | Did you make any payments in 2012 that would require you to file Form(s) 1099? See instructions | | X | |
| b | If "Yes," did you or will you file required Form(s) 1099? | | X | |
| 19 | Enter the number of Form(s) 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, attached to this return. ▶ | | | |
| 20 | Enter the number of partners that are foreign governments under section 892. ▶ | | | |

**Designation of Tax Matters Partner** *(see instructions)*

Enter below the general partner or member-manager designated as the tax matters partner (TMP) for the tax year of this return:

| Name of designated TMP ▶ | | Identifying number of TMP ▶ | |
|---|---|---|---|
| If the TMP is an entity, name of TMP representative | ▶ ALBERT ASHKOUTI | Phone number of TMP ▶ | |
| Address of designated TMP | ▶ 6085 BARFIELD ROAD, SUITE 200<br>ATLANTA, GA 30328 | | |

Form **1065** (2012)

211021
12-31-12

Form 1065 (2012)   GREENBRIAR MARKETPLACE II, LLC C/O FGMC

Page 4

## Schedule K   Partners' Distributive Share Items

| | | | Total amount |
|---|---|---|---|
| **Income (Loss)** | 1 Ordinary business income (loss) (page 1, line 22) | 1 | 0. |
| | 2 Net rental real estate income (loss) (attach Form 8825) SEE STATEMENT 1 | 2 | 220,737. |
| | 3 a Other gross rental income (loss) | 3a | |
| | b Expenses from other rental activities (attach statement) | 3b | |
| | c Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 Guaranteed payments | 4 | |
| | 5 Interest income SEE STATEMENT 2 | 5 | 231. |
| | 6 Dividends: a Ordinary dividends | 6a | |
| | b Qualified dividends | 6b | |
| | 7 Royalties | 7 | |
| | 8 Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | 8 | |
| | 9 a Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | 9a | |
| | b Collectibles (28%) gain (loss) | 9b | |
| | c Unrecaptured section 1250 gain (attach statement) | 9c | |
| | 10 Net section 1231 gain (loss) (attach Form 4797) | 10 | |
| | 11 Other income (loss) (see instructions) Type ▶ | 11 | |
| **Deductions** | 12 Section 179 deduction (attach Form 4562) | 12 | |
| | 13 a Contributions | 13a | |
| | b Investment interest expense | 13b | |
| | c Section 59(e)(2) expenditures: (1) Type ▶ (2) Amount ▶ | 13c(2) | |
| | d Other deductions (see instructions) Type ▶ | 13d | |
| **Self-Employment** | 14 a Net earnings (loss) from self-employment | 14a | 0. |
| | b Gross farming or fishing income | 14b | |
| | c Gross nonfarm income | 14c | |
| **Credits** | 15 a Low-income housing credit (section 42(j)(5)) | 15a | |
| | b Low-income housing credit (other) | 15b | |
| | c Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | 15c | |
| | d Other rental real estate credits (see instructions) Type ▶ | 15d | |
| | e Other rental credits (see instructions) Type ▶ | 15e | |
| | f Other credits (see instructions) Type ▶ | 15f | |
| **Foreign Transactions** | 16 a Name of country or U.S. possession ▶ | | |
| | b Gross income from all sources | 16b | |
| | c Gross income sourced at partner level | 16c | |
| | Foreign gross income sourced at partnership level | | |
| | d Passive category ▶ e General category ▶ f Other ▶ | 16f | |
| | Deductions allocated and apportioned at partner level | | |
| | g Interest expense ▶ h Other ▶ | 16h | |
| | Deductions allocated and apportioned at partnership level to foreign source income | | |
| | i Passive category ▶ j General category ▶ k Other ▶ | 16k | |
| | l Total foreign taxes (check one): ▶ Paid ☐ Accrued ☐ | 16l | |
| | m Reduction in taxes available for credit (attach statement) | 16m | |
| | n Other foreign tax information (attach statement) | | |
| **Alternative Minimum Tax (AMT) Items** | 17 a Post-1986 depreciation adjustment | 17a | |
| | b Adjusted gain or loss | 17b | |
| | c Depletion (other than oil and gas) | 17c | |
| | d Oil, gas, and geothermal properties - gross income | 17d | |
| | e Oil, gas, and geothermal properties - deductions | 17e | |
| | f Other AMT items (attach statement) | 17f | |
| **Other Information** | 18 a Tax-exempt interest income | 18a | |
| | b Other tax-exempt income | 18b | |
| | c Nondeductible expenses | 18c | |
| | 19 a Distributions of cash and marketable securities | 19a | 250,749. |
| | b Distributions of other property | 19b | |
| | 20 a Investment income | 20a | 231. |
| | b Investment expenses | 20b | |
| | c Other items and amounts (attach statement) | | |

211041 12-31-12

Form **1065** (2012)

4

11360323 350869 4310      2012.03013 GREENBRIAR MARKETPLACE II,   4310___1

GB_PROD_126

Form 1065 (2012)   GREENBRIAR MA..ETPLACE II, LLC C/O FGMC   Page 5

## Analysis of Net Income (Loss)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 Net income (loss). Combine Schedule K, lines 1 through 11. From this result, subtract the sum of Schedule K, lines 12 through 13d, and 16l | | | | | **1** | 220,968. |

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | | | | | |
| b Limited partners | | | 81,608. | 139,360. | | |

## Schedule L   Balance Sheets per Books

| Assets | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|
| | (a) | (b) | (c) | (d) |
| 1 Cash | | 404,883. | | 408,761. |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (attach statement) | | | | |
| 7a Loans to partners (or persons related to partners) | | | | |
| b Mortgage and real estate loans | | | | |
| 8 Other investments (attach statement) | | | | |
| 9a Buildings and other depreciable assets | 4,231,948. | | 4,231,948. | |
| b Less accumulated depreciation | 888,160. | 3,343,788. | 1,007,181. | 3,224,767. |
| 10a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | 403,962. | | 403,962. |
| 12a Intangible assets (amortizable only) | 4,450. | | 4,450. | |
| b Less accumulated amortization | 4,450. | | 4,450. | |
| 13 Other assets (attach statement) | | | | |
| 14 Total assets | | 4,152,633. | | 4,037,490. |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | | | |
| 16 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 Other current liabilities (attach statement) | STATEMENT 3 | 10,833. | | 14,421. |
| 18 All nonrecourse loans | | 2,940,939. | | 2,851,989. |
| 19a Loans from partners (or persons related to partners) | | 4,812. | | 4,812. |
| b Mortgages, notes, bonds payable in 1 year or more | | | | |
| 20 Other liabilities (attach statement) | | | | |
| 21 Partners' capital accounts | | 1,196,049. | | 1,166,268. |
| 22 Total liabilities and capital | | 4,152,633. | | 4,037,490. |

## Schedule M-1   Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note. Schedule M-3 may be required instead of Schedule M-1 (see instructions).

| | | | | | |
|---|---|---|---|---|---|
| 1 Net income (loss) per books | | 220,968. | 6 Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 5a, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | | a Tax-exempt interest $ | | |
| 3 Guaranteed payments (other than health insurance) | | | 7 Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | | |
| 4 Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | | | a Depreciation $ | | |
| a Depreciation $ | | | 8 Add lines 6 and 7 | | |
| b Travel and entertainment $ | | | 9 Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | | 220,968. |
| 5 Add lines 1 through 4 | | 220,968. | | | |

## Schedule M-2   Analysis of Partners' Capital Accounts

| | | | | | |
|---|---|---|---|---|---|
| 1 Balance at beginning of year | | 1,196,049. | 6 Distributions: a Cash | | 250,749. |
| 2 Capital contributed: a Cash | | | b Property | | |
| b Property | | | 7 Other decreases (itemize): | | |
| 3 Net income (loss) per books | | 220,968. | | | |
| 4 Other increases (itemize): | | | 8 Add lines 6 and 7 | | 250,749. |
| 5 Add lines 1 through 4 | | 1,417,017. | 9 Balance at end of year. Subtract line 8 from line 5 | | 1,166,268. |

211042
12-31-12                                                    5                                    Form **1065** (2012)

11360323 350869 4310          2012.03013 GREENBRIAR MARKETPLACE II,   4310___1

GB_PROD_127

**Form 8825**
(Rev. December 2010)
Department of the Treasury
Internal Revenue Service

**Rental Real Estate Income and Expenses of a Partnership or an S Corporation**
▶ See instructions on page 2.
▶ Attach to Form 1065, Form 1065-B, or Form 1120S.

OMB No. 1545-1186

Name **GREENBRIAR MARKETPLACE II, LLC**
C/O FGMC

Employer Identification number

**1** Show the type and address of each property. For each rental real estate property listed, report the number of days rented at fair rental value and days with personal use. See instructions. See page 2 to list additional properties.

| | Physical address of each property - street, city, state, ZIP code | Type - Enter code 1-8; see page 2 for list | Fair Rental Days | Personal Use Days |
|---|---|---|---|---|
| A | ATLANTA, GA | 4 | | |
| B | | | | |
| C | | | | |
| D | | | | |

**Properties**

| | Rental Real Estate Income | | A | B | C | D |
|---|---|---|---|---|---|---|
| **2** | Gross rents | **2** | 719,106. | | | |
| | **Rental Real Estate Expenses** | | | | | |
| **3** | Advertising | **3** | | | | |
| **4** | Auto and travel | **4** | | | | |
| **5** | Cleaning and maintenance | **5** | 13,230. | | | |
| **6** | Commissions | **6** | | | | |
| **7** | Insurance | **7** | 24,316. | | | |
| **8** | Legal and other professional fees | **8** | 7,696. | | | |
| **9** | Interest | **9** | 194,907. | | | |
| **10** | Repairs | **10** | 15,544. | | | |
| **11** | Taxes | **11** | 70,841. | | | |
| **12** | Utilities | **12** | 11,114. | | | |
| **13** | Wages and salaries | **13** | | | | |
| **14** | Depreciation (see instructions) | **14** | 119,025. | | | |
| **15** | Other (list) ▶ STMT 5 | **15** | 41,696. | | | |
| | | | | | | |
| | | | | | | |
| **16** | Total expenses for each property. Add lines 3 through 15 | **16** | 498,369. | | | |
| **17** | Income or (Loss) from each property. Subtract line 16 from line 2 | **17** | 220,737. | | | |

| | | | |
|---|---|---|---|
| **18a** Total gross rents. Add gross rents from line 2, columns A through H | **18a** | 719,106. | |
| **b** Total expenses. Add total expenses from line 16, columns A through H | **18b** | ( 498,369 ) | |
| **19** Net gain (loss) from Form 4797, Part II, line 17, from the disposition of property from rental real estate activities | **19** | | |
| **20a** Net income (loss) from rental real estate activities from partnerships, estates, and trusts in which this partnership or S corporation is a partner or beneficiary (from Schedule K-1) | **20a** | | |
| **b** Identify below the partnerships, estates, or trusts from which net income (loss) is shown on line 20a. Attach a schedule if more space is needed: | | | |

| (1) Name | (2) Employer identification number |
|---|---|
| | |
| | |

| | | | |
|---|---|---|---|
| **21** Net rental real estate income (loss). Combine lines 18a through 20a. Enter the result here and on: | **21** | 220,737. | |
| • Form 1065 or 1120S: Schedule K, line 2, or | | | |
| • Form 1065-B: Part I, line 4 | | | |

220141
05-01-12  JWA   For Paperwork Reduction Act Notice, see page 2 of form.

Form **8825** (12-2010)

6

11360323 350869 4310      2012.03013 GREENBRIAR MARKETPLACE II,   4310____1

GB_PROD_128

GREENBRIAR MARKETPLACE I..., LLC C/O FGMC

Form 8825 (12-2010)

Page 2

**1** Show the type and address of each property. For each rental real estate property listed, report the number of days rented at fair rental value and days with personal use. See instructions.

| Physical address of each property - street, city, state, ZIP code | Type - Enter code 1-8; see below for list | Fair Rental Days | Personal Use Days |
|---|---|---|---|
| E | | | |
| F | | | |
| G | | | |
| H | | | |

| | | Properties | | | |
|---|---|---|---|---|---|
| | | E | F | G | H |
| Rental Real Estate Income | | | | | |
| 2 Gross rents | 2 | | | | |
| Rental Real Estate Expenses | | | | | |
| 3 Advertising | 3 | | | | |
| 4 Auto and travel | 4 | | | | |
| 5 Cleaning and maintenance | 5 | | | | |
| 6 Commissions | 6 | | | | |
| 7 Insurance | 7 | | | | |
| 8 Legal and other professional fees | 8 | | | | |
| 9 Interest | 9 | | | | |
| 10 Repairs | 10 | | | | |
| 11 Taxes | 11 | | | | |
| 12 Utilities | 12 | | | | |
| 13 Wages and salaries | 13 | | | | |
| 14 Depreciation (see instructions) | 14 | | | | |
| 15 Other (list) ▶ | 15 | | | | |
| 16 Total expenses for each property. Add lines 3 through 15 | 16 | | | | |
| 17 Income or (Loss) from each property. Subtract line 16 from line 2 | 17 | | | | |

**Allowable Codes for Type of Property**

1 - Single Family Residence
2 - Multi-Family Residence
3 - Vacation or Short-Term Rental
4 - Commercial
5 - Land
6 - Royalties
7 - Self-Rental
8 - Other (include description with the code on Form 8825 or on a separate statement)

JWA

Form 8825 (12-2010)

220142
05-01-12

11360323 350869 4310          2012.03013 GREENBRIAR MARKETPLACE II,   4310___1

GB_PROD_129

**SCHEDULE B-1**
**(Form 1065)**
(Rev. December 2011)
Department of the Treasury
Internal Revenue Service

## Information on Partners Owning 50% or More of the Partnership

▶ Attach to Form 1065. See instructions.

OMB No. 1545-0099

Name of partnership

GREENBRIAR MARKETPLACE II, LLC
C/O FGMC

Employer identification number

**Part I** Entities Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3a)

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, tax-exempt organization, or any foreign government that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | UNITED STATES | 51.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Part II** Individuals or Estates Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3b)

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| KIMBERLY S SWINDALL, DBA OLD NATIONAL | | UNITED STATES | 50.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

LHA  For Paperwork Reduction Act Notice, see the Instructions for Form 1065.

