IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LUXOTTICA GROUP S.p.A., an Italian
corporation,

Plaintiff,

v.

GREENBRIAR MARKETPLACE II,
LLC, a Georgia limited liability
company, 2925 PROPERTIES, LLC, a
Georgia limited liability company d/b/a
GREENBRIAR DISCOUNT MALL,
PATRICK SWINDALL, KIMBERLY
SWINDALL, LAWRENCE STERLING,
LISA STERLING, individually,

Defendants.
_____/

CIVIL ACTION NO:
1:15-cv-01382-AT

## <u>CONSOLIDATED PRETRIAL ORDER</u>

### **Pretrial Conference Requested**

1.

There are no motions or other matters pending for consideration by the

court except as noted:

**By Plaintiff:** Plaintiff intends to file motions *in limine* prior to trial in

accordance with the Court's Standing Order.

**By Defendant Greenbriar:** None, except that Greenbriar anticipates

filing motions *in limine* prior to trial, in accordance with the *Guidelines to*

*Parties and Counsel in Cases Proceeding Before the Honorable Amy Totenberg*

entered in this action (the "Guidelines"). [Doc. 15 at 25, § III(j)].

**By Defendants 2925 Properties, Patrick Swindall and Kimberly Swindall**: These Defendants intend to file motions *in limine* prior to trial in accordance with the Court's Standing Order

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to L.R. 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

**By Defendant Greenbriar**: The name of Greenbriar set forth in the caption is correct. Plaintiff has failed to name any individual vendors or booth owners claimed to be the actual, direct infringers of the claimed trademarks at issue in this case.

**By Defendants 2925 Properties, Patrick Swindall and Kimberly Swindall**: The names of Defendants 2925 Properties, LLC, Patrick Swindall and Kimberly Swindall are correct.

2

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

**By Plaintiff:** There is no question as to jurisdiction.  Jurisdiction is based on 15 U.S.C. § 1127 and 28 U.S.C. § 1331

**By Defendant Greenbriar:** There is no question as to the Court's jurisdiction, which is based on 28 U.S.C. §§ 1331 and 1338. Greenbriar disputes that this Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121(a).

**By Defendants 2925 Properties, Patrick Swindall and Kimberly Swindall:** There is no question as to jurisdiction based on 28 U.S.C. §§ 1331 and 1338.  These Defendants dispute that this court has jurisdiction based on 15 U.S.C. § 1121(a).

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

> **Plaintiff**:  David B. Rosemberg
> Florida Bar No. 0582239
> Admitted *Pro Hac Vice*
> Broad and Cassel
> 2 South Biscayne Blvd.
> Suite 2100
> Miami, Florida 33131
> (305) 373-9400
> Fax: (305) 373-9443
> drosemberg@broadandcassel.com

**Defendant Greenbriar**:

John A. Christy
Georgia Bar No. 125518
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street N.E., Suite 800
Atlanta, Georgia 30309-4516
Telephone:   (404) 681-3450
Facsimile:   (404) 681-1046
E-mail:       *jchristy@swfllp.com*

**Defendants 2925 Properties, Patrick Swindall and Kimberly Swindall:**

Richard W. Summers
Richard W. Summers, P.C.
Georgia Bar No. 692025
3384 Peachtree Road, NE
Suite 275
Atlanta, Georgia 30326
Tel: (404) 842-1404
Fax: (404) 609-3362
rws@richardsummerspc.com

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)). State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

**None.**

7.

The captioned case shall be tried **(X)** to a jury or (_____) to the court without a jury, or (_____) the right to trial by jury is disputed.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

**None.**

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

10.

Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" are the general questions which defendant Greenbriar wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-3" are the general questions which the Defendants 2925 Properties, Patrick Swindall and Kimberly Swindall wish to be propounded to the jurors on voir dire examination.

The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The

determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

**State any objections to Plaintiffs' voir dire questions**:

Greenbriar objects to voir dire Questions 9 and 10 proposed by Plaintiff, as those questions do not list all of the defendants to this action.

Greenbriar objects to the following voir dire questions proposed by Plaintiff because they impermissibly prejudge the evidence and prejudice Greenbriar: 20, 21, 21(a), 21(b), 21(c), 22, 23, 23(a), 23(b), 23(c), 25, and 40.

Greenbriar objects to voir dire Question 24 proposed by Plaintiff, because the criminal nature or crime of counterfeiting has no relevance, is not an issue, and has different standards of proof than apply in this civil action alleging contributory trademark infringement and seeking money damages.

Greenbriar objects to voir dire Question 24 proposed by Plaintiff, because that question prejudges and presupposes that a trademark has a value to a business and its brand.

Greenbriar objects to the ambiguous and potentially misleading phrasing of voir dire Question 37(a) proposed by Plaintiff, which describes operating a business "under the umbrella of another company."

6

Defendants 2925 Properties, Patrick Swindall and Kimberly Swindall object to a number of voir dire questions included by Plaintiff that are prejudicial to these Defendants.   Voir dire questions that presuppose the presence of counterfeiting activity should not be permitted.  These include voir dire Question Nos. 20, 21, 23 and 25.  These Defendants also object to voir dire Question No. 24.  Whether or not a crime has occurred is not an issue in this civil matter.  The standard of proof and the burden on the Plaintiff are different than that which applies to a criminal context.  Further, these Defendants object to voir dire Question No. 24 in that it is impermissible for Plaintiff to presuppose and assign a value to its own brand.

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

**None**.

14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

15.

Attached hereto as Attachment "D-1" is the defendant Greenbriar's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and

(c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

Attached hereto as Attachment "D-2" are Defendants 2925 Properties, Patrick Swindall and Kimberly Swindall's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

9

17.

The legal issues to be tried are as follows:

**<u>For Plaintiff</u>:**

(1)   Whether Greenbriar Marketplace II, LLC is contributorily liable for infringement of Luxottica's trademarks.

(2)   If Greenbriar Marketplace II, LLC is found to be a contributory infringer, whether such infringement was willful.

(3)   Whether 2925 Properties, LLC is contributorily liable for infringement of Luxottica's trademarks.

(4)   If 2925 Properties, LLC is found to be a contributory infringer, whether such infringement was willful.

(5)   Whether Kimberly Swindall is individually liable for the contributory infringement of Greenbriar Marketplace II, LLC.

(6)   If Kimberly Swindall is found to be individually liable for the contributory infringement of Greenbriar Marketplace II, LLC, whether her infringement was willful.

(7)   Whether Kimberly Swindall is individually liable for the contributory infringement of 2925 Properties, LLC.

(8)   If Kimberly Swindall is found to be individually liable for the contributory infringement of 2925 Properties, LLC, whether her infringement was willful.

(9)   Whether Patrick Swindall is individually liable for the contributory infringement of 2925 Properties, LLC.

(10)  If Patrick Swindall is found to be individually liable for contributory infringement of 2925 Properties, LLC, whether his infringement was willful.

(11)  The amount of statutory damages to be imposed per mark, per type of good pursuant to 15 U.S.C. §1117(c) against each Defendant.

(12) Is Plaintiff entitled to an injunction pursuant to 15 U.S.C. §1125, et. seq.

## By Defendant Greenbriar:

1. Who has the duty to defend against infringement of Plaintiff's claimed trademarks at issue in this action—Plaintiff or Greenbriar?

2. If Plaintiff has the duty to defend against infringement of the claimed trademarks at issue in this case, does Plaintiff have a duty to attempt to protect those marks against alleged infringement before it can establish any duty, on the part of Greenbriar, to do so?

3. If Plaintiff has the duty to defend against infringement of the claimed trademarks at issue in this case, did Plaintiff fail to discharge that duty, as to deprive Plaintiff of standing to (1) compel Greenbriar to bear that duty or (2) recover from Greenbriar for Greenbriar's alleged failure to do so?

4. Is the leasing of space at a large commercial shopping center to a tenant, which in turn subleases space to individuals alleged to have infringed the claimed trademarks at issue in this case—without any specific knowledge or notice of such directly-infringing activity—a legally sufficient basis to hold Greenbriar liable to Plaintiff for contributory trademark infringement?

5. Did Greenbriar have the legal right to evict or dispossess any of the alleged direct infringers of Plaintiff's claimed trademarks in this case?

6. Did Greenbriar have the legal right to evict or dispossess its tenant, 2925 Properties, LLC ("2925"), for any of the conduct of 2925 alleged or shown by Plaintiff in this case?

7. Did Greenbriar have the legal right to evict or dispossess its tenant, 2925, based on any notices received by Greenbriar that claimed or alleged that trademark infringement was occurring at Greenbriar Discount Mall?

8. Did Plaintiff, if requested by Greenbriar, have the duty to assist Greenbriar in protecting Plaintiff's claimed trademarks against infringement at Greenbriar Discount Mall, as a condition precedent to its right to assert a contributory trademark infringement claim against Greenbriar or recover at trial?

9. Did any individual subtenants of 2925 directly infringe any trademarks of Plaintiff within the relevant statute of limitations?

10.     If so, did Greenbriar intentionally induce any of those individual subtenants of 2925 to infringe any trademarks of Plaintiff, or knowingly participate in any trademark infringement actually engaged in by such subtenants?

11.     Before filing suit, did Plaintiff present legally sufficient evidence to Greenbriar for Greenbriar to conclude that specific, individual subtenants of 2925 had directly infringed any trademarks owned by Plaintiff?

12.     Did Greenbriar have timely, specific knowledge or notice fo any direct infringement of Plaintiff's claimed trademarks at issue in this case by any specific subtenants of 2925?

13.     Is the landlord-tenant relationship between Greenbriar and 2925 a legal basis for Greenbriar to have had a sufficient degree of control over the alleged, directly-infringing subtenants of 2925, as to support a contributory trademark infringement claim against Greenbriar, as to which Greenbriar can be held liable to Plaintiff?

14.     Was Greenbriar "willfully blind" to any trademark infringement that occurred at Greenbriar Discount Mall?

15.     Was Greenbriar a "moving, active, conscious force" behind any trademark infringement that occurred at Greenbriar Discount Mall?

16.     The amount of damages, if any, that Plaintiff can recover from Greenbriar.

17.     The extent to which any damages claimed by Plaintiff in this case, or sought to be recovered, were or are attributable to the conduct of individuals or entities other than Greenbriar.

### By Defendants 2925 Properties, Patrick Swindall and Kimberly Swindall:

(1)     Whether, and to what extent, the Plaintiff has a duty to protect the trademarks that are the subject of this case?

(2)     Whether the Plaintiff failed to discharge the duty to defend or protect the trademarks that are the subject of this case?

(3)     Whether the Plaintiff should have cooperated or assisted 2925

12

Properties, LLC, Patrick Swindall and Kimberly Swindall in eradicating alleged counterfeiting activity or otherwise assisted in protecting its own trademarks?

(4)     Whether 2925 Properties, LLC, Patrick Swindall or Kimberly Swindall induced any subtenants to participate in counterfeit activity or to infringe upon trademarks of the Plaintiff or otherwise participate in any trademark infringement?

(5)     Whether 2925 Properties, LLC was "willfully blind" to any infringement of trademark that occurred at the Greenbriar Discount Mall?

(6)     Whether Patrick Swindall was "willfully blind" to any trademark infringement that occurred at the Greenbriar Discount Mall?

(7)     Whether Kimberly Swindall was "willfully blind" to any trademark infringement that occurred at Greenbriar Discount Mall?

(8)     Whether 2925 Properties, LLC, Patrick Swindall or Kimberly Swindall were a "moving, active or conscious force" behind any trademark infringement that may have occurred at the Greenbriar Discount Mall?

(9)     Whether 2925 Properties, LLC engaged in adequate measures to attempt to eradicate alleged counterfeiting activity at the Greenbriar Discount Mall?

(10)    To what extent does the Department of the Homeland Security have a duty to cooperate with and assist 2925 Properties, LLC in the effort to eradicate counterfeit activity or trademark infringement?

(11)    To what extent does the City of Atlanta Police Department or the Department of Homeland Security have an obligation to cooperate and assist 2925 Properties, LLC in measures taken by these Defendants to eradicate any alleged counterfeiting activity or of trademark infringement?

(12)    Whether the failure of the City of Atlanta Police Department or Department of Homeland Security to arrest or prosecute any individual vendors contributed to or exacerbated any alleged counterfeiting activity that amounts to trademark infringement?

18.

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G-3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any

listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

**None.**

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

21.

Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and

Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

**See Attachment I-1 for Plaintiff's Proposed Special Verdict Form**

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

**By Plaintiff:** Plaintiff respectfully requests additional time for argument: opening statements be limited to thirty minutes per side, and closing arguments be limited to one hour per side.

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

**Not applicable.**

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person on _____, 20_____, to discuss in good faith the possibility of settlement of this case. The court (_____) has or (**X**) has not discussed settlement of this case with counsel. It appears at this time that there is:

(_____) A good possibility of settlement.

(_____) Some possibility of settlement.

(**X**) Little possibility of settlement.

(_____) No possibility of settlement.

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

28.

Plaintiff estimates that it will require **5** days to present their evidence. Defendant Greenbriar estimates that it will require no more than **1** day to present its evidence.   Defendants 2925 Properties, Patrick Swindall and Kimberly Swindall The Defendants estimate that it will require **2** days to present its evidence. The other parties estimate that it will require (**N/A**) days to present their evidence. It is estimated that the total trial time is **8** days.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (_____) submitted by stipulation of the parties or (_____) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this ___ day of _____, 20_____.


_____
UNITED STATES DISTRICT JUDGE


Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

*/s/ David B. Rosemberg* _____
DAVID B. ROSEMBERG
Florida Bar No. 582239
*Admitted Pro Hac Vice*
BROAD AND CASSEL
One Biscayne Tower, 21st Floor
2 South Biscayne Boulevard
Miami, Florida  33131
Telephone: 305.373.9400
Facsimile: 305.373.9443
drosemberg@broadandcassel.com

**Counsel for Plaintiff Luxottica
Group S.p.A.**

*s/ Richard W. Summers* _____
RICHARD W. SUMMERS
Georgia Bar No.  692025
RICHARD W. SUMMERS, P.C.
3384 Peachtree Road, N.E.Suite 275
Atlanta, Georgia  30326
Telephone: (404) 842-1404
Facsimile:(404) 842-1463
*rws@richardsummerspc.com*

**Counsel for Defendants 2925
Properties, LLC, Patrick Swindall,
Kimberly Swindall, Lawrence
Sterling and Lisa Sterling**

*s/ John A. Christy* _____
JOHN A. CHRISTY
Georgia Bar No. 125518
ANDREW J. LAVOIE
Georgia Bar No. 108814
SCHREEDER, WHEELER & FLINT, LLP
1100 Peachtree Street N.E., Suite 800
Atlanta, Georgia 30309-4516
Telephone:  (404) 681-3450
Facsimile:   (404) 681-1046
*jchristy@swfllp.com*; *alavoie@swfllp.com*

**Counsel for Defendant, Greenbriar
Marketplace II, LLC**

**ATTACHMENT A**

**JUROR QUALIFICATION QUESTIONS**

**By Plaintiff:**

1.    Are you at least 18 years of age?

2.    Are you a citizen of the United States?

3.    If English is your second language, do you have any difficulty with reading English or understanding spoken English?

4.    Do you presently and have you for at least the last year resided within the Northern District of Georgia?  The Northern District of Georgia includes the following counties: Banks, Barrow, Bartow, Carroll, Catoosa, Chattooga, Clayton, Cobb, Coweta, Dade, Dawson, DeKalb, Douglas, Fannin, Fayette, Floyd, Forsyth, Fulton, Gilmer, Gordon, Gwinnett, Cherokee, Habersham, Hall, Haralson, Heard, Henry, Jackson, Lumpkin, Meriwether, Murray, Newton, Paulding, Pickens, Pike, Polk, Rabun, Rockdale, Spalding, Stephens, Towns, Troup, Union, Walker, White, and Whitfield.

5.    Do any of you reside in a county other than one of the following Georgia counties that make up the Atlanta Division of the Northern District of Georgia: Cherokee, Clayton, Cobb, DeKalb, Douglas, Fulton, Gwinnett, Henry, Newton, and Rockdale counties.

6.    Are any charges now pending against you for a violation of state or federal law punishable by imprisonment for more than one year?

7.      Have you been convicted of a state or federal crime punishable by imprisonment for more than one year and not had your civil rights restored?

8.      Do you have a physical or mental disability that would interfere or prevent you from serving as a juror?

9.      Do you, a family member or close friend know or have any connection (personal, business, or social) with Luxottica Group S.p.A. or any of its current or former employees?