Schedule B-1 (Form 1065) (Rev. 12-2011)

224551
05-01-12

11360323 350869 4310          2012.03013 GREENBRIAR MARKETPLACE II,   4310___1

GB_PROD_130

651112

Schedule K-1
(Form 1065)

**2012**

Department of the Treasury
Internal Revenue Service

For calendar year 2012, or tax
year beginning _____
ending _____

**Partner's Share of Income, Deductions,
Credits, etc.** ▶ See separate Instructions.

| | Final K-1 | | Amended K-1 | OMB No. 1545-0099 |

**Part III  Partner's Share of Current Year Income,
Deductions, Credits, and Other Items**

| | |
|---|---|
| 1 Ordinary business income (loss) 0. | 15 Credits |
| 2 Net rental real estate income (loss) 139,244. | 16 Foreign transactions |
| 3 Other net rental income (loss) | |
| 4 Guaranteed payments | |
| 5 Interest income 116. | |
| 6a Ordinary dividends | 17 Alternative min tax (AMT) items |
| 6b Qualified dividends | |
| 7 Royalties | 18 Tax-exempt income and nondeductible expenses |
| 8 Net short-term capital gain (loss) | |
| 9a Net long-term capital gain (loss) | |
| 9b Collectibles (28%) gain (loss) | 19 Distributions A 154,249. |
| 9c Unrecaptured sec 1250 gain | |
| 10 Net section 1231 gain (loss) | 20 Other information A 116. |
| 11 Other income (loss) | |
| 12 Section 179 deduction | |
| 13 Other deductions | |
| 14 Self-employment earnings (loss) A 0. | |

**Part I  Information About the Partnership**

A  Partnership's employer identification number

B  Partnership's name, address, city, state, and ZIP code
GREENBRIAR MARKETPLACE II, LLC
C/O FGMC
6085 BARFIELD ROAD, STE 200
ATLANTA, GA  30328

C  IRS Center where partnership filed return
CINCINNATI, OH

D  ☐ Check if this is a publicly traded partnership (PTP)

**Part II  Information About the Partner**

E  Partner's identifying number

F  Partner's name, address, city, state, and ZIP code

6085 BARFIELD ROAD, SUITE 200
ATLANTA, GA 30328

G  ☒ General partner or LLC
member-manager
☐ Limited partner or other LLC member

H  ☒ Domestic partner
☐ Foreign partner

I1  What type of entity is this partner?
I2  If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

J  Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 50.0000000% | 50.0000000% |
| Loss | 50.0000000% | 50.0000000% |
| Capital | 51.0000000% | 51.0000000% |

K  Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ 1,425,995. |
| Recourse | $ 0. |

L  Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ 534,635. |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ 139,360. |
| Withdrawals & distributions | $( 154,249.) |
| Ending capital account | $ 519,746. |

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

M  Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If 'Yes', attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

211261
01-03-13 LHA  For Paperwork Reduction Act Notice, see Instructions for Form 1065.   IRS.gov/form1065   Schedule K-1 (Form 1065) 2012

11
1

11360323 350869 4310        2012.03013 GREENBRIAR MARKETPLACE II,   4310___1

GB_PROD_133

1

## Schedule of Activities

For calendar year 2012, or tax year beginning _____ , 2012, and ending _____ , _____

Name: GREENBRIAR MARKETPLACE II, LLC
C/O FGMC

I.D. Number: ▮▮▮▮▮▮

For:

| Description of Activity | Activity Number | 100% Disposal | Publicly Traded Partnership | Type Code | Description |
|---|---|---|---|---|---|
| | 1 | | | 4 | COMMERCIAL - GREENBRIAR MARKETPLACE |

| | Activity - 1 | Activity - | Activity - |
|---|---|---|---|
| Ordinary business income (loss) | | | |
| Net rental real estate income (loss) | 110,369. | | |
| Other net rental income (loss) | | | |
| Interest income | | | |
| Dividends - Ordinary dividends | | | |
| - Qualified dividends | | | |
| Royalties | | | |
| Net short-term capital gain (loss) | | | |
| Net long-term capital gain (loss) | | | |
| - Collectibles (28%) gain (loss) | | | |
| - Unrecaptured Section 1250 gain | | | |
| Net section 1231 gain (loss) | | | |
| Other portfolio income | | | |
| Section 1256 contracts and straddles | | | |
| Other income | | | |
| Section 179 deduction | | | |
| Charitable contributions | | | |
| Portfolio deductions | | | |
| Investment interest expense | | | |
| Section 59(e)(2) expenditures | | | |
| Other deductions | | | |
| Net earnings from self-employment | | | |
| Gross farming or fishing income | | | |
| Gross nonfarm income | | | |
| LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Qualified rehabilitation expenditures related to rental real estate | | | |
| Other rental credits | | | |
| Credits related to other rental activities | | | |
| Recapture of LIH credit - Section 42(j)(5) partnerships | | | |
| - Other | | | |
| Other credits | | | |
| Post-1986 depreciation adjustment | | | |
| Adjusted gain or loss | | | |
| Portion of adjusted gain/loss allocable to short-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to long-term gain/loss | | | |
| Portion of adjusted gain/loss allocable to section 1231 gain/loss | | | |
| Depletion (other than oil and gas) | | | |
| Oil, gas and geothermal properties - gross income | | | |
| Oil, gas and geothermal properties - deductions | | | |
| Other AMT items | | | |
| Investment income | | | |
| Investment expenses | | | |

225001
11-01-12

11360323 350869 4310          2012.03013 GREENBRIAR MARKETPLACE II,   4310___1

1

GB_PROD_134

2

651112

| Schedule K-1<br>(Form 1065) | **2012** | | Final K-1 | Amended K-1 | OMB No. 1545-0099 |
|---|---|---|---|---|---|

**Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

Schedule K-1
(Form 1065)

For calendar year 2012, or tax
year beginning _____
ending _____

Department of the Treasury
Internal Revenue Service

Partner's Share of Income, Deductions,
Credits, etc.                ► See separate Instructions.

| | | |
|---|---|---|
| **1** Ordinary business income (loss)<br>0. | | **15** Credits |
| **2** Net rental real estate income (loss)<br>81,493. | | **16** Foreign transactions |
| **3** Other net rental income (loss) | | |
| **4** Guaranteed payments | | |
| **5** Interest income<br>115. | | |
| **6a** Ordinary dividends | | **17** Alternative min tax (AMT) items |
| **6b** Qualified dividends | | |
| **7** Royalties | | **18** Tax-exempt income and nondeductible expenses |
| **8** Net short-term capital gain (loss) | | |
| **9a** Net long-term capital gain (loss) | | |
| **9b** Collectibles (28%) gain (loss) | | **19** Distributions<br>A       96,500. |
| **9c** Unrecaptured sec 1250 gain | | **20** Other Information<br>A       115. |
| **10** Net section 1231 gain (loss) | | |
| **11** Other Income (loss) | | |

**Part I   Information About the Partnership**

**A** Partnership's employer identification number

**B** Partnership's name, address, city, state, and ZIP code
GREENBRIAR MARKETPLACE II, LLC
C/O FGMC
6085 BARFIELD ROAD, STE 200
ATLANTA, GA  30328

**C** IRS Center where partnership filed return
CINCINNATI, OH

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II   Information About the Partner**

**E** Partner's identifying number
████████

**F** Partner's name, address, city, state, and ZIP code
KIMBERLY S SWINDALL
DBA OLD NATIONAL PROPERTIES, LLC
3137 ST. IVES COUNTRY CLUB
DULUTH, GA 30097

**G** ☐ General partner or LLC member-manager      ☒ Limited partner or other LLC member

**H** ☒ Domestic partner      ☐ Foreign partner

**I1** What type of entity is this partner?  INDIVIDUAL
**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ........... ☐

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 50.0000000% | 50.0000000% |
| Loss | 50.0000000% | 50.0000000% |
| Capital | 49.0000000% | 49.0000000% |

**K** Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | |
| Qualified nonrecourse financing | $ | 1,425,994. |
| Recourse | $ | 0. |

| | | |
|---|---|---|
| **12** Section 179 deduction | | |
| **13** Other deductions | | |
| **14** Self-employment earnings (loss)<br>A       0. | | |

*See attached statement for additional information.

**L** Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | 661,414. |
| Capital contributed during the year | $ | |
| Current year increase (decrease) | $ | 81,608. |
| Withdrawals & distributions | $( | 96,500.) |
| Ending capital account | $ | 646,522. |

For IRS Use Only

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If 'Yes', attach statement (see instructions)

211261
01-03-13 LHA  **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**      IRS.gov/form1065      Schedule K-1 (Form 1065) 2012

13                                                                 2

11360323 350869 4310        2012.03013 GREENBRIAR MARKETPLACE II,  4310___1

GB_PROD_135

Page 1

Georgia Form **700** (Rev. 9/12)
Partnership Tax Return
**2012** or other taxable year

1301705019

Beginning _____ , and Ending _____
[X] Original Return   [ ] Amended Return   [ ] Final Return   [ ] Name Change   [ ] Address Change   [ ] Composite Return Filed

| A. FEI Number | Name | Location of Books for Audit (city) & (state) |
|---|---|---|
| | GREENBRIAR MARKETPLACE II, LLC C/O FGMC | SAME |

| B. GA. Withholding Tax Numbers | | Number and Street | | Country | Telephone Number |
|---|---|---|---|---|---|
| Payroll WH Number | Nonresident WH Number | 6085 BARFIELD ROAD, STE 2 | | | |

| C. GA. Sales Tax Reg. No. | City or Town | State | *County Code No. | ZIP Code |
|---|---|---|---|---|
| | ATLANTA | GA | | 30328 |

| D. Name (if different from last year's return) | Number and Street (if different from last year's return) |
|---|---|

| City | State | ZIP Code | If no return was filed last year, state the reason why |
|---|---|---|---|

| E. NAICS Code | F. Kind of Business | G. Basis of this return |
|---|---|---|
| | RE INVESTMENT | ( ) CASH (X) ACCRUAL ( ) OTHER |

| H. Indicate latest taxable year (within last 5 years) adjusted by the IRS | I. Number of Partners | J. Do you have Nonresident Partners? | K. Number of Nonresident Partners | L. Amount of Non Resident Withholding paid for tax year |
|---|---|---|---|---|
| | 2 | ( ) Yes or (X) No | 0 | 0 |

*See Page 7 of the instruction booklet for a list of Georgia county code numbers.

| COMPUTATION OF GEORGIA NET INCOME | (ROUND TO NEAREST DOLLAR) | SCHEDULE 1 |
|---|---|---|
| 1. Total Income for Georgia purposes (Line 12, Schedule 7) ► | 1. | 220,968 |
| 2. Income allocated everywhere (Attach Schedule) ► | 2. | |
| 3. Business income subject to apportionment (Line 1 less Line 2) ► | 3. | 220,968 |
| 4. Georgia ratio (Schedule 6, Column C) ► | 4. | 1.000000 |
| 5. Net business income apportioned to Georgia (Line 3 x Line 4) ► | 5. | 220,968 |
| 6. Net income allocated to Georgia (Attach Schedule) ► | 6. | |
| 7. Total Georgia net income (Add Line 5 and Line 6) ► | 7. | 220,968 |

Copy of the Federal Return and supporting Schedules must be attached. Otherwise this return shall be deemed incomplete.

**DECLARATION**

I/We declare under the penalties of perjury that I/we have examined this return (including accompanying schedules and statements) and to the best of our knowledge and belief it is true, correct, and complete. If prepared by a person other than taxpayer, this declaration is based on all information of which the preparer has any knowledge.

MAIL TO: Georgia Department of Revenue, Processing Center, P.O. Box 740315, Atlanta, Georgia 30374-0315

Signature of Partner (Must be signed by partner)     Signature of preparer other than partner or member

[ ] I authorize the Georgia Department of Revenue to electronically notify me at the below e-mail address regarding any updates to my account(s).

Email Address     Preparer's SSN or PTIN

Date     245301 11-21-12     Date

11360323 350869 4310     2012.03013 GREENBRIAR MARKETPLACE II,   4310___1

GB_PROD_137

 Georgia Form 700/2012



1301705029

Page 2

**(Partnership) Name** GREENBRIAR MARKETPLACE I **FEIN**

| GEORGIA TAX CREDITS | (ROUND TO NEAREST DOLLAR) | SCHEDULE 2 |
|---|---|---|

These are for information purposes only and do not affect Schedules 1 or 3-7. See Pages 9 through 11 of the instructions for a list of available credits and their applicable codes. You must list the appropriate credit type code in the area provided. If you claim more than ten credits, enclose a schedule. Enter the schedule total on Line 11. List the percentage of credit claimed in the percent (%) column.

| Credit Type Code | Company Name | FEIN | % | | Amount of Credit |
|---|---|---|---|---|---|
| 1. | | | | 1. | |
| 2. | | | | 2. | |
| 3. | | | | 3. | |
| 4. | | | | 4. | |
| 5. | | | | 5. | |
| 6. | | | | 6. | |
| 7. | | | | 7. | |
| 8. | | | | 8. | |
| 9. | | | | 9. | |
| 10. | | | | 10. | |

11. Enter the total from attached schedule(s) ............................................................ **11.**

12. **TOTAL ALLOWABLE GEORGIA TAX CREDITS FOR THE YEAR** .................................... **12.**

Attach the appropriate form or a detailed schedule for each credit claimed (See pages 9-11 of the instructions for additional information)

| INCOME TO PARTNERS | | | (ROUND TO NEAREST DOLLAR) | SCHEDULE 3 |
|---|---|---|---|---|
| (1.) Name (2.) Street and Number | | (3.) City, State and ZIP (4.) I.D. Number | Profit Sharing % | Georgia Source Income |
| A | 1. SEE STATEMENT 1 | | 5. | 6. |
| | 2. | | | |
| | 3. | | | |
| | 4. | | | |
| B | 1. | | 5. | 6. |
| | 2. | | | |
| | 3. | | | |
| | 4. | | | |
| C | 1. | | 5. | 6. |
| | 2. | | | |
| | 3. | | | |
| | 4. | | | |
| D | 1. | | 5. | 6. |
| | 2. | | | |
| | 3. | | | |
| | 4. | | | |
| E | 1. | | 5. | 6. |
| | 2. | | | |
| | 3. | | | |
| | 4. | | | |
| TOTAL | | | | |

| ADDITIONS TO FEDERAL TAXABLE INCOME | (ROUND TO NEAREST DOLLAR) | | SCHEDULE 4 |
|---|---|---|---|
| 1. State and municipal bond interest other than Georgia or political subdivision thereof .................... | 1. | | |
| 2. Net income or net profits taxes imposed by taxing jurisdictions other than Georgia ....................... | 2. | | |
| 3. Expenses attributable to tax exempt income ......................................................................... | 3. | | |