10.     Do you, a family member or close friend know or have any connection (personal, business, or social) with Greenbriar Marketplace II, LLC, 2925 Properties, LLC a/k/a Greenbriar Discount Mall, First Guaranty Management Corporation, Albert Ashkouti, Patrick Swindall, Kimberly Swindall, Born Sterling, Lisa Sterling, any of the Ashkouti, Swindall or Sterling family members, or their current or former employees?

11.     Are you related by blood or marriage to David Rosemberg, George Mahfood, Rachel Krause, or any member or employee of the law firm of Broad and Cassel, or Lewis Brisbois Bisgaard and Smith, LLP?

12.     Are you related by blood or marriage to John Christy, Andrew Lavoie, Richard Summers, or any member or employee of the law firm of Schreeder, Wheeler & Flint, LLP?

**By Defendant Greebriar:**

1.     Do any of you know, or are any of you related by blood or by marriage, to any of the anticipated witnesses in this case? *[List witnesses by name.]*

2.     Do any of you know, or are any of you related by blood or by marriage, to any of the attorneys for Plaintiff in this case, or any member or employee of the law firm of Broad & Cassel, P.A., or Lewis Brisbois Bisgaard & Smith, LLP? *[List attorneys by name.]*

3.     Do any of you know, or are any of you related by blood or by marriage, to any of the attorneys for Greenbriar in this case, or any member or employee of the law firm of Schreeder, Wheeler & Flint, LLP? *[List attorneys by name.]*

4.     Do any of you know, or are any of you related by blood or by marriage, to the attorney for the remaining defendants in this case, or any member or employee of the law firm of Richard W. Summers, P.C.? *[List attorney by name.]*

5.     Do any of you know, or are any of you related by blood or by marriage, to Patrick Swindall, Kimberly Swindall, Lawrence "Born" Sterling, or Lisa Sterling?

6.     Do any of you own stock, or any ownership interest in, or work for, Luxottica Group, S.p.A., or any subsidiary or division of that company, such as Ray-Ban, Persol, Oakley, LensCrafters, Oliver Peoples, Sunglass Hut, Pearle

Vision, Sears Optical, Target Optical, or Glasses.com?

7.     Do any of you own stock, or any ownership, partnership, or membership interest in, Greenbriar Marketplace II, LLC or Tabas Two, LLLP?

8.     Do any of you know, or are any of you related by blood or by marriage, to Albert Ashkouti or any other members of the Ashkouti family?

The parties request the opportunity to ask any follow-up questions or to submit to the Court such follow-up questions as appropriate, based on the responses to any of the foregoing general qualification questions.

**By Defendants 2925 Properties, Patrick Swindall and Kimberly Swindall**

1)      Are any of you related by blood or marriage to any of the witnesses in this case?  (Read list of witnesses)

(2)     Do any of you know, or are any of you related by blood or marriage to any member or employee of the law firm of Broad & Cassel, P.A. or the law firm of Lewis, Brisbois, Bisgaard & Smith, LLP? (List all attorneys in these law firms).

(3)     Do any of you know or are any of you related by blood or marriage to any attorneys representing Greenbriar Marketplace II or the firm of Schreeder, Wheeler & Flint, LLP? (List attorneys in that law firm).

(4)     Do any of you or are you related by blood or marriage for the attorney representing the other Defendants in this case or an employee of the law firm of Richard W. Summers, P.C.?  (List attorneys by name).

(5)     Do any of you know or are any of you related by blood or marriage to Patrick Swindall or Kimberly Swindall?

(6)     Do any of you own shares or any ownership interest, or have ever worked for the following:  Luxottica Group, S.p.A., or any subsidiary of that company,  or Ray-Ban, Persol, Oakley, LensCrafters, Sunglass Hut, Pearl Vision, Sears Optical, Target Optical or Glasses.com?

(7)     Do any of you own shares or any ownership interest or membership interest in Greenbriar Marketplace II, LLC, or Tabas Two, LLLP?

(8)     Do any of you know or are any of you related by blood or marriage to Albert Ashkouti or any other members of the Albert Ashkouti family?

The Parties request the opportunity to ask any follow-up questions or to submit to the Court such follow-up questions as appropriate based on the responses to the foregoing general qualifications.

The Parties request the opportunity to ask any follow-up questions or to submit to the Court such follow up questions to be asked as appropriate due to the response to any question.

**ATTACHMENT B-1**

**PLAINTIFF'S VOIR DIRE QUESTIONS**

1.     Have you, a family member or close friend ever had any negative experiences with Luxottica Group S.p.A.?

2.     Do you have any strong feelings, positive or negative, about Luxottica Group S.p.A.?

3.     Have you, a family member, or close friend ever purchased Ray-Ban merchandise?

      a.     If yes, where did you or your loved one buy your Ray-Ban merchandise?

4.     Have you ever received Ray-Ban merchandise as a gift?

5.     Have you, a family member or close friend ever had any negative experiences with any Ray-Ban merchandise?

6.     Do you have any strong feelings, positive or negative, about Ray-Ban merchandise?

7.     Have you, a family member, or close friend ever purchased merchandise from LensCrafters, Sears Optical, Pearle Vision, or Sunglass Hut?

      a.     If yes, have you, a family member or close friend ever had any negative experiences while visiting LensCrafters, Sears Optical,    Pearle Vision, or Sunglass Hut?

8.     Do you have any strong feelings, positive or negative, about LensCrafters, Sears Optical, Pearle Vision, or Sunglass Hut?

9.     Have you, a family member or close friend ever had any negative experiences with 2925 Properties, LLC a/k/a Greenbriar Discount Mall, Greenbriar Marketplace II, LLC, Patrick Swindall or Kimberly Swindall?

10.     Do you have any strong feelings, positive or negative, about 2925 Properties, LLC a/k/a Greenbriar Discount Mall, Greenbriar Marketplace II, LLC, Patrick Swindall or Kimberly Swindall?

11.     Are you a landlord or do you manage real estate?

12.     Have you ever heard of the Greenbriar Discount Mall?

13.     Do you know where the Greenbriar Discount Mall is located?

14.     Have you, a family member or close friend ever visited the Greenbriar Discount Mall?

        a.     If yes, do you know what kinds of goods are sold at the Greenbriar Discount Mall?

        b.     If yes, have you, a family member or close friend ever purchased any kind of goods sold at the Greenbriar Discount Mall?

        c.     If yes, what kinds of goods have you or they purchased at the Greenbriar Discount Mall?

15.     Have you, a family member or close friend ever rented space at the Greenbriar Discount Mall?

        a.     If yes, what kind of goods have you or they sold at the space you rented from the Greenbriar Discount Mall?

16.    Have you, a family member or close friend ever been an Greenbriar Discount Mall vendor and/or worked for an Greenbriar Discount Mall vendor or former vendor?

a.    If yes, what kinds of good or services have you or they sold at the Greenbriar Discount Mall?

17.    Do you, a family member or close friend know or have any connection (personal, business, or social) with any Greenbriar Discount Mall vendor or former vendor?

18.    Do you have any strong feelings, positive or negative, about any Greenbriar  Discount Mall vendor or former vendor?

19.    Have you, a family member or close friend ever visited the Greenbriar Marketplace Shopping Center?

a.    If yes, do you know what kinds of goods are sold at the Greenbriar Marketplace Shopping Center?

b.    If yes, have you, a family member or close friend ever purchased any kind of goods sold at the Greenbriar Marketplace Shopping Center?

c.    If yes, what kinds of goods have you or they purchased at the Greenbriar Marketplace Shopping Center?

20.    Have you thought about purchasing a counterfeit or fake product?

21.    Have you, a family member or close friend ever purchased any kind of counterfeit or fake product?

a.     If yes, where did you, a family member or close friend purchase counterfeit or fake products?

b.     If yes, which name brand or designer counterfeit or fake products have you purchased?

c.     If yes, have you, a family member or close friend ever purchased counterfeit or fake Ray-Ban products?

22.     Have you ever heard that the Greenbriar Discount Mall is a place to purchase counterfeit or fake goods?

23.     Have you ever seen what you thought, or believed to be counterfeit or fake product being sold by an Greenbriar Discount Mall vendor or former vendor?

a.     If yes, please tell us the name brand or designer you thought, or believed to be counterfeit or fake product being sold by a Greenbriar Discount Mall vendor or former vendor.

b.     If yes, have you ever purchased counterfeit or fake product, including counterfeit or fake Ray-Ban products, from any Greenbriar Discount Mall vendor or former vendor?

c.     If yes, when was the last time (date) you saw or purchased counterfeit or fake product, including counterfeit or fake Ray-Ban product from an Greenbriar Discount Mall vendor or former vendor?

24.     Do you think counterfeiting is a crime?

25.     Do you think the sale of counterfeit or fake brand name or designer product is harmful to the brand and its reputation?

26.     Do you have any knowledge or understanding of what a Trademark is and its value to a business and its brand?

27.     Have you, a family member or close friend ever filed an application and been granted federal registration for a Trademark from the United States Patent and Trademark Office?

28.     Have you, a family member or close friend ever worked for a company that owns Trademarks?

  a.     If yes, was the company ever concerned about infringement of their Trademarks, or infringing the Trademarks of other companies?

29.     Do you, a family member or close friend work for any of the following:

  a.     Law Enforcement

  b.     Atlanta Police Department

  c.     East Point Police Department

  d.     Homeland Security Investigations

  e.     Immigration & Customs Enforcement

  f.     Private Investigator

  g.     Security firm

30.    Have you, a family member or close friend had a negative experience with a law enforcement agent (including local, state and federal agencies)?

31.    Have you, a family member or close friend had a negative experience with a private investigator?

32.    Have you, a family member or close friend ever been investigated, accused of and/or convicted of a crime or criminal activity?

33.    Have you, a family member or close friend ever been the victim of a crime or criminal activity?

34.    Do you have any education, training, or worked in any of the following fields:

   a.    Accounting

   b.    Banking & Finance

   c.    Intellectual Property (patents, trademarks, copyrights, trade secrets)

   d.    Business Management

   e.    Real Estate

   f.    Sales (Retail/Wholesale)

   g.    Law or Legal Field

   h.    Marketing

   i.    Branding

   j.    Fashion

35.    Have you earned any professional or vocational licenses or certificates?

36.    Have you or a close family member ever been an officer, board member, member or shareholder of a company?

37.    Have you or a close family member ever own or operate your own business?

   a.    If yes, did you or they operate the business under the umbrella of another company such as a DBA?

   b.    If yes, been a limited partner in any type of partnership?

   c.    If yes, been a member in any type of limited liability company?

   d.    If yes, have you ever purchased or sold a business?

   e.    If yes, does the business involve retail sales?

   f.    If yes, have sunglasses or eyeglasses ever been sold at the business.

38.    Have you, a close family member or close friend to you ever received money from a lawsuit, worker's compensation claim, or other claim?

39.    Have you, a close family member, or close friend ever made a claim, or filed a grievance against another person, company, or corporation as a result of wrongful conduct on the part of the person, company or agency?

40.    Do you have any reservations about awarding large sums of money as damages if the evidence justifies the award requested?

Plaintiff reserves the right to ask any follow-up questions as appropriate due to the response to any question.

**ATTACHMENT B-2**

**Defendant Greenbriar's Voir Dire Questions**

1.      Have you ever been represented by, or are you acquainted in any way with, David B. Rosemberg or Rachel R. Krause?

2.      Have you ever been represented by, or are you acquainted in any way with, the law firm of Broad & Cassel, P.A., or any of its attorneys, or the law firm of Lewis Brisbois Bisgaard & Smith, LLP, or any of its attorneys?

3.      Have you or any family member of yours received legal training, attended law school, or practiced law?

4.      Have you ever worked for, or are you acquainted with or related to anyone who works or has worked for, Luxottica Group, S.p.A. or Ray-Ban?

5.      Have you ever heard of the Greenbriar Marketplace shopping center, located at 2975 Headland Drive S.W. in Atlanta?

6.      Have you ever visited the Greenbriar Marketplace shopping center?

7.      Have you ever purchased anything from any of the retail stores at the Greenbriar Marketplace shopping center?

8.      Do you know anyone who works in, or has visited, or has purchased anything from any of the retail stores at the Greenbriar Marketplace shopping center?

9.      Have you ever heard of the Greenbriar Discount Mall, which is one of the stores spaces located within the larger Greenbriar Marketplace shopping center?

10.   Have you ever visited the Greenbriar Discount Mall?

11.   Have you ever purchased anything from the Greenbriar Discount Mall?

12.   Have you or anyone you know worked in, or visited, the Greenbriar Discount Mall?

13.   Do you have any knowledge or understanding about the types of goods or merchandise that are sold, or have ever been sold, at the Greenbriar Discount Mall?

14.   Do you own any copyrights, patents, trademarks, or any other type or form of intellectual property?

15.   Have you ever suspected, known, or proven that someone else infringed a copyright, patent, trademark, or other intellectual property that you owned?

16.   Have you ever been involved in a lawsuit alleging the infringement of any copyright, patent, trademark, or any other type or form of intellectual property?

17.   Have you ever been involved in a lawsuit alleging contributory infringement of a copyright, patent, or trademark?

18.   Have you ever been a plaintiff in a lawsuit?

19.   Have you ever been a defendant in a lawsuit?

20.   In the last ten years, have you visited a flea market or discount mall?

21.　　Have you ever worked at, or owned a business that operated out of, a flea market or discount mall?

22.　　Have you ever owned a business?

23.　　Have you ever been a landlord, or otherwise managed real estate?

24.　　Have you ever filed a lawsuit, as a landlord, to evict a tenant?

25.　　Have you ever designed, marketed, manufactured, or sold sunglasses or eyeglasses, or worked for a manufacturer, designer, or seller of sunglasses or eyeglasses?

26.　　Do you have any knowledge about the general market for Ray-Ban sunglasses or eyeglasses, or any other sunglass or eyeglass brands?

27.　　Do you have any training, education, or experience that would allow or assist you to distinguish a genuine item (such as clothing, shoes, purses, sunglasses, eyeglasses, or accessories like frames, cases, and cleaning cloths) from counterfeit items?

28.　　Have you ever purchased an item that you knew or suspected was counterfeit or otherwise not genuine?

29.　　Do you know any other members of the jury panel?

30.　　Have you ever served on a civil jury before?

31.　　Have you ever served on a criminal jury before?

32.　　Have you ever been the foreperson of a jury before?

33.　　Do you have any knowledge or preconceived conclusions about the facts and circumstances of this case?

34.     Do you, or a family member or close friend, work for or on behalf of federal or state law enforcement?

35.     Do you, or a family member or close friend, work for or on behalf of federal or state intellectual property enforcement?

36.     Have you, or a family member or close friend, ever been investigated in connection with, accused of, or convicted of a crime or any criminal activity?

37.     Have you, or a family member or close friend, ever been the victim of a crime or any criminal activity?

38.     Have you ever been involved in the operations of a limited liability company?

39.     Do you think or believe that an individual that owns something—for instance, a home movie—has the primary obligation or duty to protect that item from being taken, copied, or shared with others?

40.     Do you have any strong opinions or feelings, positive or negative, for law enforcement or other enforcement authorities, or the jobs they do?

41.     Aside from renting your primary residence, do you have any experience with commercial or residential leases or subleases?

Greenbriar requests the opportunity to ask any follow-up questions or to submit to the Court such follow-up questions as appropriate, based on the responses to any of the foregoing voir dire questions.

**ATTACHMENT B-3**

**By Defendants 2925 Properties, Patrick Swindall and Kimberly Swindall**

1.      Have you, a family member or close friend ever purchased Ray-Ban merchandise?

2.      Have you, a family member or close friend ever heard of Greenbriar Discount Mall?

3.      Have you, a family member or close friend ever visited or shopped at Greenbriar Discount Mall?

4.      If you have visited Greenbriar Discount Mall, please explain your understanding of what kinds of goods or sold at the mall.

        a. If you have purchased items, please explain what items you have purchased.

5.      Have you, a family member or close friend ever been a tenant or rented space at Greenbriar Discount Mall?

        a. If so, please explain the type goods that you offered for sale at Greenbriar Discount Mall.

6.      Do you, a family member or close friend know or have any connection with any Greenbriar Discount Mall vendor or former vendor to your knowledge?

7.      Have you, a family member or close friend ever visited Greenbriar Marketplace Shopping Center?

a. If so, please describe the types of goods that are sold at Greenbriar Marketplace Shopping Center.

b. If yes, have you, a family member or close friend ever purchased any goods sold at Greenbriar Marketplace Shopping Center?

c. If so, what types of goods have you or they purchased at Greenbriar Marketplace Shopping Center?