Schedule 4 continued on Page 3     245302 11-26-12

2

11360323 350869 4310         2012.03013 GREENBRIAR MARKETPLACE II,   4310____1

GB_PROD_138

Georgia Form 700/2012



1301705039

Page 3

(Partnership) Name GREENBRIAR MARKETPLACE I FEIN

| ADDITIONS TO FEDERAL TAXABLE INCOME | (ROUND TO NEAREST DOLLAR) | | SCHEDULE 4 (continued) |
|---|---|---|---|
| 4. Federal deduction for income attributable to domestic production activities (IRC section 199) | | 4. | |
| 5. Intangible expenses and related interest costs | | 5. | |
| 6. Captive REIT expenses and costs | | 6. | |
| 7. Other additions (Attach schedule) | | 7. | |
| 8. | | 8. | |
| 9. Total (Add Lines 1 through 8) Enter here and on Line 9, Schedule 7 | | 9. | |

| SUBTRACTIONS FROM FEDERAL TAXABLE INCOME | (ROUND TO NEAREST DOLLAR) | | SCHEDULE 5 |
|---|---|---|---|
| 1. Interest on obligations of United States (must be reduced by direct and indirect interest expense) ▶ | | 1. | |
| 2. Exception to intangible expenses and related interest cost (Attach IT-Addback) | ▶ | 2. | |
| 3. Exception to captive REIT expenses and costs (Attach IT-REIT) | ▶ | 3. | |
| 4. Other subtractions (Attach Schedule) | ▶ | 4. | |
| 5. | ▶ | 5. | |
| 6. | ▶ | 6. | |
| 7. Total (Add Lines 1 through 6) enter here and on Line 11, Schedule 7 | ▶ | 7. | |

| APPORTIONMENT OF INCOME | (ROUND TO NEAREST DOLLAR) | A. WITHIN GEORGIA | B. EVERYWHERE | C. DO NOT ROUND COL (A)/ COL (B) COMPUTE TO SIX DECIMALS | SCHEDULE 6 |
|---|---|---|---|---|---|
| 1. Gross receipts from business | ▶ | | | | |
| 2. Georgia Ratio (Divide Column A by Column B) | ▶ | | | | |

| COMPUTATION OF TOTAL INCOME FOR GEORGIA PURPOSES | (ROUND TO NEAREST DOLLAR) | | SCHEDULE 7 |
|---|---|---|---|
| 1. Ordinary income (loss) | ▶ | 1. | |
| 2. Net income (loss) from rental real estate activities | ▶ | 2. | 220,737 |
| 3. a. Gross income from other rental activities | 3a. ▶ | | |
| b. Less expenses (attach schedule) | 3b. ▶ | | |
| c. Net income (loss) from other rental activities (Line 3a less Line 3b) | ▶ | 3c. | |
| 4. Portfolio income (loss): a. Interest Income | ▶ | 4a. | 231 |
| b. Dividend Income | ▶ | 4b. | |
| c. Royalty Income | ▶ | 4c. | |
| d. Net short-term capital gain (loss) | ▶ | 4d. | |
| e. Net long-term capital gain (loss) | ▶ | 4e. | |
| f. Other portfolio income (loss) | ▶ | 4f. | |
| 5. Guaranteed payments to partners | ▶ | 5. | |
| 6. Net gain (loss) under Section 1231 | ▶ | 6. | |
| 7. Other income (loss) | ▶ | 7. | |
| 8. Total Federal income (add Lines 1 through 7) | ▶ | 8. | 220,968 |
| 9. Additions to Federal income (Schedule 4, Line 9) | ▶ | 9. | |
| 10. Total (add Lines 8 and 9) | ▶ | 10. | 220,968 |
| 11. Subtractions from Federal income (Schedule 5, Line 7) | ▶ | 11. | |
| 12. Total income for Georgia purposes (Line 10 less Line 11) | ▶ | 12. | 220,968 |

| Other Required Federal Information | | | |
|---|---|---|---|
| 1. Salaries and wages (Form 1065) | ▶ | 1. | |
| 2. Taxes and licenses (Form 1065) | ▶ | 2. | |
| 3. Section 179 deduction (Form 1065) | ▶ | 3. | |
| 4. Contributions (Form 1065) | ▶ | 4. | |
| 5. Investment interest expense (Form 1065) | ▶ | 5. | |
| 6. Section 59(e)(2) expenditures (Form 1065) | ▶ | 6. | |

245303
11-21-12

3

GB_PROD_139

GREENBRIAR MARKETPLACE ( , LLC C/O FGMC        (        ████████

GA 700              SCHEDULE 3 - INCOME TO PARTNERS              STATEMENT   1

| PTR NUM | NAME, ADDRESS AND I.D. NUMBER | PROFIT SHARING | GEORGIA SOURCE INCOME |
|---------|-------------------------------|----------------|-----------------------|
| 1       | ████████ 6085 BARFIELD ROAD, SUITE 200 ATLANTA, GA 30328 ██████ | 50.0000000 | 139,360. |
| 2       | KIMBERLY S SWINDALL DBA OLD NATIONAL PROPERTIES, LLC 3137 ST. IVES COUNTRY CLUB DULUTH, GA 30097 ██████ | 50.0000000 | 81,608. |
| TOTAL   |                               |                | 220,968. |

| GEORGIA FORM 700 SCHEDULE K-1 EQUIVALENT | Partner's Georgia Information For Calendar Year 2012 or Fiscal Year Beginning _____ , 2012; and Ending _____ , ____ | 2012 |
|---|---|---|

| Partner's Name, Address and ZIP Code | Partner Number | 1 |
|---|---|---|

Partner's Social Security Number

6085 BARFIELD ROAD, SUITE 200
ATLANTA, GA 30328

| Resident | [X] | Nonresident | [ ] |
| Amended Schedule K-1 | [ ] | Final Schedule K-1 | [ ] |

Partnership's Name, Address and ZIP Code
GREENBRIAR MARKETPLACE II, LLC
C/O FGMC
6085 BARFIELD ROAD, STE 200
ATLANTA, GA  30328

Partnership's Identifying Number

Partner's Percentage    50.0000000
Georgia Ratio            1.000000

Total Federal Income ............................................................................... 139,360.
ADDITIONS TO FEDERAL INCOME

State and municipal bond interest other than Georgia or political subdivision thereof ...........................
Net income or net profits taxes imposed by taxing jurisdictions other than Georgia ...........................
Expenses attributable to tax exempt income .......................................................................
Intangible expenses and related interest costs ...................................................................
Captive REIT expenses and costs ....................................................................................
Other additions

SUBTRACTIONS FROM FEDERAL INCOME

Interest on U.S. Obligations..........................................................................................
Exception to Intangible expenses and related interest cost ...................................................
Exception to captive REIT expenses and costs ................................................................
Other subtractions

Total Income For Georgia Purposes ............................................................................... 139,360.
Nonresident Partners:
   Income Allocated Everywhere .................................................................................
   Business Income subject to apportionment.................................................................
   Net business income apportioned to Georgia .............................................................
   Net income allocated to Georgia .............................................................................
Total Georgia Income .................................................................................................. 139,360.
Georgia tax withheld ....................................................................................................
Georgia business credits ..............................................................................................

245391
05-01-12

11360323 350869 4310          2012.03013 GREENBRIAR MARKETPLACE II,  4310____1

GB_PROD_141

| GEORGIA<br>FORM 700<br>SCHEDULE K-1<br>EQUIVALENT | **Partner's Georgia Information**<br>For Calendar Year 2012 or Fiscal Year<br>Beginning _____ , 2012; and Ending _____ , ____ | **2012** |

| Partner's Name, Address and ZIP Code<br>KIMBERLY S SWINDALL<br>DBA OLD NATIONAL PROPERTIES, LLC<br>3137 ST. IVES COUNTRY CLUB<br>DULUTH, GA 30097 | Partner Number _____ 2 |
|---|---|
| | Partner's Social Security Number |
| | Resident [X]    Nonresident [ ]<br>Amended Schedule K-1 [ ]    Final Schedule K-1 [ ] |

| Partnership's Name, Address and ZIP Code<br>GREENBRIAR MARKETPLACE II, LLC<br>C/O FGMC<br>6085 BARFIELD ROAD, STE 200<br>ATLANTA, GA 30328 | Partnership's Identifying Number |
|---|---|
| | Partner's Percentage      50.0000000<br>Georgia Ratio              1.000000 |

Total Federal Income .................................................................................................. 81,608.
ADDITIONS TO FEDERAL INCOME

State and municipal bond interest other than Georgia or political subdivision thereof ...................................... _____
Net income or net profits taxes imposed by taxing jurisdictions other than Georgia ...................................... _____
Expenses attributable to tax exempt income ............................................................................................ _____
Intangible expenses and related interest costs ........................................................................................ _____
Captive REIT expenses and costs ........................................................................................................... _____
Other additions

_____     _____
_____     _____
_____     _____

SUBTRACTIONS FROM FEDERAL INCOME

Interest on U.S. Obligations ....................................................................................................................... _____
Exception to intangible expenses and related interest cost ....................................................................... _____
Exception to captive REIT expenses and costs ......................................................................................... _____
Other subtractions

_____     _____
_____     _____
_____     _____

Total Income For Georgia Purposes ......................................................................................................... 81,608.
Nonresident Partners:
   Income Allocated Everywhere ............................................................................................................... _____
   Business Income subject to apportionment ............................................................................................ _____
   Net business income apportioned to Georgia ......................................................................................... _____
   Net income allocated to Georgia ........................................................................................................... _____
Total Georgia Income .............................................................................................................................. 81,608.
Georgia tax withheld ................................................................................................................................ _____
Georgia business credits .......................................................................................................................... _____

245391
05-01-12

6

11360323 350869 4310          2012.03013 GREENBRIAR MARKETPLACE II,   4310____1

GB_PROD_142

Form **1065**
Department of the Treasury
Internal Revenue Service

## U.S. Return of Partnership Income

For calendar year 2013, or tax year beginning _____ , _____ , ending _____ , _____

OMB No. 1545-0099

**2013**

**A** Principal business activity
REAL ESTATE LEASING

**B** Principal product or service
RE LEASING

**C** Business code number ▇▇▇

Type or Print

Name of partnership
GREENBRIAR MARKETPLACE II, LLC
C/O FGMC

Number, street, and room or suite no. If a P.O. box, see the instructions.
5000 LAKE FORREST DR STE 400

City or town, state or province, country, and ZIP or foreign postal code
ATLANTA                          GA 30328

**D** Employer identification number ▇▇▇

**E** Date business started
01/01/2006

**F** Total assets
$ 3,925,334.

**G** Check applicable boxes: (1) ☐ Initial return  (2) ☐ Final return  (3) ☐ Name change  (4) ☒ Address change  (5) ☐ Amended return
(6) ☐ Technical termination - also check (1) or (2)

**H** Check accounting method: (1) ☐ Cash  (2) ☒ Accrual  (3) ☐ Other (specify) ▶

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ 2

**J** Check if Schedules C and M-3 are attached ................................................. ☐

Caution. Include only trade or business income and expenses on lines 1a through 22 below. See the Instructions for more information.

| | | | | | |
|---|---|---|---|---|---|
| Income | 1 a | Gross receipts or sales ................................................ | 1a | | |
| | b | Returns and allowances ............................................. | 1b | | |
| | c | Balance. Subtract line 1b from line 1a ........................................................ | | 1c | |
| | 2 | Cost of goods sold (attach Form 1125-A) ........................................................ | | 2 | |
| | 3 | Gross profit. Subtract line 2 from line 1c ........................................................ | | 3 | |
| | 4 | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) .......... | | 4 | |
| | 5 | Net farm profit (loss) (attach Schedule F (Form 1040)) ........................................ | | 5 | |
| | 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) .......................... | | 6 | |
| | 7 | Other income (loss) (attach statement) ........................................................ | | 7 | |
| | 8 | Total income (loss). Combine lines 3 through 7 ................................................ | | 8 | |
| Deductions (see the instructions for limitations) | 9 | Salaries and wages (other than to partners) (less employment credits) ........................ | | 9 | |
| | 10 | Guaranteed payments to partners ............................................................. | | 10 | |
| | 11 | Repairs and maintenance .................................................................... | | 11 | |
| | 12 | Bad debts .................................................................................. | | 12 | |
| | 13 | Rent ....................................................................................... | | 13 | |
| | 14 | Taxes and licenses ......................................................................... | | 14 | |
| | 15 | Interest ................................................................................... | | 15 | |
| | 16 a | Depreciation (if required, attach Form 4562) ................ | 16a | | |
| | b | Less depreciation reported on Form 1125-A and elsewhere on return | 16b | 16c | |
| | 17 | Depletion (Do not deduct oil and gas depletion.) .............................................. | | 17 | |
| | 18 | Retirement plans, etc. ...................................................................... | | 18 | |
| | 19 | Employee benefit programs .................................................................. | | 19 | |
| | 20 | Other deductions (attach statement) .......................................................... | | 20 | |
| | 21 | Total deductions. Add the amounts shown in the far right column for lines 9 through 20 .......... | | 21 | |
| | 22 | Ordinary business income (loss). Subtract line 21 from line 8 ................................. | | 22 | 0. |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

Signature of general partner or limited liability company member manager          Date

May the IRS discuss this return with the preparer shown below (see instr.)? ☒ Yes ☐ No

| | Print/Type preparer's name | Preparer's signature | Date | Check ☒ if self-employed | PTIN |
|---|---|---|---|---|---|
| **Paid Preparer Use Only** | Timothy F Kercheval, CPA | | 03/03/14 | | ▇▇▇ |
| | Firm's name ▶ TIMOTHY F. KERCHEVAL, CPA | | | Firm's EIN ▶ | |
| | Firm's address ▶ 1783 SIDESTREET CIRCLE BROOKHAVEN, GA 30341 | | | Phone no. 770-457-6125 | |

LHA  For Paperwork Reduction Act Notice, see separate instructions.