8.    Have you, a family member or close friend ever purchased or thought about purchasing a counterfeit product of any type?

9.    Have you, a family member or close friend ever purchased any type of counterfeit product that you knew was counterfeit?

a. If so, please state where you purchased such product and what type of product.

b. What brand name or designer counterfeit product have you purchased?

10.    Have you, a family member or close friend ever purchased counterfeit Ray-Ban products?

11.    Are any of you familiar with the purpose of a trademark?

12.    Have you, a family member or close friend ever filed an application for a trademark?

13.    Have you, a family member or close friend work ever worked for any police department, Department of Homeland Security, or any private investigating firm or security firm?

14.    Have you, a family member or close friend ever had a positive or negative experience with a law enforcement agent?

15.    Have you, a family member or close friend ever been investigated, accused of or convicted of a crime?

16.    Have you, a family member or close friend ever been a victim of a crime?

17.    Do any of you have any training in law, such as law school or paralegal school?  Have any of you ever worked for a law firm?  Have you or any member of your family ever been involved in a lawsuit, either as a plaintiff or a defendant?

18.    Have any of you ever designed, marketed, manufactured or sold sunglasses or eyeglasses or worked for a designer of sunglasses or eyeglasses?

19.    Have you, a family member or close friend owned or operated your own business?

        a. If so, what type of business structure did the company have such as a limited partnership or corporation?

        b. If so, did the business involve retail sales?

        c. Did the business sell sunglasses or eyeglasses?

20.    Have you, a family member or close friend ever filed a lawsuit, workers' compensation claim or other type of insurance claim?

21.    Have you, a family member or close friend ever made a claim against any person, company or corporation as a result of wrongful conduct on the part of any person, company or agency?

22.    Do any of you have any reservations about awarding money damages against parties who bring cases to court?

23.    Have any of you ever served on a criminal jury?  Have any of you ever been a foreperson of a jury?

24.    Do any of you have any preconceived notion of what this case is about or the facts of this case?  Do any of you have any family member or close friend that works for a federal government agency or a state law agency?

25.    Have you or any family member ever been the victim of a crime?

26.    Do any of you have an opinion that if an individual owns a product that it has any obligation to protect that item from being copied or stolen by someone else?

These Defendants reserve the right to ask any follow-up questions as appropriate.

## ATTACHMENT C

## PLAINTIFF'S OUTLINE OF THE CASE

### I.      Factual summary of Plaintiff's cause of action.

Luxottica designs, manufactures, markets and sells premium luxury and sports eyewear under various proprietary brands including Ray-Ban. Luxottica sells its merchandise through its own specialty retail stores, authorized department stores, catalogs and via its own websites. Luxottica does not offer its merchandise for sale through individuals, street vendors, unauthorized retail location, or flea markets.

2925 Properties, LLC is the owner and operator of the Greenbriar Discount Mall, an indoor flea market in Atlanta, Georgia.   Kimberly Swindall is the sole member of 2925 Properties.   Kimberly and her husband, Patrick Swindall manage and operate the flea market with the assistance of Born and Lisa Sterling.

Since at least 2010, Defendants Greenbriar Marketplace, 2925 Properties, Kimberly Swindall and Patrick Swindall have been repeatedly advised through federal and state law enforcement officials, private brand investigators, and numerous trademark owners that Greenbriar Discount Mall's vendors were openly displaying and offering for sale thousands of items bearing counterfeits of numerous brand owner's trademarks.

Defendants Greenbriar Marketplace, 2925 Properties, Kimberly Swindall and Patrick Swindall have also separately acknowledged the repeated seizure of counterfeit merchandise at Greenbriar Discount Mall, as well as the counterfeiting problem in letters to trademark owners whose counterfeit merchandise has been offered for sale at the Greenbriar Discount Mall.

On December 19, 2013, agents from the United States Department of Homeland Security and the Atlanta Police Department raided the Greenbriar Discount Mall and an adjacent shopping plaza owned by the Swindalls during which thousands of units of counterfeit merchandise, including items bearing counterfeits of Luxottica's Ray-Ban and Oakley trademarks were seized.

Between October, 2014 and April, 2015, Luxottica's investigators visited the Greenbriar Discount Mall on multiple occasions, and during each visit purchased sunglasses that were openly displayed by vendors, and which bore counterfeits of Luxottica's Ray-Ban trademarks.   Since the filing of this lawsuit on April 29, 2015, Luxottica's investigator has returned to the Greenbriar Discount Mall on multiple occasions, and during each visit purchased sunglasses that were openly displayed by vendors, and which bore counterfeits of Luxottica's Ray-Ban trademarks.

Defendant Greenbriar Marketplace is the owner of the real property upon which the Greenbriar Discount Mall operates. Kimberly Swindall is the 50% owner of Greenbriar Marketplace.  Greenbriar Marketplace leases the Discount

Mall property to 2925 Properties, LLC, for the operation of the Greenbriar Discount Mall.

The lease agreement between Greenbriar Marketplace and 2925 Properties contains several limitations on 2925 Properties' use of the leased premises and provides Greenbriar Marketplace, as property owner and landlord, with various rights in the event its tenant, 2925 Properties does not comply with the lease terms:

(a) Section 4.1: provides that the "Premises shall not be used ... in such a manner as to operate ... in violation of any law, ordinance, regulation, ... or governmental directives ...;"

(b) Section 4.6F: requires 2925 Properties to "[p]romptly comply with all laws, ordinances, rules and regulations of governmental authorities ...;"

(c) Section 4.6H: requires 2925 Properties to "[o]bey and observe (and compel its officers, employees, contractors, licensees, invitees, sublessees, concessionaires and all others doing business with Tenant to obey and observe) and strictly comply with the Rules and Regulations established by Landlord from time to time for the conduct of the Tenant and/or the welfare of the Shopping Center;"

(d) Section 6.1: provides Greenbriar Marketplace with the right to terminate the lease or perform any obligation of 2925 Properties if it fails to abide by the terms of the lease;

(e) Section 6.1F: provides that "in the event of a breach or threatened breach by [2925 Properties] of any of the provisions of this Lease, [Greenbriar Marketplace] shall have the right of injunction and the right to invoke any remedy allowed at law or equity;"

(f) Section 7.15: provides Greenbriar Marketplace the right to perform 2925 Properties' obligations and cure the 2925 Properties' defaults—"[i]f tenant shall at any time fail to perform any obligation of tenant under this Lease, Landlord shall have the right, but not the obligation, without waiving or releasing Tenant from any obligations it has under this Lease, to perform such obligation of Tenant in the manner that Landlord shall deem appropriate ...."

The lease also prohibited 2925 Properties from offering certain merchandise on the premises including alcohol, obscene, erotic or pornographic materials. (Lease § 4.1.) Under the terms of the lease, Greenbriar Marketplace also retained control over and was required to provide, operate, and maintain common areas and facilities at the property and within the shopping center including, parking areas, truck-ways and loading areas, delivery passages, and public restrooms. (Lease § 1.6.)   Finally, the lease authorized Greenbriar Marketplace to terminate the lease of any tenant (including 2925 Properties) that has failed to comply with the law or the provisions of the lease.

Greenbriar Marketplace has failed to take any steps to curtail the counterfeiting activities taking place on its property.  Similarly, 2925 Properties Kimberly Swindall and Patrick Swindall have willfully blinded themselves to

the prevalent sale of counterfeit Ray-Ban trademarked merchandise at the Greenbriar Discount Mall.

As a result of the contributory infringement of Luxottica Group trademarks, Luxottica Group seeks to recover statutory damages under 15 U.S.C. § 1117(c) as well as costs under 15 U.S.C. § 1117 (a) and/or (c). Luxottica also seeks the issuance of a permanent injunction against Defendants, their officers, agents, employees, tenants and vendors from engaging in activity constituting infringement of any of Luxottica Group's rights in its trademarks.

## II.  Rules, Regulations, Statutes, Ordinances, and Illustrative Case Law Creating a Specific Legal Duty Relied Upon by Plaintiff

1.  Contributory trademark counterfeiting and infringement is governed by 15 U.S.C. § 1114.

2.  *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc*., 955 F.2d 1143, 1149–1150 (7th Cir.1992) (applying *Inwood* liability test for contributory trademark infringement to the owner and operator of a flea market where counterfeit items were sold and finding that owner/operator, though lacking actual knowledge, had reason to know of trademark violations of its vendors and by "willfull blindness" deliberately failed to investigate suspected infringing activity by vendors, thereby facilitating ongoing infringement by permitting such vendors to use flea market resources may be subject to contributory liability).

3.     *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-265 (9th Cir.1996) (adopting *Hard Rock Cafe's* application of contributory trademark infringement liability to operators of a swap meet who had reason to know of infringing activity after law enforcement officers raided the flea market and seized counterfeit merchandise)

4.     *Coach v. Goodfellow*, 717 F.3d 498 (6th Cir.2013) (holding that facts were sufficient to support a finding of contributory liability as to flea market operator, as "provider of a product or service, i.e., rental booths and storage units for vendors' who "continued to rent spaces at his flea market to vendors that he knew, or should have known, were engaging in infringing activity").

5.     *Babbit Elecs. Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994) ("[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing the corporate veil.").

6.     *Chanel, Inc. v. Italian Activewear of Fla., Inc*., 931 F.2d 1472, 1478 n. 8 (11th Cir. 1991) (stating that the "individual liability standard does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether he actively participated as a moving force in the decision to engage in the infringing acts, or otherwise caused the infringement as a whole to occur.").

7.      *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1522 (11th Cir. 1992) ("[U]nder appropriate facts, contributory trademark infringement might be grounded upon a [defendant's] bad faith refusal to exercise a clear contractual power to halt the infringing activities.").

8.      *Luxottica Group, S.p.A. v. Greenbriar Marketplace II, LLC*, 1:15-CV-01382-AT, 2016 WL 5859023, at *2 (N.D. Ga. Sept. 30, 2016) (denying motion for summary judgment of shopping center landlord where the evidence indicated that defendant landlord's actions in maintaining the physical space of the whole of the shopping center, including the flea market/discount mall, dictating leasing conditions for its tenant/occupants, continuing to lease, continuing to collect rent, refusing to take effective steps to stop the illegal counterfeiting activity was sufficient to give rise to contributory infringement liability).

9.      *Coach, Inc. v. Sapatis,* 994 F.Supp.2d 192 (D.N.H.2014) (finding the defendant's degree of control over the infringer—rather than his or her nominative status as owner, lessor, or lessee—as the determinative factor and denying motion for summary judgment of individual owner and operator of flea market where the evidence viewed in the light most favorable to Coach indicated the defendant exercised sufficient control over the flea market and its vendors for a reasonable jury to hold him contributorily liable for the vendors' conduct).

10.    *Coach Inc. v. Swap Shop, Inc*., 916 F.Supp.2d 1271, 1279 (S.D.Fla.2012) (holding that plaintiffs stated a facially plausible claim that owners and operators of a flea market were either willfully blind of Lanham Act violations or had actual knowledge of them, and were therefore liable for contributory trademark infringement).

11.    Statutory damages pursuant to 15 U.S.C. §1117

12.    Injunctive relief pursuant to 15 U.S.C. §1125, et. seq.

## III.    Damages Sustained by Plaintiff

1.    Plaintiff has elected to recover statutory damages pursuant to the Lanham Act.   In a case involving the use of a counterfeit mark, statutory damages may be awarded in an amount not less than $1,000 or more than $200,000 per mark, per type of goods sold, offered, for sale, or distributed. 15 U.S.C. § 1117(c). In a case involving the willful use of a counterfeit mark, statutory damages may be awarded in an amount not less than $1,000 or more than $2,000,000 per mark, per type of goods sold, offered, for sale, or distributed. 15 U.S.C. § 1117(c).  Plaintiff seeks statutory damages in an amount up to $ 16 million.  The amount of statutory damages to be awarded to Plaintiff shall be determined by the jury.   The trademarks and types of goods at issue are set forth below:

| Registration Number | Trademark | Good and Services | Type of Good |
|---|---|---|---|
| **650,499**<br><br>**RAY-BAN script logo** |  | **FOR: SUNGLASSES, SHOOTING GLASSES, AND OPHTHALMIC LENSES, IN CLASS 26.** | **Lenses** |
| **1,080,886**<br><br>**RAY-BAN word mark** | **RAY-BAN** | **FOR: OPHTHALMIC PRODUCTS AND ACCESSORIES – NAMELY, SUNGLASSES; EYEGLASSES; SPECTACLES; LENSES AND FRAMES FOR SUNGLASSES, EYEGLASSES, SPETACLES – IN CLASS 9.** | **Tags/Labels** |
| **1,093,658 RAY-BAN script logo** |  | **FOR: OPHTHALMIC PRODUCTS AND ACCESSORIES – NAMELY, SUNGLASSES; EYEGLASSES; SPECTACLES; LENSES AND FRAMES FOR SUNGLASSES, EYEGLASSES, SPECTACLES AND GOGGLES; AND CASES AND OTHER PROTECTIVE COVERS FOR SUNGLASSES, EYEGLASSES, SPECTACLES– IN CLASS 9.** | **Frames Cases Tags/Labels** |
| **3,522,603**<br><br>**RAY-BAN red logo** |  | **FOR: SUNGLASSES, EYEGLASSES, LENSES FOR EYEGLASSES EYEGLASSES FRAMES, CASES FOR EYEGLASSES, IN CLASS 9.** | **Tags/Label** |
| **1,511,615 Word Mark** |  | **FOR: EYEGLASSES, SUNGLASSES, TEMPLES AND EYEGLASS FRAMES (CL. 09)** | **Tags/Label** |
| **2,971,023 RB Word Mark** |  | FOR: SUNGLASSES, EYEGLASSES, [AESTHETIC GLASSES, AND EYEGLASSES FOR SPORTSMAN | **Lenses** |

| | | ACTIVITIES, NAMELY, MOTORCYCLISTS, SCOOTERISTS AND CYCLISTS; ] EYEGLASS LENSES, [ CONTACT LENSES; SUNGLASS AND EYEGLASS FRAMES; CASES AND CHAINS FOR SUNGLASSES; MAGNIFYING GLASSES; BINOCULARS; MOTORCYCLE GOGGLES AND SAFETY GOGGLES; SPORT GOGGLES FOR USE IN SWIMMING, WATER POLO, SCUBA DIVING, SNORKELING, WINDSURFING, BICYCLING, MOTORCYCLING, BASKETBALL, TENNIS, RACQUETBALL, HANDBALL, SQUASH, SHOOTING, SKIING AND SNOWBOARDING; AND SPARE LENSES FOR EYEGLASSES, SUNGLASSES AND GOGGLES [IC 009. US 021 023 026 036 038] | |
|---|---|---|---|

2.      Plaintiff also seeks costs, prejudgment interest, and attorneys' fees pursuant to § 1117(c) as well as injunctive relief pursuant to 15 U.S.C. § 1125, *et. seq.*

**ATTACHMENT D**

**DEFENDANT GREENBRIAR'S OUTLINE OF THE CASE**

Plaintiff filed this lawsuit to recover money damages for alleged contributory trademark infringement, by Greenbriar and others, arising from sales of allegedly counterfeit Ray-Ban sunglasses by individual stall owners at Greenbriar Discount Mall. Plaintiff has made no effort to recover damages, or otherwise pursue, the actual sellers of the allegedly counterfeit merchandise. Instead, Plaintiff has chosen only to pursue claims of secondary liability against Greenbriar and the other defendants to this case.

Since January 23, 2004, Greenbriar has owned the Greenbriar Marketplace commercial shopping center located at 2975 Headland Drive S.W. in Atlanta (the "Property"). The shopping center on the Property consists of a large anchor store space (formerly a Kmart) and several other retail storefronts, as well as adjoining parking lot areas and traffic medians.

After purchasing the Property, Greenbriar leased the anchor store space and the adjoining parking lot areas (the "Leased Property") to 2925 Properties, LLC ("2925"). The Leased Property was leased by Greenbriar to 2925 under a "Second Amended and Restated Lease for Greenbriar Marketplace II, LLC, Landlord, and 2925 Properties, LLC, Tenant" dated as of June 18, 2010 (the "Lease"), "for the operation of retail shops." The Lease states that "[n]o other services shall be allowed" by 2925, in its occupation and use of the Leased Property, "without express written consent of [Greenbriar]." The Lease further

provides that the Leased Property "shall not be used" by 2925 "in such a manner as to operate . . . in violation of any law, ordinance, regulation, . . . or governmental directives . . . ." During the ten-year term of the Lease, all operation, use, and management of the Leased Property was undertaken by 2925, the tenant, not Greenbriar, the landlord. Under the Lease, Greenbriar does not control, cannot control, and does not have the right to control any of the tenants that actually sell, or offer for sale, any goods or merchandise at the Leased Property.