Form **1065** (2013)

311001
12-18-13

GB_PROD_147

Form 1085 (2013)   GREENBRIAR MARKETPLACE II, LLC C/O FGMC                                        Page **2**

## Schedule B | Other Information

| | | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box: | | |
| | a ☐ Domestic general partnership   b ☐ Domestic limited partnership | | |
| | c ☒ Domestic limited liability company   d ☐ Domestic limited liability partnership | | |
| | e ☐ Foreign partnership   f ☐ Other ▶ | | |
| 2 | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? | | X |
| 3 | At the end of the tax year: | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | X |
| b | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | X |
| 4 | At the end of the tax year, did the partnership: | | |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| | | | | | |
|---|---|---|---|---|---|
| b | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below | | | | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | Yes | No |
|---|---|---|---|
| 5 | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details | | X |
| 6 | Does the partnership satisfy all four of the following conditions? | | |
| a | The partnership's total receipts for the tax year were less than $250,000. | | |
| b | The partnership's total assets at the end of the tax year were less than $1 million. | | |
| c | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| d | The partnership is not filing and is not required to file Schedule M-3 | | X |
| | If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? | | X |
| 8 | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | X |
| 9 | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | X |
| 10 | At any time during calendar year 2013, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR) (formerly TD F 90-22.1). If "Yes," enter the name of the foreign country. ▶ | | X |

Form **1065** (2013)

311011
12-16-13

2

GB_PROD_148

Form 1065 (2013)   GREENBRIAR MARKETPLACE II, LLC C/O FGMC   ▆▆▆▆▆   Page **3**

| Schedule B | Other Information *(continued)* | Yes | No |
|---|---|---|---|
| 11 | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions. | | X |
| 12a | Is the partnership making, or had it previously made (and not revoked), a section 754 election? ........... See instructions for details regarding a section 754 election. | | X |
| b | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions ........... | | X |
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions ........... | | X |
| 13 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly-owned by the partnership throughout the tax year) ........... ▶ ☐ | | |
| 14 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? ........... | | X |
| 15 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions ▶ | | |
| 16 | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ▶ | | X |
| 17 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return. ▶ | | X |
| 18a | Did you make any payments in 2013 that would require you to file Form(s) 1099? See instructions ........... | | |
| b | If "Yes," did you or will you file required Form(s) 1099? ........... | | |
| 19 | Enter the number of Form(s) 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, attached to this return. ▶ | | |
| 20 | Enter the number of partners that are foreign governments under section 892. ▶ | | |

**Designation of Tax Matters Partner** (see instructions)
Enter below the general partner or member-manager designated as the tax matters partner (TMP) for the tax year of this return:

| Name of designated TMP ▶ | ▆▆▆▆▆▆▆▆ | Identifying number of TMP ▶ | ▆▆▆▆▆ |
|---|---|---|---|
| If the TMP is an entity, name of TMP representative ▶ | ALBERT ASHKOUTI | Phone number of TMP ▶ | ▆▆▆▆▆ |
| Address of designated TMP ▶ | 6000 LAKE FORREST DR STE 400 ATLANTA, GA 30328 | | |

Form **1065** (2013)

311021
12-18-13

20590303 130067 GRENBRIARMKT   2013.03000 GREENBRIAR MARKETPLACE II,   GRENBRI1

GB_PROD_149

Form 1065 (2013)   GREENBRIAR MARKETPLACE II, LLC C/O FGMC

Page 4

## Schedule K | Partners' Distributive Share Items

| | | | Total amount |
|---|---|---|---|
| **Income (Loss)** | 1 Ordinary business income (loss) (page 1, line 22) | 1 | 0. |
| | 2 Net rental real estate income (loss) (attach Form 8825)   See Statement 1 | 2 | 246,251. |
| | 3 a Other gross rental income (loss) | 3a | |
| | b Expenses from other rental activities (attach statement) | 3b | |
| | c Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 Guaranteed payments | 4 | |
| | 5 Interest income   See Statement 2 | 5 | 184. |
| | 6 Dividends: a Ordinary dividends | 6a | |
| | b Qualified dividends | 6b | |
| | 7 Royalties | 7 | |
| | 8 Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | 8 | |
| | 9 a Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | 9a | |
| | b Collectibles (28%) gain (loss) | 9b | |
| | c Unrecaptured section 1250 gain (attach statement) | 9c | |
| | 10 Net section 1231 gain (loss) (attach Form 4797) | 10 | |
| | 11 Other income (loss) (see instructions) Type ▶ | 11 | |
| **Deductions** | 12 Section 179 deduction (attach Form 4562) | 12 | |
| | 13 a Contributions | 13a | |
| | b Investment interest expense | 13b | |
| | c Section 59(e)(2) expenditures: (1) Type ▶ (2) Amount ▶ | 13c(2) | |
| | d Other deductions (see instructions) Type ▶ | 13d | |
| **Self-Employ-ment** | 14 a Net earnings (loss) from self-employment | 14a | 0. |
| | b Gross farming or fishing income | 14b | |
| | c Gross nonfarm income | 14c | |
| **Credits** | 15 a Low-income housing credit (section 42(j)(5)) | 15a | |
| | b Low-income housing credit (other) | 15b | |
| | c Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | 15c | |
| | d Other rental real estate credits (see instructions)   Type ▶ | 15d | |
| | e Other rental credits (see instructions)   Type ▶ | 15e | |
| | f Other credits (see instructions)   Type ▶ | 15f | |
| **Foreign Transactions** | 16 a Name of country or U.S. possession ▶ | | |
| | b Gross income from all sources | 16b | |
| | c Gross income sourced at partner level | 16c | |
| | Foreign gross income sourced at partnership level | | |
| | d Passive category ▶   e General category ▶   f Other ▶ | 16f | |
| | Deductions allocated and apportioned at partner level | | |
| | g Interest expense ▶   h Other ▶ | 16h | |
| | Deductions allocated and apportioned at partnership level to foreign source income | | |
| | i Passive category ▶   j General category ▶   k Other ▶ | 16k | |
| | l Total foreign taxes (check one): ▶ Paid ☐   Accrued ☐ | 16l | |
| | m Reduction in taxes available for credit (attach statement) | 16m | |
| | n Other foreign tax information (attach statement) | | |
| **Alternative Minimum Tax (AMT) Items** | 17 a Post-1986 depreciation adjustment | 17a | 1,952. |
| | b Adjusted gain or loss | 17b | |
| | c Depletion (other than oil and gas) | 17c | |
| | d Oil, gas, and geothermal properties - gross income | 17d | |
| | e Oil, gas, and geothermal properties - deductions | 17e | |
| | f Other AMT items (attach statement) | 17f | |
| **Other Information** | 18 a Tax-exempt interest income | 18a | |
| | b Other tax-exempt income | 18b | |
| | c Nondeductible expenses | 18c | |
| | 19 a Distributions of cash and marketable securities | 19a | 267,552. |
| | b Distributions of other property | 19b | |
| | 20 a Investment income | 20a | 184. |
| | b Investment expenses | 20b | |
| | c Other items and amounts (attach statement) | | |

Form 1065 (2013)

311041
12-18-13

20590303 130067 GRENBRIARMKT   2013.03000 GREENBRIAR MARKETPLACE II,   GRENBRI1

GB_PROD_150

Form 1065 (2013)   GREENBRIAR MARKETPLACE II, LLC C/O FGMC                     Page 5

## Analysis of Net Income (Loss)

| | | | | | |
|---|---|---|---|---|---|
| 1 Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l | | | | 1 | 246,435. |

| 2 Analysis by partner type: | (I) Corporate | (II) Individual (active) | (III) Individual (passive) | (iv) Partnership | (v) Exempt Organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | | | | | |
| b Limited partners | | | 97,194. | 149,241. | | |

## Schedule L | Balance Sheets per Books

| Assets | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|
| | (a) | (b) | (c) | (d) |
| 1 Cash | | 408,761. | | 415,630. |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (attach statement) | | | | |
| 7a Loans to partners (or persons related to partners) | | | | |
| b Mortgage and real estate loans | | | | |
| 8 Other investments (attach statement) | | | | |
| 9a Buildings and other depreciable assets | 4,231,948. | | 4,231,948. | |
| b Less accumulated depreciation | 1,007,181. | 3,224,767. | 1,126,206. | 3,105,742. |
| 10a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | 403,962. | | 403,962. |
| 12a Intangible assets (amortizable only) | 4,450. | | | |
| b Less accumulated amortization | 4,450. | | | |
| 13 Other assets (attach statement) | | | | |
| 14 Total assets | | 4,037,490. | | 3,925,334. |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | | | |
| 16 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 Other current liabilities (attach statement) | Statement 3 | 7,554. | | 7,071. |
| 18 All nonrecourse loans | | 2,851,989. | | 2,756,321. |
| 19a Loans from partners (or persons related to partners) | | 4,812. | | 4,813. |
| b Mortgages, notes, bonds payable in 1 year or more | | | | |
| 20 Other liabilities (attach statement) | Statement 4 | 6,867. | | 11,978. |
| 21 Partners' capital accounts | | 1,166,268. | | 1,145,151. |
| 22 Total liabilities and capital | | 4,037,490. | | 3,925,334. |

## Schedule M-1 | Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note. Schedule M-3 may be required instead of Schedule M-1 (see instructions).

| | | | | | |
|---|---|---|---|---|---|
| 1 Net income (loss) per books | 246,435. | 6 Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | | | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | a Tax-exempt interest $ | | | |
| 3 Guaranteed payments (other than health insurance) | | 7 Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | | | |
| 4 Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | | a Depreciation $ | | | |
| a Depreciation $ | | 8 Add lines 6 and 7 | | | |
| b Travel and entertainment $ | | 9 Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | | | 246,435. |
| 5 Add lines 1 through 4 | 246,435. | | | | |

## Schedule M-2 | Analysis of Partners' Capital Accounts

| | | | | |
|---|---|---|---|---|
| 1 Balance at beginning of year | 1,166,268. | 6 Distributions: a Cash | | 267,552. |
| 2 Capital contributed: a Cash | | b Property | | |
| b Property | | 7 Other decreases (itemize): | | |
| 3 Net income (loss) per books | 246,435. | | | |
| 4 Other increases (itemize): | | 8 Add lines 6 and 7 | | 267,552. |
| 5 Add lines 1 through 4 | 1,412,703. | 9 Balance at end of year. Subtract line 8 from line 5 | | 1,145,151. |

311042
12-18-13

5

Form **1065** (2013)

GB_PROD_151

Form **8825**
(Rev. December 2010)
Department of the Treasury
Internal Revenue Service

**Rental Real Estate Income and Expenses of a Partnership or an S Corporation**
► See Instructions on page 2.
► Attach to Form 1065, Form 1065-B, or Form 1120S.

OMB No. 1545-1186

Name   GREENBRIAR MARKETPLACE II, LLC
C/O FGMC

Employer identification number

1   Show the type and address of each property. For each rental real estate property listed, report the number of days rented at fair rental value and days with personal use. See Instructions. See page 2 to list additional properties.

| Physical address of each property – street, city, state, ZIP code | Type - Enter code 1-8; see page 2 for list | Fair Rental Days | Personal Use Days |
|---|---|---|---|
| A GREENBRIAR | | | |
| ATLANTA, GA 30309 | 4 | | |
| B | | | |
| C | | | |
| D | | | |

| | | Properties | | | |
|---|---|---|---|---|---|
| | | A | B | C | D |
| Rental Real Estate Income | | | | | |
| 2 Gross rents | 2 | 717,723. | | | |
| Rental Real Estate Expenses | | | | | |
| 3 Advertising | 3 | | | | |
| 4 Auto and travel | 4 | | | | |
| 5 Cleaning and maintenance | 5 | 18,541. | | | |
| 6 Commissions | 6 | 59. | | | |
| 7 Insurance | 7 | 25,831. | | | |
| 8 Legal and other professional fees | 8 | 7,616. | | | |
| 9 Interest | 9 | 193,307. | | | |
| 10 Repairs | 10 | 6,719. | | | |
| 11 Taxes | 11 | 58,809. | | | |
| 12 Utilities | 12 | 9,113. | | | |
| 13 Wages and salaries | 13 | | | | |
| 14 Depreciation (see instructions) | 14 | 119,025. | | | |
| 15 Other (list) ► Stmt 5 | 15 | 32,452. | | | |
| 16 Total expenses for each property. Add lines 3 through 15 | 16 | 471,472. | | | |
| 17 Income or (Loss) from each property. Subtract line 16 from line 2 | 17 | 246,251. | | | |

| | | |
|---|---|---|
| 18a Total gross rents. Add gross rents from line 2, columns A through H | 18a | 717,723. |
| b Total expenses. Add total expenses from line 16, columns A through H | 18b | 471,472. |
| 19 Net gain (loss) from Form 4797, Part II, line 17, from the disposition of property from rental estate activities | 19 | |
| 20a Net income (loss) from rental real estate activities from partnerships, estates, and trusts in which this partnership or S corporation is a partner or beneficiary (from Schedule K-1) | 20a | |

b Identify below the partnerships, estates, or trusts from which net income (loss) is shown on line 20a. Attach a schedule if more space is needed:

| (1) Name | (2) Employer identification number |
|---|---|
| | |
| | |

| | | |
|---|---|---|
| 21 Net rental real estate income (loss). Combine lines 18a through 20a. Enter the result here and on:<br>• Form 1065 or 1120S: Schedule K, line 2, or<br>• Form 1065-B: Part I, line 4 | 21 | 246,251. |

320141
05-01-13   JWA   For Paperwork Reduction Act Notice, see page 2 of form.

6

Form 8825 (12-2010)

GB_PROD_152

**SCHEDULE B-1**
**(Form 1065)**
(Rev, December 2011)
Department of the Treasury
Internal Revenue Service

## Information on Partners Owning 50% or More of the Partnership

▶ Attach to Form 1065. See Instructions.