Instead, Greenbriar only undertook obligations typically ascribed to property owners—like making structural repairs to the larger Property's foundation and exterior walls and maintaining the Property's roof and plumbing. Greenbriar had an interest, as the Property's owner, to ensure that the physical structure and infrastructure remained well-maintained, safe, and usable. Greenbriar had no control over the business operations of any of the tenants at any of the retail spaces within the Property, including the Leased Property and the Greenbriar Discount Mall operated by 2925 therein.

At all times since its purchase of the Property in January 2004, Greenbriar did not control, could not control, and did not have the right to control any of the tenants that actually sold, or offered for sale, any goods or merchandise—counterfeit or not—at the Leased Property. Those rights and responsibilities exclusively belonged to, and laid with, 2925.

Nonetheless, in 2010, Agent Tony Scott of the United States Department of Homeland Security ("Homeland Security") contacted Albert Ashkouti ("Ashkouti"), ostensibly as an agent of Greenbriar, to indicate that Homeland Security was "looking at the flea market" operating at the Property. Ashkouti told Agent Scott that he and Greenbriar had nothing to do with business activities within the Leased Property and immediately directed him to speak with Patrick Swindall ("Swindall"), the individual in control of 2925, the entity leasing space at the Leased Property to allegedly-infringing vendors.

Ashkouti also met with Homeland Security Agent J. D. Cannon when he called Ashkouti and requested a meeting, which included Internal Revenue Service officials and local law enforcement. Agent Cannon and the officials present at the meeting requested extensive information regarding the ownership structure of Greenbriar and its related entities, which Ashkouti voluntarily provided. Ashkouti again made clear to Agent Cannon and the other officials that he and Greenbriar had no control over the vendors at the Leased Property and directed them to speak with Swindall, the individual in control of 2925, which actually had leases with the vendors.

Ashkouti also repeatedly advised individuals acting on behalf of various trademark owners (but not Plaintiff), when those individuals unilaterally contacted him, that he and Greenbriar had no involvement with the business activity of vendors at the Leased Property. For instance, on or about April 3, 2014, Ashkouti sent correspondence to Ellen Brooks, who had represented

herself to be the Director of U.S. Trademark Enforcement for Ralph Lauren

Corporation, telling her in pertinent part:

> I am not personally involved with the Discount Mall.
> There is no such entity as Tabas II, LLC, and First
> Guaranty Realty has nothing to do with the Discount
> Mall. About two thirds of the Shopping Center is
> leased to 2925 Properties, LLC. Ms. Kimberly
> Swindall is the owner of 2925 Properties, LLC. 2925
> Properties subleases to various tenants, most of whom
> are vendors in the flea market where the apparent
> problems exist. . . . I do not have the contractual right
> or other legal right to evict any subtenants, nor do I
> have the contractual or legal right to confiscate any of
> their inventory.

Further, on or about April 14, 2014, Ashkouti sent an e-mail to Heather

McDonald, who he understood to be an attorney representing another trademark

owner who claimed that their trademarks were being infringed by vendors at the

Leased Property, that read in pertinent part:

> [A]s per your letter of April 11, 2014, there is no such
> entity as Tabas Two LLC and we do not control
> Greenbriar Discount Mall. My response to you is the
> same as in the attached letters to Ralph Lauren
> Corporation.

Ashkouti sent identical responses to two other representatives of claimed

trademark owners who unilaterally contacted him about the same subject.

*Relevant Rules, Regulations, Statutes, Ordinances, and Illustrative Case Law*

1.   <u>MTD Corp. v. New York Stock Exch., Inc.</u>, 858 F. Supp. 1028 (C.D. Cal. 1994) ("The owner of a trade name must do its own police work.").

2.   <u>Sony Discos, Inc. v. E. J. C. Family P'ship</u>, Civil Action No. H-02-3729, 2010 WL 1270342 (S.D. Tex. Mar. 31, 2010) (owner of flea market at which pirated cassettes and compact discs were sold could not be held liable for contributory copyright infringement; "In effect, the producers argue that the mere existence of a flea market satisfies the causation requirement for infringing sales that Cole does not know are occurring. Cole is not akin to the driver of a get-away car; he is closer to the service station manager who sells the bank-robber gasoline. Cole did not—under any rational interpretation—induce or cause the vendors to sell copied recordings. The vendors were acting of their own accord and for their own benefit. The only question is whether Cole contributed materially to their sales. Cole, through his flea market, is <u>at most</u> furnishing the physical location to accomplish an infringing activity. Cole is not responsible for all torts by vendors, whether it be assault, theft, or copyright infringement. One must contribute to the infringement to find liability, and not merely contribute to the existence of a place where people may misbehave. Sony will take nothing under contributory infringement.").

3.   <u>Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.</u>, 967 F.2d 1516 (11th Cir. 1992) ("[A] licensor's duty to control a licensee's use of <u>the licensor's own trademark</u> cannot be blindly converted into a duty to prevent a licensee's misuse of <u>another party's trademark</u>. Such a wholesale conversion would impose responsibility upon a franchisor not for failing to maintain the integrity of its own trademark, but for failing to prevent another entity's violation of the law. We can discern no reason to impose such a burden upon a party that is, at best, secondarily responsible for any trademark infringement. . . . Thus, although the law imposes upon a franchisor the duty to police the use of its own mark, a franchisor has no similar legally-imposed duty to police a franchisee's appropriation of other marks.") (footnote omitted).

4.   <u>Louis Vuitton Malletier v. The Flea Market, Inc.</u>, No. C 09-01062 CW, 2009 WL 1625946 (N.D. Cal. June 10, 2009) (contributory trademark infringement claims against owner of real property where alleged infringement occurred dismissed for failure to state a claim, given that "the property owner . . . and the market operator . . . [we]re two separate and distinct entities" and plaintiff "d[id] not explain the extent to which [the property owner] participated in any illegal conduct separate and apart from the participation of the other named [d]efendants"; "No case supports the proposition that a property owner may be liable for contributory trademark infringement if it only leases property

to a separate and distinct entity, which in turn operates a . . . market and rents space to a vendor, which in turn infringes trademarks.").

5.      Coach, Inc. v. Swap Shop, Inc., 916 F. Supp. 2d 1271 (S.D. Fla. 2012) ("[A]n owner of property where [a] flea market is located, that leases the property to a separate entity that operates the flea market and rents space to a vendor, is not liable for contributory trademark infringement by virtue of its ownership, if it is not also the flea market operator.").

6.      Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472 (11th Cir. 1991) (to be liable, defendant must have "actively and knowingly caused the infringement," meaning that defendant was "moving, active, conscious force behind infringement") (internal quotation omitted).

7.      Duty Free Americas, Inc. v. Estee Lauder Cos., Inc., 797 F.3d 1248 (11th Cir. 2015) (liability for contributory trademark infringement exists only if plaintiff shows that defendant(s) (1) intentionally induced tenants to directly infringe plaintiff's trademarks or (2) knowingly participated in scheme of direct trademark infringement carried out by tenants; also, "contributory liability under the Lanham Act is a judicially developed doctrine").

8.      Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 545 U.S. 913 (2005) (inducement prong of contributory infringement analysis requires "clear expression or other affirmative steps taken to foster infringement"; "[t]he inducement rule . . . premises liability on purposeful, culpable expression and conduct").

9.      Tiffany (NJ), Inc. v. eBay, Inc., 600 F.3d 93 (2d Cir. 2010) ("For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary.").

10.     Brightharbour Consulting, LLC v. Docuconsulting, LLC, Civil Action File No. 1:12-CV-4050-TWT, 2014 WL 1415186 (N.D. Ga. Apr. 14, 2014) (Thrash, J.) (plaintiff must show actual, direct infringement to state a viable claim for, and be able to recover on a theory of, contributory infringement).

**ATTACHMENT D-2**

**Defendants 2925 Properties, Patrick Swindall and Kimberly Swindall**

I.      Factual Summary of Defendants' Case

2925 Properties, LLC d/b/a Greenbriar Discount Mall ("GDM"), is a discount mall which leases booths to multiple tenants at their space in Greenbriar Marketplace ll.  The multiple tenants who lease retail spaces in GDM primarily conduct retail and service-related (hair and beauty shops, computer repairs, etc.) businesses.  GDM's tenant lease expressly prohibits the display or sale of counterfeit merchandise.   This action arises from the illegal behavior of several tenants over the years whom have sold counterfeit merchandise in GDM.

In December, 2010, a raid by Southeastern Investigations, (a private investigation company hired by Coach to address the issue of counterfeit merchandise by vendors in various Atlanta based retail outlets similar to GDM), Atlanta Police Department officers and Homeland Security agents, resulted in a number of GDM's tenants being cited for illegally displaying and selling counterfeit name brand merchandise.  During and immediately after the raid, GDM's managers, Lisa and Born Sterling and 2925 Properties, LLC's manager, Patrick Swindall spoke with Homeland Security Agent Tony Scott and Southeastern Investigations principal, Shari Escher, about what needed to be done to eliminate the storage, display and selling of counterfeit merchandise in GDM in the future.

As a result of those discussions, GDM's management contacted a representative of Coach to inform Coach that GDM had entered into a contract with Southeastern Investigations to perform routine inspections of all of Greenbriar Discount Mall's tenants' "booths" to determine if counterfeit merchandise was being sold. Southeastern made bi-monthly inspections of booths operated by GDM. As a result of those inspections, dozens of tenants of GDM were found to have counterfeit merchandise. These tenants' leases were immediately terminated by GDM and the tenants were immediately evicted. Southeastern Investigations continued to make routine inspections until December 2013, when a raid by Atlanta Police Department officers and Homeland Security JD Agent Cannon was conducted at GDM. The raid resulted in the discovery of five booths containing counterfeit merchandise. All five offending tenants' leases were terminated and the tenants immediately evicted.

Immediately after the December 2013 raid, Patrick Swindall spoke with Agent Cannon and proposed, as he had previously proposed to Agent Scott, that Homeland Security should place an undercover operative within GDM to determine the source or sources that were supplying GDM's tenants with counterfeit merchandise. Patrick Swindall also repeated to Agent Cannon the same offer that he had made to Agent Cannon's predecessor, Agent Scott, "that the GDM premises were completely available to Homeland and APD twenty-four hours a day, seven days a week to inspect each tenant's premises either

during hours when GDM was open to the public and/or during hours when GDM was closed to the public".   Agent Cannon never accepted GDM's management's proposal.

From December 2010 to the present, GDM has been fully cooperative with APD and Homeland Security in providing copies of leases of all GDM's tenants, and copies of letters terminating and evicting tenants that violated the express terms of GDM's Lease Agreements  which prohibit the storage, display or sale of counterfeit merchandise.  Moreover, when GDM's management found any tenant violating the terms of said Lease Agreements, GDM manager Lawrence Sterling routinely called APD and requested that the violating tenant be arrested and all counterfeit merchandise be confiscated.  On each occasion the APD officer stated that he would not make an arrest because it was a civil, not a criminal issue.  This was the case in early 2016 when Kim Swindall, sole member of 2925 Properties, LLC, and her daughter MacKenzie, went to the market and identified and bought several counterfeit items.  An Atlanta police officer, Officer McCormick, was called to the scene and asked to arrest the tenants. She reiterated to the Swindalls that it was a civil matter, but took the information and said that she would turn it over to detectives.

Mrs. Swindall contacted the APD, Zone lV, and was elated to find that Major Vincent Moore agreed to assign Officer Rick Mason to assist her in ridding the market of counterfeit.  Throughout 2016, Capt. Mason assisted the Swindalls in trying to eradicate the problem but as of now it still continues to

pop up.

The Swindalls have tried to hire multiple security firms who specialize in counterfeit to assist them, but their calls and emails have either gone unreturned or they have been told that the company will not allow the Swindalls to hire them.

They have also repeatedly reached out to the companies whose items have been counterfeited to ask them for suggestions and help and have followed each of their suggestions to the letter.

Instead of assisting GDM in its efforts to eliminate the counterfeit issues it faced, the brand companies and Homeland Security repeatedly chose to ignore those requests and instead conducted "raids" in which booths were forced open by sledge hammers and inspected.  Sledge hammers were used after GDM's management offered to cut the locks and allow immediate access to any booth by law enforcement.  This resulted in major damage to the market's fixtures.

GDM has been in business continuously since 1983 and has over one hundred tenants, some of whom were tenants when GDM first opened in 1983. As a result of GDM's operating policy, language in its Lease Agreements and constant inspections of its tenants' merchandise, it has suffered substantial financial losses due to counterfeit activity.  This is demonstrated by the fact that prior to the counterfeiting phenomenon facing all businesses similar to GDM's model, its average gross monthly rent collections have steadily declined substantially.  This decline in revenue can be directly traced to the underground

smuggling and selling of counterfeit merchandise in GDM and other similar markets and, most importantly, federal law enforcement agencies' refusal to assist GDM in any way other than yearly "raids," that result in disruption of existing tenant's businesses who have never engaged in any illegal activity in their booths and who have joined GDM's management's efforts to eliminate all counterfeit in its retail tenants' businesses.

The Swindalls and 2925 Properties, LLC, deny that they have blinded themselves to any and all illegal conduct alleged by the Plaintiff, willfully or otherwise, and deny any liability to the Plaintiff.  On the contrary, they have done everything in their power to eradicate the counterfeit sales activity.

## II.   Rules, Regulations, Statutes, Ordinances and Illustrative Case Law Relied Upon by These Defendants

(1)    MTD Corp. v. New York Stock Exch., Inc., 858 F. Supp. 1028 (C.D. Cal. 1994) ("The owner of a trade name must do its own police work.").

(2)    Mini Maid Servs. Co. v. Maid Brigade Sys., Inc., 967 F.2d 1516 (11th Cir. 1992) ("[A] licensor's duty to control a licensee's use of the licensor's own trademark cannot be blindly converted into a duty to prevent a licensee's misuse of another party's trademark. Such a wholesale conversion would impose responsibility upon a franchisor not for failing to maintain the integrity of its own trademark, but for failing to prevent another entity's violation of the law. We can discern no reason to impose such a burden upon a party that is, at best, secondarily responsible for any trademark infringement. . . . Thus, although the law imposes upon a franchisor the duty to police the use of its own mark, a franchisor has no similar legally-imposed duty to police a franchisee's appropriation of other marks.") (footnote omitted).

(3)    Coach, Inc. v. Swap Shop, Inc., 916 F. Supp. 2d 1271 (S.D. Fla. 2012) ("[A]n owner of property where [a] flea market is located, that leases the property to a separate entity that operates the flea market and rents space to a vendor, is not liable for contributory trademark infringement by virtue of its ownership, if it is not also the flea market operator.").

(4)   <u>Sony Discos, Inc. v. E. J. C. Family P'ship</u>, Civil Action No. H-02-3729, 2010 WL 1270342 (S.D. Tex. Mar. 31, 2010) (owner of flea market at which pirated cassettes and compact discs were sold could not be held liable for contributory copyright infringement; "In effect, the producers argue that the mere existence of a flea market satisfies the causation requirement for infringing sales that Cole does not know are occurring. Cole is not akin to the driver of a get-away car; he is closer to the service station manager who sells the bank-robber gasoline. Cole did not—under any rational interpretation—induce or cause the vendors to sell copied recordings. The vendors were acting of their own accord and for their own benefit. The only question is whether Cole contributed materially to their sales. Cole, through his flea market, is <u>at most</u> furnishing the physical location to accomplish an infringing activity. Cole is not responsible for all torts by vendors, whether it be assault, theft, or copyright infringement. One must contribute to the infringement to find liability, and not merely contribute to the existence of a place where people may misbehave. Sony will take nothing under contributory infringement.").

(5)   <u>Chanel, Inc. v. Italian Activewear of Fla., Inc.</u>, 931 F.2d 1472 (11th Cir. 1991) (to be liable, defendant must have "actively and knowingly caused the infringement," meaning that defendant was "moving, active, conscious force behind infringement") (internal quotation omitted).

(6)   <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 545 U.S. 913 (2005) (inducement prong of contributory infringement analysis requires "clear expression or other affirmative steps taken to foster infringement"; contributory infringement analysis requires "clear expression or other affirmative steps taken to foster infringement.").

(7)   <u>Tiffany (NJ), Inc. v. eBay, Inc.</u>, 600 F.3d 93 (2d Cir. 2010) ("For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary.").