OMB No. 1545-0099

Name of partnership

GREENBRIAR MARKETPLACE II, LLC
C/O FGMC

Employer Identification number

**Part I    Entities Owning 50% or More of the Partnership** (Form 1065, Schedule B, Question 3a)

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, tax-exempt organization, or any foreign government that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| ▆▆▆▆▆▆▆▆▆▆ | ▆▆▆▆ | ▆▆▆ | United States | 51.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Part II   Individuals or Estates Owning 50% or More of the Partnership** (Form 1065, Schedule B, Question 3b)

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| KIMBERLY S SWINDALL, DBA OLD NATIONAL | ▆▆▆▆▆ | United States | 50.00 |
| | | | |
| | | | |
| | | | |
| | | | |

LHA  For Paperwork Reduction Act Notice, see the instructions for Form 1065.          Schedule B-1 (Form 1065) (Rev. 12-2011)

324551
05-01-13

8

651113

**Schedule K-1**
**(Form 1065)**

**2013**

Department of the Treasury
Internal Revenue Service

For calendar year 2013, or tax
year beginning _____
ending _____

**Partner's Share of Income, Deductions,**
**Credits, etc.**                    ▶ See separate Instructions.

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0099

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| 1 Ordinary business income (loss) | 15 Credits |
|---|---|
| 0. | |

| 2 Net rental real estate income (loss) | 16 Foreign transactions |
|---|---|
| 149,149. | |

| 3 Other net rental income (loss) | |
|---|---|

| Part I | Information About the Partnership |
|---|---|

**A** Partnership's employer identification number

**B** Partnership's name, address, city, state, and ZIP code
GREENBRIAR MARKETPLACE II, LLC
C/O FGMC
6000 LAKE FORREST DR STE 400
ATLANTA, GA 30328

**C** IRS Center where partnership filed return
E-File

**D** ☐ Check if this is a publicly traded partnership (PTP)

| 4 Guaranteed payments | |
|---|---|

| 5 Interest income | |
|---|---|
| 92. | |

| 6a Ordinary dividends | |
|---|---|

| 6b Qualified dividends | 17 Alternative min tax (AMT) items |
|---|---|
| | A          976. |

| 7 Royalties | |
|---|---|

| 8 Net short-term capital gain (loss) | 18 Tax-exempt income and nondeductible expenses |
|---|---|

| Part II | Information About the Partner |
|---|---|

**E** Partner's identifying number

**F** Partner's name, address, city, state, and ZIP code

6000 LAKE FORREST DR STE 400
ATLANTA, GA 30328

**G** ☐ General partner or LLC
member-manager
☒ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?
**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 50.0000000% | 50.0000000% |
| Loss | 50.0000000% | 50.0000000% |
| Capital | 51.0000000% | 51.0000000% |

**K** Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ 1,378,161. |
| Recourse | $ 11,931. |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ 519,745. |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ 149,241. |
| Withdrawals & distributions | $( 162,052.) |
| Ending capital account | $ 506,934. |

☒ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes", attach statement (see instructions)

| 9a Net long-term capital gain (loss) | |
|---|---|

| 9b Collectibles (28%) gain (loss) | 19 Distributions |
|---|---|
| | A       162,052. |

| 9c Unrecaptured sec 1250 gain | |
|---|---|

| 10 Net section 1231 gain (loss) | 20 Other Information |
|---|---|
| | A            92. |

| 11 Other income (loss) | |
|---|---|

| 12 Section 179 deduction | |
|---|---|

| 13 Other deductions | |
|---|---|

| 14 Self-employment earnings (loss) | |
|---|---|
| A                0. | |

*See attached statement for additional information.

For IRS Use Only

311521
12-03-13   LHA   For Paperwork Reduction Act Notice, see Instructions for Form 1065.

IRS.gov/form1065

Schedule K-1 (Form 1065) 2013

14                                                                                      1

20590303 130067 GRENBRIARMKT    2013.03000 GREENBRIAR MARKETPLACE II,    GRENBRI1

GB_PROD_160

2

651113

**Schedule K-1**
**(Form 1065)**

**2013**

For calendar year 2013, or tax
year beginning _____
ending _____

Department of the Treasury
Internal Revenue Service

**Partner's Share of Income, Deductions,
Credits, etc.**   ▶ See separate Instructions.

☐ Final K-1   ☐ Amended K-1   OMB No. 1545-0099

**Part III   Partner's Share of Current Year Income,
Deductions, Credits, and Other Items**

| | |
|---|---|
| 1 Ordinary business income (loss)  0. | 15 Credits |
| 2 Net rental real estate income (loss)  97,102. | 16 Foreign transactions |
| 3 Other net rental income (loss) | |
| 4 Guaranteed payments | |
| 5 Interest income  92. | |
| 6a Ordinary dividends | |
| 6b Qualified dividends | 17 Alternative min tax (AMT) Items  A  976. |
| 7 Royalties | 18 Tax-exempt income and nondeductible expenses |
| 8 Net short-term capital gain (loss) | |
| 9a Net long-term capital gain (loss) | |
| 9b Collectibles (28%) gain (loss) | 19 Distributions  A  105,500. |
| 9c Unrecaptured sec 1250 gain | 20 Other information  A  92. |
| 10 Net section 1231 gain (loss) | |
| 11 Other income (loss) | |
| 12 Section 179 deduction | |
| 13 Other deductions | |
| 14 Self-employment earnings (loss)  A  0. | |

**Part I**   **Information About the Partnership**

**A** Partnership's employer Identification number
████████████

**B** Partnership's name, address, city, state, and ZIP code
GREENBRIAR MARKETPLACE II, LLC
C/O FGMC
6000 LAKE FORREST DR STE 400
ATLANTA, GA 30328

**C** IRS Center where partnership filed return
E-File

**D** ☐ Check if this is a publicly traded partnership (PTP)

**Part II**   **Information About the Partner**

**E** Partner's identifying number
████████████

**F** Partner's name, address, city, state, and ZIP code
KIMBERLY S SWINDALL
DBA OLD NATIONAL PROPERTIES LLC
3137 ST IVES COUNTRY CLUB
DULUTH, GA 30097

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I1** What type of entity is this partner?  Individual
**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here  ☐

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 50.0000000% | 50.0000000% |
| Loss | 50.0000000% | 50.0000000% |
| Capital | 49.0000000% | 49.0000000% |

**K** Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse | $ |
| Qualified nonrecourse financing | $ 1,378,160. |
| Recourse | $ 11,931. |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ 646,523. |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ 97,194. |
| Withdrawals & distributions | $( 105,500.) |
| Ending capital account | $ 638,217. |

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes", attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

311261
12-03-13 LHA   For Paperwork Reduction Act Notice, see Instructions for Form 1065.   IRS.gov/form1065   Schedule K-1 (Form 1065) 2013

16

20590303 130067 GRENBRIARMKT   2013.03000 GREENBRIAR MARKETPLACE II,   GRENBRI1

GB_PROD_162

Page 1

Georgia Form **700** (Rev. 7/13)
Partnership Tax Return
2013 or other taxable year

1401705011

Beginning _____ and Ending _____

[X] Original Return [ ] Amended Return [ ] Final Return [ ] Name Change [X] Address Change [ ] Composite Return Filed

A. FEI Number

Name
GREENBRIAR MARKETPLACE II, LL ATLANTA

Location of Books for Audit (city) & (state)
GA

B. GA. Withholding Tax Numbers
Payroll WH Number    Nonresident WH Number

Number and Street
6000 LAKE FORREST DR STE

Country

Telephone Number
404-252-6111

C. GA. Sales Tax Reg. No.

City or Town
ATLANTA

State
GA

*County Code No.

ZIP Code
30328

D. Name (if different from last year's return)

Number and Street (if different from last year's return)

City

State    ZIP Code

If no return was filed last year, state the reason why

E. NAICS Code

F. Kind of Business
RE LEASING

G. Date began doing business in GA
01-01-2006

H. Basis of this return
( ) CASH (X) ACCRUAL ( ) OTHER

I. Indicate latest taxable year (within last 5 years) adjusted by the IRS

J. Number of Partners
2

K. Do you have Nonresident Partners?
( ) Yes or (X) No

L. Number of Nonresident Partners
0

M. Amount of Nonresident Withholding paid for tax year
0

*See Page 7 of the instruction booklet for a list of Georgia county code numbers.

| COMPUTATION OF GEORGIA NET INCOME | (ROUND TO NEAREST DOLLAR) | SCHEDULE 1 |
|---|---|---|
| 1. Total Income for Georgia purposes (Line 12, Schedule 7) | 1. | 246435 |
| 2. Income allocated everywhere (Attach Schedule) | 2. | |
| 3. Business income subject to apportionment (Line 1 less Line 2) | 3. | 246435 |
| 4. Georgia ratio (Schedule 6, Column C) | 4. | 1.000000 |
| 5. Net business income apportioned to Georgia (Line 3 x Line 4) | 5. | 246435 |
| 6. Net Income allocated to Georgia (Attach Schedule) | 6. | |
| 7. Total Georgia net income (Add Line 5 and Line 6) | 7. | 246435 |

Copy of the Federal Return and supporting Schedules must be attached. Otherwise this return shall be deemed incomplete.

**DECLARATION**

I/We declare under the penalties of perjury that I/we have examined this return (including accompanying schedules and statements) and to the best of my/our knowledge and belief it is true, correct, and complete. If prepared by a person other than taxpayer, this declaration is based on all information of which the preparer has any knowledge.

MAIL TO: Georgia Department of Revenue, Processing Center, PO Box 740315, Atlanta, Georgia 30374-0315

_____
Signature of Partner (Must be signed by partner)

_____
Signature of preparer other than partner or member

[X] I authorize the Georgia Department of Revenue to electronically notify me at the below e-mail address regarding any updates to my account(s).

_____
Email Address

_____
Preparer's SSN or PTIN

_____
Date

345391
11-05-13

_____
Date

Georgia Form 700/2013



1401705021

Page 2

(Partnership) Name GREENBRIAR MARKETPLACE I                 FEIN

**GEORGIA TAX CREDITS**          (ROUND TO NEAREST DOLLAR)          SCHEDULE 2

These are for information purposes only and do not affect Schedules 1 or 3-7. See Pages 9 through 11 of the instructions for a list of available credits and their applicable codes. You must list the appropriate credit type code in the area provided. If you claim more than ten credits, enclose a schedule. Enter the schedule total on Line 11. List the percentage of credit claimed in the percent (%) column.

| | Credit Type Code | Company Name | FEIN | % | | Amount of Credit |
|---|---|---|---|---|---|---|
| 1. | | | | | 1. | |
| 2. | | | | | 2. | |
| 3. | | | | | 3. | |
| 4. | | | | | 4. | |
| 5. | | | | | 5. | |
| 6. | | | | | 6. | |
| 7. | | | | | 7. | |
| 8. | | | | | 8. | |
| 9. | | | | | 9. | |
| 10. | | | | | 10. | |
| 11. | Enter the total from attached schedule(s) ................................. | | | | 11. | |
| 12. | TOTAL ALLOWABLE GEORGIA TAX CREDITS FOR THE YEAR ................. | | | | 12. | |

Attach the appropriate form or a detailed schedule for each credit claimed (See pages 9-11 of the instructions for additional information)

**INCOME TO PARTNERS**          (ROUND TO NEAREST DOLLAR)          SCHEDULE 3

| | (1.) Name<br>(2.) Street and Number | (3.) City, State and ZIP<br>(4.) I.D. Number | Profit Sharing % | Georgia Source Income |
|---|---|---|---|---|
| A | 1. SEE STATEMENT 1<br>2.<br>3.<br>4. | | 5. | 6. |
| B | 1.<br>2.<br>3.<br>4. | | 5. | 6. |
| C | 1.<br>2.<br>3.<br>4. | | 5. | 6. |
| D | 1.<br>2.<br>3.<br>4. | | 5. | 6. |
| E | 1.<br>2.<br>3.<br>4. | | 5. | 6. |

TOTAL

| **ADDITIONS TO FEDERAL TAXABLE INCOME** | (ROUND TO NEAREST DOLLAR) | | SCHEDULE 4 |
|---|---|---|---|
| 1. State and municipal bond interest other than Georgia or political subdivision thereof ................. | 1. | | |
| 2. Net income or net profits taxes imposed by taxing jurisdictions other than Georgia ................. | 2. | | |
| 3. Expenses attributable to tax exempt income ................................................. | 3. | | |

Schedule 4 continued on Page 3      345302 10-21-13

Georgia Form 700/2013



1401705031

**Page 3**

| (Partnership) Name GREENBRIAR MARKETPLACE I | FEIN | |
|---|---|---|
| **ADDITIONS TO FEDERAL TAXABLE INCOME** (ROUND TO NEAREST DOLLAR) | | **SCHEDULE 4 (continued)** |

| | | |
|---|---|---|
| 4. Federal deduction for income attributable to domestic production activities (IRC section 199) ........... | 4. | |
| 5. Intangible expenses and related interest costs ................................................................ | 5. | |
| 6. Captive REIT expenses and costs ................................................................................ | 6. | |
| 7. Other additions (Attach schedule) ................................................................................ | 7. | |
| 8. ...................................................................................................................... | 8. | |
| 9. Total (Add Lines 1 through 8) Enter here and on Line 9, Schedule 7 ........................................ | 9. | |

| **SUBTRACTIONS FROM FEDERAL TAXABLE INCOME** (ROUND TO NEAREST DOLLAR) | | **SCHEDULE 5** |
|---|---|---|
| 1. Interest on obligations of United States (must be reduced by direct and indirect interest expense) | 1. | |
| 2. Exception to intangible expenses and related interest cost (Attach IT-Addback) ..................... | 2. | |
| 3. Exception to captive REIT expenses and costs (Attach IT-REIT) ....................................... | 3. | |
| 4. Other subtractions (Attach Schedule) .................................................................... | 4. | |
| 5. _____ .......................................................................... | 5. | |
| 6. _____ .......................................................................... | 6. | |
| 7. Total (Add Lines 1 through 6) Enter here and on Line 11, Schedule 7 ............................... | 7. | |

| **APPORTIONMENT OF INCOME** (ROUND TO NEAREST DOLLAR) | | | **SCHEDULE 6** |
|---|---|---|---|
| | A. WITHIN GEORGIA | B. EVERYWHERE | C. DO NOT ROUND COL (A)/ COL (B) COMPUTE TO SIX DECIMALS |
| 1. Gross receipts from business ........................................ | | | |
| 2. Georgia Ratio (Divide Column A by Column B) ............ | | | |

| **COMPUTATION OF TOTAL INCOME FOR GEORGIA PURPOSES** (ROUND TO NEAREST DOLLAR) | | **SCHEDULE 7** |
|---|---|---|
| 1. Ordinary income (loss) ................................................................................ | 1. | |
| 2. Net income (loss) from rental real estate activities ............................................ | 2. | 246251 |
| 3. a. Gross income from other rental activities ................. 3a. | | |
|    b. Less expenses (attach schedule) ..................... 3b. | | |
|    c. Net income (loss) from other rental activities (Line 3a less Line 3b) ............... | 3c. | |
| 4. Portfolio income (loss):  a. Interest income ................................................ | 4a. | 184 |
|               b. Dividend income ........................................ | 4b. | |
|               c. Royalty income .......................................... | 4c. | |
|               d. Net short-term capital gain (loss) ................. | 4d. | |
|               e. Net long-term capital gain (loss) ................. | 4e. | |
|               f. Other portfolio income (loss) ...................... | 4f. | |
| 5. Guaranteed payments to partners ................................................................ | 5. | |
| 6. Net gain (loss) under Section 1231 .............................................................. | 6. | |
| 7. Other income (loss) ................................................................................. | 7. | |
| 8. Total Federal income (add Lines 1 through 7) .............................................. | 8. | 246435 |
| 9. Additions to Federal income (Schedule 4, Line 9) ....................................... | 9. | |
| 10. Total (add Lines 8 and 9) ....................................................................... | 10. | 246435 |
| 11. Subtractions from Federal income (Schedule 5, Line 7) ............................. | 11. | |
| 12. Total income for Georgia purposes (Line 10 less Line 11) ......................... | 12. | 246435 |