(8)   <u>Brightharbour Consulting, LLC v. Docuconsulting, LLC</u>, Civil Action File No. 1:12-CV-4050-TWT, 2014 WL 1415186 (N.D. Ga. Apr. 14, 2014) (Thrash, J.) (plaintiff must show actual, direct infringement to state a viable claim for, and be able to recover on a theory of, contributory infringement).

## ATTACHMENT E

## <u>STIPULATED FACTS</u>

In accordance with the Court's Standing Order, counsel for Parties will meet no later than ten (10) days before the date of the pretrial conference to stipulate to as many facts and issues as possible.

**ATTACHMENT F-1**

**PLAINTIFF'S WITNESS LIST**

**Plaintiff will call:**

1.    John J. Stewart (corporate representative)
      Luxottica North America
      12 Harbor Park Drive
      Port Washington, New York 11050

2.    Jason Groppe, Esq. (corporate representative)
      Luxottica North America
      4000 Luxottica Place
      Mason, Ohio 45040

3.    Geanie Johansen
      Phoenix Consulting & Investigations, Inc.
      6175 Hickory Flat Hwy.
      Suite 110-105
      Canton, GA  30115

4.    Isabel Rozo
      Phoenix Consulting & Investigations, Inc.
      6175 Hickory Flat Hwy.
      Suite 110-105
      Canton, GA  30115

6.    Special Agent Special Agent J.D. Cannon,
      U.S. Department of Homeland Security
      1100 Centre Pkwy.
      Atlanta, Georgia 30344

7.    Shari Escher
      DRE Investigations
      3760 Sixes Road # 126
      Canton, GA 30114

8.    Sergeant Jessica Bruce
      City of Atlanta Police Department
      226 Peachtree Street
      Atlanta, GA 30303

9.  Detective Katie Reister
    City of Atlanta Police Department
    226 Peachtree Street
    Atlanta, GA 30303

10. Detective Timothy Tysver
    East Point Police Department
    2727 East Point Street
    East Point, GA 30344-3207

11. Greenbriar Marketplace II, LLC (corporate representative)

12. Airport Mini Mall, LLC (corporate representative)

13. Albert Ashkouti

14. Debbie Reeves, 512 King Arnold St, Atlanta, GA 30354

15. Judy Gaddy

16. Defendant Patrick Swindall

17. Defendant Kimberly Swindall

18. Lawrence Born Sterling

**Plaintiff may call:**

19. Tim Forman
    898 Oak Street SW #1213
    Atlanta, GA 30310

20. Coach, Inc, Corporate Representative

21. Louis Vuitton, Corporate Representative

22. Gerald Ashkouti, 130 Bayvale Court Atlanta, GA 30328

23. Any witnesses identified in Defendants' Will Call or May Call witness

    lists.

24. Any witnesses needed for rebuttal.

## ATTACHMENT F-2

## DEFENDANT GREENBRIAR'S WITNESS LIST

**Greenbriar may call at trial:**

1.     Albert Ashkouti, c/o Schreeder, Wheeler & Flint, LLP, 1100 Peachtree Street N.E., Suite 800, Atlanta, Ga. 30309-4516.

2.     Patrick Swindall, c/o Richard W. Summers, P.C., 3384 Peachtree Road N.E., Suite 275, Atlanta, Ga. 30326.

3.     Kimberly Swindall, c/o Richard W. Summers, P.C., 3384 Peachtree Road N.E., Suite 275, Atlanta, Ga. 30326.

4.     Lawrence "Born" Sterling, c/o Richard W. Summers, P.C., 3384 Peachtree Road N.E., Suite 275, Atlanta, Ga. 30326.

5.     Lisa Sterling, c/o Richard W. Summers, P.C., 3384 Peachtree Road N.E., Suite 275, Atlanta, Ga. 30326.

6.     Jason Groppe, Esq., 4000 Luxottica Place, Mason, Ohio 45040.

7.     John J. Stewart, 12 Harbor Park Drive, Port Washington, N.Y. 11050.

8.     Timothy Forman, Dupree Security Group, Inc., 898 Oak Street S.W. # 1213, Atlanta, Ga. 30310.

9.     Geanie L. Johansen, Phoenix Consulting & Investigations, Inc., 6175 Hickory Flat Highway, Suite 110-105, Canton, Ga. 30115.

10.    Isabel Rozo, Phoenix Consulting & Investigations, Inc., 6175 Hickory Flat Highway, Suite 110-105, Canton, Ga. 30115.

11.    Luisa Rozo, Phoenix Consulting & Investigations, Inc., 6175 Hickory Flat Highway, Suite 110-105, Canton, Ga. 30115.

12.    Special Agent J. D. Cannon, United States Department of Homeland Security, 1100 Centre Parkway, Atlanta, Ga. 30344.

13.    Sergeant Jessica Bruce, City of Atlanta Police Department, 226 Peachtree Street, Atlanta, Ga. 30303.

14.    Detective Katie Reister, City of Atlanta Police Department, 226 Peachtree Street, Atlanta, Ga. 30303.

15.    Detective Timothy M. Tysver, City of East Point Police Department, 2727 East Point Street, East Point, Ga. 30344.

16.    Shari Anne Escher, DRE Investigations, Inc., 190 Collett Drive, Canton, Ga. 30115.

17.    Tyler C. Dixon, Esq., Raiford & Dixon, LLC, 1155 Hightower Trail, Suite 200, Atlanta, Ga. 30350.

18.    Ellen Brooks, 625 Madison Avenue, New York, N.Y. 10022.

19.    Heather J. McDonald, Esq., 45 Rockefeller Plaza, New York, N.Y. 10111.

20.    Jessica Haugen, 195 Broadway, 12th Floor, New York, N.Y. 10007.

21.    Hailey S. Peterson Blevins, 350 North Lake Destiny Road, Maitland, Fla. 32751.

22.    Deborah Reeves, 6000 Lake Forrest Drive, Suite 400, Atlanta, Ga. 30328.

23.    Agent Tony Scott of the United States Department of Homeland Security.

24.    Any witnesses required for impeachment or rebuttal, and any witnesses listed or identified by any of the other parties to this case.

## ATTACHMENT F-3

### Defendants 2925 Properties, Patrick Swindall and Kimberly Swindall

Defendants 2925 Properties, LLC, Patrick Swindall and Kimberly Swindall *will* call at trial:

(1)    Patrick Swindall, 3137 St. Ives Country Club Parkway, Johns Creek, Georgia 30097.

(2)    Kimberly Swindall, 3137 St. Ives Country Club Parkway, Johns Creek, Georgia 30097.

(3)    Paul S. Kish, Kish & Lietz, P.C., 225 Peachtree Street, NE, 1700 South Tower, Peachtree Center, Atlanta, Georgia 30303.

(4)    Lawrence "Born" Sterling, 2206 Tuley Drive, Douglasville, Georgia 30135.

Defendants 2925 Properties, LLC, Patrick Swindall and Kimberly Swindall *may* call at trial:

(1)    MacKenzie Swindall, 3137 St. Ives Country Club Parkway, Johns Creek, Georgia 30097.

(2)    Lisa Sterling, 2206 Tuley Drive, Douglasville, Georgia 30135.

(3)    Captain Rick Mason, Atlanta Police Department, 226 Peachtree Street, SW, Atlanta, Georgia 30303.

(4)    Major Vincent Moore, Atlanta Police Department, 226 Peachtree Street, SW, Atlanta, Georgia 30303.

(5)     Officer B. McCormick, Atlanta Police Department, 226 Peachtree Street, SW, Atlanta, Georgia 30303.

(6)     Talla Salla, Unit B-15, Greenbriar Discount Mall, East Point, Georgia 30344.

(7)     Agent Tony Scott, U.S. Department of Homeland Security.

(8)     Keun Tae Yang, 3230 Seven Oaks Drive, Cumming, Georgia 30041.

(9)     Any persons listed by Plaintiff or other Defendants in this case as "will call" or "may call" witnesses.

# ATTACHMENT G-1

# PLAINTIFF'S TRIAL EXHIBIT LIST

| Exhibit No. | Description of Exhibit |
|---|---|
| 1. | Luxottica 2011 Annual Report |
| 2. | Luxottica 2012 Annual Review |
| 3. | Luxottica 2012 Annual Report |
| 4. | Luxottica 2013 Annual Review |
| 5. | Luxottica 2013 Annual Report |
| 6. | Luxottica 2014 Annual Review |
| 7. | OneSight 2014 Annual Review |
| 8. | Luxottica 2014 Annual Report |
| 9. | Luxottica 2015 Annual Review |
| 10. | Luxottica 2015 Annual Report |
| 11. | Certified Luxottica 2009 Annual Report Form 20-F |
| 12. | Certified Luxottica 2010 Annual Report Form 20-F |
| 13. | Certified Luxottica 2011 Annual Report Form 20-F |
| 14. | Certified Luxottica 2012 Annual Report Form 20-F |
| 15. | Certified Luxottica 2013 Annual Report Form 20-F |
| 16. | Certified Luxottica 2014 Annual Report Form 20-F |
| 17. | Certified Luxottica 2015 Annual Report Form 20-F |
| 18. | Summary of Luxottica's Annual Advertising and Marketing expenses (2011 – 2015) |
| 19. | Printout from Luxottica's website re company info, counterfeit education, marketing, and various products |
| 20. | Mission Statement from Luxottica's website |
| 21. | Luxottica's website Counterfeit Education Page |
| 22. | |
| 23. | |
| 24. | |
| 25. | |
| 26. | |
| 27. | |
| 28. | |
| 29. | |
| 30. | |
| 31. | |
| 32. | |
| 33. | |
| 34. | |
| 35. | |
| 36. | |
| 37. | |
| 38. | |
| 39. | |
| 40. | |

| 41. | |
|-----|--|
| 42. | |
| 43. | |
| 44. | |
| 45. | |
| 46. | |
| 47. | |
| 48. | |
| 49. | |
| 50. | |
| 51. | |
| 52. | |
| 53. | |
| 54. | |
| 55. | |
| 56. | |
| 57. | |
| 58. | |
| 59. | |
| 60. | |
| 61. | |
| 62. | |
| 63. | |
| 64. | |
| 65. | |
| 66. | |
| 67. | |
| 68. | |
| 69. | |
| 70. | |
| 71. | |
| 72. | |
| 73. | |
| 74. | |
| 75. | |
| 76. | |
| 77. | |
| 78. | |
| 79. | |
| 80. | |
| 81. | |
| 82. | |
| 83. | |
| 84. | |
| 85. | |
| 86. | |
| 87. | |
| 88. | |

| | |
|---|---|
| 89. | |
| 90. | |
| 91. | |
| 92. | |
| 93. | |
| 94. | |
| 95. | |
| 96. | |
| 97. | |
| 98. | |
| 99. | |
| 100. | Certified Business Filings for Greenbriar Marketplace II, LLC 2003 – 2016 (Certificate of Organization, Transmittal Information, Articles of Organization, Registered Agent Change of Address, Annual Registration for 2014 & 2016) |
| 101. | Certified Business Filings for 2925 Properties, LLC 1998 – 2016 (Certificate of Organization, Articles of Organization, Certificate of Election , Transmittal Information, Annual Registration for 2005, 2006, 2008 – 2016) |
| 102. | Operating Agreement of 2925 Properties, LLC |
| 103. | Certified Business Filings for First Guaranty Management Corporation 2011 – 2016 (Annual Registration for 2014 & 2016) |
| 104. | 2010 Tax Returns for Greenbriar Marketplace II, LLC |
| 105. | 2011 Tax Returns for Greenbriar Marketplace II, LLC |
| 106. | 2012 Tax Returns for Greenbriar Marketplace II, LLC |
| 107. | 2013 Tax Returns for Greenbriar Marketplace II, LLC |
| 108. | 2014 Tax Returns for Greenbriar Marketplace II, LLC |
| 109. | Map of Greenbriar Marketplace effective 9/1/2010 |
| 110. | Map of Greenbriar Discount Mall |
| 111. | Fulton County Assessor Map of 2975 Headland Drive |
| 112. | Site Facts for Greenbriar Marketplace Shopping Center |
| 113. | Second Amended and Restated Lease between Greenbriar Marketplace II, LLC and 2925 Properties, LLC dated 6/18/10 |
| 114. | Agreement to Manage and Lease Real Estate between 2925 Properties, LLC and Sterling Management Company dated 1/21/11 |
| 115. | Greenbriar Discount Mall webpage printout |
| 116. | Greenbriar Discount Mall "Available Booths" webpage printout |
| 117. | Greenbriar Discount Mall "About Us" website printout |
| 118. | Letter dated October 1, 2013 from 2975Properties, LLC to Greenbriar Marketplace II, LLC re: lease extension option |
| 119. | Greenbriar Discount Mall Vendors List dated February 25, 2014 |
| 120. | D-16 Vendor Agreement 2009 |
| 121. | Notice of Lease Violation for C-25 dated August 8, 2010 |
| 122. | A-24 Vendor Agreement 2011 |
| 123. | Counterfeit Merchandise Final Notice for A-24 dated March 11, 2013 |
| 124. | C-7 Vendor Agreement 2011 |
| 125. | List of rent charges for Booth A-24 served 5/20/11 |
| 126. | Voluntary Surrender of Merchandise for Center Island Kiosk #1 dated July 28, 2011 |

| 127. | Notice of Lease Violation for B-23 dated July 21, 2011 |
| 128. | Notice of Lease Violation for A-23 dated July 21, 2011 |
| 129. | Notice of Termination of Lease for C-18 dated August 29, 2011 |
| 130. | A-24A Vendor Agreement 2012 |
| 131. | E-4 Vendor Agreement 2012 |
| 132. | D-15 Vendor Agreement 2012 |
| 133. | Handwritten Notes dated December 17, 2012 |
| 134. | D-17 Vendor Agreement 2013 |
| 135. | Notice of Lease Violation for A-24A dated March 11, 2013 |
| 136. | Notice of Lease Violation for C-7 dated April 4, 2013 |
| 137. | Notice of Lease Violation for B-23 dated June 6, 2013 |
| 138. | Notice of Termination of Lease for D-16 dated October 6, 2013 |
| 139. | Notice of Termination of Lease for D-17 dated October 6, 2013 |
| 140. | Notice of Termination of Lease for E-4 dated October 6, 2013 |
| 141. | Notice of Termination of Lease for A-24A dated October 6, 2013 |
| 142. | Storage Receipt for Booth D-17 dated October 8, 2013 |
| 143. | Storage Receipt for Booth A-24A dated October 8, 2013 |
| 144. | A-24A Vendor Agreement 2013 |
| 145. | Storage Receipt for Booth A-24A dated December 9, 2013 |
| 146. | C-4 Rent Payments 2013 |
| 147. | A-24A Vendor Agreement November      2014 |
| 148. | A-24A Vendor Agreement December 2014 |
| 149. | C-7 Vendor Agreement 2015 |
| 150. | C-18 Vendor Agreement 2015 |
| 151. | |
| 152. | |
| 153. | |
| 154. | |
| 155. | |
| 156. | |
| 157. | |
| 158. | |
| 159. | |
| 160. | |
| 161. | |
| 162. | |
| 163. | |
| 164. | |
| 165. | |
| 166. | |
| 167. | |
| 168. | |
| 169. | |
| 170. | |
| 171. | |
| 172. | |
| 173. | |
| 174. | |

| | |
|---|---|
| 175. | |
| 176. | |
| 177. | |
| 178. | |
| 179. | |
| 180. | |
| 181. | |
| 182. | |
| 183. | |
| 184. | |
| 185. | |
| 186. | |
| 187. | |
| 188. | |
| 189. | |
| 190. | |
| 191. | |
| 192. | |
| 193. | |
| 194. | |
| 195. | |
| 196. | |
| 197. | Certified Copy of Indictment in United States of America v. Patrick L. Swindall Case No. CR88-477A |
| 198. | Certified Copy of Appeal Nos. 89-8746, 91-8329, 91-9017 in United States of America v. Patrick L. Swindall |
| 199. | Certified Copy of Appeal No. 94-8159 in United States of America v. Patrick L. Swindall |
| 200. | Certified Copy of Indictment in The State of Georgia v. Patrick Lynn Swindall, Case No. 09SC80987 |
| 201. | Certified Copy of Final Disposition in The State of Georgia v. Patrick Lynn Swindall, Case No. 09SC80987 |
| 202. | Fulton County State Court of Georgia  Search Warrant for Greenbriar Discount Mall Section C issued 12/17/13 with handwritten list of items seized |
| 203. | Fulton County State Court of Georgia Search Warrant for 2975 Headland Drive (D16) |
| 204. | United States District Court in Northern District of Georgia Search Warrant for Greenbriar Discount Mall, Booth C-4 issued 12/18/13 |
| 205. | United States District Court in Northern District of Georgia Search Warrant for Greenbriar Discount Mall, Booth A-24 issued 12/18/13 |
| 206. | Email dated April 6, 2008 from Wes Cannon to Pat Swindall |
| 207. | Letter dated October 15, 2009 from Greenbriar Marketplace II, LLC to 2925 Properties, LLC re: rental payments |
| 208. | Letter dated December 18, 2010 from 2925 Properties, LLC to tenants re: Sales and/or Distribution of Counterfeit Merchandise |
| 209. | Letter dated January 3, 2011 from Coach to Greenbriar Discount Mall |
| 210. | Letter dated January 15, 2011 from 2925 Properties, LLC to tenants re: Vital Information Needed from All Tenants |