Other Required Federal Information

| | | |
|---|---|---|
| 1. Salaries and wages (Form 1065) ................................................................ | 1. | |
| 2. Taxes and licenses (Form 1065) ................................................................ | 2. | |
| 3. Section 179 deduction (Form 1065) ........................................................... | 3. | |
| 4. Contributions (Form 1065) ....................................................................... | 4. | |
| 5. Investment interest expense (Form 1065) .................................................. | 5. | |
| 6. Section 59(e)(2) expenditures (Form 1065) .............................................. | 6. | |

345303
10-21-13

GREENBRIAR MARKETPLACE II, LLC C/O FGMC

| GA 700 | Schedule 3 - Income to Partners | Statement | 1 |

| Ptr Num | Name, Address and I.D. Number | Profit Sharing | Georgia Source Income |
|---------|-------------------------------|----------------|-----------------------|
| 1 | ███████████ <br> 6000 LAKE FORREST DR STE 400 <br> ATLANTA, GA 30328 ██████ | 50.0000000 | 149241. |
| 2 | KIMBERLY S SWINDALL <br> DBA OLD NATIONAL PROPERTIES LLC <br> 3137 ST IVES COUNTRY CLUB <br> DULUTH, GA 30097 ██████ | 50.0000000 | 97194. |
| Total | | | 246435. |

GRENBRIARMK 03/06/2015 1:37 PM

| Form **1065** | | **U.S. Return of Partnership Income** | | | OMB No. 1545-0123 |
|---|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | | For calendar year 2014, or tax year beginning ............................ , ending .............................. ▶ Information about Form 1065 and its separate instructions is at www.irs.gov/form1065. | | | **2014** |

| A  Principal business activity | Type or Print | Name of partnership | D  Employer identification number |
|---|---|---|---|
| **REAL ESTATE** | | **GREENBRIAR MARKETPLACE II, LLC** | |
| B  Principal product or service | | Number, street, and room or suite no. If a P.O. box, see the instructions. | E  Date business started |
| **RE LEASING** | | **6000 LAKE FORREST DR STE 400** | **01/01/2006** |
| C  Business code number | | City or town, state or province, country, and ZIP or foreign postal code | F  Total assets (see the instructions) |
| | | **ATLANTA                    GA 30328** | $     **3,709,469** |

G  Check applicable boxes:  (1) ☐ Initial return  (2) ☐ Final return  (3) ☐ Name change (4) ☐ Address change  (5) ☐ Amended return
(6) ☐ Technical termination – also check (1) or (2)
H  Check accounting method: (1) ☐ Cash  (2) ☒ Accrual  (3) ☐ Other (specify) ▶ .......................................
I  Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ ................ **2**
J  Check if Schedules C and M-3 are attached ............................................................................ ☐

Caution. Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.

| | | | | | | |
|---|---|---|---|---|---|---|
| **Income** | 1a | Gross receipts or sales ................................................. | 1a | | | |
| | b | Returns and allowances ................................................ | 1b | | | |
| | c | Balance. Subtract line 1b from line 1a | | | 1c | |
| | 2 | Cost of goods sold (attach Form 1125-A) | | | 2 | |
| | 3 | Gross profit. Subtract line 2 from line 1c | | | 3 | |
| | 4 | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) | | | 4 | |
| | 5 | Net farm profit (loss) (attach Schedule F (Form 1040)) | | | 5 | |
| | 6 | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | | 6 | |
| | 7 | Other income (loss) (attach statement) | | | 7 | |
| | 8 | Total income (loss). Combine lines 3 through 7 | | | 8 | |
| **Deductions (see the instructions for limitations)** | 9 | Salaries and wages (other than to partners) (less employment credits) | | | 9 | |
| | 10 | Guaranteed payments to partners | | | 10 | |
| | 11 | Repairs and maintenance | | | 11 | |
| | 12 | Bad debts | | | 12 | |
| | 13 | Rent | | | 13 | |
| | 14 | Taxes and licenses | | | 14 | |
| | 15 | Interest | | | 15 | |
| | 16a | Depreciation (if required, attach Form 4562) | 16a | 119,025 | | |
| | b | Less depreciation reported on Form 1125-A and elsewhere on return | 16b | 119,025 | 16c | 0 |
| | 17 | Depletion (Do not deduct oil and gas depletion.) | | | 17 | |
| | 18 | Retirement plans, etc. | | | 18 | |
| | 19 | Employee benefit programs | | | 19 | |
| | 20 | Other deductions (attach statement) | | | 20 | |
| | 21 | Total deductions. Add the amounts shown in the far right column for lines 9 through 20 | | | 21 | 0 |
| | 22 | Ordinary business income (loss). Subtract line 21 from line 8 | | | 22 | |

| Sign Here | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge. | May the IRS discuss this return with the preparer shown below (see instructions)?  ☒ Yes  ☐ No |
|---|---|---|
| | ▶ .........................................................................  Signature of general partner or limited liability company member manager          Date | |

| | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| Paid Preparer Use Only | TIMOTHY F. KERCHEVAL, CPA, CGMA | TIMOTHY F. KERCHEVAL, CPA, CGMA | 03/06/15 | | P00020831 |
| | Firm's name ▶ VICTOR SMITH PC | | | Firm's EIN ▶ | |
| | Firm's address ▶ 10898 CRABAPPLE RD STE 202  ROSWELL, GA          30075-5803 | | | Phone no. | 770-993-2138 |

For Paperwork Reduction Act Notice, see separate instructions.               Form **1065** (2014)

DAA

GRENBRIARMK 03/09/2015 1:37 PM

Form 1065 (2014)  GREENBRIAR MARKETPLACE II, LLC  [redacted]                          Page 2

## Schedule B    Other Information

|     |                                                                                  | Yes | No |
|-----|----------------------------------------------------------------------------------|-----|----|
| 1   | What type of entity is filing this return? Check the applicable box:              |     |    |

| a   | Domestic general partnership | b | Domestic limited partnership |
|-----|------------------------------|---|------------------------------|
| c   | [X] Domestic limited liability company | d | Domestic limited liability partnership |
| e   | Foreign partnership | f | Other ▶ |

|     |                                                                                                                                          | Yes | No |
|-----|------------------------------------------------------------------------------------------------------------------------------------------|-----|----|
| 2   | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? .......................... |     | X  |
| 3   | At the end of the tax year:                                                                                                               |     |    |
| a   | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership ........................... |     | X  |
| b   | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If "Yes," attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership ........................... |     | X  |
| 4   | At the end of the tax year, did the partnership:                                                                                          |     |    |
| a   | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (iv) below .................................. |     | X  |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|-------------------------|----------------------------------------------|--------------------------------|---------------------------------------|
|                         |                                              |                                |                                       |
|                         |                                              |                                |                                       |
|                         |                                              |                                |                                       |
|                         |                                              |                                |                                       |

| b | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below ..................................... | | X |
|---|------|---|---|

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|--------------------|----------------------------------------------|----------------------|------------------------------|----------------------------------------------------------|
|                    |                                              |                      |                              |                                                          |
|                    |                                              |                      |                              |                                                          |
|                    |                                              |                      |                              |                                                          |
|                    |                                              |                      |                              |                                                          |

|     |                                                                                                                                          | Yes | No |
|-----|------------------------------------------------------------------------------------------------------------------------------------------|-----|----|
| 5   | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details ......................... |     | X  |
| 6   | Does the partnership satisfy all four of the following conditions?                                                                        |     |    |
| a   | The partnership's total receipts for the tax year were less than $250,000.                                                                |     |    |
| b   | The partnership's total assets at the end of the tax year were less than $1 million.                                                      |     |    |
| c   | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. |     |    |
| d   | The partnership is not filing and is not required to file Schedule M-3 ...........................  If "Yes," the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. |     | X  |
| 7   | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? .......................... |     | X  |
| 8   | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? .......................... |     | X  |
| 9   | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? .......................... |     | X  |
| 10  | At any time during calendar year 2014, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). If "Yes," enter the name of the foreign country. ▶ |     | X  |

Form **1065** (2014)

DAA

GRENBRIARMK 03/09/2015 1:37 PM

Form 1065 (2014)   GREENBRIAR MARKETPLACE II, LLC ███████████   Page 3

## Schedule B   Other Information (continued)

| | | | Yes | No |
|---|---|---|---|---|
| 11 | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions | | | X |
| 12a | Is the partnership making, or had it previously made (and not revoked), a section 754 election? See instructions for details regarding a section 754 election. | | | X |
| b | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If "Yes," attach a statement showing the computation and allocation of the basis adjustment. See instructions | | | X |
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If 'Yes,' attach a statement showing the computation and allocation of the basis adjustment. See instructions | | | X |
| 13 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly owned by the partnership throughout the tax year) ▶ ☐ | | | |
| 14 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in partnership property? | | | X |
| 15 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions ▶ | | | |
| 16 | Does the partnership have any foreign partners? If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ▶ | | | X |
| 17 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return. ▶ | | | |
| 18a | Did you make any payments in 2014 that would require you to file Form(s) 1099? See instructions | | | X |
| b | If "Yes," did you or will you file required Form(s) 1099? | | | |
| 19 | Enter the number of Form(s) 5471, Information Return of U.S. Persons With Respect to Certain Foreign Corporations, attached to this return. ▶   0 | | | |
| 20 | Enter the number of partners that are foreign governments under section 892. ▶   0 | | | |

**Designation of Tax Matters Partner** (see instructions)

Enter below the general partner or member-manager designated as the tax matters partner (TMP) for the tax year of this return:

| Name of designated TMP ▶ | | Identifying number of TMP ▶ ██████████ |
|---|---|---|
| If the TMP is an entity, name of TMP representative | ALBERT ASHKOUTI | Phone number of TMP ▶ |
| Address of designated TMP ▶ | 6000 LAKE FORREST DRIVE ATLANTA    GA   30328 | |

Form **1065** (2014)

DAA

GB_PROD_177

GRENBRIARMK 03/09/2015 1:37 PM

Form 1065 (2014)  GREENBRIAR MARKETPLACE II, LLC

Page 4

## Schedule K    Partners' Distributive Share Items

| | | | | | Total amount |
|---|---|---|---|---|---|
| Income (Loss) | 1 | Ordinary business income (loss) (page 1, line 22) | | 1 | |
| | 2 | Net rental real estate income (loss) (attach Form 8825) | | 2 | 186,576 |
| | 3a | Other gross rental income (loss) | 3a | | |
| | b | Expenses from other rental activities (attach statement) | 3b | | |
| | c | Other net rental income (loss). Subtract line 3b from line 3a | | 3c | |
| | 4 | Guaranteed payments | | 4 | |
| | 5 | Interest income | | 5 | 74 |
| | 6 | Dividends:  a Ordinary dividends | | 6a | |
| | | b Qualified dividends | 6b | | |
| | 7 | Royalties | | 7 | |
| | 8 | Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | | 8 | |
| | 9a | Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | | 9a | |
| | b | Collectibles (28%) gain (loss) | 9b | | |
| | c | Unrecaptured section 1250 gain (attach statement) | 9c | | |
| | 10 | Net section 1231 gain (loss) (attach Form 4797) | | 10 | |
| | 11 | Other income (loss) (see instructions) Type ▶ | | 11 | |
| Deductions | 12 | Section 179 deduction (attach Form 4562) | | 12 | |
| | 13a | Contributions | | 13a | |
| | b | Investment interest expense | | 13b | |
| | c | Section 59(e)(2) expenditures: | | | |
| | | (1) Type ▶                                    (2) Amount ▶ | | 13c(2) | |
| | d | Other deductions (see instructions) Type ▶ | | 13d | |
| Self-Employ-ment | 14a | Net earnings (loss) from self-employment | | 14a | |
| | b | Gross farming or fishing income | | 14b | |
| | c | Gross nonfarm income | | 14c | |
| Credits | 15a | Low-income housing credit (section 42(j)(5)) | | 15a | |
| | b | Low-income housing credit (other) | | 15b | |
| | c | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) | | 15c | |
| | d | Other rental real estate credits (see instructions)        Type ▶ | | 15d | |
| | e | Other rental credits (see instructions)        Type ▶ | | 15e | |
| | f | Other credits (see instructions)        Type ▶ | | 15f | |
| Foreign Transactions | 16a | Name of country or U.S. possession ▶ | | | |
| | b | Gross income from all sources | | 16b | |
| | c | Gross income sourced at partner level | | 16c | |
| | | Foreign gross income sourced at partnership level | | | |
| | d | Passive category ▶        e General category ▶        f Other ▶ | | 16f | |
| | | Deductions allocated and apportioned at partner level | | | |
| | g | Interest expense ▶        h Other        ▶ | | 16h | |
| | | Deductions allocated and apportioned at partnership level to foreign source income | | | |
| | i | Passive category ▶        j General category ▶        k Other ▶ | | 16k | |
| | l | Total foreign taxes (check one): ▶ Paid ☐    Accrued ☐ | | 16l | |
| | m | Reduction in taxes available for credit (attach statement) | | 16m | |
| | n | Other foreign tax information (attach statement) | | | |
| Alternative Minimum Tax (AMT) Items | 17a | Post-1986 depreciation adjustment | | 17a | 1,952 |
| | b | Adjusted gain or loss | | 17b | |
| | c | Depletion (other than oil and gas) | | 17c | |
| | d | Oil, gas, and geothermal properties – gross income | | 17d | |
| | e | Oil, gas, and geothermal properties – deductions | | 17e | |
| | f | Other AMT items (attach statement) | | 17f | |
| Other Information | 18a | Tax-exempt interest income | | 18a | |
| | b | Other tax-exempt income | | 18b | |
| | c | Nondeductible expenses | | 18c | |
| | 19a | Distributions of cash and marketable securities | | 19a | 303,400 |
| | b | Distributions of other property | | 19b | |
| | 20a | Investment income | | 20a | 74 |
| | b | Investment expenses | | 20b | |
| | c | Other items and amounts (attach statement) | | | |