| 211. | | Letter dated February 22, 2011 from Greenbriar Discount Mall to Coach |
| 212. | | Letter dated February 27, 2011 from 2925 Properties, LLC to tenants re: Sales and/or Distribution of Counterfeit Merchandise |
| 213. | | Email dated July 11, 2011 from Shari Escher to Pat Swindall |
| 214. | | Letter dated March 1, 2012 from 2927 Properties, LLC to Southeastern Investigations |
| 215. | | Email dated April 11, 2012 from Shari Escher to Kim Swindall |
| 216. | | Email dated June 4, 2012 from Pat Swindall to Shari Escher |
| 217. | | Email dated June 29, 2012 from Pat Swindall to Shari Escher |
| 218. | | Email dated August 24, 2012 from Kim Swindall to Shari Escher |
| 219. | | Email dated October 28, 2013 from Pat Swindall to JD Cannon |
| 220. | | Email dated November 4, 2013 from Pat Swindall to Albert Ashkouti |
| 221. | | Email dated November 6, 2013 from Pat Swindall to Albert Ashkouti |
| 222. | | Letter dated November 11, 2013 from Louis Vuitton to Sterling Management and 2925 Properties, LLC |
| 223. | | Letter dated December 2, 2013 from Greenbriar Discount Mall to Louis Vuitton |
| 224. | | Email dated December 5, 2013 from Pat Swindall to Albert Ashkouti |
| 225. | | Email dated December 19, 2013 from Kim Swindall to Louis Vuitton |
| 226. | | Email dated December 19, 2013 from Kim Swindall to JD Cannon |
| 227. | | Email dated January 8, 2014 from Kim Swindall to Louis Vuitton |
| 228. | | Letter dated March 4, 2014 from Greenbriar Discount Mall to Burberry |
| 229. | E | Email dated March 4, 2014 from Kim Swindall to Albert Ashkouti |
| 230. | | Email dated March 8, 2014 from Kim Swindall to JD Cannon |
| 231. | | Email dated March 8, 2014 from Kim Swindall to Louis Vuitton |
| 232. | | Email dated March 31, 2014 from Albert Ashkouti to Pat Swindall |

| | |
|---|---|
| 233. | Email dated March 31, 2014 from Kim Swindall to JD Cannon |
| 234. | Email dated April 2, 2014 from Albert Ashkouti to Arlene Reustie |
| 235. | Email dated April 2, 2014 from Pat Swindall to Albert Ashkouti |
| 236. | Letter dated April 3, 2014 from First Guaranty Management Corporation to Ralph Lauren |
| 237. | Email dated April 8, 2014 from Louis Vuitton to Kim Swindall |
| 238. | Email dated April 8, 2014 from Pat Swindall to Albert Ashkouti |
| 239. | Email dated April 14, 2014 from Albert Ashkouti to Baker Law |
| 240. | Letter dated April 21, 2014 from Louis Vuitton to Sterling Management and 2925 Properties, LLC |
| 241. | Letter dated April 23, 2014 from Gucci to 2925 Properties, LLC |
| 242. | Email dated May 2, 2014 from Albert Ashkouti to Holihan Law (representing Nike, Inc.) |
| 243. | Email dated May 2, 2014 from Albert Ashkouti to Gucci |
| 244. | Email dated May 7, 2014 from Albert Ashkouti to Pat Swindall |
| 245. | Letter dated June 19, 2014 from Holihan Law (representing Nike, Inc.) to Greenbriar Marketplace II, LLC |
| 246. | Email dated June 20, 2014 from Albert Ashkouti to Holihan Law |
| 247. | Letter dated September 9, 2014 from Louis Vuitton to Paul Kish (representing 2925 Properties, LLC d/b/a Greenbriar Discount Mall) |
| 248. | Letter dated September 17, 2014 from Greenbriar Discount Mall to Louis Vuitton |
| 249. | Letter dated October 2, 2014 from Greenbriar Discount Mall to Louis Vuitton |
| 250. | Letter dated October 2, 2014 from Greenbriar Discount Mall to Coach |
| 251. | Letter dated February 5, 2015 from Kish & Lietz to Jason Groppe |
| 252. | Letter dated April 22, 2015 from Luxottica to Greenbrier Discount Mall |
| 253. | Letter dated April 29, 2015 from Greenbriar Discount Mall to Jason Groppe |
| 254. | |
| 255. | |
| 256. | |
| 257. | |
| 258. | |
| 259. | |
| 260. | |

| | |
|---|---|
| 261. | |
| 262. | |
| 263. | |
| 264. | |
| 265. | |
| 266. | |
| 267. | |
| 268. | |
| 269. | |
| 270. | |
| 271. | |
| 272. | |
| 273. | |
| 274. | |
| 275. | |
| 276. | |
| 277. | |
| 278. | |
| 279. | |
| 280. | |
| 281. | |
| 282. | |
| 283. | |
| 284. | |
| 285. | |
| 286. | |
| 287. | |
| 288. | |
| 289. | |
| 290. | |
| 291. | |
| 292. | |
| 293. | |
| 294. | |
| 295. | |
| 296. | |
| 297. | |
| 298. | |
| 299. | |
| 300. | Southeastern Investigations, Inc. Investigative Report for July 16, 2012 – July 29, 2012 |
| 301. | Photographs from Phoenix Consulting & Investigations, Inc. Sweep on April 23, 2015 |
| 302. | Phoenix Consulting & Investigations, Inc. Investigative Report for November 17, 2016 – December 19, 2016 |
| 303. | Phoenix Consulting & Investigations, Inc. Investigative Report for February 22, 2016 – March 29, 2016 |

| 304. | Phoenix Consulting & Investigations, Inc. Invoice #610 dated April 4, 2016 |
|---|---|
| 305. | Composite Photographs |
| 306. | Photograph of March 30, 2015 purchase |
| 307. | |
| 308. | |
| 309. | |
| 310. | |
| 311. | |
| 312. | |
| 313. | |
| 314. | |
| 315. | |
| 316. | |
| 317. | |
| 318. | |
| 319. | |
| 320. | |
| 321. | |
| 322. | |
| 323. | |
| 324. | |
| 325. | |
| 326. | |
| 327. | |
| 328. | |
| 329. | |
| 330. | |
| 331. | |
| 332. | |
| 333. | |
| 334. | |
| 335. | |
| 336. | |
| 337. | |
| 338. | |
| 339. | |
| 340. | |
| 341. | |
| 342. | |
| 343. | |
| 344. | |
| 345. | |
| 346. | |
| 347. | |
| 348. | |
| 349. | |
| 350. | |

| | |
|---|---|
| 351. | |
| 352. | |
| 353. | |
| 354. | |
| 355. | |
| 356. | |
| 357. | |
| 358. | |
| 359. | |
| 360. | |
| 361. | |
| 362. | |
| 363. | |
| 364. | |
| 365. | |
| 366. | |
| 367. | |
| 368. | |
| 369. | |
| 370. | |
| 371. | |
| 372. | |
| 373. | |
| 374. | |
| 375. | |
| 376. | |
| 377. | |
| 378. | |
| 379. | |
| 380. | |
| 381. | |
| 382. | |
| 383. | |
| 384. | |
| 385. | |
| 386. | |
| 387. | |
| 388. | |
| 389. | |
| 390. | |
| 391. | |
| 392. | |
| 393. | |
| 394. | |
| 395. | |
| 396. | |
| 397. | |
| 398. | |

| 399. | |
|------|---|
| 400. | Certified Trademark Registration Certificate No. 650, 499 for Ray-Ban |
| 401. | Certified Trademark Registration Certificate No. 1,080,886 for Ray-Ban |
| 402. | Certified Trademark Registration Certificate No. 1,093,658 for Ray-Ban |
| 403. | Certified Trademark Registration Certificate No. 3,522,603for Ray-Ban |
| 404. | Certified Trademark Registration Certificate No. 1,511,615 for Luxottica |
| 405. | Certified Trademark Registration Certificate No. 2,971,023 for Ray-Ban |
| 406. | Summary exhibit of trademark violations for Ray-Ban lenses |
| 407. | Summary exhibit of trademark violations for Ray-Ban tags and labels |
| 408. | Summary exhibit of trademark violations for Ray-Ban frames |
| 409. | Summary exhibit of trademark violations for Ray-Ban cases |
| 410. | |
| 411. | |
| 412. | |
| 413. | |
| 414. | |
| 415. | |
| 416. | |
| 417. | |
| 418. | |
| 419. | |
| 420. | |
| 421. | |
| 422. | |
| 423. | |
| 424. | |
| 425. | |
| 426. | |
| 427. | |
| 428. | |
| 429. | |
| 430. | |
| 431. | |
| 432. | |
| 433. | |
| 434. | |
| 435. | |
| 436. | |
| 437. | |
| 438. | |
| 439. | |
| 440. | |

| | |
|---|---|
| 441. | |
| 442. | |
| 443. | |
| 444. | |
| 445. | |
| 446. | |
| 447. | |
| 448. | |
| 449. | |
| 450. | |
| 451. | |
| 452. | |
| 453. | |
| 454. | |
| 455. | |
| 456. | |
| 457. | |
| 458. | |
| 459. | |
| 460. | |
| 461. | |
| 462. | |
| 463. | |
| 464. | |
| 465. | |
| 466. | |
| 467. | |
| 468. | |
| 469. | |
| 470. | |
| 471. | |
| 472. | |
| 473. | |
| 474. | |
| 475. | |
| 476. | |
| 477. | |
| 478. | |
| 479. | |
| 480. | |
| 481. | |
| 482. | |
| 483. | |
| 484. | |
| 485. | |
| 486. | |
| 487. | |
| 488. | |

| | |
|---|---|
| 489. | |
| 490. | |
| 491. | |
| 492. | |
| 493. | |
| 494. | |
| 495. | |
| 496. | |
| 497. | |
| 498. | |
| 499. | |
| 500. | Video Deposition and Transcript of Albert Ashkouti |
| 501. | |
| 502. | |
| 503. | |
| 504. | |
| 505. | |
| 506. | |
| 507. | |
| 508. | |
| 509. | |
| 510. | |
| 511. | |
| 512. | |
| 513. | |
| 514. | |
| 515. | |
| 516. | |
| 517. | |
| 518. | |
| 519. | |
| 520. | |
| 521. | |
| 522. | |
| 523. | |
| 524. | |
| 525. | |
| 526. | |
| 527. | |
| 528. | |
| 529. | |
| 530. | |
| 531. | |
| 532. | |
| 533. | |
| 534. | |
| 535. | |
| 536. | |

| | |
|---|---|
| 537. | |
| 538. | |
| 539. | |
| 540. | |
| 541. | |
| 542. | |
| 543. | |
| 544. | |
| 545. | |
| 546. | |
| 547. | |
| 548. | |
| 549. | |
| 550. | |
| 551. | |
| 552. | |
| 553. | |
| 554. | |
| 555. | |
| 556. | |
| 557. | |
| 558. | |
| 559. | |
| 560. | |
| 561. | |
| 562. | |
| 563. | |
| 564. | |
| 565. | |
| 566. | |
| 567. | |
| 568. | |
| 569. | |
| 570. | |
| 571. | |
| 572. | |
| 573. | |
| 574. | |
| 575. | |
| 576. | |
| 577. | |
| 578. | |
| 579. | |
| 580. | |
| 581. | |
| 582. | |
| 583. | |
| 584. | |

| | |
|---|---|
| 585. | |
| 586. | |
| 587. | |
| 588. | |
| 589. | |
| 590. | |
| 591. | |
| 592. | |
| 593. | |
| 594. | |
| 595. | |
| 596. | |
| 597. | |
| 598. | |
| 599. | |
| 600. | All Interrogatories, Answers to Interrogatories, Requests for Production, Responses to Requests for Production, Requests for Admissions and Responses to Requests for Admissions in this action |
| 601. | All documents produced during discovery of this case |
| 602. | All exhibits listed by any other party, unless an objection has been made by Plaintiffs |
| 603. | All applicable case law, statutes, ordinances, regulations and such other legal treatises |
| 604. | All demonstrative aids and exhibits |
| 605. | All impeachment and rebuttal exhibits |
| 606. | Verified Complaint filed in Case No. 2009-CV-176586 dated October 19, 2009 |
| 607. | Affidavit of Albert Ashkouti filed in Case No. 2009-CV-176586 dated October 19, 2009 |
| 608. | Affidavit of Deborah Reeves filed in Case No. 2009-CV-176586 dated October 19, 2009 |
| 609. | Affidavit of Patrick L. Swindall filed in Case No. 2009-CV-176586 dated April 21, 2010 |
| 610. | Consent Order filed in Case No. 2009-CV-176586 dated June 22, 2010 |
| 611. | |
| 612. | |
| 613. | |
| 614. | |
| 615. | |
| 616. | |
| 617. | |
| 618. | |
| 619. | |
| 620. | |
| 621. | |
| 622. | |
| 623. | |
| 624. | |
| 625. | |

| | |
|---|---|
| 626. | |
| 627. | |
| 628. | |
| 629. | |
| 630. | |
| 631. | |
| 632. | |
| 633. | |
| 634. | |
| 635. | |
| 636. | |
| 637. | |
| 638. | |
| 639. | |
| 640. | |
| 641. | |
| 642. | |
| 643. | |
| 644. | |
| 645. | |
| 646. | |
| 647. | |
| 648. | |
| 649. | |

Plaintiff reserves the right to use any exhibit listed herein in an enlarged format for presentation to the jury.   In addition, Plaintiff reserves the right to compile information from a collection of exhibits into an enlarged combined exhibit for presentation to the jury.  Plaintiff reserves the right to use additional exhibits purely for impeachment as opposed to admission.