Form **1065** (2014)

DAA

GRENBRIARMK 03/00/2015 1:37 PM

Form 1065 (2014)   GREENBRIAR MARKETPLACE II, LLC ▮▮▮▮▮   Page 5

## Analysis of Net Income (Loss)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l | | | | | 1 | 186,650 |

| 2 | Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt Organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|---|
| a | General partners | | | | | | |
| b | Limited partners | | | 93,325 | 93,325 | | |

## Schedule L   Balance Sheets per Books

| | Assets | (a) | Beginning of tax year (b) | End of tax year (c) | (d) |
|---|---|---|---|---|---|
| 1 | Cash | | 415,630 | | 318,790 |
| 2a | Trade notes and accounts receivable | | | | |
| b | Less allowance for bad debts | | | | |
| 3 | Inventories | | | | |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities | | | | |
| 6 | Other current assets (attach statement) | | | | |
| 7a | Loans to partners (or persons related to partners) | | | | |
| b | Mortgage and real estate loans | | | | |
| 8 | Other investments (attach statement) | | | | |
| 9a | Buildings and other depreciable assets | 4,231,948 | | 4,231,948 | |
| b | Less accumulated depreciation | 1,126,206 | 3,105,742 | 1,245,231 | 2,986,717 |
| 10a | Depletable assets | | | | |
| b | Less accumulated depletion | | | | |
| 11 | Land (net of any amortization) | | 403,962 | | 403,962 |
| 12a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization | | | | |
| 13 | Other assets (attach statement) | | | | |
| 14 | Total assets | | 3,925,334 | | 3,709,469 |
| | **Liabilities and Capital** | | | | |
| 15 | Accounts payable | | | | |
| 16 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 | Other current liabilities (attach statement) SEE STMT 1 | | 7,071 | | 5,808 |
| 18 | All nonrecourse loans SEE STMT 2 | | 2,756,321 | | 2,654,041 |
| 19a | Loans from partners (or persons related to partners) | | 4,813 | | 4,812 |
| b | Mortgages, notes, bonds payable in 1 year or more | | | | |
| 20 | Other liabilities (attach statement) SEE STMT 3 | | 11,978 | | 16,407 |
| 21 | Partners' capital accounts | | 1,145,151 | | 1,028,401 |
| 22 | Total liabilities and capital | | 3,925,334 | | 3,709,469 |

## Schedule M-1   Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note. The partnership may be required to file Schedule M-3 (see instructions).

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Net income (loss) per books | 186,650 | 6 | Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | a | Tax-exempt interest $ | | |
| 3 | Guaranteed payments (other than health insurance) | | 7 | Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | | |
| 4 | Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | | a | Depreciation  $ | | |
| a | Depreciation  $ | | | | | |
| b | Travel and entertainment  $ | | 8 | Add lines 6 and 7 | | |
| | | | 9 | Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | | 186,650 |
| 5 | Add lines 1 through 4 | 186,650 | | | | |

## Schedule M-2   Analysis of Partners' Capital Accounts

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Balance at beginning of year | 1,145,151 | 6 | Distributions: a Cash | | 303,400 |
| 2 | Capital contributed: a Cash | | | b Property | | |
| | b Property | | 7 | Other decreases (itemize): | | |
| 3 | Net income (loss) per books | 186,650 | | | | |
| 4 | Other increases (itemize): | | 8 | Add lines 6 and 7 | | 303,400 |
| 5 | Add lines 1 through 4 | 1,331,801 | 9 | Balance at end of year. Subtract line 8 from line 5 | | 1,028,401 |

DAA

Form 1065 (2014)

GRENBRIARMK 03/06/2015 1:37 PM

| Form **8825** | Rental Real Estate Income and Expenses of a Partnership or an S Corporation | OMB No. 1545-1186 |
|---|---|---|
| (Rev. December 2010) Department of the Treasury Internal Revenue Service | ▶ See Instructions on back. ▶ Attach to Form 1065, Form 1065-B, or Form 1120S. | |

| Name | Employer Identification number |
|---|---|
| GREENBRIAR MARKETPLACE II, LLC | |

**1** Show the type and address of each property. For each rental real estate property listed, report the number of days rented at fair rental value and days with personal use. See instructions. See page 2 to list additional properties.

| | Physical address of each property—street, city, state, ZIP code | Type—Enter code 1-8; see page 2 for list | Fair Rental Days | Personal Use Days |
|---|---|---|---|---|
| A | GREENBRIAR MARKETPLACE II 3030 MEMORIAL DRIVE ATLANTA          GA  30024 | 4 COMMERCIAL | 365 | |
| B | | | | |
| C | | | | |
| D | | | | |

| | | | Properties | | | |
|---|---|---|---|---|---|---|
| | | | A | B | C | D |
| | Rental Real Estate Income | | | | | |
| 2 | Gross rents | 2 | 703,416 | | | |
| | Rental Real Estate Expenses | | | | | |
| 3 | Advertising | 3 | | | | |
| 4 | Auto and travel | 4 | | | | |
| 5 | Cleaning and maintenance | 5 | 23,558 | | | |
| 6 | Commissions | 6 | | | | |
| 7 | Insurance | 7 | 27,617 | | | |
| 8 | Legal and other professional fees | 8 | 2,892 | | | |
| 9 | Interest | 9 | 182,672 | | | |
| 10 | Repairs | 10 | 38,801 | | | |
| 11 | Taxes | 11 | 74,423 | | | |
| 12 | Utilities | 12 | 11,546 | | | |
| 13 | Wages and salaries | 13 | | | | |
| 14 | Depreciation (see instructions) | 14 | 119,025 | | | |
| 15 | Other (list) ▶ SEE STATEMENT 4 | 15 | 36,306 | | | |
| 16 | Total expenses for each property. Add lines 3 through 15 | 16 | 516,840 | | | |
| 17 | Income or (Loss) from each property. Subtract line 16 from line 2 | 17 | 186,576 | | | |

| 18a | Total gross rents. Add gross rents from line 2, columns A through H | 18a | 703,416 |
|---|---|---|---|
| b | Total expenses. Add total expenses from line 16, columns A through H | 18b | 516,840 |
| 19 | Net gain (loss) from Form 4797, Part II, line 17, from the disposition of property from rental real estate activities | 19 | |
| 20a | Net income (loss) from rental real estate activities from partnerships, estates, and trusts in which this partnership or S corporation is a partner or beneficiary (from Schedule K-1) | 20a | |

**b** Identify below the partnerships, estates, or trusts from which net income (loss) is shown on line 20a. Attach a schedule if more space is needed:

| (1) Name | (2) Employer Identification number |
|---|---|
| | |
| | |

| 21 | Net rental estate income (loss). Combine lines 18a through 20a. Enter the result here and on: • Form 1065 or 1120S: Schedule K, line 2, or • Form 1065-B: Part I, line 4 | 21 | 186,576 |
|---|---|---|---|

For Paperwork Reduction Act Notice, see back of form.

DAA

Form **8825** (12-2010)

GB_PROD_180

GRENBRIARMK 03/06/2015 1:37 PM

| SCHEDULE B-1 (Form 1065) (Rev. December 2011) Department of the Treasury Internal Revenue Service | Information on Partners Owning 50% or More of the Partnership ▶ Attach to Form 1065. See instructions on back. | OMB No. 1545-0099 |
|---|---|---|

Name of partnership
GREENBRIAR MARKETPLACE II, LLC

Employer Identification number (EIN)

**Part I**  Entities Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3a)

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, tax-exempt organization, or any foreign government that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | UNITED STATES | 51.000000 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Part II**  Individuals or Estates Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3b)

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| KIMBERLY DBA O SWINDALL | | UNITED STATES | 50.000000 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 1065.

Schedule B-1 (Form 1065) (Rev. 12-2011)

DAA

GB_PROD_181

GRENBRIARMK 03/08/2015 1:37 PM

651113
OMB No. 1545-0123

**PARTNER# 1**
**Schedule K-1**
**(Form 1065)**
**2014**

Department of the Treasury
Internal Revenue Service

For calendar year 2014, or tax
year beginning _____
ending _____

**Partner's Share of Income, Deductions,**
**Credits, etc.** ▶ See back of form and separate instructions.

☐ Final K-1   ☐ Amended K-1

| **Part III** | **Partner's Share of Current Year Income, Deductions, Credits, and Other Items** |
|---|---|

**Part I   Information About the Partnership**

A  Partnership's employer identification number

B  Partnership's name, address, city, state, and ZIP code

GREENBRIAR MARKETPLACE II, LLC

6000 LAKE FORREST DR STE 400
ATLANTA          GA 30328

C  IRS Center where partnership filed return

E-FILE

D ☐ Check if this is a publicly traded partnership (PTP)

**Part II   Information About the Partner**

E  Partner's identifying number

F  Partner's name, address, city, state, and ZIP code

6000 LAKE FORREST DRIVE
SUITE 400
ATLANTA          GA 30328

G  ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

H  ☒ Domestic partner   ☐ Foreign partner

I1  What type of entity is this partner?

I2  If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

J  Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 50.000000 % | 50.000000 % |
| Loss | 50.000000 % | 50.000000 % |
| Capital | 51.000000 % | 51.000000 % |

K  Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | 1,327,020 |
| Qualified nonrecourse financing | $ | |
| Recourse | $ | 13,513 |

L  Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | 506,934 |
| Capital contributed during the year | $ | |
| Current year increase (decrease) | $ | 93,325 |
| Withdrawals & distributions | $ ( | 151,700 ) |
| Ending capital account | $ | 448,559 |

☐ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

M  Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

| 1 | Ordinary business income (loss) | | 15 | Credits |
|---|---|---|---|---|
| 2 * | Net rental real estate income (loss) | 93,288 | 16 | Foreign transactions |
| 3 | Other net rental income (loss) | | | |
| 4 | Guaranteed payments | | | |
| 5 | Interest income | 37 | | |
| 6a | Ordinary dividends | | | |
| 6b | Qualified dividends | | | |
| 7 | Royalties | | | |
| 8 | Net short-term capital gain (loss) | | | |
| 9a | Net long-term capital gain (loss) | | 17 A | Alternative minimum tax (AMT) items 976 |
| 9b | Collectibles (28%) gain (loss) | | | |
| 9c | Unrecaptured section 1250 gain | | | |
| 10 | Net section 1231 gain (loss) | | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | | |
| 12 | Section 179 deduction | | 19 A | Distributions 151,700 |
| 13 | Other deductions | | 20 | Other information |
| | | | A | 37 |
| | | | Z * | STMT |
| 14 | Self-employment earnings (loss) | | | |

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.
DAA

IRS.gov/form1065

Schedule K-1 (Form 1065) 2014

GRENBRIARMK 03/05/2015 1:37 PM

| | | | |
|---|---|---|---|
| PARTNER# 2 | | ☐ Final K-1 ☐ Amended K-1 | 651113 |
| **Schedule K-1** | **2014** | | OMB No. 1545-0123 |

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

For calendar year 2014, or tax
year beginning _____
ending _____

**Partner's Share of Income, Deductions,**
**Credits, etc.** ▶ See back of form and separate instructions.

| Part I | Information About the Partnership |
|---|---|

A Partnership's employer identification number

B Partnership's name, address, city, state, and ZIP code

GREENBRIAR MARKETPLACE II, LLC

6000 LAKE FORREST DR STE 400
ATLANTA          GA 30328

C IRS Center where partnership filed return

E-FILE

D ☐ Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |
|---|---|

E Partner's identifying number

F Partner's name, address, city, state, and ZIP code

KIMBERLY DBA O SWINDALL

3137 ST IVES COUNTRY CLUB
DULUTH          GA 30097

G ☐ General partner or LLC
member-manager
☒ Limited partner or other LLC
member

H ☒ Domestic partner   ☐ Foreign partner

I1 What type of entity is this partner?  INDIVIDUAL

I2 If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

J Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 50.000000 % | 50.000000 % |
| Loss | 50.000000 % | 50.000000 % |
| Capital | 49.000000 % | 49.000000 % |

K Partner's share of liabilities at year end:

| | | |
|---|---|---|
| Nonrecourse | $ | 1,327,021 |
| Qualified nonrecourse financing | $ | |
| Recourse | $ | 13,514 |

L Partner's capital account analysis:

| | | |
|---|---|---|
| Beginning capital account | $ | 638,217 |
| Capital contributed during the year | $ | |
| Current year increase (decrease) | $ | 93,325 |
| Withdrawals & distributions | $ ( | 151,700 ) |
| Ending capital account | $ | 579,842 |

☐ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

M Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| # | Item | # | Item |
|---|---|---|---|
| 1 | Ordinary business income (loss) | 15 | Credits |
| 2 | Net rental real estate income (loss)  * 93,288 | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments | | |
| 5 | Interest income  37 | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items  A  976 |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | |
| 12 | Section 179 deduction | 19 | Distributions  A  151,700 |
| 13 | Other deductions | 20 | Other information |
| 14 | Self-employment earnings (loss) | A | 37 |

*See attached statement for additional information.