## Greenbriar's Objections to Plaintiff's Proposed Trial Exhibits

Greenbriar generally objects to Plaintiff's proposed trial exhibits to the extent that they are duplicative or cumulative of any testimony or other evidence offered or admitted at trial.

| Exhibit | Objection(s) |
|---------|--------------|
| 1 | Relevance, Hearsay |
| 2 | Relevance, Hearsay |
| 3 | Relevance, Hearsay |
| 4 | Relevance, Hearsay |
| 5 | Relevance, Hearsay |
| 6 | Relevance, Hearsay |
| 7 | Relevance, Prejudice, Hearsay |
| 8 | Relevance, Hearsay |
| 9 | Relevance, Hearsay |
| 10 | Relevance, Hearsay |
| 11 | Relevance |
| 12 | Relevance |
| 13 | Relevance |
| 14 | Relevance |
| 15 | Relevance |
| 16 | Relevance |
| 17 | Relevance |
| 18 | Relevance, Hearsay |
| 19 | Relevance, Hearsay |
| 20 | Relevance, Hearsay |
| 21 | Relevance, Hearsay |
| 100 | Relevance, Hearsay |
| 101 | Relevance, Hearsay |
| 102 | Relevance, Hearsay |
| 103 | Relevance, Hearsay |
| 104 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 105 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 106 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |

| 107 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 108 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 109 | Relevance, Hearsay |
| 110 | Relevance, Hearsay, Authenticity |
| 111 | Relevance, Hearsay, Authenticity |
| 112 | Relevance, Hearsay |
| 113 | |
| 114 | |
| 115 | Relevance, Hearsay, Authenticity |
| 116 | Relevance, Hearsay, Authenticity |
| 117 | Relevance, Hearsay, Authenticity |
| 118 | Hearsay |
| 119 | Hearsay |
| 120 | Hearsay |
| 121 | Relevance, Hearsay |
| 122 | Hearsay |
| 123 | Hearsay |
| 124 | Hearsay |
| 125 | Relevance, Hearsay |
| 126 | Hearsay |
| 127 | Hearsay |
| 128 | Hearsay |
| 129 | Relevance, Hearsay |
| 130 | Hearsay |
| 131 | Hearsay |
| 132 | Relevance, Hearsay |
| 133 | Relevance, Hearsay |
| 134 | Hearsay |
| 135 | Hearsay |
| 136 | Hearsay |
| 137 | Hearsay |
| 138 | Hearsay |
| 139 | Hearsay |
| 140 | Hearsay |
| 141 | Hearsay |
| 142 | Relevance, Hearsay |
| 143 | Relevance, Hearsay |
| 144 | Hearsay |
| 145 | Relevance, Hearsay |
| 146 | Relevance, Hearsay |
| 147 | Hearsay |
| 148 | Hearsay |
| 149 | Hearsay |

| 150 | Relevance, Hearsay |
|-----|--------------------|
| 197 | Relevance, Hearsay, and Prejudice |
| 198 | Relevance, Hearsay, and Prejudice |
| 199 | Relevance, Hearsay, and Prejudice |
| 200 | Relevance, Hearsay, Prejudice |
| 201 | Relevance, Hearsay, Prejudice |
| 202 | |
| 203 | Hearsay, Prejudice |
| 204 | Hearsay, Prejudice |
| 205 | Hearsay, Prejudice |
| 206 | Relevance, Hearsay |
| 207 | Relevance, Hearsay |
| 208 | Hearsay |
| 209 | Relevance, Hearsay |
| 210 | Hearsay |
| 211 | Relevance, Hearsay |
| 212 | Hearsay |
| 213 | Hearsay |
| 214 | Hearsay |
| 215 | Relevance, Hearsay, Prejudice |
| 216 | Hearsay |
| 217 | Relevance, Hearsay |
| 218 | Relevance, Hearsay, Incomplete |
| 219 | Hearsay, Incomplete |
| 220 | Relevance, Hearsay |
| 221 | |
| 222 | Relevance, Hearsay |
| 223 | Relevance, Hearsay, Incomplete |
| 224 | Relevance, Hearsay, Incomplete |
| 225 | Relevance, Hearsay |
| 226 | Hearsay |
| 227 | Relevance, Hearsay |
| 228 | Relevance, Hearsay, Incomplete |
| 229 | |
| 230 | Relevance, Hearsay, Incomplete |
| 231 | Relevance, Hearsay, Incomplete |
| 232 | Relevance, Incomplete |
| 233 | Relevance, Hearsay |
| 234 | Relevance, Incomplete |
| 235 | Relevance, Hearsay, Incomplete, Illegible |
| 236 | |
| 237 | Relevance, Hearsay |
| 238 | Relevance, Hearsay, Prejudice |
| 239 | |
| 240 | Relevance, Hearsay |

| 241 | Relevance, Hearsay |
|-----|--------------------|
| 242 | |
| 243 | |
| 244 | Relevance, Prejudice |
| 245 | Relevance, Hearsay |
| 246 | |
| 247 | Relevance, Hearsay |
| 248 | Relevance, Hearsay, Incomplete |
| 249 | Relevance, Hearsay |
| 250 | Relevance, Hearsay |
| 251 | Hearsay |
| 252 | Hearsay |
| 253 | Hearsay |
| 300 | Relevance, Prejudice, Hearsay |
| 301 | Hearsay |
| 302 | Hearsay |
| 303 | Hearsay |
| 304 | Relevance, Hearsay |
| 305 | Relevance, Hearsay, Prejudice, Authenticity |
| 306 | Authenticity, Hearsay |
| 400 | Relevance, Prejudice, Hearsay |
| 401 | Relevance, Prejudice, Hearsay |
| 402 | Relevance, Prejudice, Hearsay |
| 403 | **Relevance, Prejudice, Hearsay** |
| 404 | Relevance, Prejudice, Hearsay |
| 405 | Relevance, Prejudice, Hearsay |
| 406 | Relevance, Prejudice, Hearsay |
| 407 | Relevance, Prejudice, Hearsay |
| 408 | Relevance, Prejudice, Hearsay |
| 409 | Relevance, Prejudice, Hearsay |
| 500 | Greenbriar objects to any use of the transcript or video recording of this deposition where the witness will be available to testify at trial. |
| 600 | Greenbriar objects to this exhibit designation, which neither defines a specific exhibit to be tendered nor puts Greenbriar on notice of what Plaintiff intends to introduce or rely upon at trial. |

| 601 | Greenbriar objects to this exhibit designation, which neither defines a specific exhibit to be tendered nor puts Greenbriar on notice of what Plaintiff intends to introduce or rely upon at trial. |
|---|---|
| 602 | Greenbriar objects to this exhibit designation, which neither defines a specific exhibit to be tendered nor puts Greenbriar on notice of what Plaintiff intends to introduce or rely upon at trial. |
| 603 | Greenbriar objects to this exhibit designation, which neither defines a specific exhibit to be tendered nor puts Greenbriar on notice of what Plaintiff intends to introduce or rely upon at trial. In addition, Greenbriar objects, as copies of case law, statutes, ordinances, and regulations, and legal treatises, are not evidence that can be used in deliberation by the jury. The jury charges will define for the jury what law to apply. |
| 604 | Greenbriar objects to this exhibit designation, which neither defines a specific exhibit to be tendered nor puts Greenbriar on notice of what Plaintiff intends to introduce or rely upon at trial. In addition, Greenbriar objects, as demonstrative aids and exhibits are not evidence that can be used in deliberation by the jury. |
| 605 | Greenbriar objects to this exhibit designation, which neither defines a specific exhibit to be tendered nor puts Greenbriar on notice of what Plaintiff intends to introduce or rely upon at trial. |
| 606 | Relevance, Hearsay |
| 607 | Relevance, Hearsay. Greenbriar also objects to the use or admission of affidavits from any witnesses available for trial. |
| 608 | Relevance, Hearsay. Greenbriar also objects to the use or admission of affidavits from any witnesses available for trial. |
| 609 | Relevance, Hearsay. Greenbriar also objects to the use or admission of affidavits from any witnesses available for trial. |
| 610 | Relevance, Hearsay |

Greenbriar intends to file motions *in limine* in accordance with the Guidelines to more completely present, as necessary, the objections noted above.

**2925 Properties, LLC, Patrick Swindall and Kimberly Swindall's ("Swindall Defendants'")  Objections to Plaintiff's Proposed Trial Exhibits**

The Swindall Defendants generally objects to Plaintiff's proposed trial exhibits to the extent that they are duplicative or cumulative of any testimony or other evidence offered or admitted at trial.

| Exhibit | Objection(s) |
|---|---|
| 1 | Relevance, Hearsay |
| 2 | Relevance, Hearsay |
| 3 | Relevance, Hearsay |
| 4 | Relevance, Hearsay |
| 5 | Relevance, Hearsay |
| 6 | Relevance, Hearsay |
| 7 | Relevance, Prejudice, Hearsay |
| 8 | Relevance, Hearsay |
| 9 | Relevance, Hearsay |
| 10 | Relevance, Hearsay |
| 11 | Relevance |
| 12 | Relevance |
| 13 | Relevance |
| 14 | Relevance |
| 15 | Relevance |
| 16 | Relevance |
| 17 | Relevance |
| 18 | Relevance, Hearsay |
| 19 | Relevance, Hearsay |
| 20 | Relevance, Hearsay |
| 21 | Relevance, Hearsay |
| 100 | Relevance, Hearsay |
| 101 | Relevance, Hearsay |
| 102 | Relevance, Hearsay |
| 103 | Relevance, Hearsay |
| 104 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 105 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 106 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |

| 107 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 108 | Relevance, Prejudice to the extent this evidence references the financial wherewithal/financial resources of any Defendant |
| 109 | Relevance, Hearsay |
| 110 | Relevance, Hearsay, Authenticity |
| 111 | Relevance, Hearsay, Authenticity |
| 112 | Relevance, Hearsay |
| 113 | |
| 114 | |
| 115 | Relevance, Hearsay, Authenticity |
| 116 | Relevance, Hearsay, Authenticity |
| 117 | Relevance, Hearsay, Authenticity |
| 118 | Hearsay |
| 119 | Hearsay |
| 120 | Hearsay |
| 121 | Relevance, Hearsay |
| 122 | Hearsay |
| 123 | Hearsay |
| 124 | Hearsay |
| 125 | Relevance, Hearsay |
| 126 | Hearsay |
| 127 | Hearsay |
| 128 | Hearsay |
| 129 | Relevance, Hearsay |
| 130 | Hearsay |
| 131 | Hearsay |
| 132 | Relevance, Hearsay |
| 133 | Relevance, Hearsay |
| 134 | Hearsay |
| 135 | Hearsay |
| 136 | Hearsay |
| 137 | Hearsay |
| 138 | Hearsay |
| 139 | Hearsay |
| 140 | Hearsay |
| 141 | Hearsay |
| 142 | Relevance, Hearsay |
| 143 | Relevance, Hearsay |
| 144 | Hearsay |
| 145 | Relevance, Hearsay |
| 146 | Relevance, Hearsay |
| 147 | Hearsay |
| 148 | Hearsay |
| 149 | Hearsay |

| 150 | Relevance, Hearsay |
|---|---|
| 197 | Relevance, Hearsay, and Prejudice |
| 198 | Relevance, Hearsay, and Prejudice |
| 199 | Relevance, Hearsay, and Prejudice |
| 200 | Relevance, Hearsay, Prejudice |
| 201 | Relevance, Hearsay, Prejudice |
| 202 | |
| 203 | Hearsay, Prejudice |
| 204 | Hearsay, Prejudice |
| 205 | Hearsay, Prejudice |
| 206 | Relevance, Hearsay |
| 207 | Relevance, Hearsay |
| 208 | Hearsay |
| 209 | Relevance, Hearsay |
| 210 | Hearsay |
| 211 | Relevance, Hearsay |
| 212 | Hearsay |
| 213 | Hearsay |
| 214 | Hearsay |
| 215 | Relevance, Hearsay, Prejudice |
| 216 | Hearsay |
| 217 | Relevance, Hearsay |
| 218 | Relevance, Hearsay, Incomplete |
| 219 | Hearsay, Incomplete |
| 220 | Relevance, Hearsay |
| 221 | |
| 222 | Relevance, Hearsay |
| 223 | Relevance, Hearsay, Incomplete |
| 224 | Relevance, Hearsay, Incomplete |
| 225 | Relevance, Hearsay |
| 226 | Hearsay |
| 227 | Relevance, Hearsay |
| 228 | Relevance, Hearsay, Incomplete |
| 229 | |
| 230 | Relevance, Hearsay, Incomplete |
| 231 | Relevance, Hearsay, Incomplete |
| 232 | Relevance, Incomplete |
| 233 | Relevance, Hearsay |
| 234 | Relevance, Incomplete |
| 235 | Relevance, Hearsay, Incomplete, Illegible |
| 236 | |
| 237 | Relevance, Hearsay |
| 238 | Relevance, Hearsay, Prejudice |
| 239 | |
| 240 | Relevance, Hearsay |

| 241 | Relevance, Hearsay |
|---|---|
| 242 | |
| 243 | |
| 244 | Relevance, Prejudice |
| 245 | Relevance, Hearsay |
| 246 | |
| 247 | Relevance, Hearsay |
| 248 | Relevance, Hearsay, Incomplete |
| 249 | Relevance, Hearsay |
| 250 | Relevance, Hearsay |
| 251 | Hearsay |
| 252 | Hearsay |
| 253 | Hearsay |
| 300 | Relevance, Prejudice, Hearsay |
| 301 | Hearsay |
| 302 | Hearsay |
| 303 | Hearsay |
| 304 | Relevance, Hearsay |
| 305 | Relevance, Hearsay, Prejudice, Authenticity |
| 306 | Authenticity, Hearsay |
| 400 | Relevance, Prejudice, Hearsay |
| 401 | Relevance, Prejudice, Hearsay |
| 402 | Relevance, Prejudice, Hearsay |
| 403 | **Relevance, Prejudice, Hearsay** |
| 404 | Relevance, Prejudice, Hearsay |
| 405 | Relevance, Prejudice, Hearsay |
| 406 | Relevance, Prejudice, Hearsay |
| 407 | Relevance, Prejudice, Hearsay |
| 408 | Relevance, Prejudice, Hearsay |
| 409 | Relevance, Prejudice, Hearsay |
| 500 | Swindall Defendants object to any use of the transcript or video recording of this deposition where the witness will be available to testify at trial. |
| 600 | Swindall Defendants object to this exhibit designation, which neither defines a specific exhibit to be tendered nor puts Swindall Defendants on notice of what Plaintiff intends to introduce or rely upon at trial. |

| 601 | Swindall Defendants object to this exhibit designation, which neither defines a specific exhibit to be tendered nor puts Swindall Defendants on notice of what Plaintiff intends to introduce or rely upon at trial. |
| 602 | Swindall Defendants object to this exhibit designation, which neither defines a specific exhibit to be tendered nor puts Swindall Defendants on notice of what Plaintiff intends to introduce or rely upon at trial. |
| 603 | Swindall Defendants object to this exhibit designation, which neither defines a specific exhibit to be tendered nor puts the Swindall Defendants on notice of what Plaintiff intends to introduce or rely upon at trial. In addition, the Swindall Defendants object, as copies of case law, statutes, ordinances, and regulations, and legal treatises, are not evidence that can be used in deliberation by the jury. The jury charges will define for the jury what law to apply. |
| 604 | Swindall Defendants object to this exhibit designation, which neither defines a specific exhibit to be tendered nor puts the Swindall Defendants on notice of what Plaintiff intends to introduce or rely upon at trial. In addition, the Swindall Defendants object, as demonstrative aids and exhibits are not evidence that can be used in deliberation by the jury. |
| 605 | Swindall Defendants object to this exhibit designation, which neither defines a specific exhibit to be tendered nor puts Swindall Defendants on notice of what Plaintiff intends to introduce or rely upon at trial. |
| 606 | Relevance, Hearsay |
| 607 | Relevance, Hearsay. Swindall Defendants also object to the use or admission of affidavits from any witnesses available for trial. |
| 608 | Relevance, Hearsay. Swindall Defendants also object to the use or admission of affidavits from any witnesses available for trial. |
| 609 | Relevance, Hearsay. Swindall Defendants also object to the use or admission of affidavits from any witnesses available for trial. |
| 610 | Relevance, Hearsay |

**The Swindall Defendants intend to file motions *in limine* in accordance with the Guidelines to more completely present, as necessary, the objections noted above.**

## ATTACHMENT G-2

## <u>DEFENDANT GREENBRIAR'S LIST OF DOCUMENTS</u>

| Ex. | Description | Admit? |
|---|---|---|
| 1 | January 23, 2004 Warranty Deed By and Between Daniel G. Kamin Greenbriar, LLC and Greenbriar Marketplace II, LLC | |
| 2 | December 31, 2008 Operating Agreement of 2925 Properties, LLC | |
| 3 | June 18, 2010 Settlement Agreement Between Greenbriar Marketplace II, LLC and 2925 Properties, LLC | |
| 4 | June 18, 2010 Second Amended and Restated Lease for Greenbriar Marketplace II, LLC, Landlord and 2925 Properties, LLC, Tenant | |
| 5 | November 6, 2013 E-mail from Patrick Swindall to Albert Ashkouti | |
| 6 | March 4, 2014 E-mail from Kimberly Swindall to Albert Ashkouti and Patrick Swindall | |
| 7 | April 3, 2014 Correspondence from Albert Ashkouti to Ellen Brooks | |
| 8 | April 14, 2014 E-mail from Albert Ashkouti to hmcdonald@bakerlaw.com | |
| 9 | May 2, 2014 E-mail from Albert Ashkouti to jessica.haugen@us.gucci.com | |
| 10 | May 2, 2014 E-mail from Albert Ashkouti to hailey.blevins@holihanlaw.com | |
| 11 | June 19, 2014 E-mail from Amy LoCascio to Albert Ashkouti and Hailey Blevins | |
| 12 | June 20, 2014 E-mail from Albert Ashkouti to Amy LoCascio, Hailey Blevins, and Kimberly Swindall | |
| | Demonstrative Exhibits Showing Location or Photographs of Property and Surrounding Areas | |

Greenbriar reserves the right to supplement or amend this list of evidence prior to trial, including, without limitation, in response to the other parties' submissions of the issues to be tried and documents to be introduced. Greenbriar also reserves the right to use any exhibits introduced by any other parties.

Greenbriar further reserves the right to use any additional exhibits for purposes of impeachment or rebuttal, as necessary.