For IRS Use Only

GB_PROD_183

GRENBRIARMK   GREENBRIAR MARKETPLACE II, LLC                    3/6/2015  1:36 PM
▬▬▬▬                    **Federal Statements**

FYE: 12/31/2014

## GREENBRIAR MARKETPLACE II
### Rent and Royalty Schedule - Gross Rents

| Description | Amount |
|---|---:|
| BASE RENTAL INCOME | $    592,059 |
| PREPAID RENTAL INCOME | 7,286 |
| CONCESSIONS | -4,375 |
| LATE FEES | 100 |
| ELECTRICITY REIMBURSEMENTS | 359 |
| WATER/SEWER REIMBURSEMENT | 442 |
| PARKING LOT SWEEPING REIMB | 400 |
| SECURITY SERVICE REIMBURSEMEN | -24,000 |
| REPAIRS & MAINT REIMB | 258 |
| MGT REIMBURSEMENTS | -8,880 |
| TAX REIMBURSEMENTS | 50,184 |
| TAX APPEAL FEE REIMBURSEMENTS | 814 |
| INSURANCE REIMBURSEMENTS | 19,827 |
| CAM REIMBURSEMENTS | 69,146 |
| PREVIOUS YEAR CAM REIMBURSEME | -204 |
| TOTAL | $    703,416 |

## GREENBRIAR MARKETPLACE II
### Rent and Royalty Schedule - Interest Expense

| Description | Amount |
|---|---:|
| INTEREST-MORTGAGE | $    182,672 |
| TOTAL | $    182,672 |

## GREENBRIAR MARKETPLACE II
### Rent and Royalty Schedule - Taxes

| Description | Amount |
|---|---:|
| TAXES-PROPERTY | $    71,890 |
| TAX APPEAL FEE | 2,533 |
| TOTAL | $    74,423 |

## GREENBRIAR MARKETPLACE II
### Rent and Royalty Schedule - Other Expenses

| Description | Amount |
|---|---:|
| GROUNDS-LANDSCAPING | $    4,800 |
| MANAGEMENT FEE | 29,678 |
| BANK FEES | 503 |
| LICENSE/REGISTRATION/FEES | 50 |
| POSTAGE/COURIER/PRINTING | 21 |
| MISC BUSINESS EXPENSE | 1,254 |
| TOTAL | $    36,306 |

GB_PROD_199

3(c)

Greenbriar Discount Mall
2975 Headland Drive
Atlanta, Georgia 30344

March 4, 2014

Melissa Roth
Director of Brand Protection - America
Burberry Limited
444 Madison Avenue
New York, New York 10022

RE: Counterfeit Burberry Merchandise

Dear Ms. Roth:

On behalf of 2925 Properties, LLC d/b/a Greenbriar Discount Mall (GDM), I acknowledge receipt of your letter of February 12, 2014 notifying me that on October 4, 2013, law enforcement agencies executed a search warrant at GDM located at 2975 Headland Drive, Atlanta, Georgia 30311 and found 15 booths offering for sale counterfeit Burberry merchandise and, at that time, 490 counterfeit Burberry items were seized. I further acknowledge that on December 19, 2013, law enforcement agencies returned to GDM and found 3 booths offering for sale counterfeit Burberry merchandise and that two vendors, Azina Zakia Amar and Cheikh Mouhamadou Amar, were arrested for the sale of counterfeit merchandise and 112 counterfeit Burberry items were seized.

Prior to receipt of your letter of February 12, 2014, GDM had already evicted each and every tenant found in either mid to be in possession of any type of counterfeit merchandise, including Burberry items. These tenants were all immediately evicted on the basis of a provision contained in each Lease Agreement between GDM, as Landlord, and each of GDM's tenants. It is important to note that for the two year period immediately prior to the October 4, 2013 event, GBD had contracted with Southeastern Investigations (SI), a private investigation company doing business in the greater Atlanta area, to conduct a minimum of one monthly, on site, unannounced inspection of all GDM tenants to assure that no counterfeit merchandise of any entity with valid United States trademark registrations were possessed, stored, displayed or sold within GDM. As a result of SI's inspections, dozens of tenants have been evicted and counterfeit merchandise seized by GDM at the direction of SI.

The circumstances surrounding GDM's decision to contract with Southeastern Investigations for the aforesaid services are relevant to the issues raised in your letter of February 12, 2014. Specifically, GDM made the decision to hire Southeastern Investigations after receiving a letter similar to the one you sent to GDM, from Coach in January, 2011. After discussing the content of Coach's letter with Tiffany Walden, Coach's counsel, GDM learned from Ms. Walden that Coach had hired Southeastern Investigations to monitor various retail establishments in the greater Atlanta area suspected by Coach to be, either knowingly or unknowingly, allowing the sale of counterfeit merchandise bearing Coach's trademarks. GDM, with Coach's express permission and approval, retained SI to monitor GDM's tenants at 2975 Headland Drive, Atlanta, Georgia 30044 to assure that no counterfeit merchandise of any trademark holders was being displayed, sold and/or stored in GDM.

GB_PROD_44

To reiterate, since GDM retained SI, SI has continuously, without interruption, monitored GDM's tenants from January, 2011 through October, 2013 to assure that all tenants comply with the provision in each GDM Lease Agreement prohibiting the display, sell or storage of any type of counterfeit merchandise displaying any manufacturer's trademarks. During this twenty-two month period, SI has, on several occasions, notified GDM's management that counterfeit merchandise was being displayed, sold and/or stored by a tenant or tenants of GDM and recommended that the tenant's or tenants' Lease Agreement(s) be terminated and the tenant or tenants be forced to immediately vacate the leased space or spaces in question. On each such occasion, GDM has immediately terminated each such tenant's Lease Agreement and forced the tenant to immediately vacate the leased space in particular and GDM's premises in general.

Consequently, until the events of October 4, 2013, GDM reasonably believed that any problems relating to the display, sell or storage of any counterfeit merchandise displaying any manufacturer's trademarks was being proactively and aggressively addressed. That said, given the information set forth in your February 12, 2014 letter, GDM concluded that SI's prophylactic actions were deficient and GDM has independently inspected its tenants' leased premises (booths) and has posted large signs throughout its premises notifying customers and tenants alike of GDM's zero tolerance policy regarding the possession, display or sale of any counterfeit merchandise of any kind. Further, on January 17, 2014, I personally met with Tamara Taylor, a paralegal in the employ of Louis Vuitton, at GDM. During that meeting, I, my husband, and Lawrence Sterling, principal of Sterling Management, the entity that manages GDM at 2975 Headland Drive, Atlanta, Georgia received extensive training relating to identifying counterfeit Louis Vuitton merchandise and establishing more stringent inspection and enforcement procedures.

Additionally, since October 4, 2013, GDM has provided J.D. Cannon, a Homeland Security agent and one of the law enforcement agents present during the events of October 4, 2014 and December 19, 2013, with any and all information requested by him, including, but not limited to, copies of Lease Agreements of tenants evicted during and after the actions of October 4th and December 19th and information pertinent to the tenants set forth in said leases. Most importantly, GDM has notified Agent Cannon that he and his agency has 24/7/365 access to any leased space or any other areas within the premises of GDM to assist GDM in its ongoing efforts to identify and prosecute any GDM tenant or any other persons or entities involved in counterfeiting within the borders of the City of Atlanta or any other geographic areas within the jurisdiction of Homeland Security. In this regard, GDM has repeatedly urged Agent Cannon to expand his agency's investigative efforts to include tracing the shipments of counterfeit merchandise into GDM and other similar entities. In particular, GDM has repeatedly informed Agent Cannon that an undercover sting operation, known only by myself and my husband, within GDM's premises might well achieve results much more far reaching than the counterfeit violations previously described herein.

GDM has also notified Agent Cannon that its efforts to shut down any and all counterfeit activities within its premises now and in the future have been thwarted by his agency's failure to enforce the counterfeiting laws enumerated in your February 12, 2014 letter to GDM. For reasons that I can not fathom, Agent Cannon has refused GDM's offers of cooperation and request to enforce the laws at Old National Discount Mall located at 2660 Godby Road, College Park, Fulton County, Georgia. GDM has repeatedly pointed out to Agent Cannon orally and in writing that GDM's tenants routinely complain about the fact that while GDM has established a zero tolerance policy regarding counterfeit merchandise being stored, displayed or sold within its premises, Old National Discount Mall's tenants, many of whom were previously evicted from

GDM, continue to flagrantly display and sell counterfeit merchandise during the hours Old National Discount Mall is open to the public. These same tenants have also reported that **much of** that counterfeit merchandise has been smuggled into GDM, despite GDM's zero tolerance **policy**, by individuals operating out of Old National Discount Mall and surreptitiously delivering **and** smuggling counterfeit items into GDM's premises during the hours that GDM is open to the public.

In closing, I want to thank you for allowing GDM this opportunity to address the problems set forth in your February 12, 2014 letter and to assure that GDM will continue **its** efforts to assure that no similar problems arise in the future. Please know that I fully recognize **the** gravity of the matters set forth in your letter and that I will do whatever I can to address **your** concerns.  My email is                    and my cell is 404-401-4138, if you would like to contact me directly.

Very truly yours,


Kimberly S. Swindall
Sole Member
2925 Properties, LLC

3(d)

4842-2911-6459.1
49820/0003 TANZALONE.ta

**Albert Ashkouti**

| | |
|---|---|
| From: | kimswin@Juno.com |
| Sent: | Tuesday, March 04, 2014 3:08 PM |
| To: | Albert Ashkouti |
| Cc: | patswindall@juno.com |
| Subject: | Fw: Burberry Reference No. 46925 |
| Attachments: | Burberry Letter Response.doc; Greenbriar sign 1.JPG; Greenbriar sign 2.JPG; Greenbrier sign 3.JPG; IMG_0376.MOV |

Albert: FYI: I emailed this today.  This is the woman that sent us the Burberry letter.  We are doing our best to get rid of this stuff!  Kim

Dear Ms. Roth,

I have attached the letter that I have sent you by US Mail so that you will have an expedited copy.  I have also attached photos of 4 of the 10 signs that we have posted throughout the Mall.  If you have any suggestions as to a company which we can hire to help us to do investigations of counterfeit goods in our Mall, they would be very appreciated.  I am having a hard time finding a company which does work in the trademark infringement and counterfeit area.

We are committed to stopping this counterfeit problem and any help or suggestions that you can render will be gratefully received.

Thank you,

Kimberly S Swindall

1

3(e)

# FIRST GUARANTY MANAGEMENT CORPORATION

6000 Lake Forrest Drive - Suite 400 - Atlanta, Georgia 30328
Office (404) 252-6111    Fax (404) 255-6499

April 3, 2014

Ellen Brooks
Director, US Trademark Enforcement
Ralph Lauren Corporation
625 Madison Avenue
New York, NY 10022

Dear Ms. Brooks:

This letter will respond to your letter to me dated March 11, 2014.   Your letter is addressed to the wrong entity. I am not personally involved with the Discount Mall. There is no such entity as Tabas II, LLC, and First Guaranty Realty has nothing to do with the Discount Mall.

About two thirds of the Shopping Center is leased to 2925 Properties, LLC. Ms. Kimberly Swindall is the owner of 2925 Properties.   2925 Properties subleases to various tenants, most of whom are vendors in the flea market where the apparent problems exist.

I do not understand why you, and apparently Homeland Security, take the position that it is my duty to take the law into my own hands and become a law enforcement official. I do not have the expertise to do that.

First, I do not have the requisite expertise to determine whether a product is a genuine Ralph Lauren product or a counterfeit. I cannot tell one from the other. Presumably your company has countless people who can discern the difference between a legitimate and illegitimate Ralph Lauren product.

Second, I do not have the contractual or other legal right to evict any subtenants, nor do I have the contractual or legal right to confiscate any of their inventory.

Third, the prime tenant, 2925 Properties, has been extremely diligent in trying to assist manufactures or "brand name" companies in stopping subtenants from selling counterfeit goods.

As I understand it, 2925 Properties includes provisions in his subleases with these vendors that prohibit the sale of counterfeit products, and those subleases entitle 2925 Properties to rescind those subleases if illegal sales are discovered. To my knowledge, Ms. Swindall has, in fact evicted every tenant who has been shown to be selling counterfeit products. She has numerous signs posted

GB_PROD_39

in the flea market warning both customers and venders that there is zero tolerance for counterfeit sales.

I am enclosing a few samples of correspondence that confirm the diligent efforts to curb these illicit sales. Enclosed you will find a copy of Ms. Swindall's email to a Louis Vuitton representative dated December 19, 2013, an email from Ms. Swindall to a Burberry representative dated March 4, 2014, a letter of that same date which she sent to the Burberry representative both by mail and email, and Ms. Swindall's email of December 19, 2013 to Mr. J.D. Cannon of Homeland Security.

As you can see from these communications, which are only a small sampling of her efforts to curb illicit sales, Ms. Swindall has sought and obtained special training in order to help identify illicit products, has retained a special investigator to periodically make surprise and unannounced inspections, and has requested assistance from Homeland Security in going through and identifying violators so that she can evict them. Thus far, as we understand it, Homeland Security has declined her requests. Once again, it seems that official law enforcement officers are seeking to impose upon private citizens the duty to enforce those laws which should be enforced by duly authorized law enforcement officials who have the necessary expertise to identify what is or is not a "knock-off," and the legal authority to do something about it. I don't have either the expertise or the authority.

I am confident that Ms. Swindall would welcome any assistance from Ralph Lauren. I will work to facilitate any cooperative effort you and Ms. Swindall would like to work out in order for Ralph Lauren representatives to work alongside the property manager to identify and get rid of these violators.

Of considerable concern to me is the fact that apparently the source from which these vendors are obtaining these illicit goods has been identified, and apparently Homeland Security has been given this information, but has thus far not taken any action in that regard. Please note Ms. Swindall's comments about the Old National Discount Mall in her March 4 letter to Burberry. It seems that efforts directed at the source would be far more effective then the type of pressure you and Homeland Security are putting upon us who have no expertise in identifying what does or does not constitute a counterfeit product.

Your letter purports to tell me what my duties are in terms of law enforcement. I disagree. I do not know of any duty that requires me to take the law into my own hands and make decisions for which I have no expertise. If a vender tells me a product is legitimate, and you tell me it is counterfeit, I would have no way of knowing who is telling the truth. While I would be more likely to believe a Ralph Lauren representative than these vendors, if a Ralph Lauren representative is not present to verify the counterfeit nature of a product, I cannot rely on my own judgment absent some specific identification by an authorized Ralph Lauren representative or some other person who has the requisite expertise.

On the other hand, I know that I do not have any contractual relationship with those subtenants, so by what authority could I force them to leave the Discount Mall? By what authority could I confiscate their goods or shut down their businesses?

GB_PROD_40

I have neither the expertise nor the authority to make a determination as to what is or is not counterfeit; and even if I did, I have no legal or contractual authority to do anything about it. The prime tenant and management company managing the space where these vendors are, have diligently worked to curb these illicit sales, and have tried to get cooperation from the manufacturers and Homeland Security. Thus far Homeland Security elected not to assist the management, choosing instead to conduct one or more "raids" rather than to cooperate in an effort to effectively curb these violations. See Ms. Swindall's email to J.D. Cannon. It is my understanding that he has not responded.

Since you copied your letter to J.D. Cannon, I am sending him a copy of this letter and the enclosures.

To reiterate. The prime tenant, 2925 Properties, who has the subleases with the various venders, and the property manager remain ready and willing to cooperate and do what they can. Please let me know if you would like me to try to arrange a meeting with Ms. Swindall and one or more Ralph Lauren representatives to assist Ms. Swindall in identifying vendors improperly selling Ralph Lauren products.

Sincerely,

Albert Ashkouti
First Guaranty Management Corp.
Partner

Enclosures
cc:     J.D. Cannon, Special Agent (w/enclosures)
        Department of Homeland Security
        1100 Centre Parkway
        Atlanta, GA 30344

        Tyler Dixon, Esq.