**<u>Plaintiffs' Objections to Defendant Greenbriars' Exhibits</u>:**

Plaintiff objects to Defendant's Exhibit 1 on the basis of relevance and incompleteness.

## ATTACHMENT G-3

## DEFENDANTS 2925 PROPERTIES, PATRICK SWINDALL AND KIMBERLY SWINDALL TRIAL EXHIBIT LIST

| Exhibit | Description | Admit? |
|---|---|---|
|  |  |  |
| 1. | Subpoena Served on 2925 Properties, LLC |  |
| 2. | 2925's Subpoena Response to Paragraphs 1 and 5 |  |
| 3. | 2925's Subpoena Response to Paragraph 3 |  |
| 4. | 2925's Subpoena Response to Paragraph 6 |  |
| 5. | 2925's Subpoena Response to Paragraph 9 |  |
| 6. | 2925's Subpoena Response to Paragraph 10 |  |
| 7. | 2925's Subpoena Response to Paragraph 16 |  |
| 8. | 2925's Subpoena – Correspondence |  |
| 9. | Certificates of Occupancy – Shops at Greenbriar |  |
| 10. | Kim Swindall's 2-17-2016 E-mail to Paul Kish |  |
| 11. | Texts Between Kim Swindall and Capt. Mason |  |
| 12. | Pat Swindall's Letter to Coach 10-2-2014 |  |
| 13. | Albert Ashkouti's Correspondence |  |
| 14. | E-7 and Additional Leases and Terminations |  |
| 15. | E-4 and Additional Leases and Terminations |  |
| 16. | A-3's Move Out Receipt and Other Move Outs and Leases |  |
| 17. | D-16 Search Warrant and Additional Warrants and Leases |  |
| 18. | B-3's and Other Tenants' Evictions and Leases |  |
| 19. | Pat Swindall's 10-8-2013 E-mail to J.D. Cannon |  |
| 20. | Pat Swindall's 10-10-2013 E-mail to J.D. Cannon |  |
| 21. | Pat Swindall's 10-28-2013 E-mail to J.D. Cannon |  |
| 22. | Paul Kish's 11-12-2016 Letter to U.S. District Attorney Sally Molloy |  |
| 23. | Freedom of Information East Point September 2014 |  |
| 24. | Pat Swindall's 10-2-2014 Letter to Coach |  |
| 25. | First of Two Batches of Lease Terminations by 2925 for Counterfeiting |  |
| 26. | Second of Two Batches of Lease Terminations by 2925 for Counterfeiting |  |
| 27. | Video 1 |  |
| 28. | Video 2 |  |
| 29. | Video 3 |  |
| 30. | Failed Text |  |
| 31. | Maps of 2925 Properties, LLC |  |
| 32. | Southeastern Reports |  |

**<u>Plaintiff's Objections To Defendant 2925 Properties, Patrick Swindall and Kimberly Swindall Trial Exhibits:</u>**

Plaintiff objects to Defendants' Exhibit 1 on the basis of relevance and hearsay.

Plaintiff objects to Defendant's Exhibit 2 on the basis of relevance and hearsay.  Plaintiff also objectes on the basis that it does not  provide notice of what Defendants' intend to introduce or rely upon at trial.

Plaintiff objects to Defendant's Exhibit 3 on the basis of relevance and hearsay.  Plaintiff also objects on the basis that it does not provide notice of what Defendants' intend to introduce or rely upon at trial.

Plaintiff objects to Defendant's Exhibit 4 on the basis of relevance and hearsay.  Plaintiff also objects on the basis that it does not provide notice of what Defendants' intend to introduce or rely upon at trial.

Plaintiff objects to Defendant's Exhibit 5 on the basis of relevance and hearsay.  Plaintiff also objects on the basis that it does not provide notice of what Defendants' intend to introduce or rely upon at trial.

Plaintiff objects to Defendant's Exhibit 6 on the basis of relevance and hearsay.  Plaintiff also objects on the basis that it does  not provide notice of what Defendants' intend to introduce or rely upon at trial.

Plaintiff objects to Defendant's Exhibit 7 on the basis of relevance and hearsay.  Plaintiff also objects on the basis that it does not  provide notice of what Defendants' intend to introduce or rely upon at trial.

Plaintiff objects to Defendant's Exhibit 8 on the basis of relevance and hearsay.  Plaintiff also objects on the basis that it does not provide notice of what Defendants' intend to introduce or rely upon at trial.

Plaintiff objects to Defendant's Exhibit 9 on the basis of relevance, and because Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 10 on the basis of relevance, hearsay.  Plaintiff also objects because Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 11 on the basis of relevance, hearsay.  Plaintiff also objects because Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 13 on the basis of relevance, hearsay and authenticity.  Plaintiff also objects because Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 14 on the basis of relevance, hearsay and authenticity.  Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 15 on the basis of relevance, hearsay, incompleteness, and authenticity.  Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 16 on the basis of relevance, hearsay, incompleteness and authenticity.   Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 17 on the basis of relevance, hearsay, incompleteness and authenticity.   Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 18 on the basis of relevance, hearsay, incompleteness and authenticity.   Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 19 on the basis of relevance, hearsay, incompleteness and authenticity.   Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 20 on the basis of relevance, hearsay, incompleteness and authenticity.   Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 21 on the basis of relevance, hearsay, incompleteness and authenticity.   Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 22 on the basis of relevance, and hearsay.

Plaintiff objects to Defendant's Exhibit 23 on the basis of relevance, hearsay, incompleteness and authenticity.  Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 24 on the basis of relevance, hearsay, incompleteness and authenticity.  Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 25 on the basis of relevance, hearsay, incompleteness and authenticity.  Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 26 on the basis of relevance, hearsay, incompleteness and authenticity.  Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 27 on the basis of relevance, prejudice and hearsay.  Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 28 on the basis of relevance, prejudice and hearsay.  Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 29 on the basis of relevance, prejudice and hearsay.  Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 30 on the basis of relevance, hearsay and prejudice.  Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

Plaintiff objects to Defendant's Exhibit 31 on the basis of relevance, hearsay.  Plaintiff also objects to the extent Defendants' failed to produce such requested documents during discovery.

## ATTACHMENT H-1

## <u>PLAINTIFF'S TRIAL BRIEF</u>

Plaintiff may file trial briefs prior to trial in accordance with the Court's rules.

## ATTACHMENT H-2

## <u>DEFENDANT GREENBRIAR'S TRIAL BRIEF</u>

Greenbriar may, and reserves the right to, file a trial brief in advance of trial, in accordance with the Guidelines.

## DEFENDANTS 2925 PROPERTIES, PATRICK SWINDALL AND <u>KIMBERLY SWINDALLTRIAL BRIEF</u>

These Defendants may file trial briefs prior to trial in accordance with the Rules of the Court.

## ATTACHMENT I-1

## PLAINTIFF'S PROPOSED JURY VERDICT FORM

We the jury in the above-captioned action, find the following special verdict on the following questions submitted to us:

### Contributory Trademark Infringement

### Question No. 1: Frames for Sunglasses or Eyeglasses

Do you find that any of the vendors at the Greenbriar Discount Mall sold, offered for sale, or distributed <u>frames</u> for sunglasses or eyeglasses bearing counterfeits of Luxottica's Trademarks?

_____YES                 _____NO

If you answered "Yes", then proceed to Question 2.  If you answered "No", then proceed to Question 3.

### Question No. 2: Frames for Sunglasses or Eyeglasses

Which of following trademarks, if any, do you find were counterfeited on the <u>frames</u> for sunglasses or eyeglasses that were sold, offered for sale, or distributed by vendors at the Greenbriar Discount Mall?  Please place a check mark next to the trademark(s) at issue:

| 1,093,658 EXHIBIT - | RAY-BAN script logo | *Ray-Ban* | _____ |
|---|---|---|---|

**Question No. 3: Sunglass or Eyeglass Lenses**

Do you find that any of the vendors at the Greenbriar Discount Mall sold, offered for sale, or distributed sunglass or eyeglass lenses bearing counterfeits of Luxottica's Ray-Ban Trademarks?

_____YES                  _____NO

If you answered "Yes", then proceed to Question 4.  If you answered "No", then proceed to Question 5.

**Question No. 4: Sunglass or Eyeglass Lenses**

Which of following trademarks, if any, do you find were counterfeited on the sunglass or eyeglass lenses that were sold, offered for sale, or distributed by vendors at the Greenbriar Discount Mall?  Please place a check mark next to the trademark(s) at issue:

| 650,499 EXHIBIT - | RAY-BAN script logo |  | _____ |
|---|---|---|---|
| 2,971,023 EXHIBIT - | RB word mark |  | _____ |

**Question No. 5: Carrying Cases**

Do you find that any of the vendors at the Greenbriar Discount Mall sold, offered for sale, or distributed <u>carrying</u> <u>cases</u> bearing counterfeits of Luxottica's Trademarks?

_____YES                  _____NO

If you answered "Yes", then proceed to Question 6.  If you answered "No", then proceed to Question 7.

**Question No. 6: Carrying Cases**

Which of following trademarks, if any, do you find were counterfeited on the <u>carrying</u> <u>cases</u> that were sold, offered for sale, or distributed by vendors at the Greenbriar Discount Mall?   Please place a check mark next to the trademark(s) at issue:

| 1,093,658<br><br>EXHIBIT - | RAY-BAN script logo |  | _____ |
|---|---|---|---|

**Question No. 7: Tags/Labels**

Do you find that any of the vendors at the Greenbriar Discount Mall sold, offered for sale, or distributed <u>tags/labels</u> bearing counterfeits of Luxottica's Trademarks?

_____YES                _____NO

If you answered "Yes", then proceed to Question 8.  If you answered "No", then proceed to Question 9.

**Question No. 8: Tags/Labels**

Which of following trademarks, if any, do you find were counterfeited on the <u>tags/labels</u> that were sold, offered for sale or distributed by vendors at the Greenbriar Discount Mall?  Please place a check mark next to the trademark(s) at issue:

| 1,080,886 EXHIBIT - | RAY-BAN word mark | **RAY-BAN** | _____ |
|---|---|---|---|
| 1,093,658 EXHIBIT - | RAY-BAN script logo | *Ray-Ban* | _____ |
| 3,522,603 EXHIBIT - | RAY-BAN red logo | *Ray-Ban* | _____ |
| 1,511,615 EXHIBIT - | Luxottica word mark | LUXOTTICA | _____ |

**Question No. 9: Contributory Liability, Greenbriar Marketplace II, LLC**

Do you find Defendant Greenbriar Marketplace II, LLC contributorily liable to <u>Luxottica</u> for trademark infringement?

_____YES               _____NO

If you answered "Yes", then proceed to Question 10.  If you answered "No", then proceed to Question 13.

**Question No. 10: Willful Infringement, Greenbriar Marketplace II, LLC**

Do you find Defendant Greenbriar Marketplace II, LLC's contributory trademark infringement was willful?

_____YES               _____NO

If you answered "Yes", then proceed to Question 11.  If you answered "No", then proceed to Question 12.

112

**Question No.   11: Damages  for  Willful  Infringement,  Greenbriar Marketplace II, LLC**

If you answered "YES" to question No. 10, you have found Greenbriar Marketplace II, LLC willfully infringed <u>Luxottica's</u> registered trademarks.  You must now determine the amount of damages Greenbriar Marketplace II, LLC must pay per trademark.  You must award an amount of not more than $2 million per counterfeit trademark.

Amount awarded per trademark:      $_____

x _____(number of trademarks)

=_____total.

**Question No. 12: Damages for Trademark Infringement, Greenbriar Marketplace II, LLC**

If you answered "NO" to question No. 10, you have found Greenbriar Marketplace II, LLC did not willfully infringe <u>Luxottica's</u> registered trademarks.  You must now determine the amount of damages Greenbriar Marketplace II, LLC must pay per trademark. You must award an amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark:      $_____

x _____(number of trademarks)

=_____total.

**Question No. 13: Contributory Liability, 2925 Properties, LLC**

Do you find Defendant 2925 Properties, LLC contributorily liable to
<u>Luxottica</u> for trademark infringement?

_____YES                _____NO

If you answered "Yes", then proceed to Question 14.  If you answered "No",
then proceed to Question 17.

**Question No.  14: Willful Infringement, 2925 Properties, LLC**

Do you find that Defendant 2925 Properties, LLC's trademark
infringement was willful?

_____YES                _____NO

If you answered "Yes", then proceed to Question 15.  If you answered "No",
then proceed to Question 16.

**Question No.  15: Damages for Willful Infringement, 2925 Properties,
LLC**

If you answered "YES" to question No. 14, you have found 2925
Properties, LLC willfully infringed <u>Luxottica's</u> registered trademarks.  You
must now determine the amount of damages 2925 Properties, LLC must pay per
trademark. You must award an amount of not more than $2 million per
counterfeit trademark.

Amount awarded per trademark:      $_____

x _____ (number of trademarks)

=_____ total.

**Question No. 16: Damages for Trademark Infringement, 2925 Properties, LLC**

If you answered "NO" to question No. 14, you have found 2925 Properties, LLC did not willfully infringe <u>Luxottica's</u> registered trademarks. You must now determine the amount of damages 2925 Properties, LLC must pay per trademark. You must award an amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark:    $_____

x _____ (number of trademarks)

=_____ total.

**Question No. 17: Contributory Liability, Kimberly Swindall**

Do you find Defendant Kimberly Swindall contributorily liable to <u>Luxottica</u> for trademark infringement?

_____YES                _____NO

If you answered "Yes", then proceed to Question 18.  If you answered "No", then proceed to Question 21.

**Question No. 18: Willful Infringement, Kimberly Swindall**

Do you find that Defendant Kimberly Swindall's trademark infringement was willful?

_____YES                _____NO

If you answered "Yes", then proceed to Question 19.  If you answered "No", then proceed to Question 20.

**Question No.   19: Damages for Willful Infringement, Kimberly Swindall**

If you answered "YES" to question No. 18, you have found Kimberly Swindall willfully infringed Luxottica's registered trademarks.  You must now determine the amount of damages Kimberly Swindall must pay per trademark. You must award an amount of not more than $2 million per counterfeit trademark.

Amount awarded per trademark:        $_____

x _____ (number of trademarks)

=_____total.

**Question No.   20: Damages for Trademark Infringement, Kimberly Swindall**

If you answered "NO" to question No. 18, you have found Kimberly Swindall did not willfully infringe Luxottica's registered trademarks.  You must now determine the amount of damages Kimberly Swindall must pay per trademark. You must award an amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark:        $_____

x _____ (number of trademarks)

=_____ total.

**Question No. 21: Contributory Liability, Patrick Swindall**

Do you find Defendant Patrick Swindall contributorily liable to <u>Luxottica</u> for trademark infringement?

_____YES                          _____NO

If you answered "Yes", then proceed to Question 22.  If you answered "No", then proceed to the end of this Form.

**Question No.  22: Willful Infringement, Patrick Swindall**

Do you find that Defendant Patrick Swindall's trademark infringement was willful?

_____YES                          _____NO

If you answered "Yes", then proceed to Question 23.  If you answered "No", then proceed to Question 24.

**Question No.  23: Damages for Willful Infringement, Patrick Swindall**

If you answered "YES" to question No. 22, you have found Patrick Swindall willfully infringed <u>Luxottica's</u> registered trademarks.  You must now determine the amount of damages Patrick Swindall must pay per trademark. You must award an amount of not more than $2 million per counterfeit trademark.

Amount awarded per trademark:      $_____

x _____ (number of trademarks)

=_____ total.

117

**Question No. 24: Damages for Trademark Infringement, Patrick Swindall**

If you answered "NO" to question No. 22, you have found Patrick Swindall did not willfully infringe <u>Luxottica's</u> registered trademarks.  You must now determine the amount of damages Patrick Swindall must pay per trademark. You must award an amount of not less than $1,000 and not more than $200,000 per counterfeit trademark.

Amount awarded per trademark:     $_____

x _____ (number of trademarks)

=_____ total.

**DATE**_____

**FOREPERSON**_____

## ATTACHMENT "I-2"

Greenbriar requests that the Court consult with the parties at the pretrial conference in this action for the purpose of compiling a verdict and judgment form (or forms) that provides the jury with the proper framework for considering the evidence, determining the liability (if any) of each and all of the defendants, and reaching their verdict.

Defendants 2925 Properties, Patrick Swindall And Kimberly Swindall request that the Court consult with the parties at the pretrial conference in this action for the purpose of compiling a verdict and judgment form (or forms) that provides the jury with the proper framework for considering the evidence, determining the liability (if any) of each and all of the defendants, and reaching their verdict.